```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :    SEALED INDICTMENT
                                 :
          - v. -                 :    22 Cr.
                                 :
NATHANIEL CHASTAIN,              :
                                 :    22 CRIM 305
          Defendant.             :
                                 :
- - - - - - - - - - - - - - - - x
```

**COUNT ONE**
(Wire Fraud)

The Grand Jury charges:

Overview

1. This case concerns insider trading in Non-Fungible Tokens or "NFTs" on OpenSea, the largest online marketplace for the purchase and sale of NFTs. In violation of the duties of trust and confidence he owed to his employer, OpenSea, NATHANIEL CHASTAIN, the defendant, exploited his advanced knowledge of what NFTs would be featured on OpenSea's homepage for his personal financial gain.

2. As part of his employment, NATHANIEL CHASTAIN, the defendant, was responsible for selecting NFTs to be featured on OpenSea's homepage. OpenSea kept confidential the identity of featured NFTs until they appeared on its homepage. After an NFT was featured on OpenSea's homepage, the price buyers were willing to pay for that NFT, and for other NFTs made by the same NFT

creator, typically increased substantially.

3. From at least in or about June 2021 to at least in or about September 2021, NATHANIEL CHASTAIN, the defendant, misappropriated OpenSea's confidential business information about what NFTs were going to be featured on its homepage and used that information to secretly purchase dozens of NFTs shortly before they were featured. CHASTAIN then sold the NFTs he had purchased at a profit shortly after the NFTs were featured. To conceal the fraud, CHASTAIN conducted these purchases and sales using anonymous digital currency wallets and anonymous accounts on OpenSea.

### Background

4. At all times relevant to this Indictment, NATHANIEL CHASTAIN, the defendant, was a product manager at Ozone Networks, Inc. d/b/a OpenSea ("OpenSea"), the largest online marketplace for the purchase and sale of NFTs.

5. NFTs are a type of digital asset stored on a blockchain, which is a digital, decentralized ledger that stores information, including information about transactions. Each NFT is typically associated with a digital object, such as a piece of digital artwork, and the NFT provides proof of ownership of that digital object and a license to use the object for specific purposes.

6. Many NFTs are on a particular blockchain called the Ethereum blockchain. To buy and sell NFTs on the Ethereum blockchain, a person needs to have an Ethereum account. Each Ethereum account has an "address," which is a unique public identifier for the Ethereum account, much like an email address. A person with an Ethereum account can send and receive the cryptocurrency used on the Ethereum blockchain, called Ether (abbreviated "ETH"), as well as other assets, including NFTs. Transfers to and from the account are recorded on the blockchain, using the account's address. To use an Ethereum account, a person needs a "wallet," which is software that allows a user to access an Ethereum account and interact with the Ethereum blockchain.

7. OpenSea is an NFT marketplace, where users can create, sell, and buy NFTs. Beginning in or about May 2021, the top of the homepage of OpenSea's website started displaying featured NFTs. OpenSea changed the featured NFT multiple times per week. Information about what NFT and was going to be a featured NFT was OpenSea's confidential business information because it was not publicly available until the featured NFT appeared on the OpenSea website homepage. The value of featured NFTs, as well as other NFTs made by the same NFT creator, typically appreciated once they appeared on the OpenSea homepage due to the increase in publicity and resulting demand for the NFT.

8.      From in or about May 2021 to in or about September 2021, NATHANIEL CHASTAIN, the defendant, was responsible for selecting the NFTs that would be featured on OpenSea's homepage. Because of his role at OpenSea, CHASTAIN knew what NFTs were going to be featured before members of the public. CHASTAIN also knew that the value of an NFT typically rose after it became a featured NFT, as did other NFTs made by the same NFT creator.

9.      At all times relevant to this Indictment, employees of OpenSea, including NATHANIEL CHASTAIN, the defendant, had an obligation to maintain the confidentiality of confidential business information received in connection with their work for OpenSea, and an obligation to refrain from using such information, except for the benefit of OpenSea or to the extent necessary to perform work for OpenSea. Confidential information included any information not generally known or available outside of OpenSea. Indeed, upon joining OpenSea, Chastain signed a written agreement in which he acknowledged these obligations.

<u>CHASTAIN's Insider Trading of Featured NFTs</u>

10.     From at least in or about June 2021 to at least in or about September 2021, NATHANIEL CHASTAIN, the defendant, used OpenSea's confidential business information about what NFTs would be featured to buy dozens of NFTs shortly before those NFTs, or NFTs by the same NFT creator, were featured on OpenSea's homepage.

CHASTAIN then sold those NFTs at a profit shortly after the NFTs were featured. For instance:

    a. On August 2, 2021, minutes before the NFT named "The Brawl 2" was featured on OpenSea's homepage, CHASTAIN purchased four of the NFT, only to sell them within hours after the NFT was featured at prices double of what he paid.

    b. Again, on August 9, 2021, CHASTAIN purchased ten of the NFT "Flipping and spinning" before it was featured on OpenSea's homepage, and then sold them at prices 250% to 300% higher than where they were before the NFT was featured.

    c. On September 14, 2021, CHASTAIN purchased the NFT "Spectrum of a Ramenfication Theory," as well as three other NFTs by the same creator, shortly before the NFT was featured on OpenSea's homepage. CHASTAIN made over four times the amount of money when he sold "Spectrum of a Ramenfication Theory" early the next morning.

    11. To conceal his purchase of featured NFTs before they appeared on OpenSea's homepage, NATHANIEL CHASTAIN, the defendant, used anonymous OpenSea accounts, instead of his publicly-known account in his own name, to make the purchases and sales. He also transferred funds through multiple anonymous Ethereum accounts in order to conceal his involvement in purchasing and selling the featured NFTs. CHASTAIN used new Ethereum accounts

without any prior transaction history in order to further conceal his involvement in the scheme.

12. Over the course of his scheme to profit by misappropriating OpenSea's confidential business information about the featured NFTs, NATHANIEL CHASTAIN, the defendant, purchased a total of approximately 45 NFTs on approximately eleven separate occasions. CHASTAIN typically sold those NFTs for between two and five times his purchase price.

Statutory Allegations

13. From at least in or about June 2021 to at least in or about September 2021, in the Southern District of New York and elsewhere, NATHANIEL CHASTAIN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, in violation of the duties he owed to OpenSea, CHASTAIN misappropriated OpenSea's confidential business information by purchasing NFTs that he knew were going to featured on OpenSea's homepage, and then profited by reselling the NFTs after they had been featured and appreciated in

value.

(Title 18, United States Code, Section 1343.)

## COUNT TWO
(Money Laundering)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 12 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

15. From at least in or about June 2021 to at least in or about September 2021, in the Southern District of New York and elsewhere, NATHANIEL CHASTAIN, the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to wit, the wire fraud offense charged in Count One of this Indictment, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Section 1956(a)(1)(B)(i).)

## FORFEITURE ALLEGATIONS

16. As a result of committing the offense alleged in Count One of this Indictment, NATHANIEL CHASTAIN, the defendant, shall

forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

17. As a result of committing the offense alleged in Count Two of this Indictment, NATHANIEL CHASTAIN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense

SUBSTITUTE ASSET PROVISION

1. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

    (Title 18, United States Code, Sections 981 and 982;
       Title 21, United States Code, Section 853; and
       Title 28, United States Code, Section 2461.)

_/s/ [signature]_
Foreperson

_/s/ [signature]_
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NATHANIEL CHASTAIN,

Defendant.

SEALED INDICTMENT

22 Cr.

(18 U.S.C. §§ 1343, 1956(a)(1)(B)(i))

DAMIAN WILLIAMS
United States Attorney.

5/31/22   Filed Indictment under seal
Arrest warrant issued

USMJ MOSES

ML