M6fWchaC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          22 Cr. 305 (JMF)

5   NATHANIEL CHASTAIN,

6              Defendant.
                                           Conference
7   ------------------------------x

8                                          New York, N.Y.
                                           June 15, 2022
9                                          3:00 p.m.

10  Before:

11
                    HON. JESSE M. FURMAN,
12
                                           District Judge
13
                         APPEARANCES
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  NICOLAS T. ROOS
         THOMAS S. BURNETT
17       Assistant United States Attorneys

18  GREENBERG TRAURIG, LLP
         Attorneys for Defendant
19  BY:  DAVID I. MILLER
         GREGORY W. KEHOE
20       CHARLES BERK

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M6fWchaC

1        THE COURT:  You may be seated.

2        We are here in the matter of United States v.

3   Chastain, 22 Cr. 305.

4        Counsel, please state your names for the record.

5        MR. ROOS:  Good afternoon, your Honor.  Nick Roos and

6   Thomas Burnett for the United States.

7        MR. MILLER:  Good afternoon, your Honor.  For the

8   defendant, David Miller, Greg Kehoe, Charlie Berk, from

9   Greenberg Traurig, your Honor.

10       THE COURT:  Good afternoon to all of you.  Welcome.

11       Mr. Chastain, let me start by introducing myself.  My

12  name is Jesse Furman.  I'm a United States district judge here

13  in the Southern District of New York and have been assigned

14  your case, which means that if there were a trial in this

15  matter, I would be the judge who would preside over it, and in

16  the event that you were convicted of any offense, I would be

17  the judge who would impose sentence.

18       The purpose of today's proceeding, as I understand it,

19  is to set a schedule for the case going forward.  Before I do

20  that, let me just mention, I think counsel are probably aware

21  of this, but Mr. Miller and I were colleagues together at the

22  U.S. Attorney's Office increasingly long ago, but I just wanted

23  to make that disclosure.

24       I don't know if you were sitting through the end of

25  trial today, but it might have been of interest to you.

M6fWchaC

1          In any event, let's proceed.

2          Mr. Roos, can you tell me -- I've read the indictment,

3     but anything I ought to know by way of background here?  And am

4     I correct that Mr. Chastain was arraigned before a magistrate

5     judge?  Is that correct?

6          MR. ROOS:  That's right, your Honor.  He was arrested,

7     arraigned and presented, and bail was set on June 1, 2022.  The

8     bail terms are on the docket, but I'm happy to summarize them

9     if your Honor's interested.

10          THE COURT:  I'm happy to look at them on the docket.

11          MR. ROOS:  OK.  That's what I figured.

12          The indictment is a speaking indictment.  I'm happy to

13     give your Honor the factual, although I think the indictment

14     sets it forth.  I think today, you know, probably the items

15     that are most immediate are discovery and potential motions,

16     and so I'm happy to speak to either of them whenever your Honor

17     wants to.

18          THE COURT:  All right.  And I guess just one question

19     I had, I think when most people think of the term "insider

20     trading," they think of securities fraud, but just to be clear,

21     this charge is not a securities fraud charge; it's a

22     conventional wire fraud charge.  That is to say, the

23     government's theory is not to say that the items here were

24     securities.  Is that correct?

25          MR. ROOS:  That's right.  We're not alleging

M6fWchaC

1    securities fraud.

2           The government's theory, and I'm sure this will come

3    out either in motion practice or in jury instructions at some

4    point, but it's premised on the Supreme Court's decision in

5    *Carpenter*, which, I think, describes insider trading conduct as

6    a wire fraud.

7           THE COURT:  All right.  Very good.

8           With that, why don't you tell me about the status and

9    nature of discovery.

10          MR. ROOS:  Yes, your Honor.

11          So, discovery in this case will consist of two search

12   warrants -- a premises search warrant that yielded electronic

13   devices as well as a location or cell site warrant.  And so the

14   discovery will be those warrants and their applications as well

15   as what was yielded from them -- the three electronic devices

16   and the location information; some other materials that were

17   collected both by 2703(d) application and order; and then also,

18   gathered from third parties, most notably, is about 3,000 pages

19   worth of documents from the defendant's former employer, which

20   obviously is alleged in the indictment.  There's also a number

21   of public source materials.

22          Our time line, I'd say we'll complete production of

23   discovery probably within the next two weeks.

24          THE COURT:  And just to clarify, you mentioned that

25   three devices had been seized, but have they also been

M6fWchaC

searched?  Was that pursuant to --

          MR. ROOS:  Right.  Thank you, your Honor.

          So, all three devices are the defendant's devices.
They are, I believe, a computer, an iPad and a cell phone.  We
will be producing as part of a first sort of -- probably going
to make two productions over the next two weeks.  The first is
going to contain the full devices so that the defendant has the
full images, and the second production will be the government's
responsive set from the, sort of the portion of the devices
that was deemed to be not privileged.  So it's our take,
basically.

          THE COURT:  And are there wall assistants or wall
agents who are conducting that review?

          MR. ROOS:  This particular case, there was no sort of,
we basically used search terms to segregate everything that was
potentially privileged and put that to the side.  We weren't
interested in the potentially privileged information.  So there
was never, like, an analysis of is this privileged or is this
not.  We just didn't -- we didn't tread there, and instead, on
the presumptively nonprivileged materials, did the
responsiveness review.

          THE COURT:  OK.  And I think the question that I'd
originally posed was whether the search of those three devices,
was that pursuant to the original search warrant, or was there
a new warrant obtained for that?

M6fWchaC

1          MR. ROOS:  It was all pursuant to the original search

2     warrant.

3          THE COURT:  OK.  And did the defendant make any

4     postarrest statements?

5          MR. ROOS:  No.  The defendant at the time of arrest

6     was represented, so we didn't interview him.

7          THE COURT:  All right.  I will direct that you produce

8     discovery within two weeks, as you have indicated you will, and

9     to the extent that there are ongoing searches or the like,

10     where you come into possession of additional things thereafter,

11     you should promptly produce them, recognizing that discovery is

12     a continuing obligation.

13          I will take the opportunity to comply with Rule 5(f)

14     of the Federal Rules of Criminal Procedure to remind the

15     government of its obligations under *Brady v. Maryland* and its

16     progeny to disclose to the defense all information, whether

17     admissible or not, that is favorable to the defendant, material

18     either to guilt or to punishment, and known to the prosecution.

19          The prosecution must make good faith efforts to

20     disclose such information to the defense as soon as reasonably

21     possible.  Failure to do so may result in any number of

22     consequences, including a continuance, sanctions, dismissal, or

23     vacatur of conviction.  And in accordance with the rule, I will

24     enter a written order more fully spelling out the government's

25     obligations and the consequences of failing to adhere to them.

M6fWchaC

1    I would direct the government to read that order and make sure

2    that it understands and complies with its obligations.

3           Can you confirm that you do understand your

4    obligations?

5           MR. ROOS:  We understand our obligations, and we'll

6    review the order when your Honor signs it.

7           THE COURT:  All right.

8           And to the extent that there is anyone who would

9    qualify as a crime victim, within the meaning of the Crime

10   Victim Rights Act here, or at least an identifiable victim,

11   have they been notified of these proceedings?

12          MR. ROOS:  Your Honor, the indictment alleges the

13   defendant defrauded his former employer, and the government's

14   in contact with that employer.

15          THE COURT:  All right.  Very good.

16          Mr. Miller, I guess one is any issues to discuss with

17   respect to the search of the electronic devices, or are we good

18   on that front until you see what is produced?

19          MR. MILLER:  Your Honor, I need to see what's being

20   produced.

21          We did send -- just so your Honor's aware, we sent a

22   Rule 16 and *Brady* demand to the government this morning.  And I

23   don't know if your Honor wanted me to quickly address the way

24   Mr. Roos described the indictment, but it is going to have

25   relevance with respect to motions that we intend to make in the

M6fWchaC

1    case.

2              THE COURT:  Sure.  Go ahead.

3              MR. MILLER:  So, your Honor, Mr. Roos had described

4    this as an insider trading case but then sort of said, Well,

5    it's really a wire fraud case.

6              As your Honor probably saw with respect to this

7    indictment, which I think the government characterized as a

8    speaking indictment but, I think, was about eight or nine pages

9    in length, including the statutory language, so I would hardly

10   classify it as speaking, and we intend to file a bill of

11   particulars, if necessary, the prosecution in this case has

12   essentially alleged insider trading, which is all over the wire

13   fraud indictment, even though there's no allegation sufficient

14   for insider trading.

15             As your Honor noted, the nonfungible tokens or digital

16   assets at issue are neither securities nor commodities, and

17   noticeably, they did not charge securities or commodities

18   fraud.  Furthermore, unlike what Mr. Roos just described, there

19   was no defrauding of OpenSea, as we'll describe in motions, and

20   so if there was no defrauding of OpenSea and maybe some

21   allegations, even though we would contest those, of any kind of

22   defrauding of counterparties, to whom no duty is owed, then

23   there's no wire fraud charge.

24             And lastly, to the extent that Mr. Chastain used any

25   information to decide who Mr. Chastain was going to feature on

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M6fWchaC

1    OpenSea's home page, that is not the confidential information

2    of OpenSea.  That is information from Mr. Chastain in his head.

3    So there's going to be in this case, your Honor -- and

4    obviously, there's other motions that we intend to file,

5    including with respect to the money-laundering count, which is

6    based on purported financial transactions, even though there

7    were no financial transactions.

8            So there are a number of legal issues in this case,

9    your Honor, including novel ones, that we intend to file.

10   Noticeably, the U.S. Attorney's Office has made much of this

11   indictment.  We, of course, noted with interest that what's not

12   present in this indictment is the amount in controversy, which

13   is $65,000.  So interestingly, the big splash that the Southern

14   District has made with this indictment relates to products that

15   are neither securities nor commodities; that there's no wire

16   fraud; there's certainly no insider trading as specified all

17   over the indictment; and this involved $65,000.

18           So we have several motions that we intend to file just

19   on a legal basis, without having received any of the discovery,

20   and obviously, we intend to review that.  And to the extent

21   that there are suppression motions, we will file those as well.

22           Thank you, your Honor.

23           THE COURT:  All right.  To the extent that you can

24   predict what those motions would be, aside from a motion to

25   dismiss, which you sort of previewed, and the possibility of a

M6fWchaC

1  motion to suppress, anything else that you would mention, and a

2  motion for bill of particulars?

3        MR. MILLER:  Yeah.  As my colleague also appropriately

4  noted, we intend to, down the road, make Rule 17(c) motions and

5  serve subpoenas as necessary.

6        THE COURT:  All right.  Let me mention a couple

7  things.

8        First, I would just remind defense counsel of local

9  Rule 16.1.  With respect to any motion for a bill of

10  particulars, it sets forth certain requirements that must be

11  met -- in particular, that you have to confer in good faith

12  with counsel for the government before making any such motion.

13  And that's in the hopes that that meeting and conferring would

14  obviate the need for such motion practice.  So make sure you

15  adhere to that.

16        Second, I would just urge you to distinguish -- there

17  may well be valid arguments as a matter of law to be made with

18  respect to a motion to dismiss, but to distinguish what are

19  matters of law from matters of fact.  It may well be that you

20  have some very good arguments to make to a jury in this case,

21  but if it's a matter of factual issue for a jury to decide,

22  that's what a trial is for and not what a motion is for.  So I

23  would ask you to take that admonition under advisement and only

24  file a motion if you think I can grant it.  Don't file a motion

25  if it's clearly a factual issue for the jury to decide and not

M6fWchaC

1    for me.

2              I'm intimating no view.  I don't know enough about the

3    facts here, let alone the law, to say that that's what it is,

4    but just hearing what you were saying raises that red flag, I

5    guess.

6              MR. MILLER:  Understood, your Honor.

7              THE COURT:  All right.

8              My question for you, I don't think you have had the

9    pleasure of appearing before me before -- maybe you have, but

10   in any event, my practice is to set a deadline for the filing

11   of motions.  I wouldn't think 17(c) motions are in that

12   category just yet, although obviously if you think there's a

13   motion to be brought on that score, you can bring it.  My

14   question for you is how much time you would need to review the

15   discovery before deciding and then preparing any motions that

16   you would wish to bring.

17             MR. MILLER:  Your Honor, given that there may be a

18   substantial amount of electronic discovery that's involved, and

19   obviously we would be bringing motions to dismiss, and to the

20   extent that motions to suppress are necessary -- and I imagine

21   it probably would be -- we would request, if possible, motions

22   be set for September, since we're going to be getting the

23   discovery over the next couple of weeks, and obviously we're

24   into the summer.

25             THE COURT:  All right.  Can I float the following

M6fWchaC

thought, just thinking out loud.  I don't generally love

piecemeal motion practice, but does it make sense to stage it

here, and to the extent that you don't need to see the

discovery to bring a motion to dismiss, or at least I wouldn't

think, because again, that has to focus on issues of law and

not issues of fact, does it make sense to set an earlier

deadline for motion to dismiss and I can begin working on that

while you're reviewing discovery and preparing any

discovery-related motions that you might have?  Does that make

sense?

          MR. MILLER:  We can certainly do that, your Honor.

          Given the precedential nature of some of these motions

I would think we'll be making -- and I understand your Honor's

admonitions with respect to questions of fact, and we have no

intention to put motions that are factual-based before your

Honor, but -- at least with respect to motions to dismiss.

Given the fact, though, that there are a lot of novel issues

that are involved here, could we nevertheless stage a motion

the dismiss perhaps in August to give us enough time?  So to

the extent that it's a month and a half or two months to file

full motions to dismiss.

          THE COURT:  All right.

          Mr. Roos, anything you want to say on that front?  Do

you agree with staging it in that way?  It's not a large gap in

time, but it does at least mean that I can get started on a

M6fWchaC

| | |
|---|---|
| 1 | motion to dismiss before we're addressing the motions to |
| 2 | suppress-type issues. |
| 3 | MR. ROOS:  I don't think it really matters to us. |
| 4 | We'll do whatever your Honor wants. |
| 5 | THE COURT:  All right.  I think I will do that.  And |
| 6 | set a deadline for the filing of any motion to dismiss, give |
| 7 | the defendant until August 19. |
| 8 | Does that work, Mr. Miller? |
| 9 | MR. MILLER:  That's good, your Honor. |
| 10 | THE COURT:  And the government two weeks to respond. |
| 11 | Does that work? |
| 12 | MR. ROOS:  I'm sure it's fine.  We're just trying to |
| 13 | figure out what date that is. |
| 14 | THE COURT:  September 2, so right before Labor Day |
| 15 | weekend. |
| 16 | Yes? |
| 17 | MR. ROOS:  It's fine.  We'll figure it out. |
| 18 | THE COURT:  All right.  In light of the intervening |
| 19 | Labor Day weekend, I'll give the defendant until September 12 |
| 20 | to file any reply; that is, first on the motion to dismiss, and |
| 21 | then to ensure that you have a little bit of time after the |
| 22 | reply before filing any motions to suppress, I'll set a |
| 23 | deadline for any such motions or evidence-based motions, really |
| 24 | any other motion aside from the motion to dismiss, I'll give |
| 25 | the defense until September 30; the government until October 14 |

M6fWchaC

1    to file any opposition, and then October 21 will be the reply.

2              I'm going to have you back -- I think in this case I

3    will actually deviate from my usual practice and have you back

4    after all of those motions are fully briefed, so sometime in

5    October, with the caveat that while I don't have oral argument

6    very often, this may be a case that lends itself to oral

7    argument, at least on the motions to dismiss.  I'll look at the

8    briefs when they come in.  If I decide it would be helpful,

9    then I may order it.  Bottom line is don't worry about it until

10   you see an order, but just fair warning that it may be coming.

11             I will have you back, let's say, on Thursday, October

12   27 at 3:30 in the afternoon.  Unless and until I say otherwise,

13   assume that's in my regular courtroom, 1105 in 40 Foley, and

14   not in this courtroom.  And at that time, you certainly should

15   be prepared to discuss any motions that have been filed and in

16   particular whether we need to have a hearing to the extent that

17   I haven't already addressed that based on the briefs.  If I

18   want to have oral argument before that, I will alert you, but

19   the most important point is that at that conference, you should

20   anticipate that if there is going to be a trial, that I will be

21   setting a trial date, and you should understand that, barring

22   something like a pandemic, when I set a trial date, it is a

23   firm date.

24             So you should confer with one another with respect to

25   when you would want to have trial in this matter.  I will seek

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M6fWchaC

1    to honor your request, within reason, but with the

2    understanding that when I set a date, it is a firm date.

3              Any other items other than speedy trial?

4              Mr. Roos.

5              MR. ROOS:  Just going to be speedy trial.

6              THE COURT:  All right.  Is there an application on

7    that score?

8              MR. ROOS:  The government moves to exclude time, I

9    guess, to August 19, which is the date motions are due,

10   although I'm also happy to make the application to the next

11   conference, whatever your Honor's preference is.

12             THE COURT:  I think the next conference probably makes

13   more sense.

14             MR. ROOS:  The government moves to exclude time until

15   October 27, 2022, so the government can produce discovery, the

16   defense can review discovery, and the defense can make any

17   motions.

18             THE COURT:  Any objection?

19             MR. MILLER:  None, your Honor.

20             THE COURT:  Anything else from your end, Mr. Miller?

21             MR. MILLER:  No, your Honor.  Thank you.

22             THE COURT:  All right.

23             I will exclude time under the Speedy Trial Act between

24   today and October 27, 2022.  I find that the ends of justice

25   served by excluding that time outweigh the interests of the

M6fWchaC

1    defendant and the public in a speedy trial, to allow the

2    government to produce discovery but, more importantly, to allow

3    the defendant to prepare a motion to dismiss and to review the

4    discovery and prepare and file any other motions that he wishes

5    to bring.

6            With that, I wish you all a pleasant afternoon and

7    evening, and I will see you when I see you.

8            We're adjourned.  Thank you.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25