**Schulte Roth & Zabel** LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2441

Writer's E-mail Address
Gary.Stein@srz.com

September 19, 2022

**BY ECF**

Honorable Jesse M. Furman
United States District Judge
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    United States v. Nathaniel Chastain
                  22-cr-305 (JMF)

Dear Judge Furman:

      On behalf of the New York Council of Defense Lawyers ("NYCDL"), we respectfully seek leave to file this letter in further support of defendant's motion to dismiss the indictment. The government devoted a section of its opposition brief to NYCDL's *amicus curiae* submission (Opp. at 19-24), and we respectfully submit that this letter will assist the Court in resolving these issues. Mr. Chastain consents to our request for leave to file, and the government has stated that it has no objection.

      The government chides *amicus* for failing to provide a sufficiently clear definition of "property," Opp. at 22, but that gets things backwards. The government brought a wire fraud charge, and the government must now show that the indictment's allegations support it. It has failed to do so. The indictment identified no property of which OpenSea was deprived more specific than "information not generally known or available outside of OpenSea." Indictment ¶ 9; *see also id.* ¶ 7 ("Information about what NFT and [sic] was going to be a featured NFT was OpenSea's confidential business information because it was not publicly available until the featured NFT appeared on the OpenSea website homepage.").

      Conceding the indefensibility of this broad definition, the government disavows it. *See* Opp. at 20 ("[I]t is not a statement of the Government's legal theory."). The government now offers (at least) two new formulations—first, that information constitutes "property" whenever secrecy serves an "important business purpose" or "important business interest," Opp. at 16, and second, that confidential information (*i.e.*, "any information not generally known or available"

outside a company) constitutes "property" when a "fact-specific inquiry" reveals that the company "treated" the information as confidential, Opp. at 20.

These new formulations are no better than the one the government has abandoned. Confidential information in which a company has an "important business interest," or that is "treated by the company as confidential," are equally shapeless standards and make the same basic error of conflating confidentiality with property—contrary to *Carpenter* and the government's own explication of that decision elsewhere. Each of the government's new tests would equally encompass information about corporate malfeasance, gossip about the CEO's practices and habits, plans for a headquarters relocation, and far more besides. But neither the strength of the business' interest in secrecy, nor the strength of its confidentiality policies, can alone convert information into "property." It is, moreover, the government's own formulation (not NYCDL's, as the government now claims, Opp. at 22) that to constitute "property" for purposes of fraud, information must have "inherent market value" to its "owners" and be "closely related to traditional forms of property such as trade secrets and copyrighted news matter," United States Supplemental Letter Brief at 5, 7, *United States v. Blaszczak*, Nos. 18-2811, 18-2825, 18-2867, 18-2878 (2d Cir. June 4, 2021) (ECF No. 497). The government's minimizing of the Solicitor General's argument in *Blaszczak*—attempting to cabin that brief to cases involving government property—is incorrect. The government's brief in *Blaszczak* focused on what *Carpenter* means generally, not just on the facts of that case.

*Amicus*'s hypotheticals illustrate just how far the government's theory goes. Each hypothetical employee violated his or her duty to keep information confidential (deceiving his or her employer) and "misappropriated" that information by diverting it to non-work purposes. And each type of information is "property" under the government's various tests, as each employer "treated" the information as confidential, Opp. at 20, and had an "important business interest" in keeping the information secret, *id.* at 16. Each hypothetical employee thus committed property fraud under the government's theory.

Sensing the absurdity of that result, the government half-heartedly resists it. The government suggests, for example, that corporate whistleblowers who misappropriate confidential employer information have not engaged in wire fraud under *Dirks v. S.E.C.*, 463 U.S. 646 (1983), Opp. at 23. But that suggestion is directly contrary to the position the very same U.S. Attorney's Office took in *Blaszczak*, where the office argued that the "personal benefit" limitation of *Dirks*—an insider trading case brought under Title 15—does not apply when the government charges Title 18 property fraud under a *Carpenter* misappropriation theory. *See* Brief for the United States, at 93, *United States v. Blaszczak*, Nos. 18-2811, 18-2825, 18-2867, 18-2878 (June 7, 2019) (ECF No. 201) (deriding defense arguments for resting "on the incorrect premise that 'personal benefit' in the *Dirks* sense and knowledge thereof are elements of wire fraud or [Title] 18 securities fraud" when "they are not"). Hence, unless the government is prepared to abandon *another* argument it advanced in *Blaszczak*, its view of the law would indeed condemn the whistleblower scenario as wire fraud—even though the government now seems to concede that outcome is unwarranted.[1]

---

[1] Equally puzzling is the government's suggestion that in *amicus*'s hypothetical about an automobile executive, the executive did not act with specific intent to defraud because his use of confidential information for non-

The government essentially concedes that *amicus*'s other hypotheticals would constitute fraud under its conception of "property." Opp. at 23-24. For example, it agrees that an auto executive who buys a car before its product line is discontinued has defrauded his employer of property by "misappropriating" information about the employer's product plans. That information is "property," the government says, because the information would have "immense significance to the company, its investors, and its customers." Opp. at 24. Of course, the same is true for information about CEO habits, corporate relocations, and countless other internal plans and knowledge. The government thus does not seriously contest that its theory would—if adopted—expand the net of federal criminal law to capture all this conduct and more. Yet in each scenario, the employee's use of the information does not deprive the employer of its "property" in any recognizable sense of the term.

The government's focus on discussing hypotheticals and "imagine[d]" facts, Opp. at 10-11,16, 22-24, is itself highly revealing. If the government could assure the Court, as it customarily does, that the proof at trial in this case would show some species of property that put the disputed legal question to rest, it would presumably do so. That it has not—either in the indictment or in its opposition—speaks volumes.

Finally, the government mischaracterizes the Second Circuit's past treatment of *Carpenter*. It attempts to reframe *United States v. Grossman*, 843 F.2d 78 (1988), as being about "a business's reputation," Opp. at 21, but *Grossman* is more specific. That case was about a law firm. One of the services a law firm sells to its clients is confidentiality. Because clients pay lawyers to keep client information secret—such that keeping client confidences is part of a firm's "stock in trade," *Carpenter v. United States*, 484 U.S. 19, 26 (1987)—confidential client information is analogous to traditional forms of property and has inherent value to a law firm. As for *United States v. Mahaffey*, 693 F.3d 113 (2d Cir. 2012), *amicus*'s point was *not* that this information constitutes property because "it could be misused for a profit." Opp. at 21. That information was "property" because traders were misappropriating it to facilitate front-running ahead of their broker-employer—causing actual monetary losses to the brokerage or its direct clients. Indeed, as *amicus* pointed out, predicating a wire fraud prosecution on an undisclosed breach of fiduciary duty that yielded a profit for the employee—without causing a loss to the employer—would be directly contrary to Second Circuit precedent. *See* Amicus Br. at 9-10. That is what the government impermissibly seeks to do here.

In short, sharing (or using) a secret is not the same thing as conveying (or stealing) property. For information to constitute "property," more is required than expectations of confidentiality—even expectations backed by an "important business purpose," enforceable employment policies, or binding employment contracts. Opp. at 16. By ignoring this fundamental distinction and instead offering a parade of legal tests that eviscerate it, the government has confirmed the basic deficiency at the heart of its case. The indictment should be dismissed.

---

work purposes led to the purchase of only "a single car." Opp. at 23. Presumably the government's legal theory in this case does not depend on the involvement of multiple NFTs rather than a "single" one.

Honorable Jesse M. Furman 4
September 19, 2022

>Respectfully submitted,
>
>/s/ *Gary Stein*
>Gary Stein
>SCHULTE ROTH & ZABEL LLP
>919 Third Avenue
>New York, New York 10022
>gary.stein@srz.com
>Telephone: (212)-756-2000
>
>James M. Burnham
>Harry S. Graver
>S. Matthew Krsacok
>JONES DAY
>51 Louisiana Avenue, N.W.
>Washington, D.C. 20001
>jburnham@jonesday.com
>Telephone: (202) 879-5429
>
>Christine H. Chung
>CHRISTINE H. CHUNG PLLC
>14 Murray Steet, No. 236
>New York, New York 10007
>Telephone: (917) 685-0423
>christine@thechunglawoffice.com
>
>*Counsel for Amicus Curiae New York Council of Defense Lawyers*

cc: AUSA Nicolas Roos
    AUSA Thomas Burnett
    David I. Miller, Esq.