UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL CHASTAIN,<br><br>    Defendant. | No. 22-cr-305 (JMF)<br><br>September 30, 2022 |

**MEMORANDUM IN SUPPORT OF NATHANIEL CHASTAIN'S
MOTION TO STRIKE IMPERMISSIBLE SURPLUSAGE FROM THE INDICTMENT**

David I. Miller
Gregory W. Kehoe
Charles J. Berk
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

*Counsel for Defendant
Nathaniel Chastain*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.      The Government Seeks to Minimize the Term "Insider Trading" Because It Realizes There Is No Viable Insider Trading Charge ......................................... 3

    II.     The Indictment's References to "Insider Trading" Constitute Impermissible Surplusage ................................................................................................ 4

CONCLUSION................................................................................................................................ 7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Carey*,
  152 F. Supp. 2d 415 (S.D.N.Y. 2001)......................................................................................6, 7

*United States v. Chestman*,
  947 F.2d 551 (2d Cir. 1991)........................................................................................................4

*United States v. Chow*,
  993 F.3d 125 (2d Cir. 2021).......................................................................................................4

*United States v. Falcone*,
  257 F.3d 226 (2d Cir. 2001).......................................................................................................4

*United States v. Johnson*,
  93-CR-39A, 1994 WL 805243 (W.D.N.Y. Aug. 9, 1994) ........................................................7

*United States v. Kassir*,
  04-CR-356 (JFK), 2009 WL 995139 (S.D.N.Y. Apr. 9, 2009) .................................................7

*United States v. Libera*,
  989 F.2d 596 (2d Cir. 1993).......................................................................................................4

*United States v. O'Hagan*,
  521 U.S. 642 (1997)...................................................................................................................4

*United States v. Poindexter*,
  725 F. Supp. 13 (D.D.C. 1989)..................................................................................................5

*United States v. Scarpa*,
  913 F.2d 993 (2d Cir. 1990).......................................................................................................5

*United States v. Singhal*,
  876 F. Supp. 2d 82 (D.D.C. 2012) .............................................................................................6

**Statutes**

15 U.S.C. § 78ff..................................................................................................................................3

18 U.S.C. § 1341................................................................................................................................6

18 U.S.C. § 1348................................................................................................................................3

Securities and Exchange Act of 1934 § 10(b) ...................................................................................3

**Other Authorities**

Fed. R. Crim. P. 7 ........................................................................................................................1, 4

Fed. R. Crim. P. 12 ............................................................................................................................1

U.S. Sentencing Guidelines Manual § 2B1.4 (2021) ................................................................3

Business Insider, *What we know about the insider trading lawsuit filed against Bed Bath & Beyond just before the death of its CFO*, September 8, 2022, https://www.businessinsider.com/bed-bath-and-beyond-cfo-gustavo-arnal-insider-trading-lawsuit-2022-9 ................................................................................................5

CNBC, *Former OpenSea employee charged in first-ever NFT insider trading case*, June 1, 2022, https://www.cnbc.com/2022/06/01/former-opensea-employee-charged-in-first-ever-nft-insider-trading-case.html .............................................2, 5

CNBC, *The Insider Trades That Brought Down Raj Rajaratnam,* March 7, 2012, https://www.cnbc.com/2012/03/07/The-Insider-Trades-That-Brought-Down-Raj-Rajaratnam.html ..............................................................................................................5

Department of Justice, *Former Employee Of NFT Marketplace Charged In First Ever Digital Asset Insider Trading Scheme*, June 1, 2022, https://www.justice.gov/usao-sdny/pr/former-employee-nft-marketplace-charged-first-ever-digital-asset-insider-trading-scheme ..............................................................2

Financial Times, *Chinese tech executives pay fines after SEC insider trading charges*, September 22, 2022, https://www.ft.com/content/95dee8d8-8219-460d-ad7e-f1a36b05ff1b..........................................................................................................5

NBC News, *Former OpenSea employee arrested, charged with NFT insider trading*, June 1, 2022, https://www.nbcnews.com/tech/internet/opensea-nft-nate-chastain-arrest-charged-insider-trading-rcna31489 .......................................................2, 5

USA Today, *Cohen, SAC Capital reach $135M insider-trading settlement*, December 1, 2016, https://www.usatoday.com/story/money/2016/12/01/cohen-sac-capital-reach-135m-insider-trading-settlement/94726306/................................................................................5

Defendant Nathaniel Chastain (the "Defendant" or "Mr. Chastain") respectfully moves this Court, pursuant to Rules 7(d) and 12 of the Federal Rules of Criminal Procedure, to strike surplusage from the Indictment—specifically, "insider trading"—and preclude any reference to it at a trial in this matter.

## PRELIMINARY STATEMENT

In recent statements in this case, the government has taken a position that "insider trading," as referenced in the Indictment (ECF No. 1), is mere "nomenclature" and thus a term that is unnecessary to support the government's charges. For the reasons stated below, in the event the Court does not to dismiss the Indictment in its entirety—though, respectfully, it should—given the government's new position, the Court should strike references to "insider trading" from the Indictment as impermissible surplusage and prohibit the government from making any reference to the term at trial.

As discussed at length in the Defendant's Motion to Dismiss (ECF No. 19), the government has charged the Defendant with a wire fraud theory of insider trading, even though, as the government has conceded, a key element of that offense—securities or commodities trading— does not exist here. As described herein, the term "insider trading" is inflammatory, unduly prejudicial, and irrelevant to the crimes charged given the government's new position that "insider trading" is mere "nomenclature" in this case. The term's presence in the Indictment—and any reference to it at a trial—serves no legitimate prosecutorial purpose and is simply a means for the government to increase media attention and inflame the jury in this first-of-its-kind case in the digital asset space. Accordingly, this motion should be granted in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant respectfully refers the Court to the factual and procedural background section set forth in the Defendant's Memorandum of Law in Support of his Motion to Dismiss the

Indictment ("Motion to Dismiss Opening Br.") (ECF. No. 19), dated August 19, 2022, which is incorporated by reference.

For this Motion, the following facts are of particular import. First, the Defendant notes that the first line of the Indictment (ECF No. 1) states that "[t]his case concerns insider trading in Non-Fungible Tokens." Indictment ¶ 1. Further, the section heading preceding the six paragraphs that specifically detail the Defendant's alleged conduct reads, "Insider Trading of Featured NFTs." Indictment ¶ 10. The government also has unquestionably postured this case as a wire fraud based on insider trading. The U.S. Attorney's first press release was titled, "Former Employee of NFT Marketplace Charged in First Ever Digital Asset Insider Trading Scheme,"[1] and the U.S. Attorney referred to the case as "insider trading … [on] the blockchain," *id.*, which unsurprisingly generated significant media attention repeating the "insider trading" label.[2]

Finally, during a June 15, 2022 conference before this Court, the following colloquy ensued:

> **The Court**: I think when most people think of the term "insider trading," they think of securities fraud, but just to be clear, this charge is not a securities fraud charge; it's a conventional wire fraud charge. That is to say, the government's theory is not to say that the items here were securities. Is that correct?
>
> **AUSA Roos**: That's right. We're not alleging securities fraud. The government's theory … [is] premised on the Supreme Court's decision in [*Carpenter v. United States*, 484 U.S. 19 (1987)], **which, I think, describes insider trading conduct** as a wire fraud."[3]

---

[1] *See* Department of Justice, Former Employee Of NFT Marketplace Charged In First Ever Digital Asset Insider Trading Scheme, June 1, 2022, https://www.justice.gov/usao-sdny/pr/former-employee-nft-marketplace-charged-first-ever-digital-asset-insider-trading-scheme.

[2] *See, e.g.*, CNBC, Former OpenSea employee charged in first-ever NFT insider trading case, June 1, 2022, https://www.cnbc.com/2022/06/01/former-opensea-employee-charged-in-first-ever-nft-insider-trading-case.html; NBC News, Former OpenSea employee arrested, charged with NFT insider trading, June 1, 2022, https://www.nbcnews.com/tech/internet/opensea-nft-nate-chastain-arrest-charged-insider-trading-rcna31489.

[3] June 15, 2022 Pre-Trial Conference Tr. at 3:19 – 4:6 (emphasis added).

**ARGUMENT**

I.  **The Government Seeks to Minimize the Term "Insider Trading" Because It Realizes There Is No Viable Insider Trading Charge**

Having made public declarations in the Indictment, in media statements, and before this Court that the Defendant committed "insider trading," the government in its Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opp. Br.") (ECF No. 23) attempts to minimize the significance of the prejudicial term, arguing that the Indictment's use of the descriptor "insider trading" is "just a quibble regarding the nomenclature of this case," Opp. Br. at 6, and that the term should not be "taken literally," but instead considered "useful shorthand." *Id.* at 11-12. Perhaps sensing the weakness of its overall position, in the Opposition Brief, the government itself raised the possibility that the Defendant could move to strike the term "insider trading" in the Indictment as surplusage. *See id.* at 12.

As discussed in the Motion to Dismiss, the term "insider trading" is not mere "nomenclature." *See* Motion to Dismiss Opening Br. at 6. It refers to specific behavior in the securities or commodities space such that "Insider Trading" contains its own section in the U.S. Sentencing Guidelines and carries heavy criminal and civil penalties. *See* Reply Br. in Support of Defendant's Motion to Dismiss ("Reply Br.") (ECF No. 25) at 5 (citing U.S. SENTENCING GUIDELINES MANUAL § 2B1.4 (2021); 15 U.S.C § 78ff; 18 U.S.C. § 1348).

Moreover, the misappropriation of confidential business information as a basis for a wire fraud theory of insider trading is inextricably related to the misappropriation theory of insider trading, devised from judicial interpretations of § 10(b) of the Securities and Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. *See* Motion to Dismiss Opening Br. at 8. A violation of the misappropriation theory of insider trading occurs when any person "misappropriates confidential information *for securities trading purposes*, in breach of a duty

3

owed to the source of the information." *United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (noting that the misappropriation theory grounds liability in "a fiduciary-turned-trader's deception of those who entrusted him with access to confidential information"). In other words, insider trading—and the misappropriation theory—applies only where trades are *"in connection with" securities or commodities*. *Id.* (emphasis added). Such trading is an ***element of the offense***. As noted in the Motion to Dismiss, the Second Circuit relies on these fundamental principles of insider trading.[4] Glaringly, not a single securities trade or commodities trade is alleged here.

Notably, however, if the Court is inclined to agree with the government's characterization of wire fraud and deny the Defendant's Motion to Dismiss—which, respectfully, it should not—then the government has walked right into the instant motion to strike.

## II. The Indictment's References to "Insider Trading" Constitute Impermissible Surplusage

While the Defendant believes that the wire fraud count should be dismissed in its entirety, *see* Motion to Dismiss Opening Br. at 6-19, if the Court declines to do so, it should—at a minimum—strike any reference to "insider trading" in the Indictment and preclude the government from referencing "insider trading" at trial.

Upon a defendant's motion, "the court may strike surplusage from [an] indictment." Fed. R. Crim. P. 7(d). It is well settled that motions to strike such surplusage will be granted where "the challenged allegations are not relevant to the crime charged and are inflammatory and

---

[4] *See* Motion to Dismiss Opening Br. at 8-9 (citing *United States v. Chow,* 993 F.3d 125, 137 (2d Cir. 2021) ("The misappropriation theory is thus designed to protec[t] the integrity of the securities markets …"); *United States v. Falcone*, 257 F.3d 226, 232 (2d Cir. 2001) ("[T]he misappropriation theory holds that a section 10(b) violation occurs when an individual 'misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information.'" (internal citations omitted)); *United States v. Libera,* 989 F.2d 596, 599 (2d Cir. 1993) (noting that misappropriation theory "prohibits trading in securities based on material, nonpublic information…"); *United States v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991) (noting that "a fraud-on-the-source theory of liability extends the focus of Rule 10b-5")).

4

prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (internal quotations omitted).

Insider trading enforcement is a hot-button topic in the United States, as high-profile trials and investigations are regularly presented as front page news.[5] Of course, the government is aware of this and its provocative use of the phrase "insider trading" has unsurprisingly garnered significant media attention here.[6] But as discussed in Defendant's Motion to Dismiss and *supra* at 2, the government has conceded that the allegations in this case bear no nexus to the financial markets. *See* Motion to Dismiss Opening Br. at 5-9; Reply Br. at 2-6. Indeed, the Defendant is not charged with any violation of U.S. securities or commodities laws. *See generally* Indictment.

Consequently, even if Count One is not dismissed, no insider trading exists here. Thus, the term "insider trading" is irrelevant to the government's charges and its presence is likely to suggest to a jury that Mr. Chastain has committed a criminal offense that has not actually been alleged. *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (striking surplusage that "will lead the jury to speculate that [the] defendant was guilty of or responsible for actions in addition to those charged in the indictment."). Indeed, the government's references to "insider trading"—an offense that is highly scrutinized both in courts and in the public arena—in the absence of securities or commodities trades is extremely inflammatory and unduly prejudicial to the Defendant. To this end, given the government's statement that "insider trading" is mere

---

[5] *See, e.g.,* Financial Times, *Chinese tech executives pay fines after SEC insider trading charges*, September 22, 2022, https://www.ft.com/content/95dee8d8-8219-460d-ad7e-f1a36b05ff1b; Business Insider, *What we know about the insider trading lawsuit filed against Bed Bath & Beyond just before the death of its CFO*, September 8, 2022, https://www.businessinsider.com/bed-bath-and-beyond-cfo-gustavo-arnal-insider-trading-lawsuit-2022-9; USA Today, *Cohen, SAC Capital reach $135M insider-trading settlement*, December 1, 2016, https://www.usatoday.com/story/money/2016/12/01/cohen-sac-capital-reach-135m-insider-trading-settlement/94726306/; CNBC, *The Insider Trades That Brought Down Raj Rajaratnam,* March 7, 2012, https://www.cnbc.com/2012/03/07/The-Insider-Trades-That-Brought-Down-Raj-Rajaratnam.html;

[6] *See* n.2, *supra*.

5

"nomenclature," there is no reason for "insider trading" to be referenced in the Indictment (or at trial) other than to achieve the government's aforementioned media objectives or to skew a jury's perception of the Defendant. *United States v. Carey*, 152 F. Supp. 2d 415, 430 (S.D.N.Y. 2001) (finding that "[t]here is no need for inflammatory phrases" in an Indictment and holding that a description of an alleged scheme was "irrelevant and prejudicial, and therefore should be stricken or modified.").

The Court's decision in *United States v. Singhal*, 876 F. Supp. 2d 82 (D.D.C. 2012) is instructive. In *Singhal*, the defendants were charged with mail fraud pursuant to 18 U.S.C. § 1341 and were alleged to have engaged in a scheme to defraud the United States Securities and Exchange Commission, investors, and others through a series of undisclosed and disguised securities transactions. *See id.* at 88. The indictment in that case mentioned the phrase "insider trading" numerous times, *see id.* at 102, but as the court noted, "the Indictment reads like a typical U.S. securities fraud case, yet it does not expressly charge any violations of U.S. securities laws, including failure to report related party transactions ***or insider trading***." *Id.* at 88 (emphasis added). In striking the phrase "insider trading" from the indictment, the court reasoned that "[t]hese references are highly prejudicial to defendants because they reference a current hot topic in U.S. law that the defendants are not even charged with in this case." *Id.* at 103. Moreover, the court pointed out that allowing the phrase to remain in the indictment could "lead the jury to [be] confuse[d]" given the lack of securities fraud charges in the case. The same holds true here. Just as in *Singhal*, no securities fraud charges have been alleged despite the government's repeated use of the "insider trading" moniker. *See* Indictment ¶¶ 1, 10. In fact, this case stands even further away from "insider trading" than *Singhal* in that the subject matter in *Singhal*—unlike the instant case—did implicate securities trades.

To be sure, *Singhal* is not unique in its reasoning.  For example, in *United States v. Kassir*, the court struck unnecessary language in an indictment due to similar concerns espoused by the court in *Singhal*.  Namely, that "the language could impermissibly expand the specific charges returned by the grand jury."  *United States v. Kassir*, 04-CR-356 (JFK), 2009 WL 995139, at *4 (S.D.N.Y. Apr. 9, 2009).  Other indictments bearing language that is inflammatory and unduly prejudicial have met the same fate.  *See, e.g., Carey,* 152 F. Supp. at 430 (striking "any reference to organized crime" and striking references to a scheme as "unlawful" due to their "unnecessary," inflammatory and prejudicial nature); *United States v. Johnson,* 93-CR-39A, 1994 WL 805243, at *6 (W.D.N.Y. Aug. 9, 1994) (striking an indictment's use of the phrase "problems" where it was "prejudicial and irrelevant to the charges in the Indictment.").

Here, if the Court does not dismiss the Indictment, the Indictment's inclusion of clearly irrelevant language that serves only to inflame the jury, confuse the issues, and blur the elements necessary for conviction, should be adjudged prejudicial surplusage.  Any reference to "insider trading" should be stricken from the Indictment and no reference of it should be made at a trial.

## CONCLUSION

For the aforementioned reasons, Defendant respectfully submits that should the Court decline to dismiss the Indictment in its entirety, the Court should grant the instant motion to strike any reference to "insider trading" from the Indictment and preclude the government from referencing "insider trading" at trial.

| | |
|---|---|
| Dated: New York, New York<br>September 30, 2022 | Respectfully submitted,<br>GREENBERG TRAURIG, LLP<br><br>By: */s/ David I. Miller*<br>David I. Miller<br>Gregory W. Kehoe<br>Charles J. Berk<br>One Vanderbilt Avenue<br>New York, NY 10017<br>(t) (212) 801-9200; (f) (212) 801-6400 |