UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL CHASTAIN,<br><br>          Defendant. | No. 22-cr-305 (JMF)<br><br>September 30, 2022 |

**MEMORANDUM IN SUPPORT OF NATHANIEL CHASTAIN'S
MOTION FOR EARLY RETURN OF A RULE 17(c) SUBPOENA**

David I. Miller
Gregory W. Kehoe
Charles J. Berk
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

*Counsel for Defendant
Nathaniel Chastain*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................................2

LEGAL STANDARD....................................................................................................................5

ARGUMENT..................................................................................................................................7

    I.     The Government's Discovery Did Not Include
         All Relevant, Admissible Evidence from OpenSea..................................................7

    II.    The Proposed Subpoena Satisfies the *Nixon* Standard For Early Return ..............10

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bowman Dairy Co. v. United States*,
  341 U.S. 214 (1951) ...................................................................................................................7

*Brady v. Maryland*
  373 U.S. 83 (1963) .....................................................................................................................3

*United States v. Rajaratnam,*
  753 F. Supp. 2d 317 (S.D.N.Y. 2011) ........................................................................................6

*U.S. v. Kaufman*,
  No. 13 Cr. 411–02 (JMF), 2014 WL 2048198 (S.D.N.Y. May 19, 2014) ................................11

*United States v. Bergstein*,
  No. 16 Cr. 746 (PKC), 2018 WL 9539846 (S.D.N.Y. Jan. 24, 2018) ..................................6, 10

*United States v. Binday*,
  No. 12-cr-152 (CM), 2013 WL 4494659 (S.D.N.Y. Aug. 15, 2013) .........................................6

*United States v. Donziger*,
  No. 19-CR-561 (LAP), 2021 WL 1865376 (S.D.N.Y. May 9, 2021) .......................................12

*United States v. Nachamie*,
  91 F. Supp 2d 552 (S.D.N.Y. 2000) ...........................................................................................6

*United States v. Nixon*,
  418 U.S. 683 (1974) ..........................................................................................................1, 5, 10

*United States v. Nosal*,
  291 F.R.D. 403 (N.D. Cal. 2013) ................................................................................................6

*United States v. Stein*,
  488 F. Supp. 2d 350 (S.D.N.Y. 2007) ........................................................................................5

*United States v. Tucker*,
  249 F.R.D. 58 (S.D.N.Y. 2008) ..............................................................................................1, 6

*United States v. Weigand*,
  520 F. Supp. 3d 609 (S.D.N.Y. 2021) ..............................................................................1, 6, 12

**Statutes**

18 U.S.C. § 1343 ............................................................................................................................2

18 U.S.C. § 1956 ............................................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26 ...........................................................................................................................7

Fed. R. Crim. P. 16 .................................................................................................................7

Fed. R. Crim. P. 17 ........................................................................................................... *passim*

U.S. CONST. amend. VI .......................................................................................................5

OpenSea, *Our commitment to the OpenSea community*, September 15, 2021,
    https://opensea.io/blog/announcements/employee-information-use-at-opensea/ ....................11

Pursuant to Federal Rule of Criminal Procedure 17 ("Rule 17"), Defendant Nathaniel Chastain ("Defendant" or "Mr. Chastain"), by and through undersigned counsel, respectfully requests the issuance of a Rule 17(c) subpoena directed to Ozone Networks Inc., d/b/a OpenSea ("OpenSea"), to produce documents described in the subpoena rider attached as Exhibit A (the "Proposed Subpoena") on or before November 15, 2022.

## PRELIMINARY STATEMENT

By this motion, the Defendant seeks to issue the Proposed Subpoena, which seeks material, admissible, and narrowly-tailored information from OpenSea. As described herein, the Proposed Subpoena not only seeks highly-relevant information, it satisfies the requirements set forth in *United States v. Nixon*, 418 U.S. 683 (1974)—even though some courts in this district have opined that *Nixon*'s stringent standard should not apply to non-party subpoenas issued by a defendant in a criminal case. *See, e.g., United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (finding that the *Nixon* standard is inappropriate where a defendant requests non-party production of documents material to the defense on the eve of trial, and noting that "[a] defendant in such a situation need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond."); *United States v. Weigand*, 520 F. Supp. 3d 609, 612-13 (S.D.N.Y. 2021) (following *Tucker* standard for Rule 17(c) subpoena issued by defendant to non-party).

Specifically, the Proposed Subpoena seeks documents directly related to key allegations made in the Indictment, including whether the allegedly misappropriated information in this matter constituted OpenSea's "property" and whether OpenSea was aware of the Defendant's alleged activity. Moreover, the Proposed Subpoena's requests are tailored both by date and by subject

matter, as they seek narrow categories of documents created in a limited timeframe. Rule 17(c) does not require more. Accordingly, the Court should grant the Rule 17(c) subpoena request.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2022, a grand jury in the Southern District of New York returned Indictment 22 Cr. 305, charging the Defendant with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Each count is premised on the Defendant's alleged "insider trading" of digital artwork. Count One alleges that the Defendant committed "insider trading" wire fraud by misappropriating OpenSea's purported confidential business information regarding which NFTs were going to be featured on its homepage; specifically, by using that information to purchase NFTs before they were featured and to sell the NFTs after they were featured. Count Two alleges that the Defendant committed money laundering by conducting a "financial transaction" involving the proceeds of a specified unlawful activity, knowing that the transaction was designed in whole or in part "to conceal or disguise" a listed attribute of the proceeds of unlawful activity generated through the allegations in Count One.

At a June 15, 2022 pre-trial conference, the Court ordered the government to begin producing discovery to Defendant within two weeks. On June 28, 2022, the government made its first document production, which included, *inter alia*, approximately 3,100 pages of records produced by OpenSea as well as the cover letters OpenSea submitted accompanying those documents. Generally, the government's document requests to OpenSea, which precipitated OpenSea's document productions, covered the following categories:

1. *Telephone numbers, email addresses, application usernames [and other similar account information] associated with Nate Chastain.*
2. *NFTs ... featured on the front page of OpenSea since January 1, 2021.*
3. *Records relating to Nate Chastain's selling, buying, or trading of NFTs or other items on OpenSea.*

4. *All information about any crypto wallets used by Nate Chastain.*
5. *Communications with or about Nate Chastain concerning NFTs ... being featured on the front page of OpenSea.*
6. *Communications with or about Nate Chastain selling, buying, or trading items on OpenSea based on non-public information.*
7. *[OpenSea] policies relating to (a) deceptive, manipulative, illegal, or unauthorized selling, buying, or trading; (b) employees selling, buying, or trading on the OpenSea platform; and (c) employees use of confidential information obtained in the course of their employment.*
8. *For all wallets and/or OpenSea accounts that OpenSea has identified as potentially belonging to or used by Nate Chastain ... device information, access logs, and IP records.*
9. *Price data over time, including listed price and sell price, for all NFTs for all artists that were featured on OpenSea's front page.*
10. *Training documents, policies, and emails ... shared with Nate Chastain about OpenSea's (a) confidentiality policy or rules, and/or (b) terms prohibiting certain types of trading, including manipulative trading.*
11. *Communications and documents concerning the formation of the featured NFT part of the front page of the OpenSea website, and the decision to put Nate Chastain in charge of selecting featured NFTs.*
12. *Communications involving Nate Chastain about wash trading.*

On July 11, 2022, the government delivered a second document production, which included, *inter alia*, a cover letter containing excerpts from notes and/or reports of interviews conducted by the United States Attorney's Office and Federal Bureau of Investigation, and notes/reports from attorney proffers made by counsel for OpenSea. The excerpts the government provided contained exculpatory material pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny (although, curiously, the government does not concede that the information is exculpatory). Also relevant, in a July 26, 2022 discovery response letter to the defense, the government noted as to one of the Defendant's discovery requests that "we produced all the materials to you that were produced by OpenSea."

From the government's discovery, it is clear that there is highly-relevant information that the government did not request from OpenSea or has not been provided to the Defendant, such as:

3

1. Information concerning or discussing Mr. Chastain (whether among OpenSea employees or members of its Board of Directors) that does not specifically reference NFT trading or "featured" NFTs, but may nonetheless indicate, *inter alia*, whether OpenSea considered the information at issue to be "property";
2. Information discussing or referencing OpenSea's employee policies, OpenSea's confidentiality policies, or any decisions and/or reasoning for implementing any new policies regarding employee buying, selling, and/or trading of NFTs following Mr. Chastain's departure from the company;
3. Materials or information shared by OpenSea with the United States Attorney's Office or Federal Bureau of Investigation, which is likely to buttress the exculpatory selections of interview notes and reports produced in the government's discovery to this point.

These categories of documents have bearing on the key issues in this case, including whether OpenSea was defrauded and deprived of its "property" by the Defendant's alleged actions. Instead of collecting and reviewing the full record, however, the government requested from OpenSea documents responsive to specific searches that were likely to produce only the type of evidence that would fit its theory of liability, devoid of context. The primary purpose of the Proposed Subpoena is to fill in this missing context, including information that is material to the defense.

To this end, the Proposed Subpoena requests the following:

1. The following documents and/or communications concerning, discussing, and/or referencing Nathaniel Chastain:
   a. documents and/or communications in which Devin Finzer and/or Alex Atallah are participants and Nathaniel Chastain is discussed and/or referenced from September 14, 2021 through June 1, 2022;[1]
   b. documents and/or communications over the Slack messaging application (directly or in group chats) in which Nathaniel Chastain is a participant from April 1, 2021 through September 15, 2022. This request includes but is not limited to the Slack messaging groups entitled "#featured-work," and "#cool-nft-finds";[2]
   c. documents and/or communications in which Nathaniel Chastain is discussed and/or referenced from September 14, 2021 through June 1, 2022;[3] and

---

[1] As part of Defendant's efforts to narrowly tailor the Proposed Subpoena's requests, this request has been limited to seek documents from the eve of the Defendant's departure from OpenSea through the date of indictment.

[2] As part of Defendant's efforts to narrowly tailor the Proposed Subpoena's requests, this request has been limited to seek documents from the time period in which the "featured artist" section was added to OpenSea's homepage through the date of Defendant's departure from OpenSea.

[3] *See* n. 1, *supra*.

    d.  documents, communications, notes, meeting minutes, or memoranda from Board meetings and/or sent or received by Board members concerning or discussing Nathaniel Chastain from September 14, 2021 to June 1, 2022.[4]

2. All documents and/or communications discussing and/or referencing OpenSea's employee policies, OpenSea's confidentiality policies, or any policy regarding employee buying, selling, and/or trading of NFTs.

3. All documents, presentations, or communications with, between, provided to, or shared with any U.S. government agency, including the U.S. Attorney's Office for the Southern District of New York.

The Proposed Subpoena's request(s) have been tailored to address precisely the aforementioned gaps in the government's discovery.

## LEGAL STANDARD

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. Rule 17(c) implements that guarantee, permitting a party to request the production in advance of trial of, among other things, "books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). *See also Nixon*, 418 U.S. at 698-99, 711 (observing that the "chief innovation [of Rule 17(c)] was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials").

According to *Nixon*, under Rule 17(c), a party seeking the pre-trial production of documents must demonstrate: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition." *Nixon*, 418 U.S. at 699-700 (footnote omitted) (internal quotation marks omitted); *see also United*

---

[4] *See* n. 1, *supra*.

*States v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007) ("The text of Rule 17(c) alone strongly suggests the conclusion that the subpoena should be enforced unless compliance would be unreasonable or oppressive."); Courts permit Rule 17 subpoenas when the requests are "reasonably targeted to ensure the production of material evidence." *Tucker*, 249 F.R.D. at 66. As explained in detail below, the subpoena sought here plainly meets the *Nixon* standard.

Moreover, as some courts in this District have recognized, there is a "real question . . . as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet" the *Nixon* standard. *United States v. Nachamie*, 91 F. Supp 2d 552, 562 (S.D.N.Y. 2000). Although we recognize that multiple courts in this District have applied *Nixon* in this context, *see, e.g., United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2018 WL 9539846, at *2 (S.D.N.Y. Jan. 24, 2018); *United States v. Binday,* No. 12-cr-152 (CM), 2013 WL 4494659, at *1 (S.D.N.Y. Aug. 15, 2013), and we believe the requested subpoena easily meets the *Nixon* standard, we respectfully preserve for appeal the argument that *Nixon* is not the correct standard for evaluating subpoenas served by a defendant on a third party. Instead, the proper standard is whether a subpoena is "(1) reasonable, construed using the general discovery notion of material to the defense; and (2) not unduly oppressive for the producing party to respond." *Nachamie*, 91 F. Supp. 2d at 563 (internal quotation marks omitted); *see Tucker*, 249 F.R.D. at 66; *Weigand*, 520 F. Supp. 3d at 615; *see also United States v. Nosal*, 291 F.R.D. 403, 409 (N.D. Cal. 2013) (applying *Nachamie* standard in assessing defendant's Rule 17(c) subpoena to third party).

This more lenient threshold for Rule 17 subpoenas served by defendants on third parties carries out the Rule's "purpose of establishing *a more liberal policy* for the production, inspection and use of materials at the trial," since Rule 17 was not intended "to exclude from the reach of process of the defendant any material that . . . could be used at the trial." *United States v.*

6

*Rajaratnam,* 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)). "It is extraordinarily difficult for a defendant, who has limited ability to investigate, to know enough about the discovery he is seeking such that he can comply with the *Nixon* requirements." *Id.* (citation omitted). Applying a "materiality standard" would ensure "that the defendant has a right to obtain evidentiary material from a third party that is no broader—but also no narrower—than the defendant's right to obtain such material from the government" and "would resolve that puzzle at great benefit to the rights of defendants to compulsory process and at little cost to the enforcement of the criminal law, since Rule 17(c) permits the government to issue subpoenas as well." *Id.* (citing Fed. R. Crim. P. 16(a)(1)(E)); *see also id.* (noting that "it remains ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' Fed. R. Civ. P. 26(b)(1), while a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third-parties").

## ARGUMENT

**I.    The Government's Discovery Did Not Include
       All Relevant, Admissible Evidence from OpenSea**

As discussed in the Defendant's Motion to Dismiss in this case, when compared with the existing universe of federal wire fraud prosecutions, the instant case is unique. The government alleges incorrectly that OpenSea, the purported "victim" in this case, is capable of claiming a property right in the mere selection of a featured artist for its website—as "confidential business information," Indictment ¶¶ 2-4, 7-8—even though the selection itself lacks any inherent commercial and/or market value and is based on the Defendant's unspoken personal thoughts. *See*

7

Motion to Dismiss Opening Brief ("Opening Br.") (ECF No. 19) at 12; Reply Brief in Support of Motion to Dismiss ("Reply Br.") (ECF No. 25) at 6-12.

Notwithstanding that the crux of its case hinges upon its broad definition of "property" under the wire fraud statute, the government failed to gather evidence relevant to this issue. Instead, the government chose to gather and review an incomplete set of communications that hit on select topics such as, "All communications with or about Nate Chastain selling, buying, or trading items on OpenSea based on non-public information, engaging in insider trading, engaging in front-running activity, or otherwise engaging in deceptive trading." The use of such curated search requests is all but guaranteed to miss exculpatory communications.

Should the Court deny the Motion to Dismiss, the Defendant is entitled to all relevant material—including communications—discussing OpenSea's beliefs, views, and practices concerning whether information regarding upcoming "featured" artists had any inherent commercial, economic, and/or market value. *See* Opening Br. at 18; Reply Br. at 6-7. Further, the Defendant is entitled to essential communications and documents that will demonstrate that OpenSea was deprived of nothing by virtue of the Defendant's alleged actions, as OpenSea collected its standard fee in connection with each relevant NFT that was bought and sold on its platform, regardless of identity of the buyer or seller or the Defendant's alleged involvement. *See* Opening Br. at 15-16; Reply Br. at 7.

In fact, despite providing a limited set of OpenSea documents and portions of communications in its two applicable document productions, the government's production of excerpts from notes and/or reports of interviews conducted by the U.S. Attorney's Office and FBI, and notes and/or reports of attorney proffers made by counsel for OpenSea, illustrate that OpenSea did not believe the featured artist listing possessed inherent value—an essential point and one

which buttresses the Defendant's property-based legal arguments in his Motion to Dismiss. Specifically, in its July 11, 2022 *Brady* disclosure, the government noted that an OpenSea senior officer "does not believe that there is anything intrinsically valuable to OpenSea to keep the identity of the featured work secret," and that a different senior officer stated, "OpenSea did not think there was inherent value in the confidentiality of the featured NFT artist selection."

OpenSea's views as to whether the information regarding NFT features was, in fact, its valuable "property" and whether that information was "misappropriated" is plainly relevant to Mr. Chastain's defense. The Proposed Subpoena's request(s) for communications concerning the Defendant are likely to reach documents and information that touch upon precisely these issues, but which were excluded from the government's document requests to OpenSea. For instance, there may exist—and the defense has reason to believe there in fact *do exist*—documents discussing or concerning the Defendant that do not specifically reference the alleged NFT trading or OpenSea's featured work page (as the government's requests were focused on), but nonetheless provide insight into OpenSea's view and treatment of what constituted "confidential information." Similarly, the Defendant's requests for OpenSea's communications surrounding its employee policies and for documents OpenSea used in presentations or meetings with the government may detail whether OpenSea believed its policies during the Defendant's tenure covered the alleged conduct, whether OpenSea believed the featured artist list was its "property" under applicable law, and may provide additional context to exculpatory statements made by OpenSea's senior officers.

Having seen only a portion of the communications relevant to this case, Defendant now seeks to obtain *all* relevant documents from OpenSea so that he can adequately prepare for trial. For the reasons set forth below, the Proposed Subpoena is proper under Rule 17, and, to the extent

9

applicable, satisfy each of the requirements of relevancy, admissibility, and specificity set forth in *Nixon*.

## II.     The Proposed Subpoena Satisfies the *Nixon* Standard For Early Return

As provided *supra* at 4-5, the Proposed Subpoena requests documents in three categories from OpenSea, and each of those categories satisfy the four *Nixon* factors.

*First*, a Rule 17(c) subpoena seeks relevant information as long as there is a "'sufficient likelihood' that its requests [will] reach materials 'relevant to the offenses charged in the indictment.'" *Bergstein*, 2018 WL 9539846 at *2 (quoting *Nixon*, 418 U.S. at 700).

The Proposed Subpoena's first request seeks documents and communications concerning the Defendant's statements, generally, and the statements of OpenSea's co-founders, OpenSea employees, and Board of Directors members regarding this matter during the time period most critical to this case. The relevance of these documents is self-evident. As discussed above, these requests will also fill the gaps left by the categories of documents the government requested from OpenSea, and we anticipate them showing that OpenSea did not consider the information the Defendant is alleged to have misappropriated to be its property. Further, the information sought by the Defendant's first request may reflect the lack of any intent to defraud on the Defendant's part and/or that OpenSea was aware of the Defendant's alleged activity. Evidence of the Defendant's *mens rea* (or lack thereof), as well as company employees' knowledge of his alleged actions, are particularly likely to appear in OpenSea's Slack communications.

The Proposed Subpoena also requests documents and communications discussing and/or referencing OpenSea's confidentiality policies or any policy concerning an employee's purchase, sale, and/or trading of NFTs. While the government's document productions have provided some of these policies (including the new Information Use Policy that OpenSea implemented following

10

the Defendant's departure from the company), the communications surrounding any such policies are highly relevant. Those communications are likely to shed light on¸ *inter alia*, why OpenSea felt it was necessary to, upon the Defendant's departure, "implement[]…policies" governing employee purchases of featured NFTs.[5]

The Proposed Subpoena's third request seeks all documents, presentations, or communications with any U.S. government agency, including the U.S. Attorney's Office. These documents, too, are critically relevant and have substantial evidentiary value to the defense. As discussed *supra*, the limited interview summaries and excerpts provided by the USAO to date are exculpatory and contradict key assertions made in the Indictment. To the extent OpenSea prepared slide decks, notes, or similar documents to aid in presentations to the government, they are likely to provide further context and detail as to, *e.g.,* an OpenSea senior officer's statement that "OpenSea did not think there was inherent value" in the allegedly confidential information or a different senior officer's statement that, "…there is [nothing] intrinsically valuable to OpenSea" regarding the identity of featured NFTs.

Notably, the Proposed Subpoena seeks only documents that are admissible. The documents and communications in Request Numbers 1 and 2, including their relevant subparts, will be admissible business records. Further, Defendant's request for information and materials OpenSea has shared with government agencies may be admissible for the purpose of showing the then-existing state of mind of OpenSea's employees (and, thus, the Defendant's mental state) regarding the allegedly misappropriated information.[6]

---

[5] OpenSea, *Our commitment to the OpenSea community*, September 15, 2021, https://opensea.io/blog/announcements/employee-information-use-at-opensea/.

[6] We recognize that, per this Court's opinion in *U.S. v. Kaufman*, No. 13 Cr. 411–02 (JMF), 2014 WL 2048198 at *10 (S.D.N.Y. May 19, 2014), a Rule 17(c) subpoena may not be issued for mere impeachment purposes. But as noted above, we seek the aforementioned information on grounds that go to OpenSea's mental state, views, and knowledge of the alleged "property," as well as, ultimately, the mental state of the Defendant.

11

Additionally, all of the Proposed Subpoena's requests have been limited temporally and tailored specifically to yield only relevant evidence. Indeed, courts in this District have found even more broadly drafted requests—such as those for "all electronic documents or communications"—to be the proper subject of a Rule 17(c) subpoena. *United States v. Donziger,* No. 19-CR-561 (LAP), 2021 WL 1865376 at *9 (S.D.N.Y. May 9, 2021); *see Weigand*, 520 F. Supp. at 615 (finding a subpoena request for documents over a six-year period to be "insufficiently specific," but finding that the request was appropriate if narrowed to a time period of over one year (as the Defendant requests here)).

*Second*, the requested documents are not procurable reasonably in advance of trial by exercise of due diligence, as only OpenSea has access to the requested documents.

*Third*, the Defendant cannot properly prepare for trial without the pre-trial production and inspection of the requested documents. The requested documents will require significant and time-consuming processing and analysis and could not reasonably be used by the Defendant unless produced sufficiently in advance of trial.

*Finally*, this request is made in good faith and is not a fishing expedition. Based on discovery provided by the government, it is likely that OpenSea will have documents responsive to many or all the proposed requests, and as shown above, those documents will be relevant at trial.

Accordingly, as demonstrated above, the Proposed Subpoena clearly satisfies the *Nixon* standard—and certainly the more liberal "materiality" standard—and should be issued with the requested early return date.

## **CONCLUSION**

For the aforementioned reasons, and pursuant to Rule 17(c), the Defendant respectfully submits that the Court should issue the Proposed Subpoena to OpenSea with an early return date of November 15, 2022.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: __/s/ David I. Miller_____
David I. Miller
Gregory W. Kehoe
Charles J. Berk
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Counsel for Defendant*
*Nathaniel Chastain*