UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                       :

UNITED STATES OF AMERICA
                                                       :

       - v. -                                     No. 22 Cr. 305 (JMF)
                                                       :

NATHANIEL CHASTAIN,
                                                       :

            Defendant.
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

                                                                     DAMIAN WILLIAMS
                                                                     United States Attorney
                                                                     Southern District of New York
                                                                     One St. Andrew's Plaza
                                                                     New York, New York 10007

Thomas Burnett
Nicolas Roos
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

I.   The Motion To Strike Language From The Indictment Should Be Denied ............................. 1

     A.  Applicable Law ................................................................................................................ 1

     B.  The Indictment Appropriately Uses The Phrase "Insider Trading" ............................. 2

CONCLUSION ................................................................................................................................ 6

## TABLE OF AUTHORITIES

Page

*United States v. Bin Laden*, 91 F. Supp. 2d 600 (S.D.N.Y. 2000) .................................................. 1

*United States v. Carey*, 152 F. Supp. 2d 415 (S.D.N.Y. 2001) ...................................................... 5

*United States v. Coffey*, 361 F. Supp. 2d 102 (E.D.N.Y. 2005) .................................................... 1

*United States v. DeFabritus*, 605 F. Supp. 1538 (S.D.N.Y. 1985) .............................................. 2, 4

*United States v. Kassier*, No. 04 Cr. 356, 2009 WL 995139 (S.D.N.Y. Apr. 9, 2009) ................. 6

*United States v. Maxwell*, 534 F. Supp. 3d 299 (S.D.N.Y. 2021) ............................................. 1-2

*United States v. Mostafa*, 965 F. Supp. 2d 451 (S.D.N.Y. 2013) .................................................. 2

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001) .................................................................... 1

*United States v. Scarpa*, 913 F.3d 993 (2d Cir. 1990) .............................................................. 1, 4

*United States v. Singhal*, 876 F. Supp. 2d 82 (D.D.C. 2012) ................................................... 4-5

*United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) .................................................. 2, 4

## PRELIMINARY STATEMENT

Nathaniel Chastain is charged with misappropriating confidential business information of his employer to buy non-fungible tokens ("NFTs") that he knew were going to be featured on his employer's website, then profit from reselling them at a higher price. In describing that crime, the indictment (the "Indictment") refers to Chastain's conduct as "insider trading in [NFTs]" and "[i]nsider [t]rading of [f]eatured NFTs." Indictment ¶¶ 1, 10. Chastain moves to strike those two references to "insider trading," claiming that the label is incorrect and inflammatory. This Court should deny that motion. The phrase accurately captures Chastain's use of confidential, non-public information to trade an asset, and there is nothing so inherently inflammatory about the term to warrant the extreme measure of striking the language from the Indictment.

## ARGUMENT

I. **The Motion To Strike Language From The Indictment Should Be Denied**

   A. **Applicable Law**

"Although the Federal Rules of Criminal Procedure grant the Court authority to strike surplusage from an indictment, it has long been the policy of courts within the Southern District to refrain from tampering with indictments." *United States v. Bin Laden*, 91 F. Supp. 2d 600, 621 (S.D.N.Y. 2000). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory or prejudicial." *United States v. Scarpa*, 913 F.3d 993, 1013 (2d Cir. 1990). "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id.*; *see also United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001). "Given this exacting standard, such motions [to strike] are rarely granted." *United States v. Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005). And when motions are made, courts typically defer rulings until trial. *See, e.g.*, *United States v. Maxwell*, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021)

("Courts in this District generally delay ruling on any motion to strike until after the presentation of the Government's evidence at trial, because that evidence may affect how specific allegations relate to the overall charges.").

In setting forth allegations in a charging instrument, the Government is not limited to an enumeration of the bare elements of a crime; instead, a charging instrument may be used to provide background to the charged criminal conduct, to describe the circumstances, means, and methods, of an offense. *See United States v. Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013). With that in mind, courts in this District have consistently been reluctant to police, through motions to strike, the particular terminology that that Government has selected to use in describing the offense. In *United States v. Stein*, for example, Judge Kaplan declined to strike allegedly "inflammatory and loaded terms" in an indictment, such as "tax haven," "phony," and "concoct." 429 F. Supp. 2d 633, 647 (S.D.N.Y. 2006). The Court explained that, "[w]hile defendants doubtless wish that the government had employed less colorful and prejudicial language," the terms would not be stricken. *Id.*; *see also United States v. DeFabritus*, 605 F. Supp. 1538, 1546-47 (S.D.N.Y. 1985) (refusing to strike the phrase "slush fund" even though there were words "less prejudicial . . . that may be used to characterized the alleged accumulation of cash").

### B.   The Indictment Appropriately Uses The Phrase "Insider Trading"

Despite the reluctance in this District to tamper with indictments, Chastain asks this Court to edit how the Indictment describes Chastain's conduct by removing references to "insider trading." This Court should deny the motion.

To begin, the Indictment does not, as Chastain makes it seem, simply use the phrase "insider trading" devoid of context. The phrase appears twice, both times couched in language making clear that Chastain engaged in insider trading of NFTs, not securities or commodities. The first paragraph of the Indictment says that the case "concerns insider trading in Non-Fungible

Tokens" and explains that Chastain used his "advanced knowledge of what NFTs would be featured on OpenSea's homepage for his personal financial gain." The phrase next appears in a header on the fourth page, saying "Chastain's Insider Trading of Featured NFTs." That header is followed by a description of Chastain's scheme.

The phrase "insider trading in [NFTs]" is an appropriate descriptor for the crime alleged in the Indictment. The Indictment accuses Chastain of improperly using confidential, non-public (or "inside") information about an asset to buy and then sell (or "trade") that asset on a public market. The moniker "insider trading" aptly captures that conduct, and the fact that the Indictment alleges that the insider trading was in NFTs or Featured NFTs ensures there will be no confusion about whether Chastain was trading a different type of asset.

Chastain's primary argument for striking the "insider trading" language turns on a legal error and an unduly cramped understanding of the phrase. The legal error is Chastain's insistence—copied from his motion to dismiss—that "the misappropriation of confidential business information as a basis for a wire fraud theory of insider trading" requires a connection to securities trading. Br. 3-4. As the Government explained in its opposition to the motion to dismiss, there is no textual basis in the wire fraud statute for Chastain's theory and that theory is refuted by *United States v. Carpenter*, where the Supreme Court upheld an insider trading conviction under the wire-fraud statute, rather than the securities fraud laws, because the Justices could not agree whether the scheme was "in connection with a purchase or sale of securities." 484 U.S. 19, 24 (1987); *see* Dkt. 23 at 6-11 (responding to Chastain's insider trading theory).

There is also nothing inherent in the phrase "insider trading" that makes it inapplicable to the facts alleged in the Indictment. There is no federal "insider trading" statute. As explained in the Government's opposition to the motion to dismiss, the term is, instead, is a shorthand for

several different theories of fraud (e.g., "classical" and "misappropriation"), that are prohibited under a handful of different statutes in Title 18, Title 7 and Title 15.  The label is often a misnomer if taken literally: in misappropriation cases and cases involving tips, for instance, no "insider" is actually "trading."  Nonetheless, it is useful for identifying a particular species of misconduct: namely, crimes in which someone with non-public information about an asset improperly uses that information to trade the asset or helps someone else trade it.  To be sure, the assets involved in insider-trading cases have traditionally been securities.  But the term has also, more recently, been applied to conduct involving commodities, an application that Chastain appears not to challenge. *See* CFTC Press Release, CFTC Charges Block Trade Broker with Insider Trading (Sept. 28, 2018), https://cftc.gov/PressRoom/PressReleases/7811-18.  And the Indictment leaves no room for confusion by specifying that, in this case, the insider trading is with respect to NFTs.

Chastain is also wrong to argue that the two references to "insider trading in [NFTs]" should be stricken on the grounds that they are inflammatory and prejudicial.  Br. 4-6.  For one, if an allegation in the Indictment is relevant to the charge, "then regardless of how prejudicial the language is, it may not be stricken."  *Scarpa*, 913 F.2d at 1013.  Because the references to insider trading in NFTs are relevant to describing the conduct alleged in the Indictment, Chastain's motion should be denied without a prejudice inquiry.  *See, e.g.*, *Stein*, 429 F. Supp. 2d at 647 (refusing to strike language characterizing defendant's conduct); *DeFabritus*, 605 F. Supp. at 1546-47 (same).

The fact that "insider trading in [NFTs]" accurately describes the conduct alleged in the Indictment distinguishes this case from *United States v. Singhal*, 876 F. Supp. 2d 82 (D.D.C. 2012), upon which Chastain relies.  Chastain correctly notes that, in that decision, a District Court struck references to "insider trading" from an indictment.  Br. 6.  But that was because the crimes charged in *Singhal* had nothing to do with conduct that could be described as insider trading.  The

indictment in that case alleged that the defendants had used shell entities and other methods of deception to conceal from the SEC and other entities their involvement in certain transactions. *See Singhal*, 876 F. Supp. 2d at 90-93 (describing the transactions at issue). None of the charged offenses turned on the defendants' use of confidential, inside information to trade an asset, so the references to insider trading were irrelevant to the charged crimes and gratuitous. Here, by contrast, the Indictment alleges that Chastain carried out a course of conduct that did constitute insider trading, and that mirrors traditional insider trading, with the only difference being that the traded assets were NFTs, rather than securities—a difference that is clearly described in the Indictment, to avoid any possible confusion.

Chastain's reliance on *United States v. Carey*, Br. 6, is misplaced for the same reason. There, the indictment charged the defendant with "perjury and making false statements regarding his knowledge" of the "scheme by which [certain] contributions" may have helped his political campaign. *Carey*, 152 F. Supp. 2d 415, 430 (S.D.N.Y. 2001). The indictment described the campaign-contribution scheme about which the defendant lied as "unlawful," and Judge Carter struck that word because the lawfulness of the scheme was not relevant to the charged offenses. *Id.* Notably, Judge Carter did not strike language in the indictment characterizing the campaign-contribution scheme as a "scheme" or "quid pro quo," refusing to edit language that accurately characterized the conduct. *Id.* The Indictment here accurately characterizes Chastain's conduct, so the relevant language should not be stricken.

At bottom, Chastain's prejudice claim boils down to two practical arguments, neither of which merits the exceptional remedy of striking language from the Indictment. First, Chastain claims that the phrase "insider trading" in the Indictment could "impermissibly expand" the charges in this case. Br. 6-7. But that is not a plausible outcome because the Indictment specifies

5

that Chastain engaged in insider trading of NFTs, leaving no room for ambiguity. The specificity in the Indictment is dramatically different than the case upon which Chastain relies, where a court struck the vague phrase "among other things" from a charging instrument because the phrase left room to "impermissibly expand the specific charges returned by the grand jury." *United States v. Kassier*, No. 04 Cr. 356 (JFK), 2009 WL 995139, at *4 (S.D.N.Y. Apr. 9, 2009).

Second, Chastain wrongly asserts that the Government used the phrase "insider trading" to get "media attention" or "skew a jury's perception of the defendant." Br. 4. This claim is baseless. Long before Chastain was charged in this case, his actions at OpenSea garnered attention from numerous media outlets—attention that, unsurprisingly given the common understanding of the phrase "insider trading," referred to the conduct with that nomenclature. *See, e.g.*, Bloomberg, "OpenSea Says Employee Resigned Over NFT Insider Trading Scandal" (Sept. 16, 2021); New York Magazine, "A Very, Very Crypto Insider-Trading Scandal" (Sept. 16, 2021). It is his alleged conduct that drew attention, not the label in the Indictment, and this Court will have no difficulty in ensuring that a neutral jury is empaneled to hear Chastain's case.

## CONCLUSION

Accordingly, the Government respectfully requests that the Court deny the defendant's motions to strike language from the Indictment.

Dated: New York, New York
       October 14, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s_____
Thomas Burnett
Nicolas Roos
Assistant United States Attorneys