UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                                   :

UNITED STATES OF AMERICA

                                   :

        - v. -                      :          No. 22 Cr. 305 (JMF)

                                   :

NATHANIEL CHASTAIN,

                                   :

          Defendant.

                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR EARLY RETURN OF A RULE 17(c) SUBPOENA


 

 

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Thomas Burnett
Nicolas Roos
Assistant United States Attorneys
- Of Counsel -

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................ 1

ARGUMENT ............................................................................................................. 4

I.       Legal Standard ................................................................................................ 4

II.      The Request for a Subpoena to OpenSea Should Be Denied ............................ 6

         A.      The Proposed Subpoena Does Not Seek Specifically Identified Evidence ............ 7

         B.      The Proposed Subpoena Does Not Seek Relevant and Admissible Evidence...... 11

CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

<u>Page</u>

*AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17 Civ. 598, 2022 WL 2643583
(N.D.N.Y. July 8, 2022) ................................................................................................12-13

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ..............................................4

*In re Lyondell Chem. Co.*, No. 9-10023, 2016 WL 6108526
(Bankr. S.D.N.Y. Oct. 19, 2016) ..................................................................................13

*Morisseau v. DLA Piper*, 532 F. Supp. 2d 595 (S.D.N.Y. 2008) ..................................13

*United States v. Avenatti*, No. 19 Cr. 373, 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) ..........8, 13

*United States v. Avenatti*, No. 19 Cr. 374, at Tr. 67-69 (Jan. 24, 2022) .........................10

*United States v. Barnes*, No. 04 Cr. 186, 2008 WL 9359654
(S.D.N.Y. Apr. 2, 2008) ........................................................................4-5, 7, 10- 11

*United States v. Bergstein*, 788 F. App'x 742 (2d Cir. 2019) .........................................5

*United States v. Blondet*, No. 16 Cr. 387, 2022 WL 485031 (S.D.N.Y. Feb. 16, 2022) ...............5

*United States v. Brown*, No. 95 Cr. 168, 1995 WL 387698 (S.D.N.Y. June 30, 1995) ...............15

*United States v. Carroll*, No. 19 Cr. 545, 2019 WL 6647871 (S.D.N.Y. Nov. 8, 2019) ...............4

*United States v. Carton*, No. 17 Cr. 680, 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) .........11, 14

*United States v. Chen De Yian*, No. 94 Cr. 719, 1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) .......7

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995) .....................................4, 6

*United States v. Cole*, No. 19 Cr. 869, 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ...............5

*United States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980) ............................................7

*United States v. Donziger*, No. 11 Civ. 691, 2021 WL 1865376 (S.D.N.Y. May 10, 2021) .........14

*United States v. Ferber*, 966 F. Supp. 90 (D. Mass. 1997) .............................................13

*United States v. Kaufman*, No. 13 Cr. 411, 2014 WL 2048198
(S.D.N.Y. May 19, 2014) .....................................................................................5-6, 13

*United States v. Marchisio*, 344 F.2d 653 (2d Cir. 1965) .............................................5

*United States v. Maxwell*, No. 20 Cr. 330, 2021 WL 2292773 (S.D.N.Y. June 4, 2021) ................ 6

*United States v. Nektalov*, No. 03 Cr. 828, 2004 WL 1574721 (S.D.N.Y. July 14, 2004) ............ 6

*United States v. Sawinski*, No. 00 Cr. 499, 2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) .......... 7

*United States v. Shah*, No. 19 Cr. 833, 2022 WL 1422252 (S.D.N.Y. May 5, 2022) ............... 1, 10

*United States v. Skelos*, No. 15 Cr. 317, 2018 WL 2254538
   (S.D.N.Y. May 17, 2018) .................................................................. 4-5, 11, 15

*United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008) ....................................... 5

*United States v. Vasquez*, 258 F.R.D. 68 (E.D.N.Y. 2009) .................................... 11

*United States v. Weissman*, No. 01 Cr. 529, 2002 WL 31875410
   (S.D.N.Y. Dec. 26, 2002) ................................................................ 11, 15

*United States v. Nixon*, 418 U.S. 683 (1974) .............................................. 1, 4-7, 11

## PRELIMINARY STATEMENT

The defendant has moved for the issuance of a Rule 17(c) subpoena to his former employer, Ozone Networks Inc., d/b/a OpenSea ("OpenSea"), for documents falling in three broad categories: (1) documents and communications referencing the defendant; (2) "all" documents and communications referencing OpenSea's employee policies, confidentiality policies, and NFT trading policies; and (3) "all" documents, presentations, or communications with, between, provided to, or shared with any U.S. government agency. (Dkt. No. 33 at 3-4.) The Government has already produced to the defendant all of the materials it received from OpenSea, many of which are responsive to the defendant's requests. The proposed subpoena, however, is plainly improper under *United States v. Nixon*, 418 U.S. 683 (1974), in which the Supreme Court held that Rule 17(c) subpoenas can only seek relevant, admissible, and specific evidence—in other words, identified evidence that the defendant intends and is able to introduce as exhibits at trial. The defendant's requests fail to satisfy this "strict standard." *United States v. Shah*, No. 19 Cr. 833 (SHS), 2022 WL 1422252, at *3 (S.D.N.Y. May 5, 2022). Indeed, the subpoena seeks, among other things, materials that post-date the defendant's time at OpenSea, documents that have nothing to do with the defendant, and "all" records relating to the provision of documents to "any U.S. government agency," irrespective of the fact that they are entirely unrelated to this case. The Court should deny the defendant's request for the subpoena.

## BACKGROUND

On September 15, 2021, OpenSea announced on its blog that after learning the day before that the defendant had purchased NFTs that he knew were set to be displayed on OpenSea's

frontpage, the company requested and accepted the defendant's resignation.[1]  The next day, on September 16, 2021, the Government sent a letter request to OpenSea for eight categories of materials.  Those requests relevant to the instant motion are set forth below.

> 5.  All communications with or about Nate Chastain concerning NFTs and other items being featured on the front page of OpenSea.
>
> 6.  All communications with or about Nate Chastain selling, buying, or trading items on OpenSea based on non-public information, engaging in insider trading, engaging in front-running activity, or otherwise engaging in deceptive trading.
>
> 7.  All Company policies relating to (a) deceptive, manipulative, illegal, or unauthorized selling, buying, or trading; (b) employees selling, buying, or trading on the OpenSea platform; and (c) employees use of confidential information obtained in the course of their employment.
>
> 8.  All confidentiality or non-disclosure agreements relating to Nate Chastain.

On February 11, 2022, the Government sent six supplemental requests to OpenSea, including the following:

> 12. Training documents, policies, and emails that were sent to, received by, or shared with Nate Chastain about OpenSea's (a) confidentiality policy or rules, and/or (b) terms prohibiting certain types of trading, including manipulative trading.
>
> 13. Communications and documents concerning the formation of the featured NFT part of the front page of the OpenSea website, and the decision to put Nate Chastain in charge of selecting featured NFTs.

In responding to these requests, OpenSea searched for documents within the time period that the defendant was at the company.  In other words, with only a few exceptions, the company did not produce materials post-dating approximately September 15, 2021.  In total, OpenSea

---

[1] *See* OpenSea, "Our Commitment to the OpenSea Community" (Sept. 15, 2021), https://opensea.io/blog/announcements/employee-information-use-at-opensea/.

voluntarily produced thousands of pages of records in response to the Government's requests, along with cover letters explaining those productions. As will be relevant here, those materials include documents and communications over OpenSea's Slack messaging application (which are sought in part 1(b) of the proposed subpoena), documents concerning OpenSea's confidentiality and employee policies (which are sought in part 2 of the proposed subpoena), and communications with the U.S. Attorney's Office for the Southern District of New York concerning this matter (which are sought in part 3 of the proposed subpoena). On September 28, 2022, OpenSea produced a copy of its OpenSea Information Use Policy, dated September 27, 2022. The Government has produced all of the records obtained from OpenSea as part of its Rule 16 discovery.

The Government conducted several interviews of OpenSea employees as part of its investigation. In some instances prior to those interviews, OpenSea's outside counsel summarized what certain employees might say if questioned about particular topics. The Government took notes on those oral summaries, and also took notes and generated interview reports of interviews of OpenSea employees. As the defendant's motion noted, the Government produced excerpts of some of those notes that could be interpreted as material favorable to the defense. The Government will produce the full notes as part of its Jencks Act production in advance of trial.

After the defendant filed his motion for a Rule 17(c) subpoena, and without conceding that the defendant is entitled to any additional materials, the Government asked OpenSea to produce (1) PowerPoint slides OpenSea used during a presentation made to the United States Attorney's Office for the Southern District of New York in 2022 in connection with this investigation; and (2) the complete records of the Slack messaging channels entitled "#featured-work" and "#cool-nft-finds." OpenSea confirmed that it had previously provided the complete "#featured-work" channel, then provided the PowerPoint presentation and the complete "#cool-nft-finds" channel.

The Government received these materials from OpenSea and produced them to the defendant before filing this brief.

## ARGUMENT

### I.    Legal Standard

Federal Rule of Criminal Procedure 17(c)(1) authorizes subpoenas for "any books, papers, documents, data, or other objects." "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) ("a criminal subpoena should not be used as a discovery device, but instead should be used only as a mechanism for obtaining specific admissible evidence" (citations omitted)). "Because of this, 'courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Rule 16.'" *United States v. Barnes*, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) (citing *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)). As such, Rule 17 subpoenas are held to a "strict standard" announced by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974):

> In order to obtain documents prior to trial, the party making the request must demonstrate that:
> (1) the documents sought are evidentiary and relevant;
> (2) the materials are not otherwise procurable in advance of trial by the exercise of due diligence;
> (3) the party seeking documents cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and
> (4) the application is made in good faith and is not intended as a general fishing expedition.

*United States v. Carroll*, No. 19 Cr. 545 (CM), 2019 WL 6647871, at *1 (S.D.N.Y. Nov. 8, 2019) (quoting *Nixon*, 418 U.S. at 699-700 (citation omitted)). To show that the documents are

"evidentiary and relevant," *Nixon* held that the party requesting the subpoena "must clear three

hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700. "This test is the

hallmark of Rule 17(c)(2) analysis, and courts in this jurisdiction and elsewhere have repeatedly

and consistently applied it to determine whether third-party subpoenas served by defendants must

be quashed as unreasonable or oppressive." *Barnes*, 2008 WL 9359654, at *2 (collecting cases);

*Skelos*, 2018 WL 2254538, at *1 ("courts in the Second Circuit have almost unanimously

applied *Nixon* to subpoenas served on third-parties").[2] Under this test, "[t]he defendant has the

burden of specifically identifying the materials sought, and showing that they are relevant and

admissible." *Barnes*, 2008 WL 9359654, at *3. "[T]he document[s] sought must *at that time* meet

the tests of relevancy and admissibility." *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir.

1965) (emphasis added).

Importantly, "Rule 17(c) subpoenas cannot be used to obtain documents that would be

excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." *Skelos*,

2018 WL 2254538, at *2. Thus, as the defendant concedes in his motion (*see* Dkt. No. 33 at 11

n.6), "[i]t is well established . . . that Rule 17(c) does not provide a basis for pre-trial 'production

of materials whose evidentiary use is limited to impeachment.'" *United States v. Kaufman*, No.

---

[2] Relying on *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), and three
decisions that cite it, the defendant argues that subpoenas to third parties are not subject to the
*Nixon* standard, and that a more relaxed standard applies. (Dkt. No. 33 at 6.) As this Court noted
earlier this year, "the Second Circuit and district courts in this Circuit have almost unanimously
deviated from *Tucker* and applied the *Nixon* standard to Rule 17(c) subpoenas requested by a
defendant." *United States v. Blondet*, No. 16 Cr. 387 (JMF), 2022 WL 485031, at *1 n.2 (S.D.N.Y.
Feb. 16, 2022) (cleaned up); *see also United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425,
at *3 (S.D.N.Y. Mar. 10, 2021) (applying the *Nixon* standard of review to a trial subpoena served
on a third party "[c]onsistent with the overwhelming majority of courts in this District, along with
the Second Circuit's statement in [*United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir.
2019)]"). Accordingly, because *Tucker* is inconsistent with the standard set forth in *Nixon*, and at
odds with the law of this Circuit, the Court should "decline[] to follow *Tucker* and appl[y] *Nixon*
itself." *Blondet*, 2022 WL 485031, at *1 n.2.

13 Cr. 411 (JMF), 2014 WL 2048198, at *10 (S.D.N.Y. May 19, 2014) (quoting *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995)); *see also United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 2292773, at *1-2 (S.D.N.Y. June 4, 2021) ("the potential impeachment of a witness does not provide grounds for issuance or enforcement of a Rule 17(c) subpoena because such materials would only become relevant *after* a witness has testified").

Finally, Rule 17(c) subpoenas are also not to be used to obtain statements of prospective witnesses. Rule 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." Instead, the production of materials constituting witness statements is governed by Rule 16(a)(2), Rule 26.2, and 18 U.S.C. § 3500. *See generally* 18 U.S.C. § 3500(a) ("[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."); Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."); Fed. R. Crim. P. 26.2(a) (statements to be produced "after a witness other than the defendant has testified on direct examination").

## II.     The Request for a Subpoena to OpenSea Should Be Denied

The motion to issue a Rule 17(c) subpoena to OpenSea should be denied because the proposed subpoena cannot satisfy *Nixon*'s requirements that the evidence be specifically identified, and be relevant and admissible at trial. Accordingly, the defendant's motion should be denied.[3]

---

[3] As a party to this case, and because the defendant moved for a Rule 17(c) subpoena, the Government has standing to oppose the subpoena to OpenSea. *See United States v. Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004). The Government may also

A.      **The Proposed Subpoena Does Not Seek Specifically Identified Evidence**

The defendant's proposed subpoena does not seek specifically identified materials; rather, it bears the hallmarks of a generalized fishing expedition that fails to meet the specificity requirement set forth in *Nixon*.  "In order to satisfy the specificity requirement of *Nixon*, the party seeking production of the materials must 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hope that something useful will turn up." *Barnes*, 2008 WL 9359654, at *4 (quoting *United States v. Sawinski*, No. 00 Cr. 499 (RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000) (cleaned up)).  In other words, the subpoena must be targeted at obtaining "identified evidence" rather than serve as a "general fishing expedition."  *Id.* (quoting *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980)).

Each of the categories in the proposed subpoena is overbroad, likely sweeping in large swaths of materials unrelated to this case, and with one exception fail to specifically identify particular documents sought by the defendant.  Specifically:

*Requests 1(a), 1(c), and 1(d).*  Requests 1(a), 1(c), and 1(d) collectively seek all documents and communications – sent or created during the nine-month period after the defendant left OpenSea – by OpenSea's cofounders, employees, and board of directors that "discuss" or "reference" the defendant.  The defendant states that he "anticipate[s]" these documents "showing that OpenSea did not consider the information . . . to be property" and that they "may reflect the lack of any intent to defraud."  (Dkt. No. 33 at 10.)   The requests, however, do not identify any specific documents or communications.  Indeed, the language the defendant uses to justify these

---

move to quash a subpoena on behalf of a third party if the Government "stands in the shoes" of the subpoenaed party.  *United States v. Chen De Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

requests—*e.g.*, "anticipate" and "may reflect"—make clear that these requests are based on speculation, and not an understanding that any such documents exist.

Additionally, notwithstanding the defendant's claim that these requests are intended to yield evidence relating to whether OpenSea considered information to be property, and whether the defendant had an intent to defraud, the requests themselves cast a far wider net. All communications about the defendant sent by any OpenSea employee after the defendant's misconduct came to light could, and, if any responsive records exist, almost certainly would yield a mountain of irrelevant or inadmissible evidence about the defendant that has nothing to do with the case, such as personnel records relating to his departure, privileged materials concerning the defendant, irrelevant communications about the defendant's personal life, legal troubles, or new job, and best wishes on his birthday. In short, the defendant's request for all communications about him after his fraudulent conduct came to light "sweeps too broadly" and "has the earmarks of a fishing expedition premised on a mere hope that something useful will turn up." *United States v. Avenatti*, No. 19 Cr. 373 (PGG), 2020 WL 508682, at *5-6 (S.D.N.Y. Jan. 31, 2020) (the defendant's request "seeking all communications that reference [him] over a nine-month period following [his] arrest" was based on "only speculation" as to what two witnesses "might have said about [the defendant] in text messages and emails" and was therefore improper).

***Request 1(b).*** Request 1(b) seeks all Slack messages from any Slack chats the defendant participated in between April 1, 2021, and September 15, 2021,[4] including but not limited to the Slack messaging groups entitled "#featured-work" and "#cool-nft-finds." (Dkt. No. 33 at 4.) OpenSea already produced Slack message chats to the Government, which the Government

---

[4] The defendant's proposed subpoena uses the date range April 1, 2021, through September 15, 2022, but defense counsel has clarified during discussions with the Government that this request is intended to cover the period April 1, 2021, through September 15, 2021.

produced, in turn, to the defendant as part of its Rule 16 discovery production. OpenSea's prior productions included the entirety of the #featured-work Slack channel, so those materials are already in the possession of the defendant. OpenSea did not previously produce the entirety of the #cool-nft-finds Slack channel (which the defendant never posted on), but OpenSea has since produced the entire Slack channel to the Government, and the Government has produced it to the defendant.

The defendant, however, has not specifically identified what Slack communications he seeks beyond those that OpenSea has already produced. If OpenSea were to produce every Slack message sent or received by the defendant during his tenure at OpenSea, it would likely include communications about other parts of his job unrelated to this case, personal communications not relevant to his work, jokes, and even discussion about what to eat for lunch. And the defendant's request goes broader still, asking for all the messages on every Slack channel Chastain participated in, regardless of who posted those messages or what they were about.

*Request 2.*   Request 2 seeks all documents and communications, without any temporal limitation, discussing or referencing OpenSea's employee policies, confidentiality policies, or trading policies. (Dkt. No. 33 at 5.) The defendant's motion concedes that the Government's Rule 16 production included these policies, to the extent they existed and were produced by OpenSea. (*Id.* at 10-11.) Indeed, the Government understands that, in response to the Government's requests, OpenSea produced copies of all relevant policies irrespective of whether they were in existence when the defendant was at OpenSea. Additionally, OpenSea produced communications or documents relating to these policies as they pertained to the defendant, such as, for example, the defendant's employment agreement.

Nonetheless, the defendant argues that "communications surrounding any such policies . . . are likely to shed light on . . . why OpenSea felt it was necessary to . . . implement policies governing employee purchases of featured NFTs." (*Id.* at 11.)  The defendant's motion is, however, devoid of any reason to believe that such non-privileged communications exist.  And the request for "all" documents or communications discussing these particular policies will certainly sweep in entirely irrelevant materials, such as employment and confidentiality agreements with other OpenSea employees.  For that reason, courts in this Circuit routinely quash subpoenas that "blindly seek[] 'all' documents" like this one. *Barnes*, 2008 WL 9359654, at *4 ("[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *Shah*, 2022 WL 1284550, at *2 ("The request for 'all' such documents and communications without a whiff of specificity as to why she requires them is nothing more than an impermissible 'fishing expedition.'"); *United States v. Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022) ("[I]n seeking 'any and all communications' . . . [the defendant] sweeps too broadly" and "[h]is request has the earmarks of a fishing expedition premised on a mere hope that something useful will turn up.").  For the same reasons, this request should be denied here.

**Request 3.**   Request 3 seeks all documents, presentations, or communications with, between, provided to, or shared with any U.S. government agency, including the United States Attorney's Office for the Southern District of New York.  The Government has already produced to the defendant all documents produced by OpenSea as well as cover letters that accompanied those productions.

Request 3 would also require the production of materials that have been provided to any U.S. government agency, irrespective of whether that production of materials had anything to do with this case.  It is easy to imagine that OpenSea communicates with regulators and responds to

many routine law enforcement requests, all unrelated to this matter. Because of the breadth of this request, it fails the *Nixon* standard and the defendant's application should be denied. *See Skelos*, 2018 WL 2254538, at *4 ("Defendants' request here for all documents produced as part of a state agency's investigation into a non-party is insufficiently focused.").

The defendant states in his motion that "slide decks, notes, or similar documents" prepared by OpenSea "to aid in presentations to the government" would be responsive to this request. But this request is not sufficiently specific to satisfy the *Nixon* standard. *See United States v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (quashing subpoena to law firm for all documents evidencing statements by certain witnesses because the request lacked specificity and amounted to a "fishing expedition"). Moreover, to the extent the defendant is seeking statements of witnesses who are likely to testify at trial, the requested relief is precluded by Rule 17(h), which prohibits a party from subpoenaing a statement of a witness or a prospective under Rule 17. *See United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107, at *6 (S.D.N.Y. Oct. 19, 2018) (quashing request for personnel file in light of Rule 17(h) because the file related to "a prospective witness in this case"); *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009) ("if the statements sought were made by individuals the Government intends to call as witnesses at the trial, then even if they were admissible [the defendant] would still not be entitled to them now because Rule 17(h) expressly precludes a party from subpoenaing a witness statement").

## B.   The Proposed Subpoena Does Not Seek Relevant and Admissible Evidence

The proposed Rule 17(c) subpoena should also be denied because it cannot satisfy *Nixon*'s relevance and admissibility requirements. *See Barnes*, 2008 WL 9359654, at *3 ("The items sought cannot merely be potentially relevant or admissible."). The subpoena, however, is replete with requests for irrelevant and inadmissible evidence. In particular:

*Requests 1(a), 1(c), and 1(d).*   As noted above, Requests 1(a), 1(c), and 1(d) collectively seek all documents and communications by OpenSea's cofounders, employees, and board of directors that "discuss" or "reference" the defendant.   Many of the documents that would be responsive to these requests are, as discussed above, irrelevant to the case because OpenSea's cofounders, employees, and/or board members could be discussing or referencing the defendant for many reasons entirely unrelated to this case.   In addition to the requests' over-inclusiveness, these requests call for irrelevant and inadmissible evidence because they seek evidence from September 14, 2021, to June 1, 2022, which is the nine-month period after the defendant's fraud was exposed and after he left OpenSea.   Employees' communications about the defendant after he left the company are not relevant to his intent or whether the information he misappropriated was property.   The requests also sweep in many materials that would be entirely irrelevant to the case simply because they reference the defendant for whatever reason.   Such documents plainly do not meet the tests of relevancy and admissibility.

The defendant claims that even though these records would post-date the defendant's time at the company, they are nonetheless relevant to show that OpenSea "did not consider the information . . . to be property" and to show that the defendant lacked "any intent to defraud." Taking those arguments in turn, communications by OpenSea employees at a time post-dating the defendant's tenure at the company are likely inadmissible hearsay.   If these employees were expressing a viewpoint as to whether certain information was or was not property, that is an out of court statement being offered for the truth—to prove that information was not property.   The defendant says that these communications would be admissible as business records.   (Dkt. No. 33 at 11.)   Not so.   The case law is clear that "[a]n email 'created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule.'" *AngioDynamics,*

*Inc. v. C.R. Bard, Inc.*, No. 17 Civ. 598 (BKS/CFH), 2022 WL 2643583, at *16 (N.D.N.Y. July 8, 2022) (quoting *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008)). Otherwise, "virtually any document found in the files of a business which pertained in any way to the functioning of that business would be admitted willy-nilly as a business record." *United States v. Ferber*, 966 F. Supp. 90, 99 (D. Mass. 1997). For emails to be admissible as business records, there must be an indication that the particular "activity occur[red] regularly," such as "weekly update" emails, and not "one-off" statements, like those that would likely be at issue here. *In re Lyondell Chem. Co.*, No. 9-10023, 2016 WL 6108526, at *2-5 (Bankr. S.D.N.Y. Oct. 19, 2016).

The defendant also argues that these records would show "the then-existing state of mind of OpenSea's employees (and, thus, the defendant's mental state) regarding the allegedly misappropriated information. (Dkt. No. 33 at 11.) "OpenSea's beliefs, views, and practices concerning whether information regarding upcoming 'featured' artists had any inherent commercial, economic, and/or market value" might be relevant for the time period the defendant was at OpenSea and committing his fraudulent conduct. (Dkt. No. 33 at 8.) But the mental state of OpenSea employees after the defendant left the company is not directly relevant to the issues in this case, and their mental states are not at all probative of the defendant's mental state because, again, he was no longer at the company. If the defendant is in search of communications that reveal employees' views as to the investigation and prosecution of the defendant, that is irrelevant hearsay evidence, and it may not be sought for purposes of impeachment since that is not permitted under Rule 17. *See Avenatti,* 2020 WL 508682, at *5-6 (defendant failed to meet admissibility requirement whether he sought communications between two witnesses after the defendant's arrest); *Kaufman*, 2014 WL 2048198, at *10 (impermissible to use Rule 17(c) subpoena to collect impeachment materials). These requests should be denied.

*Request 1(b).*   Request 1(b) seeks all Slack messages from any Slack chats the defendant participated in between April 1, 2021, and September 15, 2021, including but not limited to the Slack messaging groups entitled "#featured-work" and "#cool-nft-finds."  (Dkt. No. 33 at 4.)   As noted above, the defendant has been produced the Slack messages from the groups entitled "#featured-work" and "#cool-nft-finds."  As for any other Slack chats that exist but have not yet been produced, the defendant has not established that these messages are relevant in any way to the issues in this case.  Indeed, the defendant's mere participation in a chat, or references to the defendant in a chat, are not surprising since the defendant was employed by OpenSea.

*Request 2.*   Request 2 seeks all documents and communications discussing or referencing OpenSea's employee policies, confidentiality policies, or trading policies.  (Dkt. No. 33 at 5.)  As discussed above, relevant documents responsive to this request have already been produced to the defendant.  Additionally, this request calls for materials entirely irrelevant to the case, such as the employment agreements with other OpenSea employees.  Such documents are irrelevant to the defendant's guilt or innocence.

*Request 3.*   Request 3 seeks all documents, presentations, or communications with, between, provided to, or shared with any U.S. government agency, including the United States Attorney's Office for the Southern District of New York.  Such documents would not be admissible at trial.  Communications between OpenSea and the Government, and presentations or documents provided to the Government, are hearsay, and have nothing to do with the defendant's guilt or innocence.  *See United States v. Donziger*, No. 11 Civ. 691 (LAK), 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) (finding that documents between a non-party law firm and the court "appear to be classic hearsay"); *Carton*, 2018 WL 5818107, at *6 (quashing subpoena for "communications between a lawyer at [a law firm] and the Government" because such records

"are plainly irrelevant and inadmissible as hearsay"); *Skelos*, 2018 WL 2254538, at *5 (communications between state agency and the government would not be admissible because they are hearsay).  To the extent the defendant is seeking documents from OpenSea's outside counsel, such as interview notes (to the extent they are not privileged, which is likely the case), those are obviously hearsay and cannot be introduced at trial.  *See Weissman*, 2002 WL 31875410, at *1 (quashing subpoena for "documents evidencing statements by and interviews of" certain witnesses); *United States v. Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *2 (S.D.N.Y. June 30, 1995) (noting that interview "memoranda would, of course, be hearsay, and inadmissible as evidence at trial").  Finally, to the extent this request targets materials from other government agencies, those documents are both hearsay materials and not relevant to the defendant's guilt or innocence.

## CONCLUSION

Accordingly, the Government respectfully requests that the Court deny Chastain's motion to issue a Rule 17(c) subpoena to OpenSea.

Dated: New York, New York
      October 14, 2022                     Respectfully submitted,

                                      DAMIAN WILLIAMS
                                      United States Attorney

By: _____/s_____
              Thomas Burnett
              Nicolas Roos
              Assistant United States Attorneys