UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL CHASTAIN,<br><br>    Defendant. | No. 22-cr-305 (JMF)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF NATHANIEL CHASTAIN'S
MOTION TO STRIKE IMPERMISSIBLE SURPLUSAGE FROM THE INDICTMENT**

<br>

           David I. Miller
           Gregory W. Kehoe
           Charles J. Berk
           GREENBERG TRAURIG, LLP
           One Vanderbilt Avenue
           New York, NY 10017
           (212) 801-9200

           *Counsel for Defendant*
           *Nathaniel Chastain*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    "Insider Trading" is Not Relevant to This Case ...................................................... 2

    II.   The Term "Insider Trading" is Inflammatory and Prejudicial ............................... 4

CONCLUSION ............................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Carey*,
   152 F. Supp. 2d 415 (S.D.N.Y. 2001) ................................................................................. 6

*United States v. Carpenter*,
   484 U.S. 19 (1987) ............................................................................................................... 3

*United States v. DeFabritus*,
   605 F. Supp. 1538 (S.D.N.Y. 1985) ..................................................................................... 6

*United States v. Poindexter*,
   725 F. Supp. 13 (D.D.C. 1989) ............................................................................................ 7

*United States v. Scarpa*,
   913 F.2d 993 (2d Cir. 1990) ................................................................................................. 6

*United States v. Singhal*
   876 F. Supp. 2d 82 (D.D.C. 2012) ....................................................................................... 5

*United States v. Stein*,
   429 F. Supp. 2d 633 (S.D.N.Y. 2006) ............................................................................. 3, 6

**Statutes**

7 U.S.C. § 1 *et seq*. ..................................................................................................................... 4

15 U.S.C § 78ff ........................................................................................................................... 2

15 U.S.C. § 78j ........................................................................................................................... 2

18 U.S.C. § 1348 ........................................................................................................................ 2

**Other Authorities**

17 C.F.R. § 240.10b-5 ................................................................................................................ 2

U.S. SENTENCING GUIDELINES MANUAL § 2B1.4 (2021) .......................................................... 2

## PRELIMINARY STATEMENT

In his opening brief ("Opening Brief" or "Opening Br.") (ECF No. 31), the defendant Nathaniel Chastain (the "Defendant") showed that the government backpedaled from featuring the term "insider trading" in its press statements and Indictment (ECF No. 1) to asserting that "insider trading" is mere "nomenclature," and thus irrelevant to the instant charges.  Now, the government is focused on its claim that "insider trading" is appropriately used in the Indictment as "shorthand."  For the reasons stated below, the Court should strike references to "insider trading" from the Indictment as impermissible surplusage and prohibit the government from making any reference to the term at trial.

As discussed at length in the Opening Brief and in Defendant's Motion to Dismiss ("Motion to Dismiss Opening Br.") (ECF No. 19), the government has charged the Defendant with a wire fraud theory of *insider trading*, even though, as the government has conceded, a key element of that offense—securities or commodities trading—does not exist here.  The Opposition Brief ("Opp. Br.") (ECF No. 35) fails to rebut the Defendant's arguments and instead contends, in essence, that the Defendant must live with the government's mischaracterization of its own prosecution "regardless of how prejudicial the language is."  As described in the Opening Brief and herein, the term "insider trading" is inflammatory, unduly prejudicial, and irrelevant to the crimes charged.  The term's presence in the Indictment—and any reference to it at a trial—serves no legitimate prosecutorial purpose and is simply a means of increasing media attention and inflaming the jury in this first-of-its-kind case in the digital asset space.  Accordingly, this motion should be granted in its entirety.

**ARGUMENT**

I. **"Insider Trading" Is Not Relevant to This Case**

As discussed in the Opening Brief, having made public declarations in the Indictment, in media statements, and before this Court that the Defendant committed "insider trading," in its Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("MTD Opp. Br.") (ECF No. 23), the government attempted to minimize the significance of the prejudicial term, arguing that the Indictment's use of the descriptor "insider trading" is "just a quibble regarding the nomenclature of this case," MTD Opp. Br. at 6, and that the term should not be "taken literally," but instead considered "useful shorthand." *See* Opening Br. at 3 (citing MTD Opp. Br. at 11-12).

The term "insider trading" is not mere "nomenclature." *See* Motion to Dismiss Opening Br. at 9. As referenced in the Opening Brief, the misappropriation theory of insider trading is devised from judicial interpretations of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. *See* Opening Br. at 3-4. At bottom, the Defendant's point is simple: "insider trading" is a crime that *requires* the existence of securities or commodities trades—*i.e.,* such trading is an element of the offense. It refers to specific behavior in the securities or commodities space such that "Insider Trading" contains its own section in the U.S. Sentencing Guidelines and carries heavy criminal and civil penalties.[1] *See* Opening Br. at 3; Reply Brief in Support of Defendant's Motion to Dismiss ("MTD Reply Br.") (ECF No. 25) at 5 (citing U.S. SENTENCING GUIDELINES MANUAL § 2B1.4 (2021); 15 U.S.C § 78ff; 18 U.S.C. § 1348). Notably, the government fails to address this last critical point in any of its briefs to date.

---

[1] In the Court's October 21, 2022 decision denying the Defendant's Motion to Dismiss, the Court noted that the Defendant is "not charged with insider trading, at least in the classic sense of the term, which is a means of engaging in securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5."

The government's Opposition argues that insider trading does not require securities (or commodities) trading by citing *United States v. Carpenter,* 484 U.S. 19, 24 (1987), which the government describes as "where the Supreme Court upheld an insider trading conviction under the wire-fraud statute, rather than the securities fraud laws, because the Justices could not agree whether the scheme was 'in connection with a purchase or sale of securities.'" Opp. Br. at 3. While the Justices in *Carpenter* were evenly divided with respect to the convictions under the securities laws—affirming the judgment below that the fraud perpetrated on the Wall Street Journal (the theft of its "stock in trade" information) was "'in connection with' a purchase or sale of securities," *Carpenter,* 484 U.S. at 24—the Court **did not hold** that "insider trading" can occur without securities or commodities trading. Indeed, *Carpenter* never mentions the phrase "insider trading." Moreover, it bears repeating that in *Carpenter*, the wrongdoers actually engaged in securities trading, *see id.*, and the government cannot cite to a single case in which "insider trading" has been applied outside the securities or commodities context.

In attempting to shoehorn the facts at bar into the confines of case law it finds favorable, the government relies on cases dismissing motions to strike in which mere "colorful" language was at issue. The Defendant has not asked this Court to strike language because it is merely flamboyant in nature, but rather because it is a phrase that—in and of itself—describes a criminal offense. Opp. Br. at 2 (relying on Judge Kaplan's refusal to strike the terms "tax haven," "phony," or "concoct" from the indictment in *United States v. Stein*, 429 F. Supp. 2d 633, 647 (S.D.N.Y. 2006)). "Insider trading" is thus not simply a convenient descriptor; it bears legal significance and describes specific criminal conduct that has not been alleged. Consequently, the government's attempt to label its allegations as "insider trading of NFTs," Opp. Br. at 2, is a misnomer. Indeed, if the government's broad theory was accepted, "insider trading" would apply to conduct never

3

conceived of by courts, including those examples provided in the Motion to Dismiss, such as an art gallery employee who uses her position to promote and profitably sell a painting she owns over other paintings at the gallery. *See* Motion to Dismiss Opening Br. at 10. Plainly, there cannot exist "insider trading" of non-securities or non-commodities (such as NFTs), and therefore the term "insider trading" is irrelevant to the instant prosecution.

The government persists, however, that the "insider trading" moniker "is useful for identifying a particular species of misconduct: namely, crimes in which someone with non-public information about an asset improperly uses that information to trade the asset or helps someone else trade it." Opp. Br. at 4. Interestingly, despite previously referring to insider trading as "nomenclature" not to be "taken literally," *see supra* at 2, the government now pivots once more and ascribes judicial significance to the term with an entirely new standard. And through this new standard, the government aims to expand 40 years of jurisprudence on insider trading, applying it to an entirely new area of law that has not been conceived of under the Securities and Exchange Act of 1934 or the Commodity Exchange Act, 7 U.S.C. § 1 *et seq*.

In neither its Motion to Dismiss Opposition nor in its Opposition to the instant motion is the government able to cite a single case where "insider trading" has been used outside the securities or commodities context, much less in the limitless context it proposes. *See generally* MTD Opp. Br.; *see generally* Opp. Br. Instead, the government baselessly asks this Court to permit the extension of insider trading prosecutions to anything the government may see fit. Respectfully, the Court should not do so. The phrase "insider trading" should be stricken as it is utterly irrelevant.

**II.     The Term "Insider Trading" Is Inflammatory and Prejudicial**

As noted in the Opening Brief, insider trading enforcement is a hot-button topic in the United States, as high-profile trials and investigations are regularly presented as front-page news.

*See* Opening Br. at 5 n.5.  Of course, the government is aware of this and its provocative use of the phrase "insider trading" has unsurprisingly garnered significant media attention here.  *See* Opening Br. at 2 n.2.  But as discussed in Defendant's Motion to Dismiss and in the Opening Brief, the government has conceded that the allegations in this case bear no nexus to the financial markets.  *See* Opening Br. at 2; Motion to Dismiss Opening Br. at 6-10; MTD Reply Br. at 2-6.

Nonetheless, the government contends that, "The moniker 'insider trading' aptly captures [the alleged] conduct, and the fact that the Indictment alleges that the insider trading was in NFTs or Featured NFTs ensures there will be no confusion about whether [Defendant] was trading a different type of asset."  Opp. Br. at 3.  As discussed *supra*, the moniker "insider trading" does not capture the alleged conduct, and in fact describes an entirely separate species of conduct not at all relevant to the instant case.  But further, the issue is not whether the jury will be confused as to whether securities or commodities—as opposed to NFTs—were allegedly traded here, but rather whether the government's incorrect labeling of the Defendant as an "insider trader" will inflame the jury to mistakenly view the Defendant as akin to a high-powered Wall Street trader gone rogue.  Indeed, "insider trading" carries with it inflammatory and highly prejudicial connotations for a type of crime that has not even been charged.  This very point was recognized by the Court in *United States v. Singhal*.  *United States v. Singhal*, 876 F. Supp. 2d 82, 103 (D.D.C. 2012) ("These references [to insider trading] are highly prejudicial to defendants because they reference a current hot topic in U.S. law").

Similarly missing the mark is the government's reliance on *Scarpa*, *Stein*, and *DeFabritus* to argue that whether "insider trading" is inflammatory or prejudicial is of no moment, because the government falsely presumes (in citing these cases) that "insider trading" is relevant to the instant prosecution, which it is not.  Opp. Br. at 4 (arguing that "if an allegation … is relevant …

5

then regardless of how prejudicial the language is, it may not be stricken," citing *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *Stein*, 429 F. Supp. 2d at 647; *United States v. DeFabritus*, 605 F. Supp. 1538, 1546-47 (S.D.N.Y. 1985)).

Likewise, the government's attempt to distinguish this case from *Singhal*, *See* Opp. Br. at 4, on the basis that the crimes charged there "had nothing to do with" insider trading fall flat, because, for the reasons discussed *supra* Section I, insider trading "ha[s] nothing to do with" the wire fraud charges here absent allegations of securities or commodities trades. The Opposition's criticism of *United States v. Carey*, 152 F. Supp. 2d 415 (S.D.N.Y. 2001), suffers the same fatal flaw. *See* Opp. Br. at 5. The presumption that the "insider trading" label is somehow more "relevant" here than the language at issue was in *Carey* is, as discussed above, flatly incorrect. *See supra* Section I.

In the government's final attempt to save face, it refers this Court to two articles (from before the Indictment's publication) written by news outlets in an attempt to minimize its role in exacerbating and promoting the incorrect use of "insider trading" language. *See* Opp. Br. at 6. But these articles only buttress Defendant's point that the phrase "insider trading" is highly inflammatory and prejudicial—attracting attention and scrutiny from the media and society writ-large—and is easily misunderstood by the lay person, such as the authors of those articles over a year ago. Indeed, the fact that certain members of the media mistakenly misused "insider trading" prior to the Indictment is unfortunate, but the fact that the Department of Justice has adopted and bolstered that misuse is far more serious and can affect the Defendant's due process rights in this case.[2]

---

[2] Further, the few media articles that used the term "insider trading" before the Indictment's publication simply pale in volume when compared to the quantity of articles that were published following the Indictment's release. *See, e.g.*, CNBC, *Former OpenSea employee charged in first-ever NFT insider trading case*, June 1, 2022, https://www.cnbc.com/2022/06/01/former-opensea-employee-charged-in-first-ever-nft-insider-trading-case.html;

In sum, the term "insider trading" is irrelevant to the government's charges and its inflammatory presence is likely to suggest to a jury (as it has to the media) that Defendant has committed a criminal offense that has not actually been alleged. *See* Opening Br. at 5 (citing *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (striking surplusage that "will lead the jury to speculate that [the] defendant was guilty of or responsible for actions in addition to those charged in the indictment")). Accordingly, this language should be stricken from the Indictment and precluded from use at trial.

## CONCLUSION

For the aforementioned reasons and those provided in the Opening Brief, the Court should grant the instant motion in its entirety.

Dated: New York, New York
October 21, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: */s/ David I. Miller*
David I. Miller
Gregory W. Kehoe
Charles J. Berk
One Vanderbilt Avenue
New York, NY 10017
(t) (212) 801-9200; (f) (212) 801-6400

*Counsel for Defendant
Nathaniel Chastain*

---

NBC News, *Former OpenSea employee arrested, charged with NFT insider trading*, June 1, 2022, https://www.nbcnews.com/tech/internet/opensea-nft-nate-chastain-arrest-charged-insider-trading-rcna31489; Crypto Briefing, *Nate Chastain Indicted for NFT Insider Trading Scheme*, June 1, 2022, https://cryptobriefing.com/former-opensea-employee-charged-insider-trading-scheme/; Financial Times, *US brings first insider trading case involving NFTs*, June 1, 2022, https://www.ft.com/content/d6dfc63e-9078-4612-bda5-71224c9d6fb5; Decrypt, *DOJ Charges Former OpenSea Exec in 'Insider Trading Scheme'*, June 1, 2022, https://decrypt.co/101827/doj-charges-former-opensea-exec-in-insider-trading-scheme.