**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 22-cr-305 (JMF) |
| | ) |
| NATHANIEL CHASTAIN, | ) **<u>ORAL ARGUMENT REQUESTED</u>** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF NATHANIEL CHASTAIN'S**
**<u>MOTION FOR EARLY RETURN OF A RULE 17(c) SUBPOENA</u>**

David I. Miller
Gregory W. Kehoe
Charles J. Berk
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

*Counsel for Defendant*
*Nathaniel Chastain*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.     The Proposed Subpoena's Requests Are Based Directly on the
          Government's Disclosures and Seek Specific Evidence ....................................... 2

    II.    The Proposed Subpoena's Requests Are Relevant ................................................ 6

    III.   The Proposed Subpoena's Requests Are Admissible ........................................... 8

CONCLUSION .................................................................................................................. 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AngioDynamics v. C.R. Bard, Inc.*,
  No. 17-cv-598, 2022 WL 2643583 (N.D.N.Y. July 8, 2022) ...................................................9

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*,
  112 F.Supp.3d 122 (S.D.N.Y. 2015)..................................................................................9

*United States v. Avenatti*,
  19-cr-373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) ..........................................4

*United States v. Carton*,
  17-cr-680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) .........................................10

*United States v. Caruso*,
  948 F. Supp 382 (D.N.J. 1996) ..................................................................................5, 6, 8

*United States v. Chen De Yian*,
  94-cr-719 (DLC), 1995 WL 614563 (S.D.N.Y. Oct. 19, 1995).........................................2

*United States v. Donziger*,
  19-cr-561 (LAP), 2021 WL 1865376 (S.D.N.Y. May 10, 2021) .......................................9

*United States v. Layton*,
  90 F.R.D. 514 (N.D. Cal 1981).......................................................................................8

*United States v. Nixon*,
  418 U.S. 683 (1974) .......................................................................................................1

*United States v. Ray*,
  337 F.R.D. 561 (S.D.N.Y. 2020) ....................................................................................2

*United States v. RW Professional Leasing Servs. Corp.*,
  228 F.R.D. 158 (E.D.N.Y. 2005) ....................................................................................3

*United States v. Tucker*,
  249 F.R.D. 58 (S.D.N.Y. 2008) .......................................................................................1

*United States v. Weissman*,
  01-cr-529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ....................................2

**Statutes**

18 U.S.C. § 3500..................................................................................................................6

**Other Authorities**

Fed. R. Crim. P. 17 ................................................................................................... *passim*

Fed. R. Evid. 803 ...............................................................................................................8, 9

## PRELIMINARY STATEMENT

In his opening brief ("Opening Brief" or "Opening Br.") (ECF No. 33), the defendant Nathaniel Chastain (the "Defendant") demonstrated that pursuant to Rule 17(c): (i) the Defendant is entitled to relevant and admissible material discussing OpenSea's beliefs, views, and practices concerning whether "featured" artists listings had any inherent commercial, economic, and/or market value; (ii) the government has, to date, provided only a portion of these communications; and (iii) the Defendant's proposed Rule 17(c) subpoena seeking the remainder of these relevant and admissible communications satisfies both the requirements espoused in *United States v. Nixon*, 418 U.S. 683 (1974), and the more appropriate "materiality" standard set forth in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008).

The Opposition Brief's ("Opp. Br.") (ECF No. 36) rebuttals are surprising and unpersuasive. Notwithstanding the import and obvious relevance of the requested material, the government claims that the Defendant's subpoena Requests are insufficiently specific because the Defendant has failed to identify the *precise* documents that it believes are in OpenSea's possession. But the law's view of specificity is much more sensible, requiring *reasonable* particularity with regard to Rule 17(c) subpoena requests. The Defendant's Requests—each narrowed by date, subject matter, and tailored to seek evidence that the government failed to gather from OpenSea— fall plainly within the requisite standard of specificity. Even so, in an effort to mitigate any perceived burden on OpenSea, as shown by the attached revised Proposed Subpoena, the Defendant has further narrowed the Proposed Subpoena. Moreover, the government's relevance and admissibility arguments disregard the fact that each Request in the Proposed Subpoena seeks documents that: (1) are directly related to the critical issue in this case—whether the allegedly misappropriated information constitutes OpenSea's "property"; and (2) were created in the ordinary course of OpenSea's regularly conducted business operations.

For the reasons set forth in the Opening Brief and herein, it is respectfully submitted that the instant motion should be granted.

## ARGUMENT

As an initial matter, the Defendant notes that the government lacks standing to oppose the instant motion.[1]  But even if the government did have standing, as described herein, the Proposed Subpoena—particularly as narrowed in Exhibit A to this Reply Memorandum[2]—not only seeks highly-relevant information, it satisfies the *Nixon* standard (even though we submit the appropriate "materiality" standard serves the ends of justice here).[3]

## I.       The Proposed Subpoena's Requests Are Based Directly on the Government's Disclosures and Seek Specific Evidence

In its Opening Brief, the Defendant noted that the government's case hinges upon its broad definition of "property" under the wire fraud statute, yet the government chose to gather and review an incomplete set of communications from OpenSea relating to the property issue.  *See* Opening Br. at 8.  OpenSea's beliefs as to whether the information regarding NFT features was, in fact, its inherently valuable "property" and whether that information was "misappropriated" is

---

[1] Under the majority rule in this District, "the Government may move to quash [a Rule 17(c) subpoena] only if the alleged victim has asked it to, or if the Government can assert legitimate interests of its own in quashing the subpoenas." *United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020).  Here, there is no evidence that OpenSea has asked the government to submit this Opposition.  Instead, the government has asserted standing on the basis that it is "a party to this case, and because the defendant moved for a Rule 17(c) subpoena." Opp. Br. at 6 n.3.  This is insufficient to confer standing.  *See Ray*, 337 F.R.D. at 571 (concluding that the government lacked standing to quash defendant's Rule 17(c) motion without a request by the victim or the government's own legitimate interest).  Nor does the government "stand in the shoes" of OpenSea, Opp. Br. at 6-7 n.3, as was the case in *United States v. Chen De Yian*, 94-cr-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995), where the court found standing based on the subpoenaed party's request to the government.  Defendant appreciates, however, that this Court may nonetheless resolve the propriety of a Rule 17(c) motion.  *United States v. Weissman*, 01-cr-529 (BSJ), 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002) ("it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)").

[2] While the Defendant believes the original Proposed Subpoena satisfies both the *Tucker* and more stringent *Nixon* standard, *see* Motion For Issuance of Rule 17(c) Subpoena (ECF No. 32), Exhibit A, the Defendant has modified the Proposed Subpoena in an effort to mitigate any perceived burden on OpenSea.  Though the Defendant has maintained the same numbering for ease of reference, based on the government's recent document production from OpenSea, the revised Proposed Subpoena has withdrawn Request 1(b).

[3] *See* Opening Br. at 5-7.

plainly relevant to Mr. Chastain's defense. *See id.* at 9. The Proposed Subpoena's tailored Requests are likely to reach documents and information that touch upon precisely these issues. *See id.*

The government's Opposition incorrectly asserts that the Proposed Subpoena "bears the hallmarks of a generalized fishing expedition that fails to meet the specificity requirement set forth in *Nixon*," Opp. Br. at 7, and mistakenly claims that Requests 1(a), 1(c), and 1(d) are "based on speculation." *Id.* at 8. While the government asks this Court to require exacting precision as to the Proposed Subpoena's identification of relevant evidence, the reality is that "a request is generally sufficiently specific where it limits documents to a *reasonable* period of time and states with *reasonable* particularity the subjects to which the documents relate."[4] Request 1(a), for instance, is not only highly-specific in its language—requesting communications only involving OpenSea's two co-founders that discuss the Defendant within a narrow time frame—but also seeks documents critically relevant to fact that OpenSea did not consider the information at issue to be "property" bearing any economic or market value.

Indeed, Requests 1(a), 1(c), and 1(d) are based on the government's *Brady* disclosures. To this end, the government's July 11, 2022 *Brady* disclosure notes that multiple OpenSea employees have stated, in sum and substance, that the "featured artist" section was of no inherent market and/or economic value to OpenSea. According to the government, OpenSea's co-founder Devin Finzer stated to OpenSea's counsel that he "did not believe that the point of the featured work section was to generate revenue," and that he "does not believe that there is anything intrinsically valuable to OpenSea to keep the identity of the featured work secret." Similarly, OpenSea co-founder Alex Atallah advised OpenSea's counsel that the Defendant's decisions regarding the

---

[4] *United States v. RW Professional Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (emphasis added).

scheduling of featured artists "was arbitrary" and that if the Defendant decided to feature an artist earlier than planned, it "would have no effect [on OpenSea]." Thus, Defendant's Request is anything but a "generalized fishing expedition." Opp. Br. at 7.[5]

These statements directly undercut the government's theory that the Defendant's "featured artist" schedule and related decision-making constituted OpenSea's "property" under the wire fraud statute. Unlike the *Avenatti* case on which the government relies, *see* Opp. Br. at 8, where the defendant blindly requested communications about which he "offered only speculation as to what [might have been said]," Requests 1(a), 1(c), and 1(d) emanate from statements the Defendant *knows were actually made*, and the Defendant now seeks specific, admissible evidence relating to those statements.[6]

Additionally, while Requests 1(c) and 1(d) were tailored to seek evidence discussing the Defendant—without subject limitation—in the time period between the Defendant's departure from OpenSea and his arrest, and satisfy *Nixon's* specificity requirement, Requests 1(c) and 1(d) have been further narrowed to seek communications and documents discussing the Defendant only "concerning OpenSea's 'featured work' homepage section" to mitigate any perceived burden on OpenSea. Exhibit A.

As to Request 2, the government argues that Defendant's request for communications *surrounding* the "employee policies, confidentiality policies, or trading policies" produced by OpenSea is insufficiently specific because it is "without any temporal limitation." Plainly, this is incorrect, as the Proposed Subpoena's instructions limit Request 2 to the period between April 1, 2021 and June 1, 2022. *See* Exhibit A, Instruction A. Courts have found such a time limitation to

---

[5] Similarly, the government disclosed that another senior officer stated that, "OpenSea did not think there was inherent value in the confidentiality of the featured NFT artist selection," further buttressing that the allegedly misappropriated information at issue was not OpenSea's "property" under the wire fraud statute.
[6] *United States v. Avenatti*, 19-cr-373 (PGG), 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020).

be sufficiently specific and have even approved of requests seeking documents within far longer date ranges.[7]

Further, as to Request 2, the government also contends that the Proposed Subpoena would include "employment and confidentiality agreements with other OpenSea employees," and argues there is "[no] reason to believe that [] non-privileged communications exist."  Opp. Br. at 10.  To be clear, Defendant does not seek documents relating to other employees and has narrowed the Proposed Subpoena to only seek communications discussing changes to OpenSea's confidentiality, employee information use, and trading policies.  *See* Exhibit A.  As in Requests 1(a), 1(c), and 1(d), Request 2 seeks documents directly related to the government's *Brady* disclosures.  For example, Devin Finzer made a statement to the government that, "prior to the Chastain incident he did not really think about the featured NFT and the context of whether it was confidential or not."  Further, the Defendant knows that immediately following his departure, OpenSea announced that it would be implementing a new policy regarding employee information use, specifically as it relates to the very conduct alleged in this case.[8]  Of course, the Defendant cannot precisely identify the non-privileged communications surrounding these policies.  But the law does not require such precision.  Instead, "the defendant's subpoena is as specific as could be reasonably expected under the circumstances," as it is all but certain that OpenSea's senior officers

---

[7] *See* Opening Br. at 12; *United States v. Caruso*, 948 F. Supp 382, 396 (D.N.J. 1996) (granting Rule 17(c) motion seeking, *inter alia*, a company's "policies and practices" over a nine-year period).
[8] *See* Opening Br. at 11 n.5 (citing OpenSea, *Our commitment to the OpenSea community*, September 15, 2021, https://opensea.io/blog/announcements/employee-information-use-at-opensea).    Additionally,   the   government's discovery shows that: (1) on November 5, 2021, OpenSea officially implemented an updated policy regarding employee information use; and (2) OpenSea implemented an updated version of the November 5, 2021 policy on September 27, 2022.

communicated with each other regarding the events at issue and the implementation of new company policies.[9]

The government objects to Request 3, in part, because "the Government has already produced to the defendant all documents produced by OpenSea as well as cover letters that accompanied those productions."  Opp. Br. at 10.  But the Proposed Subpoena is designed to also seek presentations or other communications with the U.S. Attorney's Office (including attorney proffers)—not just document productions and cover letters.  Further, the government's overbreadth concern—insofar as Request 3 requires OpenSea to produce communications with all government agencies, *see* Opp. Br. at 10-11—is easily resolved.  As revised, the Proposed Subpoena only seeks documents and communications between OpenSea and the U.S. Attorney's Office in connection with the government's investigation regarding Nathaniel Chastain.  Notably, the government seemingly agrees that Defendant is entitled to these types of records, as it produced—following this motion—certain slides used by OpenSea in a presentation to the government.  Request 3 merely seeks any additional documents of that nature, and does not seek material subject to 18 U.S.C. § 3500.[10]  Opp. Br. at 11.

## II.   The Proposed Subpoena's Requests Are Relevant

The Opening Brief clearly showed the relevance of each Request in the Proposed Subpoena.  Each Request seeks information regarding OpenSea's views as to whether information regarding featured NFTs was, in fact, "property" as contemplated by the wire fraud statute.

---

[9] *Caruso*, 948 F. Supp at 399.  To the extent the government is concerned that Defendant's Requests may yield privileged materials in OpenSea's possession, *see* Opp. Br. at 8, 10, it is presumed that OpenSea's counsel is more than capable of identifying and withholding privileged material as necessary.

[10] We believe documents memorializing OpenSea's attorney proffers to the U.S. attorney's Office should be produced under this subpoena.

Whether that information was "misappropriated" is plainly relevant to Mr. Chastain's defense.  *See* Opening Br. at 9.  In short, the relevance of each Request is undeniable.[11]

Request 1 seeks plainly relevant documents and communications concerning the statements of OpenSea's co-founders, OpenSea employees, and Board of Directors members regarding this matter during the time period most critical to this case.  *See* Opening Br. at 10.  The Proposed Subpoena also requests communications surrounding changes to OpenSea's confidentiality policies, employee information use policies, and trading policies.  These communications are almost certain to shed light on¸ *inter alia*, why OpenSea felt it was necessary to, upon the Defendant's departure, "implement[]…policies" governing employee purchases of featured NFTs, which goes directly to the issue of whether OpenSea believed its prior policies (*i.e.,* those in place during Defendant's employment) prohibited the Defendant's alleged conduct.[12]  The Proposed Subpoena's third Request seeks documents, presentations, or communications between OpenSea and the U.S. Attorney's Office in connection with the government's investigation of the Defendant.  Here, despite statements to the contrary in its Opposition, and as shown *supra*, the government evidently concedes that documents in this category are relevant as it has now produced some of them following Defendant's submission of the instant motion.

In its Opposition, the government suggests that Requests 1(a), 1(c), and 1(d) are "irrelevant" because "employees' communications about the defendant after he left the company are not relevant to his intent or whether the information he misappropriated is property."  Opp. Br. at 12.  But whether the documents sought by Requests 1(a), 1(c), and 1(d) are relevant to Defendant's intent is of little import.  The documents ***are clearly relevant*** to whether ***OpenSea***

---

[11] Indeed, it is surprising that the government would argue to the contrary and begs the question: why is the government afraid to allow the Defendant to have access to the requested materials?

[12] *See supra* at 5 n.8.

considered the allegedly misappropriated information to be its "property."  Of course, those communications certainly occurred after the Defendant left OpenSea.[13]

As to Requests 2 and 3, the government implausibly claims that (1) communications surrounding OpenSea's policies and (2) OpenSea's communications with the government "have nothing to do with" or "are irrelevant to the defendant's guilt or innocence."  Opp. Br. at 14.  The point bears repeating: a key issue in this case is whether OpenSea was deprived of its "property" under the wire fraud statute, *i.e.,* whether the purported "victim" in this case believed it suffered any loss at all.  It is difficult to conceive of documents more relevant to resolving that question than the requested documents.

## III.    The Proposed Subpoena's Requests Are Admissible

Contrary to the government's assertions, the Proposed Subpoena seeks only documents that are admissible.  The government incorrectly argues that Requests 1(a), 1(c), and 1(d) call for employee-communications that would constitute inadmissible hearsay because: "If these employees were expressing a viewpoint as to whether certain information was or was not property, that is an out of court statement being offered for the truth—to prove that information was not property."  Opp. Br. at 12.  Such statements would not be admitted into evidence for their truth, but instead for the purpose of demonstrating OpenSea employees' mental state, *i.e.,* what OpenSea *believed* regarding the information's status as "property."[14]

Further, the government's conclusion that these communications would not be admissible business records is erroneous.  While the government relies on *AngioDynamics* for the proposition

---

[13] *Caruso*, 948 F. Supp at 396, 398 (granting Rule 17(c) motion where "the documents sought in the subpoena will help [defendant] establish a variance between stated policy and usual practice" and rejecting argument that subpoena was overbroad because it sought documents from years after the alleged conduct took place).

[14] *See* Fed. R. Evid. 803(3); *United States v. Layton*, 90 F.R.D. 514, 519-520 (N.D. Cal 1981) (authorizing service of Rule 17(c) subpoena where the information requested was "substantially likely" to contain evidence of the defendant's mental state).

that an email created within a business does not, without more, satisfy the business records exception, the work-related communications sought by the Proposed Subpoena are admissible as they were "kept in the course of [OpenSea's] regularly conducted business activity and … was the regular practice of that business activity to make [work related e-mails]."[15]  These communications were not "one-off statements" as the government suggests, Opp. Br. at 13, but rather regular communications made by OpenSea's employees in the ordinary course of their work-related duties.  Again, we ask rhetorically: why is the government so worried about having this obviously relevant material produced to the defense?  In any event, the requested material is clearly relevant and questions regarding admissibility can be addressed by the Court in due course at trial.

Next, the government appears to only object to the admissibility of Request 2 on the basis of relevance, which has been discussed at length in the Opening Brief and *supra*.[16]  Again, and because the material goes to OpenSea's state of mind, the documents sought in Request 3 are also admissible.  The cases the government relies on to argue to the contrary are inapposite.  In *Donziger*, for instance, *see* Opp. Br. at 14, the court found that documents between a non-party law firm and the court were inadmissible hearsay because the defendant did not provide a basis for the documents' admission other than by baldly listing certain hearsay exceptions without more explanation.[17]  The Defendant has provided both the basis for admissibility (*i.e.,* Fed. R. Evid.

---

[15] *See* Opp. Br. at 12-13 (citing *AngioDynamics v. C.R. Bard, Inc.*, 17-cv-598 (BKS/CFH), 2022 WL 2643583, at *16 (N.D.N.Y. July 8, 2022); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F.Supp.3d 122, 141 (S.D.N.Y. 2015) ("emails satisfied all the criteria for business records" where certified by custodian of records and where "[neither] the source of information nor or [sic] the method or circumstances of preparation indicate a lack of trustworthiness").

[16] In short, communications surrounding changes to OpenSea's employee policies, confidentiality policies, and trading policies are undoubtedly relevant and admissible as documents that show OpenSea employees' mental state, the company's beliefs regarding the Defendant's behavior, and whether the information he allegedly "misappropriated" was OpenSea's "property."  *See* Fed. R. Evid. 803(3).

[17] *See United States v. Donziger*, 19-cr-561 (LAP), 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021).

803(3)) and also provided an explanation as to why these documents would meet that exception.[18] Indeed, the government's position lacks credibility given that, as noted previously, it produced such communications in response to the instant motion.[19]

Accordingly, it is submitted that the Proposed Subpoena (as revised) satisfies both the *Nixon* standard and the "materiality" standard, and should be issued with the requested early return date.

## <u>CONCLUSION</u>

For the aforementioned reasons and those provided in the Opening Brief, the Court should authorize service of the attached Rule 17(c) subpoena.

Dated: New York, New York
October 21, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: */s/ David I. Miller*
David I. Miller
Gregory W. Kehoe
Charles J. Berk
One Vanderbilt Avenue
New York, NY 10017
(t) (212) 801-9200; (f) (212) 801-6400

*Counsel for Defendant*
*Nathaniel Chastain*

---

[18] Similarly, the government's reliance on *United States v. Carton* is inapposite because in that case, the defendant "offer[ed] no basis to believe that communications between the Government and the Law Firm contain exculpatory evidence." *United States v. Carton*, 17-cr-680 (CM), 2018 WL 5818107, at *6 (S.D.N.Y. Oct. 19, 2018). Here, as discussed, the Defendant has already seen highly exculpatory material in mere snippets of OpenSea's communications with the government.

[19] Finally, the Defendant notes that the government does not contest—because it cannot—that the Defendant meets the other *Nixon* factors set forth in the Opening Brief. *See* Opening Br. at 12.

10