UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                        :

UNITED STATES OF AMERICA

                        :

        - v. -                    :          No. 22 Cr. 305 (JMF)

                        :

NATHANIEL CHASTAIN,

                        :

          Defendant.

                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

<br>

## GOVERNMENT'S MOTION TO EXCLUDE THE TESTIMONY
## OF DR. MATTHEW EDMAND AND PROFESSOR DOUGLAS SKINNER

<br>

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Thomas Burnett
Allison Nichols
Nicolas Roos
Assistant United States Attorneys
- Of Counsel -

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ...................................................................................................................... 7

   I.   This Court Should Exclude Dr. Edman's Proposed Testimony. ........................................ 7

        A.    Testimony About What the Defendant Attempted to Do Is Impermissible. ........... 7

            1.   Opinion Testimony About Whether Chastain Attempted to Conceal his
                Identity and Activity Is Expressly Precluded by Rule 704(b). ............................ 8

            2.   No Reasoning or Methodology Allow Dr. Edman to Opine on What
                Chastain Thought, Meant, or Intended. ............................................................. 10

        B.    Testimony About "Common" Practices for "Sophisticated Cryptocurrency
            Users" Is Irrelevant. ........................................................................................... 12

   II.   This Court Should Exclude, or Strictly Limit, Professor Skinner's Proposed
     Testimony. ..................................................................................................................... 13

        A.    The Proposed Testimony About "Confidential Business Information" Is
            Unreliable and Usurps the Role of the Court and Jury. ....................................... 13

        B.    The Proposed Testimony About "Fundamental Information" Does Not
            Reliably Fit the Facts and Will Mislead the Jury. ............................................... 16

        C.    The Proposed Testimony About "Informed Trading" Does Not Reliably Fit
            the Facts and Will Mislead the Jury. ................................................................... 18

        D.    The Proposed Testimony Regarding News of Chastain's Misconduct Should
            Be Excluded Because It Is Unreliable and Wrongly Increases the
            Government's Burden. ........................................................................................ 21

        E.    This Court Should Exclude or Strictly Limit the Proposed Testimony
            Regarding Two-Sided Markets and OpenSea's Business Model. ........................ 24

CONCLUSION ................................................................................................................. 26

# TABLE OF AUTHORITIES

Page

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase,*
2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) .......................................................... 6

*Carpenter v. United States*, 484 U.S. 19 (1987) ............................................. 17, 20, 21

*City of Provid., R.I. v. Bats Glob. Mkts.,* 2022 WL 902402 (S.D.N.Y. Mar. 28, 2022) ............ 6, 7

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) ....................................... 5, 6, 8

*Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130–68 (N.D.N.Y. 2010) ............................ 11

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ....................................................... 7, 17

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) ....................................................... 13-14

*In re Fosamax Products Liability Litigation,* 645 F. Supp. 2d 164 (S.D.N.Y.2009) ................. 10

*In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) .............. 6, 10-11, 11

*Kewazinga Corp. v. Microsoft Corp.,* 2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) ................... 6

*Krause v. CSX Transp.*, 984 F. Supp. 2d 62 (N.D.N.Y. 2013) ....................................... 11

*Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505 (2d Cir. 1977) ........................................ 14

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ....................................... 7, 8

*Taylor v. Evans,* 1997 WL 154010 (S.D.N.Y. 1997) .................................................. 11

*United States v. Boissoneault*, 926 F.2d 230 (2d Cir. 1991) ....................................... 10

*United States v. DiDomenico*, 985 F.2d 1159 (2d Cir. 1993) .................................... 9, 10

*United States v. Ganesh,* 16 Cr. 211 (LHK), 2017 WL 11439292 (N.D. Cal. Oct. 20, 2017) ...... 9

*United States v. Grossman*, 843 F.2d 78 (2d Cir. 1988) .................................... 15, 16, 20

*United States v. Jabar*, 19 F.4th 66 (2d Cir. 2021) ....................................... 21, 22, 24

*United States v. Lumpkin*, 192 F.3d 28 (2d Cir. 1999) ................................... 6, 13, 14, 15

*United States v. Mendlowitz,* 2019 WL 6977120 (S.D.N.Y. Dec. 20, 2019) ............................ 12

*United States v. Mulder,* 273 F.3d 91 (2d Cir. 2001) .................................................. 12

*United States v. Muzaffar,*714 F. App'x 52 (2d Cir. 2017) ........................................ 9

*U nited States v. Nektalov,* 2004 WL 1469487 (S.D.N.Y. June 30, 2004) ................................. 12

*United States v. Newkirk*, 684 F. App'x 95 (2d Cir. 2017) ....................................... 12

*United States v. Sanders*, 2013 WL 1421487 (S.D.N.Y. Mar. 27, 2013) ............................. 12, 13

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988) ............................................. 10, 14

i

## INTRODUCTION

OpenSea ran a marketplace for buying and selling non-fungible tokens ("NFTs"). To increase user engagement, teach people about NFTs, and garner goodwill among artists, the company decided to display a rotating featured NFT front and center on its homepage. This display had the effect of increasing the value of the featured NFT, and therefore internal information regarding what NFTs would be featured was also valuable. Nathaniel Chastain, the defendant, was in charge of selecting that featured NFT, including by picking from ideas proposed by other employees and NFT fans. He abused that position of trust, using information about what NFT was going to be featured, so he could buy the NFT beforehand, then sell it at a profit. To carry out the scheme, the defendant did not use his normal OpenSea accounts, which were publicly associated with him, but instead created new, anonymous accounts.

The jury in this case must determine whether Chastain defrauded OpenSea by misappropriating its confidential business information. In his defense, Chastain intends to call two expert witnesses. The first, Dr. Matthew Edman, plans to opine that Chastain did not attempt to hide his conduct by using tools like VPNs or tools for scrambling cryptocurrency. The second, Professor Douglas Skinner, plans to directly opine on the meaning of "confidential business information," then introduce the jury to an array of economic concepts, such as the concept of "fundamental information" and "informed trading."

Testimony from both experts should be precluded in its entirety, or at a minimum, strictly curtailed. Dr. Edman's testimony is, fundamentally, an effort to have an expert tell the jury that Chastain did not try to hide his activities. That is not a proper subject of expert testimony: no expert can get inside the defendant's head, and it is the jury's job to assess Chastain's intent. Professor Skinner, for his part, also goes well outside the bounds of appropriate expert testimony.

His proposed testimony about confidential business information directly intrudes on the role of the court to explain the law and the jury to apply the law to the facts, and his testimony about other economic concepts will serve only to distract the jury from the relevant factual issues in the case.

## **BACKGROUND**

On May 31, 2022, a grand jury in the Southern District of New York returned an indictment charging Chastain with one count of wire fraud, in violation of 18 U.S.C. § 1349, and one count of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  Both charges arise out of Chastain's scheme to misappropriate confidential business information from his employer, OpenSea, about what NFTs OpenSea planned to feature on its homepage, so Chastain could secretly purchase those NFTs before they were featured, then resell them at a profit.  *See* Indictment ¶¶ 1-3.  Trial on these charges is scheduled to begin on April 24, 2023.

Consistent with this Court's December 21, 2022 order (ECF No. 48), the Government gave the defense notice (the "Government Expert Notice"), on February 23, 2023, that it may call Professor Daniel Taylor to testify as an expert witness at trial.  *See* Ex. A, Gov. Expert Notice. Professor Daniel Taylor is the Arthur Anderson Chaired Professor at the Wharton School, where he teaches courses, and conducts research, on issues related to information in capital markets, insider trading, and accounting fraud.  He holds a Master's degree in Economics from Duke University, and a Ph.D. in Business from Stanford University.

As explained in the Government Expert Notice, Professor Taylor intends to present a three-part opinion.  He will begin by explaining that, from an economic perspective, information about upcoming featured NFTs was valuable because it was fundamentally information about expected future demand.  Ex. A, at 1-3.  He will then explain that the information about upcoming featured NFTs did not *lack* value simply because OpenSea did not sell or trade on that information.  There are many situations, he will explain, in which companies do not sell or license information because

maintaining its confidentiality serves a valuable business purpose. *Id.* at 3-4.  One example that is particularly applicable to OpenSea is the context of companies that run marketplaces.  Professor Taylor will explain that the economic literature shows that trust is important to functioning marketplaces, and that the perception that certain market participants have unfair advantages— say, by being able to use inside information—can cause people to leave marketplaces.  *Id.* Professor Taylor will testify that this literature is useful for understanding why maintaining trust would be important for a company like OpenSea, that runs an online marketplace.  *Id.*  He will also explain that the reaction to Chastain's misconduct—both by the company and the public— corroborates his view that the literature on trust applies to OpenSea.

Professor Taylor's opinion is narrow.  He will not opine that information about upcoming featured NFTs was "confidential business information" or try to offer a definition of that term.[1] He also will not opine on whether or not OpenSea ultimately lost users or traffic, or suffered some long-lasting erosion of trust, from Chastain's misconduct.  To the extent he addresses any events after Chastain's trading was revealed, it is solely to corroborate his view that the concept of "trust" in the academic literature about markets applies in the context of OpenSea's business.

The defense provided its initial expert notice on March 24, 2023, consistent with this Court's schedule.  *See* Ex. B, Original Def. Expert Notice.  The defense identified two experts it may call during its case: Dr. Matthew Edman and Professor Douglas Skinner.  Dr. Edman runs a private cybersecurity firm specializing in cryptocurrency and digital forensics, and Professor Skinner is a Professor of Accounting at the University of Chicago.

On March 27, 2023, the Government sent a letter to the defendant explaining that the

---

[1] The Government Expert Notice at times uses the phrase "confidential business information" as part of tracking the language in the indictment, but Professor Taylor will not be offering an opinion that information about upcoming featured NFTs was confidential business information.

defense expert notice was deficient because it did not comply with the requirement imposed by Federal Rule of Criminal Procedure 16(b)(1)(C)(i) that the experts sign their respective disclosures, and because the notice with respect to Professor Skinner did not provide a clear statement of Professor Skinner's anticipated opinions and the reasons for those opinions.  Ex. C, Gov. Ltr.  On March 29, 2023, the defense submitted revised expert notices.  *See* Ex. D., Edman Notice; Ex. E, Skinner Notice.  The revised notices cured the signature problem and provided a clearer statement of Professor Skinner's opinion, but did not provide a more detailed explanation of the reasons Professor Skinner believes many of his opinions are relevant to the case.

According to the Edman Notice, Dr. Edman intends to opine on what Chastain intended, or did not intend, when he took certain actions to engage in insider trading.  Dr. Edman plans to claim that Chastain "did not attempt to obfuscate his identity or conceal his OpenSea activity by using a VPN or other anonymizing technology," and that Chastain "did not attempt to obfuscate his OpenSea activity by laundering cryptocurrency funds through the use of mixers, non-KYC exchanges, or other techniques often associated with illicit activity."  Ex. D, at 2-4.  In offering these opinions, Dr. Edman also intends to testify about what, in his view "individuals engaging in illicit activity will attempt" to do to cover their tracks.  *Id.*  Separately, Dr. Edman also plans to opine that it is "common for sophisticated cryptocurrency users to use multiple wallets and wallet addresses to store and transact with their cryptocurrency," and to analyze how the Defendant used different wallets and wallet addresses in connection with his activity on OpenSea.  *Id.*

Professor Skinner, for his part, plans to offer seven opinions that range from instructing the jury on the meaning of a key legal concept—the meaning of confidential business information—to economic ideas that appear to have little to do with issues in dispute.  Ex. E, at 2-3.

The Skinner Notice identifies each opinion in a brief paragraph.  In the first two opinions,

Professor Skinner states that he will provide "background testimony regarding the economics of two-sided platforms" and "offer testimony regarding OpenSea's business model in the context of two-sided platforms." *Id.* II(b)-(c). Next, Professor Skinner plans to explain the difference between "fundamental information" and how "investor attention can affect asset prices," then opine how information about featured NFTs "differs from fundamental information." *Id.* II(d).

In his fourth opinion, Professor Skinner intends to "explain that confidential . . . business information is understood in the academic literature as that which relates to an entity's business model and its ability to generate sustainable competitive advantage," and apply that definition to the facts of the case. *Id.* II(e). Fifth, Professor Skinner will "address the concept of informed traders" and opine that Professor Taylor has not shown that information about upcoming featured NFTs had "value to OpenSea." *Id.* II(f). Sixth, he will address Professor Taylor's discussion of trust and claim that "Professor Taylor has not demonstrated that the literature on trust is applicable to" Chastain's conduct or OpenSea. *Id.* II(g). And finally, Professor Skinner plans to opine that the public reaction to Chastain's misconduct "does not imply the information about upcoming NFT features . . . had economic value to OpenSea," and to claim that there is "no reliable empirical evidence that OpenSea suffered harm from the alleged conduct." *Id.* II(h).

## **LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if "the expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is the product reliable facts and methods, that the expert has "reliable applied" to the case. Fed. R. Evid. 702. Districts courts play a "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993).

The first requirement—that the "expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"—serves a dual purpose.   First, "[i]n requiring that expert testimony be directed to 'scientific, technical, or specialized' knowledge," the requirement "ensures that expert witnesses will not testify about lay matters" that are properly left for the jury, such as "interpretations of conduct or views as to the motivation of parties."  *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).   Interpretations of certain actions and inferences about "the intent and motive" of an individual "lie outside the bounds of expert testimony."  *Id.* at 547; *see, e.g.*, *Kewazinga Corp. v. Microsoft Corp.*, 18 Civ. 4500 (GHW), 2021 WL 4066597, at *15 (S.D.N.Y. Sept. 1, 2021) ("Expert opinions about beliefs, intents, or motives are inadmissible."); *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank*, 9 Civ. 686 (SAS), 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) ("[O]pinions concerning state of mind are an inappropriate topic for expert opinion.").

Second, even testimony that is properly based on scientific, technical, or specified knowledge must "'fit' . . . the facts of the case."  *City of Provid., R.I. v. Bats Glob. Mkts.*, 14 Civ. 2811 (JMF), 2022 WL 902402, at *8 (S.D.N.Y. Mar. 28, 2022).  This requires the expert testimony to stay in bounds: The testimony must be directly pertinent to an issue that the jury has to resolve, but it must not "usurp[] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."   *United States v. Lumpkin*, 192 F.3d 28, 290 (2d Cir. 1999); *accord Rezulin Prods.*, 309 F. Supp. 2d at 541.

Rule 702 also requires that the proffered expert testimony "is the product of reliable principles and methods" that are "reliably applied . . . to the facts of the case."  This analysis must focus "solely on principles and methodology," *Daubert*, 509 U.S. at 595, but the Court is not required "to admit opinion evidence that is connected to [the facts] only by the *ipse dixit* of the

expert," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "In such a case, the Court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Bats Glob.*, 2022 WL 902402, at *8.

Finally, expert testimony may also be excluded under Federal Rules of Evidence 402 and 403 if it is irrelevant or its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Rule 403 has a "uniquely important role . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberation."  *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

## ARGUMENT

### I.  This Court Should Exclude Dr. Edman's Proposed Testimony.

Dr. Edman plans to opine that various actions Chastain took, and did not take, establish that Chastain was not attempting to obfuscate his identity or conceal his OpenSea activity.  (Ex. D at 2-4).  This testimony, which is tantamount to opinion testimony about Chastain's intentions and mental state, is entirely improper and must be precluded.  Similarly, Dr. Edman's opinions that certain behaviors are "common" for "sophisticated cryptocurrency users" and thus not indicative of intent to conceal one's online activity, is not scientifically based and is unhelpful to the finder of fact, as it risks significant confusion of the issues.  Dr. Edman's testimony should be excluded, or in the alternative, severely curtailed to avoid confusion of the issues and misleading the jury.

### A.  Testimony About What the Defendant Attempted to Do Is Impermissible.

Chastain anticipates Dr. Edman will testify that the defendant "did not attempt to obfuscate his identity or conceal his OpenSea activity by using a VPN or other anonymizing technology," Ex. D, I(c)(i); "did not attempt to use a VPN or other anonymizing technology to obfuscate or conceal his identity," *id.* I(c)(i)(2); "did not attempt to manipulate or alter his OpenSea device ID," *id.* I(c)(i)(4); "did not attempt to obfuscate his identity or conceal his OpenSea activity by

laundering cryptocurrency funds through the use of mixers, non-KYC exchanges, or other techniques often associated with illicit activity," *id.* I(c)(ii); and that the "[d]efendant's cryptocurrency transactions were not indicative of any attempts to obfuscate his identity or crypto-assets through the use of mixers and/or non-KYC cryptocurrency exchanges." *Id.* I(c)(ii)(2).

Dr. Edman's proposed testimony about what the defendant attempted or did not attempt through various actions fails under *Daubert*. Opinion testimony about whether Chastain attempted to obfuscate his identity expresses an impermissible opinion about the defendant's mental state that merely tells the jury what result to reach, and as such, it is prohibited by Federal Rule of Evidence 704(b), irrelevant, and unhelpful to the trier of fact. Nor can such testimony pass the Court's "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

### 1. Opinion Testimony About Whether Chastain Attempted to Conceal his Identity and Activity Is Expressly Precluded by Rule 704(b).

Dr. Edman's broad opinion that Chastain's activity does not reflect any attempt to conceal his identity and misconduct suggests an impermissible opinion about Chastain's mental state and a legal conclusion that the defendant could not have intended to commit a crime. This threatens to usurp the role of the jury in applying the law to the facts as well as the role of the judge in instructing on the applicable law.

Rule 704(b) of the Federal Rules of Evidence prohibits expert witnesses from "stat[ing] an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged," as "[s]uch ultimate issues are matters for the trier of fact alone." Fed. R. Evid. 704(b). The rule prevents an expert from "stating the final conclusion or inference as to a defendant's actual mental state at the time of a crime" as "expert testimony

concerning a defendant's mental state poses a uniquely heightened danger of intruding on the jury's function." *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993).   In *DiDomenico*, the Second Circuit upheld the district court's total exclusion of expert psychiatric testimony relating to the defendant's knowledge of whether certain property was stolen because it "stat[ed] the bottom-line inference" that the defendant lacked the requisite mental state to commit wire fraud and interstate transportation of stolen property.  985 F.2d at 1165.

The same principle holds true with respect to proposed expert witnesses relating to money laundering.  In *United States v. Muzaffar*, 714 F. App'x 52, 55 (2d Cir. 2017), for example, a money laundering expert's testimony was deemed not to violate Rule 704(b) because it was generic in nature, did not go to "the ultimate issue," did not provide "hypotheticals that closely matched the facts," and when the expert discussed hypothetical structuring that was "too similar" to the defendants' conduct, the court promptly "halted the line of questioning and issued a limiting instruction, informing the jury that [the expert's] testimony should not be taken 'as indicating anything about the alleged intent of these particular defendants.'"  *Id.*  Similarly, in *United States v. Ganesh*, 16 Cr. 211 (LHK), 2017 WL 11439292, at *1 (N.D. Cal. Oct. 20, 2017), the defendant attempted to offer an accounting expert to testify about whether the defendant "had the requisite state of mind to commit money laundering."  The court, however, precluded the proposed expert from "testifying as to whether [the defendant] had the requisite mental state to commit money laundering because Fed. R. Evid. 704(b) forbids such testimony."  *Id.*

Here, the proposed expert testimony is strikingly similar to the testimony excluded in *DiDomenico* and *Ganesh*, and markedly different than what was deemed permissible in *Muzaffar*. Rather than providing generalized testimony about cryptocurrency and/or money laundering techniques, the proposed expert intends to connect his opinions to the facts of the case and draw

inferences about Chastain's intent.  Although the defense disclosure uses the language of "attempt" to "conceal and obfuscate," rather than the language of mental state or specific intent, the Court should see through the defendant's "semantic camouflage." *DiDomenico*, 985 F.2d at 1165.  An opinion that Chastain "did not attempt to obfuscate his identity or conceal his OpenSea activity by laundering cryptocurrency funds" is no more than an opinion that Chastain did not intend to commit concealment money laundering.  That is particularly problematic because Dr. Edman relies "directly upon the language of the statute," *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988), by invoking the concealment language that is found in the money laundering statute, and draws "conclusions as to the significance of [the defendant's] conduct or evidence in the particular case," *United States v. Boissoneault*, 926 F.2d 230, 233 (2d Cir. 1991). The Court should thus exclude this "ultimate issue testimony" as unhelpful and pertaining to the defendant's mental state, "merely tell[ing] the jury what result to reach." Fed. R. Evid. 704 advisory comm. note.

### 2.  No Reasoning or Methodology Allow Dr. Edman to Opine on What Chastain Thought, Meant, or Intended.

Even more fundamentally, neither Dr. Edman nor any expert could be qualified to testify that they are able, based on a purported observation of an action or inaction, to make a meaningful conclusion about what the actor was subjectively attempting to do.  Such testimony would amount to conjecture, speculation, and guesswork that is beyond the ken of any putative expertise Dr. Edman may have in cryptocurrency and cybersecurity.  It would not be susceptible to testing, reasoning, or methodology that could reasonably be viewed as scientifically valid.  For those reasons, expert witnesses may not testify as to the "knowledge, motivations, intent, state of mind, or purposes" of others.  *In re Fosamax Products Liability Litigation,* 645 F. Supp. 2d 164, 192 (S.D.N.Y.2009); *see also In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d at 547 ("[T]he opinions of these witnesses on the intent, motives, or states of mind of corporations, regulatory

agencies and others have no basis in any relevant body of knowledge or expertise."); *Taylor v. Evans,* 94 Civ. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. 1997) ("[M]usings as to defendants' motivations would not be admissible if given by any witness-lay or expert."); *Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130, 167–68 (N.D.N.Y. 2010) (finding "expertise as an economist does not give [the witness] any specialized knowledge to discern the [defendant's] thought processes"); *Krause v. CSX Transp.*, 984 F. Supp. 2d 62, 80 (N.D.N.Y. 2013) (expert witness's testimony that defendants "were devoid of concern for the health and welfare" of the plaintiff was inadmissible).

Dr. Edman's more sweeping opinions that Chastain's activity does not reflect any attempt to conceal or obscure his identity are entirely attenuated from scientifically or technically valid testing, reasoning, or methodology and thus "have no basis in any relevant body of knowledge or expertise." *Rezulin Prods.*, 309 F. Supp. 2d at 547.  And, his particularized opinions that the defendant did not attempt to use a VPN or did not attempt to alter his OpenSea device identification are no more than "musings" as to Chastain's motivations that have no grounding in scientific or technical expertise and thus are inadmissible because they do not rest on a proper foundation.  *See* Fed. R. Evid. 703 & 705.  While the Government would agree, for instance, that most of the defendant's OpenSea activity and transactions at issue in the case were linked to an IP address associated with his home's Verizon Fios account, the fact that his IP address was not masked says nothing about whether the defendant may have attempted, largely unsuccessfully, to use a VPN. In other words, while Dr. Edman may be competent to describe what Chastain did with respect to certain online activity, he is not competent to opine on what Chastain meant to do.

11

**B. Testimony About "Common" Practices for "Sophisticated Cryptocurrency Users" Is Irrelevant.**

Dr. Edman's remaining opinions about the typical practices of "sophisticated cryptocurrency users" as contrasted to "techniques often associated with illicit activity," Ex. D at 3-4, are likewise unhelpful to the trier of fact, irrelevant, and run significant risk of confusing the issues. The Second Circuit has held that the Government may not offer expert testimony in order "to ask the jury to find that because criminals of a certain type classically engage in a certain kind of behavior, the defendant engaged in that kind of behavior." *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001). Thus, while general expert "testimony to provide background about techniques used to launder" may be admissible, testimony that is "specific" and includes "opinions about whether *the defendant's* conduct constitutes money laundering activity" is impermissible. *United States v. Nektalov*, 03 Cr. 828 (PKL), 2004 WL 1469487, at *3-4 (S.D.N.Y. June 30, 2004).

Chastain's proffered expert proposes to do the inverse of what is plainly prohibited by *Mulder*—to suggest that because various activities have a supposedly non-criminal application, Chastain must not have engaged in criminal behavior—which is equally if not more problematic. In addition to being largely irrelevant, the opinion testimony that certain techniques or actions are consistent with "security and privacy best practices" improperly suggests to the jury that the Government would need to prove that Chastain deployed other, different methods in order to establish that he concealed his activity. Similarly, courts in this district have precluded as irrelevant expert testimony concerning industry best practices. *See United States v. Newkirk*, 684 F. App'x 95, 97 (2d Cir. 2017); *United States v. Mendlowitz*, 17 Cr. 248 (VSB), 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019), *aff'd*, No. 21-2049, 2023 WL 2317172 (2d Cir. Mar. 2, 2023); *United States v. Sanders*, 12 Cr. 574 (LAK), 2013 WL 1421487, at *2 (S.D.N.Y. Mar. 27, 2013). Dr. Edman's remaining opinions therefore should be excluded as unhelpful to the jury.

## II. This Court Should Exclude, or Strictly Limit, Professor Skinner's Proposed Testimony.

Professor Skinner proposes to address a grab-bag of economic concepts, with little regard for whether some opinions intrude on the role of the court and the jury, and whether other opinions bear any reasonable relationship to the facts at hand. Viewed as a whole, his testimony is certain to drag the jury through confusing, and irrelevant, economic jargon that will muddy the straightforward legal and factual issues in the case. This Court should exclude that testimony in its entirety, or at a minimum strictly cabin it.

### A. The Proposed Testimony About "Confidential Business Information" Is Unreliable and Usurps the Role of the Court and Jury.

In his most plainly improper opinion, Professor Skinner plans to explain that "confidential (or more precisely, proprietary) business information is understood in the academic literature as that which relates to an entity's business model and its ability to generate sustainable competitive advantage." Ex. E,I(e). He also plans to explain how certain types of information Professor Taylor may discuss are different from information about upcoming featured NFTs, effectively telling the jury that the latter is not confidential business information. *Id.* This opinion, which takes the case from the court and the jury and is unreliable, should be excluded under Rules 702 and 403.

A fundamental principle underlying Rule 702 is that it is the court's job to instruct the jury on the law, and the jury's job to apply the facts to that law. *Lumpkin*, 192 F.3d at 290. Professor Skinner's proposed testimony intrudes on both of those tasks. This court will instruct the jury on the legal meaning of "confidential business information" and the legal rules about when such information constitutes property. Professor Skinner, however, proposes to give his own view on how the academic literature supposedly uses that same term and when it constitutes property. *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (holding that an expert's testimony defining "deadly physical force" was inappropriate because an expert may not communicate "a legal

standard—explicit or implicit—to the jury"); *accord Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 509-10 (2d Cir. 1977). By the same token, it is the jury's job to decide whether the information in this case is "confidential business information" and, therefore, property. *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (holding that it was improper for an expert witness to draw "directly upon the language of the statute" because it supplanted the role of the jury). But Professor Skinner tries to take that mantle, too, proposing to opine that information about upcoming featured NFTs was not proprietary confidential business information, under the guise of contrasting that information with other types of information. *Lumpkin*, 192 F.3d at 290 (holding that the jury must "apply[] th[e] law to the facts before it"). Both aspects of this proposed testimony far overstep the bounds of permissible expert testimony, and so should be excluded.

The defense cannot seriously argue otherwise. Their motion to exclude Professor Taylor's testimony states that it is impermissible for an expert witness to "dictate[] a legal conclusion regarding a key issue in this case" by defining a key legal concept—such as "confidential business information"—and applying that definition to the facts of the case. Def. Mot. at 1, 8-9. That objection to Professor Taylor's testimony is wrong on the facts: he does not plan to define confidential business information or opine that information about upcoming featured NFTs was confidential business information. But the defense's detailed description of why experts cannot define legal standards and apply the facts to those standards dooms Professor Skinner's testimony.

Professor Skinner's proposed testimony is also fatally unreliable in two respects. For one, he has not reliably demonstrated that there is a uniform manner in which "confidential (or more precisely, proprietary) business information is understood in the academic literature." Ex. E, II(e). The Skinner Notice cites a single book, published by McKinsey thirteen years ago, that is a guide

to corporate valuation.  *Id.* at 3 n.3.[2]  There is no reason to assume this one perspective reflects the general understanding of "confidential business information" across the academic spectrum (if a general understanding even exists), or a reason to prioritize this valuation-based approach over others.  Even more fundamentally, Professor Skinner provides no basis to conclude that his understanding of "confidential business information" tracks the legal meaning of confidential business information as developed in the case law applying the wire-fraud statute.  Indeed, the Government's opposition to the defense's *Daubert* motion explains, in detail, that it does not.  This creates a significant risk that, not only will Professor Skinner's proposed testimony intrude on the Court's role instructing the jury, but it will also conflict with that role, confusing the jury.

Finally, the Skinner Notice suggests that Professor Skinner's opinion regarding confidential business information is, in part, simply a response to Professor Taylor.  That is wrong, and the opinion should not come in under the disguise of a response.  As noted above, one aspect of Professor Taylor's opinion is explaining that the fact that OpenSea did not sell or trade on information about upcoming featured NFTs does not mean that information lacked value to the firm.  In making that point, Professor Taylor plans to point out that there are many examples where companies' interests lie "in controlling access" to information that they then use in other aspects of the business, rather than selling or trading on it.  Ex. A, at 3; *see also United States v. Grossman*, 843 F.2d 78, 86 (2d Cir. 1988) (holding that information had "commercial value" because "by maintaining confidentiality, the firm would protect or enhance the firm's reputation").

Professor Taylor then provides examples where companies have an economic interest in

---

[2] Indeed, it is not even clear that this lone source supports Professor Taylor's opinion.  The 2020 edition of this guide does not define, or discuss, either "confidential business information" or "proprietary business information," much less adopt the definition Chastain proposes.  McKinsey, *Valuation: Measuring and Manging the Value of Companies* (7th ed. 2020).

protecting certain types of information.  Ex. A, at 4.  The point is not that information about upcoming NFTs is the same as these examples, or that any of them are "confidential business information"—Professor Taylor is not opining on that point.  Rather, the examples illustrate that OpenSea's decision not to sell or trade that information does not mean the company lacked a commercial interest in protecting it until the featured NFT was displayed on the homepage.

Ignoring the point of Professor Taylor's examples, Professor Skinner says he plans to explain how information about upcoming featured NFTs is different from the "proprietary business information" in the examples.  This is just a circuitous way of saying that he plans to opine information about featured NFTs is not confidential business information.  He should not be allowed to twist the point of Professor Taylor's example—which illustrate a fundamentally different point about how confidentiality itself can serve a business purpose—to impermissibly opine on the ultimate issue in the case.

**B.  The Proposed Testimony About "Fundamental Information" Does Not Reliably Fit the Facts and Will Mislead the Jury.**

In addition to discussing confidential business information, Professor Skinner also proposes testifying about another kind of information—this time without any apparent connection to the case.  Specifically, Professor Skinner plans to explain that "fundamental information" is information "pertaining to [an] asset's ability to generate cash flows and the riskiness of those cash flows."  Ex. E, II(d).  He intends to contrast that with a discussion of how "investor attention can affect asset prices," then "opine that [information about upcoming featured NFTs] differs from fundamental information as economists understand it."  *Id.*  This analysis does not relate to any fact at issue in the case and is highly likely to confuse or mislead the jury.  It should be excluded.

The question for the jury in this case is whether the defendant misappropriated confidential business information from OpenSea by misusing the company's information about upcoming

16

featured NFTs.  The Skinner Notice does not explain why the concept of fundamental information has any bearing on that issue.  It also does not explain why the jury needs to understand whether or not information about upcoming featured NFTs was fundamental information.  This portion of Professor Skinner's proposed testimony should be excluded on that ground alone.  Rule 702 requires the proponent of expert testimony to show a reliable connection between the opinion and the facts of the case, rather merely rely on "*ipse dixit* of the expert," *Gen. Elec.*, 522 U.S. at 146.

The lack of explanation speaks volumes: there is nothing to connect this proposed opinion to the case.  Factually, the concept of "fundamental information" makes little sense in the context of NFTs.  Fundamental information is information about an asset's ability to generate cash flows, Ex. E, II(d), but NFTs do not typically generate cash flows.  Whether information about upcoming featured NFTs was "fundamental information" also has no legal significance.  No court has ever held that only "fundamental information" can be confidential business information under the wire fraud statute.  And imposing such a requirement would be directly at odds with *Carpenter v. United States*, 484 U.S. 19 (1987).  The defendant in that case misappropriated information about the contents and timing of a newspaper column that did not contain "corporate inside information," but nonetheless tended to affect stock prices because of the perceived "quality and integrity" of the advice it gave.  *Id.* at 22-23.  This is a classic example of information about how investors might perceive a stock, rather than "fundamental information" abut the company, but that made no difference in *Carpenter* and it should not here, either.

Not only do these failings require excluding Professor Skinner's testimony under Rule 702, they also warrant excluding it under Rule 403.  Allowing Professor Skinner to offer this opinion about fundamental information carries a substantial risk of confusing or misleading the jury.  It might cause them, incorrectly to believe that information about upcoming featured NFTs was only

confidential business information if it was "fundamental information."  There is no reason to risk

that misimpression given the lack of relevance, which is a separate basis for exclusion.

### C.  The Proposed Testimony About "Informed Trading" Does Not Reliably Fit the Facts and Will Mislead the Jury.

Next, Professor Skinner plans to offer two-part opinion on "informed trading."  First, he

plans to "address the concept of 'informed traders'."  Ex. II(f).  Specifically, he will explain that

information used by informed traders "is often distinct from . . . proprietary or confidential business

information," and thus what "may have value to traders may not have value to the platforms on

which they trade."  *Id.*  Second, Professor Skinner intends to opine that information about

upcoming featured NFTs "has not been shown by Professor Taylor to have value to OpenSea."  *Id.*

Both parts of this opinion should be excluded under Rules 702 and 403.

 Professor Skinner couches his opinion as responding to Professor Taylor, but again misses

the basic point.  Professor Taylor plans to opine that information about upcoming featured NFTs

had value because it allowed whoever possessed that information to predict an increase in demand,

and therefore price, of those NFTs.  This serves two purposes: It will help the jury understand the

economic logic behind Chastain's trading.  And it will show one way in which information about

upcoming featured NFTs was valuable—not only to traders, but also to OpenSea, which could

have sold the information, sold the featured NFT spot, or bought the upcoming featured NFT,

although it ultimately opted not to because keeping the information confidential was ultimately

more important to its broader business aims in running the OpenSea homepage.  Ex. A, at 1-2.

Rather than addressing this point, Professor Skinner seizes on the fact that two articles

Professor Taylor cites discuss the concept of "informed traders."  Ex. E, II(f).  Notably, Professor

Taylor does not cite these articles as a jumping-off point for a meditation on informed trading and

private information.  He cites one for the point that economic literature has recognized the idea of

a "market for information" because information can have value, and the other for the point that the value of information is tied to the profit one can make by using it. Ex. A, at 1-2. But Professor Skinner plans to go on a tangent, explaining generally that "informed traders" often rely on things other than confidential business information, so the information they use "may not have value to the platforms on which they trade." Ex. E, II(f).

This detour into informed trading generally should not be allowed. It is not relevant to the case, is yet another backdoor attempt to opine on "confidential business information," and will badly confuse the jury. "Informed trading" is "trading on information not yet reflected in a stock's price," which can include information gleaned from *either* the analysis of "public information" or "from confidential information from inside a firm." *See* Fox et al., "Informed Trading and its Regulation," 43 J. Corp. L. 818, 819 (2018). It is, therefore, correct to say that informed traders do not always trade on confidential business information. But it is also totally irrelevant. Professor Taylor is not arguing about what "informed traders" generally use, or do not use, in their trading. Nor is he opining that information about upcoming featured NFTs was confidential business information—just that it was valuable. Permitting Professor Skinner to offer his proposed testimony would be a sideshow. He would be discussing a class of activity that is not at issue in the case, and again opining on his own definition of "confidential business information."

This sideshow would also be distracting and confusing for the jury. At bottom, it risks the jury drawing the incorrect impression that whether or not informed traders generally do, or do not, trade on confidential business information some bearing on the outcome of the case. The risk of confusing or misleading the jury is particularly high because "informed trading" sounds similar to "insider trading" and, coming from an expert, a jury is likely to be confused about the central issues in the case. Given the absence of probative value from this testimony, that meaningful risk of

confusion further warrants excluding the testimony.

Separately, the second aspect of Professor Skinner's proposed opinion—that "information . . . about upcoming NFT features on OpenSea's homepage has not been shown by Prof. Taylor to have value to OpenSea," Ex. II(f)—should be excluded because it is unsupported.  The opinion is expressed in a single sentence that appears, essentially without prompting, at the end of the paragraph on informed trading.  Professor Skinner does not explain why he thinks Professor Taylor has not shown that information about upcoming featured NFTs lack value to OpenSea, or what analysis he took to reach that conclusion.  Professor Skinner also provides no reasoning to connect the opinion to his general discussion of informed trading.  Nor could he.  The concept of informed trading covers a far wider array of conduct than what is at issue in this case, so there is no plausible way to jump from the statement that informed traders do not always use confidential business information to the conclusion that the information at issue in this case lacked value to OpenSea.[3]

Professor Skinner also ignores Professor Taylor's other point about value: namely, that OpenSea had an economic interest in controlling information about upcoming featured NFTs, to ensure that it used only for its intended corporate purpose and not in a manner that could erode trust in OpenSea's marketplace.  Ex. A, at 4; *see Grossman*, 843 F.2d at 86 (finding information had commercial value because law firm enhanced business by protecting it); *Carpenter*, 484 U.S. at 26 ("The Journal had a property right in keeping confidential and making exclusive use, prior to publication, of the schedule and contents of the 'Heard' column.").  Because of the lack of explanation from Professor Skinner, there is no way to ensure his opinion is reliable.

---

[3] As the Government will explain in its opposition to Chastain's motion to exclude Professor Taylor, the Government does not have to prove that information about upcoming featured NFTs had inherent value to OpenSea.  Rather, the relevant question is whether the information was created or compiled by OpenSea for a business purpose, and considered and treated as confidential.

**D. The Proposed Testimony Regarding News of Chastain's Misconduct Should Be Excluded Because It Is Unreliable and Wrongly Increases the Government's Burden.**

As explained above, one aspect of Professor Taylor's testimony will be to explain that there have been economic studies examining the importance "trust" for marketplaces. Ex. A at 4. These studies show that, if potential market participants feel like they may be cheated or otherwise treated unfairly on marketplaces, they may withdraw from participating in those marketplaces. *Id.* Professor Taylor explains that this literature is applicable to OpenSea: the company is an online marketplace for NFTs that makes money based on the value and quantity of transactions, so erosion of trust could directly harm OpenSea's business. *Id.* This testimony is important for helping the jury understand why it was valuable for OpenSea to keep control over upcoming featured NFTs until that information was put to its intended business purpose—displaying a new featured NFT on the homepage. Misuse of that information could erode trust in OpenSea's marketplace. *Id.*

To corroborate his opinion that the economic theory about the importance of trust applied to OpenSea, Professor Taylor looked at a number of sources, including some evidence about the reaction when Chastain's misconduct came to light. Professor Taylor concluded that, because OpenSea users reacted negatively to the news and the company immediately took steps to emphasize the importance of trust, he was correct about the linkage between the economic theory and OpenSea's business. *Id.* at 4. Professor Taylor did not, however, attempt to analyze whether OpenSea lost users as a result of Chastain's conduct or whether there was some enduring harm to trust on OpenSea. This would be legally unnecessary because the Government is not required to prove the OpenSea was "actually harmed." *United States v. Jabar*, 19 F.4th 66, 81 (2d Cir. 2021).

Purporting to respond to this opinion, Professor Skinner plans to argue that the reaction to Chastain's misconduct "does not imply that the information about upcoming NFT features . . . had economic value to OpenSea," and that, based on his own analysis, he has "seen no reliable

empirical evidence that OpenSea suffered harm from the alleged conduct." Ex. E, II(h).  This opinion should be excluded.  It does not respond to Professor Taylor's core point, impermissibly heightens the Government's burden of proof, and is unreliable.

Once again, Professor Skinner answers an argument that Professor Taylor does not make. Professor Taylor's point is that OpenSea had a valuable business interest in ensuring that information about upcoming NFTs was used only for the corporate purpose of putting new NFTs on the homepage, and not misused in a manner that could undermine trust in the marketplace.  The reaction to Chastain's misconduct simply corroborates that trust was important to OpenSea, consistent with the academic literature.  Professor Taylor did not analyze harm to OpenSea or claim that the reaction itself proves information about upcoming featured NFTs had value.

Missing this point is important because Professor Skinner's core argument—that there is no evidence OpenSea was harmed—is not legally relevant.  Wire-fraud case law is clear that the Government does not need to prove that OpenSea was actually harmed.  *Jabar*, 19 F.4th at 81. Allowing Professor Skinner to critique Professor Taylor for not offering proof of actual harm— when that is not a required element of the case—has no probative value, will interfere with this Court's instructions on proving wire fraud, and creates a substantial risk that the jury will mistakenly believe that proof of actual harm to OpenSea is required.  For this reason alone, Professor Skinner's testimony must be excluded.

Professor Skinner's proposed analysis of "the activity on and involving OpenSea" after the revelation of the Defendant's misconduct, Ex. E, II(h), should also be excluded because it is not reliable and he is not qualified to perform such an analysis.  There is nothing in Professor Skinner's background to suggest that he has the expertise to analyze "the activity on and involving OpenSea" in a scientifically rigorous and reliable manner.  He has not, for instance, identified any prior

analyses he has conducted about activity on online marketplaces, or websites more broadly.  This lack of background is important because analyzing the effect of Chastain's misconduct on OpenSea's marketplace is no easy task.  The company took steps to counteract the news of Chastain's actions by asking him to resign and publicizing that it was conducting an investigation.  Ex. A, at 4.  News of the Defendant's misconduct also broke at a time when the market for NFTs was highly volatile, and the company was making other product-related announcements.  Isolating the effect that news of the Defendant's insider trading had on OpenSea's business would require carefully accounting for these confounding variables.  There is no indication Professor Skinner has attempted to do that or that he has the necessary background undertake such an analysis.

Relatedly, the Skinner Notice makes clear that Professor Skinner did not analyze the effect of news about Chastain's misconduct on OpenSea's marketplace in anything resembling a reliable manner.  There is no description of Professor Skinner's methodology; only a vague citation to a few websites and news articles.  Ex. E, at 4 n.7.  These citations give the distinct impression Professor Skinner simply looked to see if OpenSea's transaction volume fell meaningfully after Chastain's misconduct and if the company had difficult raising money.  That fails to account for any relevant variables, such as the effect of the company's efforts to restore trust (including firing Chastain) on counteracting any negative effects of Chastain's misconduct; the effect of other product-related announcements; and the general volatility in the NFT market.  Indeed, the defense appears to recognize the need for a serious econometric analysis, such as an "event study," to properly evaluate the effect of Chastain's misconduct on the company.  Def. Mot. at 21.  Professor Skinner, however, does not appear to have conducted any such analysis.  Without having gone through those necessary steps to ensure reliability, he should not be allowed to opine that he has "seen no reliable empirical evidence that OpenSea suffered harm."  Ex. E, II(h).  He has not done

the work to make that assertion.  At a minimum, the Government should have the opportunity to examine Professor Skinner outside the presence of the jury, to test his methodology.

### E.  This Court Should Exclude or Strictly Limit the Proposed Testimony Regarding Two-Sided Markets and OpenSea's Business Model.

Finally, the Skinner Notice identifies three areas of testimony related to the concept of two-sided markets—titled "Economics of Two-Sided Platforms," "OpenSea's Business Model," and "The Notion of Trust in the Context of Two Sided Platforms."  In the first, Professor Skinner proposes to provide general background "regarding the economics of two-sided platforms."  Ex. E, II(b).  In the second, he plans to "offer background testimony regarding OpenSea's business model in the economic context of two-sided platforms," including explaining how OpenSea "benefits from increased interest or attention . . . and trading on its platform."  *Id.* II(c).  And in the third, Professor Skinner proposes responding to Professor Taylor's description of the importance of trust for marketplaces like OpenSea and opining that "Prof. Taylor has not demonstrated that the literature on trust is applicable" to the case.  *Id.* II(g).  While these topics are not necessarily impermissible, the lack of information in the Skinner Notice makes it impossible to ensure that his testimony will be relevant, reliable, and within his area of expertise so the testimony should be excluded under Rule 702.

The issue with the first topic—background testimony regarding the economics of two-sided platforms—pertains primarily to relevance.  True, OpenSea is a form of two-sided market.  But that does not mean there needs to be expert testimony on general background information about two-sided markets.  Because Professor Skinner does not explain what specific opinions he plans to give about "the economics of two-sided platforms," there is no way to assess whether whatever testimony that he gives will be relevant to issues the jury has to resolve, and none is apparent.

The next proposed topic—OpenSea's business model and how OpenSea benefits from

increased interest and trading—is more pertinent to the case, but raises serious qualification and reliability concerns.  Professor Skinner is not an expert on OpenSea's business.  He has never worked at the company, there is no evidence that he ever studied it before being retained for this case, and his work to date appears to consist of little more than reviewing a handful of OpenSea documents.  This, of course, does not mean that Professor Skinner cannot say anything about OpenSea.  But the Skinner Notice provides no way to verify that Professor Skinner's testimony will be confined to topics that he can reliably address.  That absence of detail is important because, unchecked, Professor Skinner could end up, under the patina of expert testimony, speculating about what was and was not important to OpenSea, despite having no actual knowledge about the company.  It is the defense's burden to show that Professor Skinner's testimony will be reliable and within his expertise, and the defense has failed to carry that burden.

The final proposed topic—responding to Professor Taylor's discussion of "trust"—suffers from similar reliability problems.  Again, the Skinner Notice identifies general "topics" about which Professor Skinner might testifies, without specifics, then asserts that Professor Skinner "may opine that Prof. Taylor has not demonstrated that the literature on trust is applicable" to the case.  Ex. B, II(b)(vii).  There is no explanation of why Professor Skinner thinks Professor Taylor has fallen short on that score or what reasons Professor Skinner plans to give to the jury.  There is nothing in Professor Skinner's footnoted string citation of academic literature that indicates what his opinion is or why Professor Taylor is wrong. Because of that lack of detail notwithstanding the fact that the defendant has already once revised this disclosure, the defense cannot show that Professor Skinner's proposed testimony is reliable, and it should be excluded.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Court should

exclude the testimony of Dr. Edman and Professor Skinner, or place strict limits on their testimony.


Dated: New York, New York
        April 4, 2023                                    Respectfully submitted,

                                                         DAMIAN WILLIAMS
                                                         United States Attorney

                                                  By: _____/s_____
                                                         Thomas Burnett
                                                         Allison Nichols
                                                         Nicolas Roos
                                                         Assistant United States Attorneys