UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                      :

  UNITED STATES OF AMERICA

                      :

        - v. -                    No. 22 Cr. 305 (JMF)

                      :

  NATHANIEL CHASTAIN,

                      :

         Defendant.

                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PROFESSOR DANIEL TAYLOR

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Thomas Burnett
Allison Nichols
Nicolas Roos
Assistant United States Attorneys
- Of Counsel -

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.  Factual Background ................................................................................................ 2

    B.  Motion to Dismiss Litigation ............................................................................... 3

    C.  Government Expert Disclosure ............................................................................. 4

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

   I.    The Government Does Not Need To Prove That Information About Upcoming Featured NFTs Had "Inherent Economic Value to OpenSea." ...................................... 7

   II.   Professor Taylor's Testimony Is Relevant And Admissible, Regardless Of Whether Or Not The Government Needs To Prove "Inherent Economic Value To OpenSea." .......... 11

    A.  Testimony About the Value of Information About Upcoming Featured NFTs Is Relevant And Admissible. ................................................................................ 11

    B.  Testimony About the Importance of Controlling Information About Upcoming Featured NFTs Is Relevant and Admissible. ................................................... 16

   III.  Professor Taylor Was Not Required To Review Notes About Interview Of OpenSea Witnesses. ........................................................................................................... 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ................................................................. 6

*Boucher v. Suzuki MotorCorp.*,
   73 F.3d 18 (2d Cir. 1996) ................................................................. 20

*Carpenter v. United States*,
   484 U.S. 19 (1987) ................................................................. 7, 10

*Cleveland v. United States*,
   531 U.S. 12 (2000) ................................................................. 8, 9

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) ................................................................. 7, 20, 21

*Feinberg v. Katz, 01-Cv-2739*
   (CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ........................................ 14

*In re Gen. Motors LLC Ignition Switch Litig.*,
   14-MD-2543, 2016 WL 4077117 (S.D.N.Y. Aug. 1, 2016) ................................... 6

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016) ................................................................. 13

*In re Rezulin Prods. Liability Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................... 24

*In re Rezulin Prods. Liability Litig.*,
   369 F. Supp. 2d 398 (S.D.N.Y. 2005) ................................................... 24

*Kelly v. United States*,
   140 S. Ct. 1565 (2020) ................................................................. 8, 9

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ................................................................. 13

*United States v. Blaszczak*,
   56 F.4th 230 (2d Cir. 2022) ................................................................. 8

*United States v. Grossman*,
   843 F.2d 78 (1988) ................................................... 8, 15, 16, 17, 18, 19, 21, 22

*United States v. Jabar*,
    19 F.4th 66 (2d Cir. 2021) ................................................................................. 23

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015) ............................................................................. 14

*United States v. Mahaffy*,
    693 F.3d 113 & n.14 (2d Cir. 2012) ........................................................ 8, 21, 22

## INTRODUCTION

This case requires the jury to decide whether the defendant, Nathaniel Chastain, fraudulently misappropriated OpenSea's "confidential business information," and therefore its property, by using for his own profit non-public information about what non-fungible tokens ("NFTs") would be featured on the company's website.

At trial, the Government plans to introduce testimony from Professor Daniel Taylor, who will help the jury understand the economic significance of information about upcoming featured NFTs, as well the economic incentive that OpenSea had to control that information and ensure it was used only for its intended business purpose—putting new featured NFTs on the homepage—rather than the personal ends of the company's employees.

Chastain's motion to exclude Professor Taylor's testimony (Dkt. 58 ("Def. Br.")) starts with a false legal premise—that the Government is required to prove that information about upcoming featured NFTs had "inherent economic value to OpenSea"—then measures Professor Taylor's testimony against that yardstick. This "inherent economic value" test imports concepts from cases involving public agencies that are entirely inapplicable to this case, is at odds with binding Second Circuit case law, and makes little sense as a matter of legal principle or logic. Instead, for the information at issue in this case to qualify as confidential business information, it must have been acquired or created by the company for a business purpose and considered and treated by the company as confidential. There is no separate "value" inquiry.

Moreover, regardless of whether proof of "inherent economic value" is required, Professor Taylor's testimony is relevant and helpful. Chastain's arguments to the contrary rely on presenting a moving target about the meaning of "inherent economic value to OpenSea," mischaracterizing important aspects of Professor Taylor's opinions, and wrongly inflating minor points for cross

examination into demands for exclusion.  Professor Taylor should be allowed to testify in full.

## BACKGROUND

### A.  Factual Background

On May 31, 2022, a grand jury in the Southern District of New York returned an indictment charging Chastain with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (the "Indictment"). The charges arise out of Chastain's scheme to misappropriate confidential business information from his employer, OpenSea, about what NFTs OpenSea planned to feature on its homepage, so Chastain could secretly purchase those NFTs before they were featured, then resell them at a profit. *See* Indictment ¶¶ 1-3.

The Government anticipates that, at trial, the evidence will show that the selection of featured NFTs served a business purpose and was the culmination of corporate efforts.  Before May 2021, the top of OpenSea's homepage had a static image of a wave.  OpenSea decided to change that portion of the homepage, so that it would display a featured NFT that changed twice a week.  The idea behind the change was, among other things, that a rotating set of featured NFTs would draw users to the platform, would provide examples of NFTs to people unfamiliar with the concept, and would help generate goodwill from artists by featuring lesser-known NFT creators, which was important for drawing more creators to the marketplace.  Once the new homepage was launched, OpenSea employees could propose ideas for featured NFTs, often through a designated Slack channel.  The homepage website also included a "[g]et featured" section that explained to users how they could bring NFTs to OpenSea's attention for potential featuring.  Chastain was in charge of reviewing these proposals, and other NFTs, then selecting each featured NFT on behalf of OpenSea.

2

Ensuring that information about the upcoming featured NFT was used only for OpenSea's purposes was important to the company's business. The evidence will show that, as an online marketplace for NFTs, OpenSea had a strong business interest in being trustworthy and a level playing field for NFT buyers and sellers. Without that trust, users might not feel comfortable buying or selling on the platform. Keeping control over confidential information that might bear on the value of NFTs—such as information about upcoming featured NFTs—and making sure that its employees did not exploit that information to obtain an advantage over other traders on the platform helped OpenSea guard its reputation as a trustworthy and fair marketplace.

Chastain misappropriated OpenSea's confidential information about upcoming featured NFTs. That information was not his: it was created at the behest of the corporation and for a corporate purpose. But he converted it for his own gain by secretly using it to profit from buying and selling featured NFTs. In so doing, Chastain turned OpenSea's showcase for engaging users and highlighting NFTs into his own piggybank.

### B.  Motion to Dismiss Litigation

On August 19, 2022, Chastain moved to dismiss the Indictment arguing, in part, that information about upcoming featured NFTs was not OpenSea's property. One aspect of Chastain's argument was the assertion that such information "lack[ed] any inherent economic value" to OpenSea, so it was "too ethereal . . . to fall within the protection of the mail [and wire] fraud statute." (Dkt. 18, at 18.)  The Government, in opposition, contested both the assertion that information about upcoming featured NFTs lacked economic value to OpenSea and the premise that proving the "value" of information was a legally relevant aspect of proving that confidential business information was property under the wire-fraud statue. (Dkt. 23, at 15-16, 20-21.)  This Court denied the motion to dismiss, without reaching the parties' dispute about value. This Court

also observed, during the October 22, 2022 pre-trial conference, that there was "disagreement in the parties' briefing in the motion to dismiss with respect to what factors are to be considered in determining whether confidential business information is property." Tr. 12:18-22.

### C. Government Expert Disclosure

On February 23, 2023, the Government provided notice to Chastain that it may call Professor Daniel Taylor to testify as an expert witness at trial. Ex. A, Gov. Expert Notice. Professor Daniel Taylor is the Arthur Anderson Chaired Professor at the Wharton School, where he teaches courses, and conducts research, on issues related to information in capital markets, insider trading, and accounting fraud. He holds a Masters degree in Economics from Duke University, and a Ph.D. in Business from Stanford University.

As explained in the Government Expert Notice, Professor Taylor intends to present a three-part opinion. He will begin by explaining that, from an economic perspective, information about upcoming featured NFTs was valuable because it was fundamentally information about expected future demand. Ex. A, at 1-3. When there is a product with a restricted supply—like an NFT—an increase in attention and demand can translate to an increase in price. *Id.* It follows, then, that information about upcoming featured NFTs was also information that the value of the NFT would likely increase. *Id.* Professor Taylor verified that theoretical insight by reviewing data from OpenSea, which showed that an NFT's being featured on the OpenSea homepage correlated with that NFT's receiving more attention and selling for higher prices. *Id.*

The fact that information about upcoming featured NFTs could help predict an increase in price raises a natural question: why did OpenSea not try to capture that increase in value by, for instance, purchasing the NFTs that were going to be featured, selling that information to NFT traders, or charging artists for having their NFTs featured? The second and third portions of

Professor Taylor's opinion provide an economic perspective on the answer to that question. Professor Taylor explains that it is not uncommon for businesses not to sell or license valuable information because controlling that information serves more important, and valuable, business purposes. *Id.* at 1, 3-4. He goes on to give several examples of situations in which maintaining control of information can itself be valuable for a company. One obvious example he provides is when the information provides an advantage against rivals, such as the case of Coca-Cola keeping its formula a secret. *Id.* at 3. Another example is when disclosure of the information could harm the company's bargaining power, such as disclosure of prices that companies pay certain suppliers. *Id.* at 4. The point of these examples—which are just some of many to choose from—is not to say that they are analogous to OpenSea in all respect, but merely to illustrate that control over information itself can have an important business purpose.

Turning more directly to OpenSea, Professor Taylor explains that controlling corporate information can also be important for companies that run marketplaces. There is, he will opine, an extensive academic literature about the importance of "trust" in functioning markets, the basic insight of which is that when market participants feel they may be cheated or treated unfairly, they may withdraw from the marketplace. *Id.* That can have direct, negative ramifications for companies, like OpenSea, that run online marketplaces and draw their revenue from transactions on the site. *Id.* Thus, these companies have a valuable corporate interest in controlling the use of corporate information that could be misused to gain an advantage in their marketplaces. *Id.* at 1, 4. Losing control of such information risks undermining trust in the marketplace, and the public reaction to the revelation of Chastain's misconduct illustrates the risk. *Id.*

Professor Taylor's opinion is limited. He will not opine that information about upcoming

featured NFTs was "confidential business information" or try to offer a definition of that term.[1] He also will not opine on whether or not OpenSea ultimately lost users or traffic, or suffered some long-lasting erosion of trust, from Chastain's misconduct. To the extent he addresses any events after Chastain's trading was revealed, it is solely to corroborate his view that the concept of "trust" in the academic literature about markets applies in the context of OpenSea's business.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if," among other things, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue."

"The Rule 702 inquiry is a flexible one that depends upon the particular circumstances of the particular case at issue." *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2016 WL 4077117, at *2 (S.D.N.Y. Aug. 1, 2016); *see Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (noting that Rule 702 is a "flexible inquiry" focused on "the facts on which the expert relies" and "how the expert applies the facts and methods to the case at hand"). "Although a district court should admit expert testimony only where it is offered by a qualified expert and is relevant and reliable, exclusion remains the exception rather than the rule." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588 (1993).

---

[1] As the defendant notes in his motion, the Government Expert Notice at times uses the phrase "confidential business information" as part of tracking the language in the indictment, *see* Br. at 8-9, but Professor Taylor will not be offering an opinion that information about upcoming featured NFTs was confidential business information.

**ARGUMENT**

**I.   The Government Does Not Need To Prove That Information About Upcoming Featured NFTs Had "Inherent Economic Value to OpenSea."**

Much of the defense submission rests on the same premise as the motion to dismiss: that to establish information about upcoming featured NFTs was "property," the Government must show that it "was the confidential business information of OpenSea . . . and that the information had inherent value to OpenSea."  Br. at 9.  That premise is legally wrong.  "Confidential business information has long been recognized as property."  *Carpenter v. United States*, 484 U.S. 19, 26 (1987).  There is no additional requirement that the confidential business information had "inherent value" to qualify as property.   The information just needs to be "confidential business information," which is information a company creates or acquires for a business purpose (the "business" part) that the company considers and treats as confidential (the "confidential" part).

The Supreme Court and the Second Circuit have consistently held that information a company creates or acquires for a business purpose and maintains as confidential is property, without grafting on a separate value inquiry.  The Supreme Court in *Carpenter* recognized that "[c]onfidential information acquired or complied by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit."  *Id.* at 19.  The Second Circuit's decision in *United States v. Grossman*, confirmed that *Carpenter* should not be read narrowly to apply to the specific information at issue in that case, but rather "holds *generally* that, even though 'confidential business information' is intangible, it has long been recognized as property."  843 F.2d 78, 86 (1988).  And in *United States v. Mahaffy*, the Second Circuit rejected a challenge to an instruction that "[c]onfidential information acquired by a company in the operation of its business is a form of property," so long as it is "both considered and treated" by the employer as confidential.  693 F.3d 113, 134-35 & n.14 (2d Cir. 2012).

Further, the Second Circuit has, on multiple occasions, rejected attempts to add a "value" test into the analysis of whether confidential business information constitutes "property" under the wire-fraud statute.  In *Grossman*, the Second Circuit rejected the argument that the information at issue was not "property" because the company from which it was taken "could not use the information for its commercial value or have the exclusive right to exploit it."  843 F.2d at 86. The Second Circuit reached a similar conclusion in *Mahaffy*, where it concluded that a proposed defense instruction "did not accurately reflect the law" on when confidential business information constitutes property because it "would have instructed the jury to consider factors," such as "the value of the information to the business."  693 F.3d at 135.

Ignoring this binding Circuit case law about confidential business information, Chastain focuses on the Second Circuit's recent decision about *regulatory* information in *United States v. Blaszczak*, 56 F.4th 230 (2d Cir. 2022).  That is the wrong place to look.  Governments, unlike businesses, often act through their "sovereign power to regulate," rather than in their capacity as market participants.  *Kelly v. United States*, 140 S. Ct. 1565, 1572 (2020).  In *Kelly*, and before that in *Cleveland v. United States*, 531 U.S. 12 (2000), the Supreme Court recognized that fraud related to "an exercise of regulatory power" does not meet the wire-fraud statute's "property requirement."  *Kelly*, 140 S. Ct. at 1568-69.  This principle arises from the basic reality that when a state regulates, it acts as a sovereign, not a proprietor, so regulatory actions do not bear a direct connection to "traditional concepts of property."  *Cleveland* 531 U.S. at 24.  It also relates to the Supreme Court's longstanding concern that the wire- and mail-fraud statutes should not "criminaliz[e] all acts of dishonesty by state and local officials."  *Kelly*, 140 S. Ct. at 1571.

The *Blasczak* decision—which held that information about an upcoming regulatory decision was not "property"—followed from *Cleveland* and *Kelly*, relying on the rationale that

8

such information was not property because it was "regulatory in character." *Blaszczak*, 56 F.4th at 244. The Court summarized its decision succinctly, writing: "[a]s the conduct *Kelly*—altering a regulation—does not constitute a deprivation of government property, *a fortiori* merely obtaining advance information as to what the agency's preferred regulation would be, and when it would be announced, cannot properly be considered the agency's . . . property." *Id.*

This decision does not legally or logically apply to confidential *business* information. Legally, the case did not involve confidential business information, and nothing in the decision purported to overturn *Grossman* or *Mahaffy*. Logically, the rationale of *Cleveland*, *Kelly*, and *Blaszczak* does not apply to confidential business information. Governments wear many hats: regulators, contractors, and market participants, to name a few. Whether particular information or action, then, qualifies as government "property" depends on whether the Government is operating in a regulatory versus a proprietary capacity, and the decisions in *Cleveland*, *Kelly*, and *Blaszczak* reflect the courts analyzing that issue. *Blaszczak*, for instance, discussed the value of the information at issue as a means towards showing that the information was "regulatory in character." 56 F.4th at 244.

Businesses, by contrast, are proprietary all the way down: they gather things (including information) to further the company's objectives of accreting value to the enterprise, sometimes by selling those things, but other times by using them to, for instance, enhance the company's efficiency or reputation. It follows there does not need to be any analysis, as in the government context, of whether information is being used in a proprietary capacity; "[c]onfidential business information has long been recognized as property." *Carpenter*, 484 U.S. at 26.[2]

---

[2] Chastain is wrong to rely on the dissent in *Blaszczak* for the point that the opinion applies to confidential business information. Br. at 11 n.2. Comments from the dissent have no binding legal force, the majority did not adopt the dissent's view, and there are sound legal and logical

Finally, Chastain's proposed "inherent economic value" test is inscrutable in the context of confidential business information.  In a case involving government information, a court can helpfully look at whether the value of information to the government is primarily regulatory or economic when trying to determine whether the government is acting in its capacity as regulator or a market participant.  But that analysis is not necessary in the business context because businesses never act as regulators.  Instead, Chastain's view appears to be that there is some, unspecified category of information that a business acquires or creates, uses for a business purpose, and maintains in confidence, but nonetheless has no "inherent economic value."  That has a nice ring to it, but no substance.  Does information only have "inherent economic value" if the company plans to sell it?  Or only if the company could sell it?  What about if the company uses it to make a product?  Or uses it to help generate interest in the business and improve the businesses reputation?  It is unclear how any of these examples stack up under the proposed "inherent economic value" test.  That is why the better view, consistent with the case law, is that if confidential information is gathered or acquired by the company and used for a business purpose— which is fundamentally an economic pursuit—it is confidential business information.[3]

Whether the Government must prove the information in this case had "inherent economic value to OpenSea" is a legal question that is ripe for adjudication because it will shape the parties' presentation of the evidence and arguments to the jury.  But as explained further below, while many of Professor Taylor's opinions bear on the issue of value to OpenSea, his testimony is

---

reasons why confidential business information is property, while confidential regulatory information is not.

[3] Chastain is wrong to claim that the Solicitor General's letter brief in *Blaszczak* supports Chastain's "inherent economic value" test.  That brief is, very clearly, geared toward arguing that confidential regulatory information is not property, not that the Court should adopt a new value-based test for confidential business information.  *See* Supp. Ltr. Br., *United States v. Blaszczak*, Nos. 18-2811, 18-2825, 18-2867, 18-2878 (2d Cir. June 4, 2021 (ECF No. 497).

relevant and admissible regardless of how the Court resolves this important legal question.

**II. Professor Taylor's Testimony Is Relevant And Admissible, Regardless Of Whether Or Not The Government Needs To Prove "Inherent Economic Value To OpenSea."**

Professor Taylor's testimony involves reliably applying economic principles to the facts of the case, in a way that will help the jury understand some of the economic incentives at issue for important actors, including Chastain and OpenSea.  Each aspect of his proposed testimony is admissible, regardless of whether or not this Court finds that the Government needs to prove the information at issue in this case had "inherent economic value to OpenSea."

**A. Testimony About the Value of Information About Upcoming Featured NFTs Is Relevant And Admissible.**

The first aspect of Professor Taylor's proposed testimony involves explaining how, from an economic perspective, information about upcoming featured NFTs has value.  The jury is likely to hear testimony about a number of unfamiliar topics, including NFTs, OpenSea, and OpenSea's homepage.  Professor Taylor's testimony will cut through the novel facts and explain the economic significance of the information Chastain misappropriated.  His testimony starts with the insight that, when there is a good with restricted supply—such as an NFT—an increase in attention to and demand for that product often increases the price.  He then proceeds to the more subtle point that, because of this dynamic, information about whether demand is likely to increase for a particular product also has value, which will involve him testifying about the economic concept that there can be markets for information.  Professor Taylor will apply that reasoning to the facts of the case, explaining how Chastain's ability to profit from his unique access to information about upcoming featured NFTs is evidence that the information was valuable.

This testimony will be helpful to the jury, regardless of whether the Government needs to prove "inherent economic value to OpenSea."  If the Government does not need to prove that fact,

11

this aspect of Professor Taylor's testimony will help the jury understand the economic incentive that Chastain had to misuse the information, as well as the risk OpenSea needed to guard against in allowing employees access to such information.  If the Government *does* need to prove "inherent economic value," the opinion is relevant, too: it is one fact in furtherance of showing that OpenSea could have monetized the information by, for instance, selling it to NFT traders, buying the featured NFT itself, or having NFT owners pay for the right to be featured.[4]

None of Chastain's arguments warrant excluding this proposed testimony.  The first—that Professor Taylor's opinion usurps the role of the judge and jury, Br. at 8-13—is a strawman.  In the defense's imagination, Professor Taylor "seeks to instruct the jury that information regarding soon-to-be-featured NFTs is confidential business information, has economic value, and is therefore property."  Br. at 8.  The trouble is, that is not what Professor Taylor plans to do.  He will not opine on whether or not information about upcoming featured NFTs was "confidential business information" or the meaning of that term.  He also will not opine on whether that information constituted OpenSea's "property."  His testimony will focus solely on explaining why, from an economic perspective, information about upcoming featured NFTs was valuable.

As explained above, even though "value" is not something the Government needs to prove, Professor Taylor's testimony is nonetheless relevant to helping explain some of the economic incentives at play.  But even assuming, *arguendo*, that the Government does need to prove value, Professor Taylor's testimony will not, as the defense claims, improperly intrude on the role of the Court or the jury.  Because Professor Taylor is not opining on whether the information at issue in

---

[4] This is not the only way in which information about upcoming featured NFTs was valuable to OpenSea.  That information was also central to the operation of the featured work section of OpenSea's homepage, which the business used to help increase user engagement, teach potential users about NFTs, and increase goodwill among artists deciding what platform on which to sell their NFTs.

this case is confidential business information, he is not intruding on the Court's instruction on the elements of the offense and will stop well short of "tell[ing] the jury what result to reach" on the question whether Chastain took OpenSea's confidential business information. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Rather, his testimony will help the jury understand important facts in issue: namely, the economic rationale for Chastain's actions and, if the Court decides it is relevant, the value of *information* about upcoming featured NFTs, as opposed to the value of the NFTs themselves.

To be sure, if the defense is correct that "inherent economic value to OpenSea" is relevant to the question of whether information qualifies as "property," Professor Taylor's testimony will bear on that value question. But that does not render his testimony inadmissible. It is common for experts to opine on some aspect of a broader issue that the jury has to resolve and, indeed, an important part of giving relevant testimony. In civil cases, for example, juries must make the final decision on issues such as damages and causation, but experts are allowed to offer opinions about important inputs, such as whether a particular item would have been more or less expensive absent the conduct at issue. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 646 (2d Cir. 2016) (allowing expert to offer opinions related to loss causation and damages). Similarly, Professor Taylor's testimony would (if value is relevant) be just one piece of the puzzle for the jury to help resolve the broader, and ultimate, question whether information about upcoming NFTs was confidential business information protected under the wire-fraud statute.

Chastain's reliance on *Feinberg v. Katz*, 01-Cv-2739 (CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007), is misplaced. In that case, a district court prohibited an expert from opining on whether a misrepresentation was "material," finding that such testimony was inappropriate because it instructed the jury on the outcome to reach for an element of the civil claim at issue,

which was a "mixed question of law and fact." *Id.* at *9. But Professor Taylor's testimony is different in two crucial respects. He is not opining that an element—here, whether the information at issue is confidential business information and, thus, property—is satisfied. And the issue he is addressing is purely factual, rather than a mixed question of law and fact. It is, then, more akin to a different case addressing materiality—*United States v. Litvak*—where the Second Circuit held that an expert should have been allowed to opine on how investors would have viewed certain information, even though the expert could not opine on whether the information was "material." 808 F.3d 160, 181-83 (2d Cir. 2015).[5]

There is also no merit to Chastain's next argument: that Professor Taylor's opinion is irrelevant and confusing because it addresses "value to the market, as opposed to OpenSea," Br. at 13-15. This argument can be rejected out of hand because there is no need to prove that information about upcoming featured NFTs had inherent value to OpenSea. But even setting that core problem aside, the argument is factually wrong and shows the problems with Chastain's "inherent value" theory.

The idea that information about upcoming NFTs had market value, but not value to OpenSea, is nonsensical. If, as Professor Taylor opines, information about upcoming featured NFTs was valuable because it helped predict price increases for those NFTs, that had value in the hand of OpenSea. The company could have sold the information, used the information to buy featured NFTs before they were featured, or charged artists for getting featured on the homepage. What Chastain seems to be getting at is not that information about upcoming featured NFTs lacked

---

[5] By contrast, the defense's proposed expert, Professor Douglas Skinner, proposes defining "confidential (or more precisely, proprietary) business information" and applying that definition to the facts of the case—directly telling the jury how to resolve a critical issue. *See* Gov. *Daubert* Mot. at 16-19 (Dkt. 61) (page numbers refer to those in the ECF-generated headings).

value to OpenSea, but rather that OpenSea *chose not to* monetize the information in that manner. But that does not mean the information was valueless to OpenSea, just that the company opted to use it solely for a particular business purpose—the operation of the featured NFT section of OpenSea's homepage—and otherwise keep the information confidential.

Chastain's argument highlights the slipperiness of the defense theory of "inherent economic value to OpenSea."  It is, apparently, not enough that the company could have profited from the information, or that the information was used for a business purpose.  Instead, it seems that, under the defense theory, the company needs to have exploited, or planned to exploit, the information for direct financial gain.  But that is legally wrong and makes little practical sense. Legally, the Second Circuit has squarely rejected this position.  *See Grossman*, 843 F.2d at 86 (rejecting argument that information was not property because law firm "could not use the information for its commercial value").  And practically, it would exclude large swaths of business information that corporations plainly have a substantial interest in controlling.  Under the defense theory, for example, it appears that information about many significant corporate events—such as the timing and contents of an upcoming earnings announcement or the timing and existence of an upcoming merger or corporate deal—would not qualify as the firm's "confidential business information" because that information has market value, but the firm does not monetize it.

Finally, Chastain's claim that Professor Taylor's opinion should be excluded because it is too elementary to warrant expert testimony, Br. at 15-17, is wrong and mischaracterizes his anticipated testimony.  As Chastain would have it, Professor Taylor's testimony is simply a description of "the basic economic principle of supply and demand," which is not "beyond the jury's ken" even without an expert.  *Id.* at 16.  Even if this characterization were correct, it would not warrant excluding Professor Taylor's opinion.  Not all jurors know basic economics, and

translating the factual situation of this case—which involves the unusual context of NFTs—into economic terms would be helpful to jurors.

But more fundamentally, Chastain's characterization of the opinion is not correct. Professor Taylor begins with the principle that, when supply is restricted and demand increases, price tends to rise.  He then goes further to explain how, because of this principle, *information about anticipated demand* can have value, and that the fact Chastain profited from purchasing and selling featured NFTs shows the information on which he traded had value.  This more subtle point—that, from an economic perspective, information itself can have value—is not something that jurors can be counted on to know ahead of time, but it is important to the case because Chastain misappropriated information, not NFTs.

It also does not, as Chastain claims, risk confusing the jury about whether the Government needs to prove that an object of Chastain's misconduct was misappropriating OpenSea's confidential business information.  Br. 15.  This Court's instructions will be clear on the Government's burden, and the jury will inevitably hear that Chastain profited from his crime, which is properly relevant to his motive.  Rather, Professor Taylor's testimony will focus solely on whether the information Chastain misappropriated had value.  Accordingly, Chastain's challenges to Professor Taylor's first proposed opinion should be denied.

## B. Testimony About the Importance of Controlling Information About Upcoming Featured NFTs Is Relevant and Admissible.

The next aspect of Professor Taylor's testimony explains why, from an economic perspective, a company like OpenSea might not monetize valuable information about upcoming featured NFTs by selling it or buying the upcoming features.  Professor Taylor's testimony proceeds in two parts: First, Professor Taylor will explain that it is common for companies to have an economic interest in controlling access to information because that information serves some

16

other important business purpose.  There are many different situations in which this phenomenon arises, and Professor Taylor identifies several in the Government Expert Notice, including situations in which the information provides a direct competitive advantage (such was the case of Coca-Cola's secret formula) or when the information is helpful for a company's negotiating power (such as the case of companies negotiating with suppliers).

Second, Professor Taylor will explain that entities running marketplaces often have an interest in controlling information that could give a leg up in those marketplaces because doing so is important to preserving trust.  The economic literature shows that, when users lose trust in the fairness of a marketplace, they often withdraw from it.  Professor Taylor will apply that economic theory to the context of OpenSea, explaining how these economic principles would predict that OpenSea has an interest in controlling information that is potentially valuable to market participants, to preserve trust in its marketplace.[6]

As with Professor Taylor's first opinion, these opinions are relevant regardless of whether the Government has to prove "inherent economic value to OpenSea."  If the Government does not need to prove that fact, this testimony will help the jury understand important facts about the economic incentives that OpenSea faced.  Specifically, it will help the jury understand why, from an economic perspective, OpenSea had an incentive to control and protect certain types of information, including information about upcoming featured NFTs.  And it will help the jury understand the economic logic motivating a company like OpenSea to pass up an opportunity to

---

[6] In a footnote, Chastain advances the argument that this portion of Professor's opinion is akin to the issue before the Supreme Court in *Ciminelli v. United States*, 21-1170.  (Def. Br. 22 n.6).  That is wrong.  The question presented in *Ciminelli* is whether "the deprivation of complete and accurate information bearing on a person's economic decision is a species of property fraud."  Pet. Br. at i. The petitioners in that case do not contest that companies have a cognizable property interest in controlling the use of their confidential information, *id.* at 21-22, which is the issue in this case.

profit from using certain information.  If, on the other hand, the Government does need to prove that the information had "inherent economic value to OpenSea," this testimony will have the added benefit of showing that the "confidentiality of the information had . . . commercial value" to the company "because, by maintaining confidentiality, [the company] would protect or enhance [its] reputation, with the result that it would not lose [users] and perhaps would gain more [users]." *Grossman*, 843 F.2d at 86.

Chastain's challenges both aspects of Professor Taylor's proposed testimony, largely on the ground that the opinions he plans to offer are irrelevant.  These arguments, which rely heavily on misconstruing what Professor Taylor plans to say, should be rejected.

### 1. Professor Taylor Should Be Allowed To Explain That Information Can Be Valuable To A Business, Even If The Business Does Not Sell That Information.

The defense first argues that Professor Taylor should not be able to opine that there OpenSea's decision not to monetize information about upcoming featured NFTs "does not imply that the information had no value to OpenSea," claiming it is irrelevant and unhelpful.  Br. at 17. The defense brief makes it seem like Professor Taylor's opinion is based on the assumption that information about upcoming featured NFTs is the same as information about Coca-Cola's secret formula, or information that companies use in contract negotiations, arguing that, because there are differences between the information in this case and those examples, Professor Taylor's opinion must be unhelpful.  *Id.* at 18-19.

Once again, this argument is assaulting a strawman.  Professor Taylor has no plan to claim that information about upcoming featured NFTs is just like Coca-Cola's secret formula or information that companies use in contract negotiations. Ex. A, at 3-4.  He never makes that claim in the Government Expert Notice, and he very clearly opines that OpenSea's information falls in a different category—namely, situations when controlling information is important to maintain

trust on a marketplace.  *Id.*

Instead, Professor Taylor uses the examples of Coca-Cola and contracting information in service of a different point: that it is not uncommon for companies to have an economic interest in controlling, rather than selling or licensing, information that could fetch a price.  Coca-Cola, for instance, could no doubt sell its product information for a substantial sum, but it does not do so. This does not mean the information is valueless, it just means the company has decided it has a stronger economic interest in keeping that information confidential than disclosing it.  Similarly, when companies negotiate contracts with suppliers, they gather information about each supplier's prices and contract terms.  That information could have meaningful market value: the suppliers' competitors might pay for the information, as might other companies that buy from those suppliers. But companies often do not sell that information, at least in part because disclosure might harm their own ability to negotiate with suppliers in the future.  Professor Taylor will explain that these are just two examples of a common phenomenon: companies often opt not to sell or distribute information, because their economic interest lies in tightly controlling it so it can be used for some other business purpose.[7]

What makes these examples relevant is that they help illustrate to the jury that it is not uncommon for companies to make decisions—like OpenSea made—to refrain from selling potentially marketable information because doing so might harm other economic interests.  To be sure, the economic interests at issue in these examples, and many others, differ from the economic interests at play in OpenSea's decision.  But that is of little importance.  The examples are

---

[7] The examples in the Government Expert Notice are not necessarily all of the examples Professor Taylor will discuss at trial, but rather illustrative examples of how Professor Taylor will explain the reasons for his opinion.  A full list of all examples is not needed because Rule 16 requires a statement of opinions and reasons, not "a verbatim recitation of the testimony the expert will give at trial."  Fed. R. Crim. P. 16 Adv. Comm. Note.

analogous to OpenSea's situation in that they show it is commonplace for businesses to decide not to sell or disclose information because they have an economic interest in using it for some other business-related purpose.

With that in mind, Chastain's laundry list of ways Coca-Cola and other companies are different from OpenSea carries little weight. Challenges of this sort are rarely a basis for excluding expert testimony because such testimony "should be excluded only if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith." *Boucher v. Suzuki MotorCorp.*, 73 F.3d 18, 21 (2d Cir. 1996); *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). And in this case, the arguments for exclusion are particularly ill-suited because Professor Taylor's point is not that the information in this case is a spot-on comparison with the examples, but rather to illustrate the more general point that information can be valuable without being sold, before turning more directly to OpenSea.

### 2. Professor Taylor Should Be Allowed To Explain OpenSea Had An Economic Interest In Controlling Information About Upcoming NFT Features.

As explained above, the next aspect of Professor Taylor's opinion is that OpenSea had a commercial interest in ensuring that information about upcoming featured NFTs was used only for its intended business purpose. Ex. A, at 4. This opinion draws on economic literature about how marketplaces rely on trust, and the perception that a marketplace is unfair—due to, for example, the misuse of valuable trading information by people who run the marketplace—threatens to scare off users, harming the market. *Id.* Rather than taking issue with this insight or the economic literature, Chastain tells a sky-is-falling story, asserting that this testimony cannot be allowed, or else "anything will have inherent economic value to a company where its disclosure tends to harm

that company's reputation." Br. at 20-21. This speculative claim is not a basis for exclusion.

For one, Chastain's view is at odds with existing case law, which permits consideration of reputational risk when considering the importance of a company controlling certain information. In *Grossman*, for example, the Second Circuit recognized that the "confidentiality of the information" in that case had "commercial value" not because the law firm that possessed it could exploit the information, but because "maintaining confidentiality" would "protect or enhance the firm's reputation," which affected its business interests. 843 F.2d at 86. Similarly, in *Mahaffy*, the Second Circuit rejected a challenge to an instruction that allowed the jury to find information was confidential, even if it lacked value to the company, because the company might "treat the information as confidential to protect the reputation of the company and its customers." 693 F.3d at 135. The defense does not even try to reconcile its position with this case law.

Moreover, on the facts, Chastain is wrong to assert that Professor Taylor's opinion does not show controlling information about upcoming featured NFTs had value to OpenSea *ex ante*. Br. at 20. Professor Taylor's testimony draws on the economic literature showing that trust is important to flourishing marketplaces. Ex. A, at 4. Building a reputation as a trustworthy marketplace—by, for instance, ensuring that participants in the market act on a level playing field—is often important for drawing customers to markets. *See id.* Accordingly, marketplaces like OpenSea have an interest in building trust by, among other things, ensuring that certain market participants, such as employees, do not have a leg up based on unfair access to information. *See id.* To be sure, public failures to ensure a level playing field can also erode trust, but that does not mean that OpenSea lacked an *ex ante* interest in being able to present itself as a marketplace where people can buy and sell NFTs without being taken advantage of. *See Grossman*, 842 F.2d at 86 (recognizing that maintaining confidentiality can both help a law firm gain clients and prevent it

from losing clients).

Finally, Chastain's grocery-store hypothetical, Br. at 20, is not useful for understanding anything at issue in the case. The information at issue in the hypothetical—an employee's home address—is almost certainly not confidential business information. There is no reason to think that a grocery store's business is in any way predicated on whether users trust the store's information-management practices. And the reputational harm that the defense posits seems to stem not from customers being concerned about misuse of information, but concern that an employee of the grocery store is a stalker. This Court should not prevent Professor Taylor from offering a useful opinion, that is grounded in the case law, because of the defense's ill-conceived and speculative concerns about some slippery slope.

### 3.   Professor Taylor Is Not Offering An Opinion On Harm To OpenSea.

Chastain also challenges Professor Taylor's opinion about the importance of trust for a marketplace like OpenSea by arguing that Professor Taylor may lead the jury to conclude that Chastain's conduct actually caused economic harm to the company. Br. at 21. This concern is misplaced and is easily addressed by eliciting testimony about the limits of Professor Taylor's opinions and analyses.

Professor Taylor does not intend to opine that Chastain's misconduct caused an economic harm to OpenSea, or that it caused some lasting erosion of trust. The Government is not required to offer such proof, *United States v. Jabar*, 19 F.4th 66, 81 (2d Cir. 2021) (holding that proof victim was "actually harmed" not required in wire-fraud prosecution), and Professor Taylor has not taken the analyses that would be necessary to reach an opinion on that issue. To the extent Professor Taylor opines on any events after the revelation of Chastain's misconduct, it is solely to corroborate his opinion that the economic literature related to trust applies to OpenSea.

There is no meaningful risk that the jury will think Professor Taylor is offering an opinion that Chastain's misconduct harmed OpenSea. Chastain cites one sentence from the Government Expert Notice, which says that Professor Taylor plans to explain how "companies that earn fees on marketplace transactions necessarily have an economic interest" in safeguarding trust because "[a] reduction in trust reduces the number of transactions that are conducted, and fewer transactions lead to less transaction fees for the marketplace." Ex. A, at 4. This is a general statement about the economic reason why trust is important for entities that run marketplaces. It is not a statement that such an impact actually occurred in this case. To the extent there is any doubt, the Government can elicit on direct, or the defense on cross examination, that Professor Taylor is not offering an opinion about whether Chastain actually caused economic harm to OpenSea, although the defense should not be permitted to ask questions in a manner that suggests proof of harm is required.

### III. Professor Taylor Was Not Required To Review Notes About Interview Of OpenSea Witnesses.

In his final argument for exclusion, Chastain seeks to prevent Professor Taylor from testifying because Professor Taylor did not review three snippets from a disclosure letter that the Government sent Chastain in connection with discovery. This argument misunderstands Professor Taylor's role in the case and presents a stilted view of the record. It should be rejected.

Professor Taylor is testifying as an expert in some of the relevant economic issues in this case. He is not, and could not properly, testify about what OpenSea employees did, or did not, think as they were running the business. *See In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (explaining that experts may not testify about "interpretations of conduct or views as to the motivation of parties"). Accordingly, Professor Taylor's analysis focused primarily on information that bore on his economic analysis: such as economic literature, data

about NFT sales, and documents describing the company's business model.  He did not review notes from interviews with witnesses, principally so his testimony could remain focused on the economics, rather than risk veering into recounting views of company employees.

With this in mind, Professor Taylor's analysis is not unreliable simply because he did not review a few snippets of notes that the defense believes are important.  The cases on which Chastain relies involve situations in which an expert relies on the favorable bits of one type of information, but disregards the unfavorable portions without explanation; such as an expert using scientific studies helpful to the expert's cause, an disregarding scientific studies that are unhelpful.  *See In re Rezulin Prods. Liability Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) (excluding expert for cherry-picking scientific studies).  Professor Taylor has not committed that sin.  He has not relied on favorable notes from witness interviews and disregarded unfavorable notes.  He has simply refrained from reviewing notes in general, instead focusing on economic principles and more concrete facts about OpenSea's business.

Moreover, Chastain's argument presents an incomplete and incorrect view of how the Government anticipates witnesses will testify.  The defense brief does not rely on full notes of witness testimony, but rather three excerpts from those notes that the Government provided early in discovery.  Two of the three snippets are not even from witness interviews, but rather from attorney proffers.  This necessarily provides a stilted view of the facts.  For example, Chastain refers to notes from an attorney proffer about OpenSea's CEO and an interview of another OpenSea employee, in which both refer to the confidentiality of featured NFT selections not being "intrinsically" or "inherent[ly] valuable."  Br. at 6.  But these statements simply reflect the view that it was not important to OpenSea whether the featured NFT went public on OpenSea's website on, say, Monday instead of Tuesday.  It does not mean that it was unimportant that the information

24

be used only for its intended corporate purpose and otherwise maintained in confidence by employees.  Similarly, Chastain cites a passage from an attorney proffer regarding an employee, which states that the employee did not believe the "featured work section [of OpenSea's homepage] was created to serve a business purpose."  Br. at 6.  But that employee had no role in OpenSea's homepage, and employees who had more involvement will testify otherwise.

In short, Professor Taylor was not required to review the passages that Chastain cites to perform his task in this case and doing so would not have given him a useful understanding of employees' views.  This final challenge to Chastain's testimony should, accordingly, be denied.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should deny Chastain's motion to exclude Professor Taylor's testimony.