UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL CHASTAIN,<br><br>        Defendant. | )<br>)<br>)<br>)  No. 22-cr-305 (JMF)<br>)<br>)<br>)<br>)<br>) |

# MEMORANDUM OF LAW IN SUPPORT OF NATHANIEL CHASTAIN'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO THE LARVA LABS PROJECT

David I. Miller
Daniel P. Filor
Nicholas T. Barnes
Charles J. Berk
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

*Attorneys for Nathaniel Chastain*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

BACKGROUND ............................................................................................................................ 1

LEGAL STANDARD .................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.  EVIDENCE RELATING TO THE LARVA LABS PROJECT
    IS NOT DIRECT EVIDENCE OF THE CHARGED CRIMES ......................................... 4

II. EVIDENCE RELATING TO THE LARVA LABS PROJECT
    IS INADMISSIBLE UNDER RULES 404(b) AND 403 .................................................... 7

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Old Chief v. United States*,
    519 U.S. 172 (1997)..................................................................................................7, 10

*United States v. Curley*,
    639 F.3d 50 (2d Cir. 2011)..........................................................................................4, 11

*United States v. Donovan*,
    577 F. Supp. 3d 107 (E.D.N.Y. 2021) ...............................................................................5

*United States v. Fasciana*,
    226 F. Supp. 2d 445 (S.D.N.Y. 2002)................................................................................9

*United States v. Ferguson*,
    246 F.R.D. 107 (D. Conn. 2007)......................................................................................11

*United States v. Garcia*,
    291 F.3d 127 (2d Cir. 2002).....................................................................................3, 8, 9

*United States v. Kahale*,
    789 F. Supp. 2d 359 (E.D.N.Y. 2009) .....................................................................3, 8, 9

*United States v. Martoma*,
    No. 12 Cr. 973 (PGG), 2014 WL 31191 (S.D.N.Y. 2014) ............................................ *passim*

*United States v. Nachamie*,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000)................................................................................3

*United States v. Stein*,
    521 F. Supp. 2d 266 (S.D.N.Y. 2007)................................................................................5

*United States v. Tubol*,
    191 F.3d 88 (2d Cir. 1999)...............................................................................................9

*United States v. Zhong*,
    26 F.4th 536 (2d Cir. 2022) .........................................................................................7, 8

**Other Authorities**

Fed. R. Evid. 403 ...............................................................................................4, 7, 10, 11
Fed. R. Evid. 404(b)............................................................................................... *passim*

Defendant Nathaniel Chastain respectfully submits this Memorandum of Law in Support of his Motion *in Limine* to Exclude Evidence Relating to the Larva Labs Project.

## BACKGROUND

In a March 27, 2023 letter to the defense, the government noticed its intent to offer at trial evidence that Mr. Chastain "shared confidential information related to an upcoming project by creative technology company Larva Labs with his friend Chris Battenfield before the project had been publicly released." Declaration of Nicholas T. Barnes ("Barnes Decl."), Ex. 1. The evidence includes excerpts from a text message conversation between Mr. Chastain and Mr. Battenfield, including the following messages exchanged on or about March 17, 2021:

| | |
|---|---|
| Chastain: | Blanket statement that this is information that can't leave this conversation: |
| Chastain: | Larva Labs is going to release a 3D project soon and airdrop to all current Punk holders. So keep at least 1 punk |
| Chastain: | Not sure on the timeline just yet |
| Chastain: | Please don't broadcast publicly because I'm not sure if they've told many people outside of OpenSea (they asked one of our engineers to audit the contract) |
| Battenfield: | I definitely will keep it to myself. I may sell a couple more but plan on holding many of them into the future. |

*Id*. The government has indicated that it intends to offer the Larva Labs evidence "as direct evidence of the charged crimes, including evidence of the defendant's access to confidential information obtained as part of his employment at OpenSea, the defendant's relationship and duties to OpenSea, and his understanding of a duty to keep such information confidential." *Id*. The government has further indicated, in the alternative, that it intends to offer this evidence

"subject to Federal Rule of Evidence 404(b), as proof of the defendant's motive, opportunity, intent, knowledge, and absence of mistake or accident." *Id*.

In an April 3, 2023 letter, the defense informed the government that it did not believe the Larva Labs-related conduct would be admissible at trial, either as direct evidence in the government's case-in-chief, or alternatively, subject to Rule 404(b). *See* Barnes Decl., Ex. 2. The defense further informed the government that it failed to provide sufficient Rule 404(b) notice:

> [W]e write to remind you that FED. R. EVID. 404(b) was amended in 2020 and now requires, among other things, that the government articulate: (i) 'the permitted purpose for which the prosecutor intends to offer the evidence [of other crimes, wrong, or acts]'; *and* (ii) 'the reasoning that supports the purpose….' [Y]our March 27, 2023 letter fails to provide appropriate notice with respect to your reasoning for *each* stated purpose.

*Id*. (emphasis added).

In an April 5, 2023 letter, the government supplemented its initial Rule 404(b) notice with the following language:

> Proof that the defendant had access to confidential information obtained as part of his employment at OpenSea that he shared with his friend for the benefit of the friend and while telling the friend not to disseminate the confidential information is relevant to his motive, intent, knowledge, and absence of mistake or accident because it reflects that the defendant (i) *had* access to confidential information as a result of his employment at OpenSea; (ii) *understood* that this confidential information had value to others outside the company; (iii) *knew and understood* that he had a duty to keep such information confidential; (iv) *intended* to share confidential information despite such a duty; and (v) *intended* to benefit from using or sharing confidential information obtained as a result of his employment at OpenSea.

*See* Barnes Decl., Ex. 3 (emphasis added).

2

**LEGAL STANDARD**

Evidence of uncharged alleged criminal activity may be admitted as direct evidence, (1) "if it [] arose out of the same transaction or series of transactions as the charged offense"; (2) "if it is inextricably intertwined with the evidence regarding the charged offense"; or (3) "if it is necessary to complete the story of the crime on trial." *United States v. Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31191, *2 (S.D.N.Y. 2014) (internal quotations and citations omitted). Where it is not "manifestly clear" that evidence of uncharged alleged criminal activity is "intrinsic proof" of the charged offense, it is not admissible as direct evidence of that offense, and the court must proceed under Rule 404(b). *See id.* at *2.

The government "bears the burden of demonstrating the admissibility of evidence under Rule 404(b)." *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000). Under FED. R. EVID. 404(b)(1), "[e]vidence of a crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Under Rule 404(b)(2), however, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In determining whether to admit uncharged conduct under Rule 404(b), courts consider: (1) whether the evidence is offered for a proper purpose; (2) whether the evidence is relevant to a disputed issue; (3) whether the probative value of the prior act evidence substantially outweighs the danger of its unfair prejudice; and (4) whether a limiting instruction would be appropriate. See *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002); *see also United States v. Kahale*, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009) ("[O]ffering [] other act evidence for an admittedly proper purpose … does not end the inquiry. Rather, the court must also determine whether the proffered evidence is relevant to that proper purpose … and if so, whether that probative value is substantially outweighed by any risk of unfair prejudice.")

3

Pursuant to FED. R. EVID. 403, the court is authorized to "exclude relevant evidence if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact in issue that justified its admission into evidence." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("If the other acts tend to prove a fact not in issue or to excite emotions against the defendant, they create a prejudicial effect.") (internal quotation marks and citations omitted).

Under these standards, the Court should exclude evidence relating to the Larva Labs project, as it is not direct evidence of the charged crimes, and it is inadmissible under Rules 404(b) and 403.

## ARGUMENT

### I. EVIDENCE RELATING TO THE LARVA LABS PROJECT IS NOT DIRECT EVIDENCE OF THE CHARGED CRIMES

The government contends that evidence relating to the Larva Labs project is admissible as direct evidence in its case-in-chief. The government is wrong. Initially, and appropriately addressed in short shrift, the Larva Labs evidence plainly does not arise out of the same transactions or series of transactions as the charged offense. To be sure, the Indictment identifies the types of transactions forming the basis of the instant wire fraud charge, *see, e.g.,* Indictment ¶ 10 ("[O]n August 9, 2021, [Mr. Chastain] purchased ten of the NFT "Flipping and Spinning" before it was featured on OpenSea's homepage, and the sold them at prices … higher than where they were before the NFT was featured."), but does not identify or suggest any link—however remote or tenuous—between the charged and uncharged conduct. Moreover, on its face, the Larva Labs evidence (i) clearly involves a third-party individual who is not directly, or indirectly, related

4


to the alleged misappropriation scheme underlying the instant charges, and (ii) purports to describe the alleged disclosure of third-party "confidential" information that has no discernable connection to the alleged conduct, or the purported "property," at issue in this case.

Next, the alleged Larva-Labs-related conduct is not inextricably intertwined with the evidence relating to the charged offense, nor is it necessary to complete the story of the crime on trial.  In deciding whether uncharged conduct is "inextricably intertwined" with charged conduct, courts consider whether "[the] details of the uncharged transaction are necessary to understand the charged transaction." *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007).  Where the charged crimes are "straightforward," *United States v. Donovan*, 577 F. Supp. 3d 107, 115 (E.D.N.Y. 2021), and the indictment tells "a compelling, complete, and detailed story," *Martoma*, 2014 WL 31191, at *3, without mentioning the uncharged conduct, courts have held that such conduct is not inextricably intertwined with the charged offenses.  *See id*.

Here, the Larva Labs evidence is clearly not necessary to understand the alleged misappropriation scheme described in the Indictment, particularly where the Indictment strives to tell to tell "a compelling, complete, and detailed story," setting forth background information necessary to understand the instant charges, *see* Indictment ¶¶ 4-9 (describing NFTs, the Ethereum blockchain, OpenSea's business, and Mr. Chastain's alleged duties and responsibilities as an OpenSea employee), and detailing the alleged conduct giving rise to those charges, *see, e.g., id.* ¶ 10 ("On August 2, 2021, minutes before the NFT … was featured on OpenSea's homepage, [Mr. Chastain] purchased four of the NFT, only to sell them within hours after the NFT was featured [at a profit]."); *id.* ¶ 13 ("[Mr. Chastain] misappropriated OpenSea's confidential business information by purchasing NFTs that he knew were going to be featured on OpenSea's homepage, and then profited by reselling the NFTs after they had been featured and appreciated in value.").

For these reasons alone, evidence pertaining to the Larva Labs project should be deemed inadmissible as direct evidence on the government's case-if-chief.

Nevertheless, the government contends that this evidence amounts to direct evidence of the charged crimes because it demonstrates the defendant's (i) "access to confidential information obtained as part of his employment at OpenSea," (ii) "relationship and duties to OpenSea," and (iii) "understanding of a duty to keep such information confidential." *See* Barnes Decl., Ex. 3. Even if this were true (it is not), the government has fallen well short of demonstrating that the proposed evidence is inextricably intertwined with the charged offenses or *necessary* to complete the story of the crime on trial.

As discussed above, the Larva Labs evidence is not connected to the alleged misappropriation scheme underlying the instant Indictment in any way, as the Larva Labs evidence describes conduct involving the alleged dissemination of unrelated information, to an unrelated individual, with no allegation of personal financial gain. Moreover, the government's "access" and "duty" arguments do not move the needle. Just because evidence *may* tend to show that an employee had access to unrelated information, or that the employee was aware of a general duty to his employer, does not mean that it is admissible as direct evidence of an entirely unrelated (alleged) misappropriation scheme. By the government's logic, any employee misconduct would be admissible thereafter as direct evidence of any violation arising in the workplace. This result, of course, is completely illogical.

Additionally, and notably, the text messages that the government seeks to introduce as direct evidence of the charged crimes do not indicate that the Larva Labs information was in fact confidential. *See* Barnes Decl., Ex. 1 ("I'm not sure if they've told many people outside of OpenSea."). Thus, for the government to rely on this information in the first instance, it would

6

ostensibly be required to present additional evidence from Larva Labs and OpenSea in an attempt to demonstrate the information's confidentiality, which in turn would devolve into a complete sideshow of unnecessary information, confusing the jury with unrelated information that is irrelevant to the specifically identified conduct forming the basis of the charged offenses.

Accordingly, where, as here, the Indictment conveys a clearly stated (alleged) misappropriation scheme without any reference to the Larva Labs project, and it is not "manifestly clear" that the Larva Labs evidence involves confidential information, much less constitutes "intrinsic proof" of the charged offenses, the proposed evidence is inadmissible as direct evidence in the government's case-in-chief.  *Martoma*, 2014 WL 31191, at *2.

## II.  EVIDENCE RELATING TO THE LARVA LABS PROJECT IS INADMISSIBLE UNDER RULES 404(b) AND 403

The government blanketly claims that the Larva Labs evidence is admissible under Rule 404(b) as "proof of the defendant's motive, opportunity, intent, knowledge, and absence of mistake or accident."[1] Barnes Decl., Ex. 3.  The proposed evidence, however, is nothing more than thinly disguised propensity evidence, designed "to lure the factfinder into declaring guilt," *Old Chief v. United States*, 519 U.S. 172, 180 (1997), based on a purported incident wholly unrelated to the alleged proof associated with the charged offenses, *see United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) ("Our inclusionary rule is not a carte blanche to admit prejudicial extrinsic act

---

[1] The government's supplemental 404(b) notice identifies: (i) a laundry list of purposes on which it intends to rely in order to admit the Larva Labs evidence ("motive, opportunity, intent, knowledge, and absence of mistake or accident"); and (ii) a laundry list for reasons why it believes the Larva Labs evidence is admissible.  The notice, however, is still defective as it does not sufficiently connect the majority of these reasons to a specific purpose.  *See* Barnes Decl., Ex. 3. Thus, the defense is left in the unenviable position of guessing as to how the government *might* set forth arguments to justify the admissibility of the Larva Labs evidence.  The difficulty of this task is aggravated by the fact that four of the five proffered reasons set forth in the government's letter appear to relate only to "knowledge" or "intent."  *See id.* ("[T]he defendant…(ii) understood … (iii) knew and understood … (iv) intended … (v) intended …").

7

evidence [that] is offered to prove propensity [] or otherwise allow propensity evidence in sheep's clothing." (internal quotations and citations omitted)). As demonstrated below, the government has not sustained its burden of demonstrating admissibility—for any purpose—under the strictures of Rule 404(b).

First, the government has failed to show that the Larva Labs-related conduct evinces "knowledge" or "intent." To establish that uncharged conduct is relevant to knowledge or intent, the government must demonstrate that it is sufficiently similar to the conduct for which the defendant has been charged. *See Garcia*, 291 F.3d at 137. In other words, "the relevance of the other-act evidence turns on the existence of a close parallel between that other act evidence and the charged conduct." *Kahale*, 789 F. Supp. 2d at 385 (internal quotation marks and citation omitted). Absent such parallel, "[t]he government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime." *Garcia*, 291 F.3d at 137.

Yet that is exactly what the government attempts to do here. Indeed, where the Indictment specifically alleges a distinct scheme—to misappropriate confidential information concerning soon-to-be-featured NFTs for the purported purpose of buying NFTs in advance of their feature and subsequently selling them for profit, *see* Indictment ¶ 13—the Larva Labs evidence bears none of the same hallmarks. Unmoved by this apparent disconnect, the government ostensibly strains to find some similarity between the charged and uncharged conduct by advancing the notion that both instances generally involve alleged fraudulent activity.

This type of broad relationship, however, is insufficient to establish an adequate link between the two sets of conduct, and thus, the proposed evidence is insufficient to demonstrate Mr. Chastain's alleged knowledge or intent to commit the charged crime. *See, e.g., Garcia*, 291

F.3d at 138 (finding that the district court abused its discretion in allowing in evidence of a defendant's prior conviction for selling cocaine in a trial regarding a separate drug deal because "[t]he only similarity between the two drug transactions . . . [was] that both involved cocaine"); *United States v. Tubol*, 191 F.3d 88, 96 (2d Cir. 1999) (finding that the district court erred in admitting evidence that the defendant once planted a bomb in Israel when he was on trial for robbing a bank in New York by using a hoax bomb because "[t]here [was] no proof that the hoax bomb and the Israeli bomb shared any characteristics beyond the word 'bomb' or that [the defendant] used them in similar ways"); *United States v. Fasciana*, 226 F. Supp. 2d 445, 458-59 (S.D.N.Y. 2002) (excluding 404(b) evidence when it was "related [to the charged conduct] only in the most general sense [*i.e.,*] alleged handling of client funds in a manner inconsistent with the rights, instructions and/or expectations of the client" because "[t]he details of the alleged mishandling [were] quite different"). Further, even if the Larva Labs evidence sufficiently paralleled the conduct described in the Indictment—it does not—the proposed evidence cannot be offered to demonstrate knowledge or intent where there is no evidence that it was in fact fraudulent or illegal. *See Kahale*, 789 F. Supp. 2d at 385.

Next, although unclear on the face of its 404(b) notice, the government ostensibly seeks to introduce the Larva Labs evidence in order to show that if Mr. Chastain had a motive to allegedly misappropriate information on another occasion, he likely had the same motive on this occasion. The Court should reject this faulty logic, particularly where the Indictment specifically suggests that the alleged misappropriation of information concerning soon-to-be-featured NFTs was motivated by "personal financial gain," Indictment ¶ 1, and the Larva Labs evidence suggests no similar motive. In light of this apparent disconnect, the proposed evidence is plainly inadmissible to demonstrate motive in connection with the charged act.

9

Further, the Larva Labs evidence does not speak to Mr. Chastain's opportunity to commit the alleged crime, or the absence of mistake or accident in allegedly doing so. As alleged in the Indictment, Mr. Chastain's purported opportunity to misappropriate the allegedly confidential information concerning upcoming featured NFTs derived from his employment as a product manager at OpenSea, where he "was responsible for selecting NFTs to be featured on OpenSea's homepage." Indictment ¶¶ 2, 4. In contrast, the proposed evidence does not support the government's ostensible argument that Mr. Chastain came to be in possession of the relevant Larva Labs information (the actual confidentiality of which is unclear) by virtue of his position as product manager, nor does the proposed evidence speak to Mr. Chastain's purported opportunity to misappropriate information concerning upcoming featured NFTs for his own pecuniary benefit. Likewise, the Larva Labs evidence, underscored by entirely unrelated information and participants, does not in any way demonstrate a lack of mistake or accident in the alleged misappropriation of featured NFT information.

Here, because the Larva Labs evidence is irrelevant to the specific issues at hand, the government is left with nothing more than impermissible propensity evidence that is unduly prejudicial and clearly designed "to lure the factfinder into declaring guilt." *Old Chief*, 519 U.S. at 180. "Evidence that goes to criminal propensity alone," however, is "precisely what Rule 404(b) prohibits." *Martoma*, 2014 WL 31191, at *5 (internal quotation marks and citation omitted).

To the extent the government may argue otherwise, its position is further undermined by Rule 403, as any limited probative value in the Larva Labs evidence is substantially outweighed by numerous dangers, including undue prejudice, undue delay, confusion of the issues, and presumption of guilt based on dissimilar (alleged) conduct. Indeed, as discussed above, in light of the already-existing, highly contentious issue concerning whether NFT feature information

10

qualifies OpenSea's property under the wire fraud statute, permitting the Larva Labs evidence would result in a time-consuming mini-trial on issues unrelated to the distinct allegations set forth in the Indictment. *See United States v. Ferguson*, 246 F.R.D. 107, 116 (D. Conn. 2007) (excluding uncharged conduct under Rule 403 because it "risk[ed] diverting the jury's attention . . . and it [further] risk[ed] creating a trial within a trial on [the] issue").

Further, permitting such evidence would undoubtedly result in: (i) confusion of the wire fraud and money laundering issues for the jury; and (ii) risk that the jury would presume criminality based on unrelated conduct. *See Curley*, 639 F.3d at 57 ("Evidence is unfairly prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact in issue that justified its admission into evidence." (internal quotation marks and citation omitted)); *Martoma*, 2014 WL 31191, at *4-6 (denying motion to introduce evidence relating to the defendant's receipt of unrelated confidential information where the proposed evidence was unfairly prejudicial and risked juror confusion)

In so offering the Larva Labs evidence as "proof of the defendant's motive, opportunity, intent, knowledge, and absence of mistake or accident," Barnes Decl., Ex. 3, the government has done nothing more than recite a laundry list of permissible 404(b) purposes in hopes that one of them will gain traction. The government's approach, however, only serves to highlight its attempt to introduce improper propensity evidence. The proposed evidence, therefore, should be excluded under Rules 404(b) and 403.

## **CONCLUSION**

For the foregoing reasons, the defendant respectfully requests that the Court grant his motion *in limine* to exclude evidence relating to the Larva Labs project.

11

Dated: New York, New York
April 13, 2023

                    Respectfully submitted,

                    GREENBERG TRAURIG, LLP

                    By: */s/ David I. Miller* .
                    David I. Miller
                    Daniel P. Filor
                    Nicholas T. Barnes
                    Charles J. Berk
                    One Vanderbilt Avenue
                    New York, NY 10017
                    Telephone: (212) 801-9200
                    Facsimile: (212) 801-6400

                    *Attorneys for Nathaniel Chastain*