UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL CHASTAIN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  No. 22-cr-305 (JMF)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF NATHANIEL CHASTAIN'S
MOTION *IN LIMINE* TO PRECLUDE THE GOVERNMENT
FROM INTRODUCING IMPROPER SUMMARY EXHIBITS**

Defendant Nathaniel Chastain respectfully submits this motion *in limine* to preclude the government from introducing improper summary exhibits.

## BACKGROUND

On April 10, 2023, the government produced to the defense certain exhibits that it intends to introduce at trial pursuant to Rule 1006 of the Federal Rules of Evidence. While the government characterizes nearly all of its proposed summary charts—which it has stamped as GX 900-932 (the "Charts")[1]—as Rule 1006 charts, many of these proposed exhibits are not "summaries" of underlying data, but are instead argumentative interpretations of Mr. Chastain's trading activity. Further, the government's Charts are wildly misleading, containing several factual inaccuracies. Indeed, Rule 1006 is designed to allow parties to summarize voluminous data in an impartial manner to assist juries in understanding the underlying evidence, not to summarize the government's theory of the case. Thus, the Charts are improper under Fed R. Evid. 1006 and unduly prejudicial and confusing under Fed. R. Evid. 403.

---

[1] Copies of these Charts have been attached to the Declaration of Charles J. Berk ("Berk Decl.") as Exhibits 1 – 31.

**LEGAL STANDARD**

Under Rule 1006 of the Federal Rules of Evidence, a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." It is well settled that pursuant to Rule 1006, "Summary charts should not be admitted unless a proper foundation is established connecting the numbers on the chart with the underlying evidence." *United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986). When the government seeks to introduce summary charts, "the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury." *United States v. Conlin,* 551 F.2d 534, 538 (2d Cir. 1977); *see also United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) (warning that charts must be nonprejudicial and presented in a "nonmisleading manner" because "a summary [chart] containing elements of argumentation could very well be the functional equivalent of a mini-summation by the chart's proponent every time the jurors look at it during their deliberations").

Further, under Rule 403, courts may exclude evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Thus, if a proposed exhibit does not meet these requirements and is "more likely to confuse or mislead the jury than it is to assist it," it is inadmissible. *Citron*, 783 F.2d at 316, *citing* Fed. R. Evid. Rule 403.

**ARGUMENT**

**I.    CHARTS SUGGESTING NFT ADDRESSES ARE "ANONYMOUS" SHOULD BE EXCLUDED**

Several of the government's proposed exhibits explicitly state, or transparently imply, that the defendant's NFT wallet account addresses (which, as explained *infra*, the government incorrectly refers to as "wallets") are "anonymous." For example, proposed exhibit GX-927 is

2

titled, "Anonymous Wallets with Associated IP Addresses."  Berk Decl. Ex. 1.  Additionally, the government's proposed exhibits GX-911 - GX-925 (with the exception of GX-915) contain images of a faceless silhouette placed above numerous wallet addresses even though the government asserts that each of those addresses are associated with Mr. Chastain.  Berk Decl. Ex. 2-15.

The clear implication of those faceless silhouettes is that these wallet addresses were "anonymous."  Not true.  The blockchain is a public, openly explorable network through which each user possesses one or more *pseudonymous* identifiers:  addresses have a sequence of letters and numbers to identify them.  This is not a matter of opinion, interpretation, or legal debate—it is a plainly observable fact.  And the distinction is critical, because Mr. Chastain's supposed "concealment" lies at the heart of the government's money laundering theory.  While "anonymity" carries with it a connotation of impropriety (indeed, one of the world's most infamous computer hacking collectives calls itself "Anonymous"), pseudonymity is a part of nearly any internet user's daily life.  Anyone who has ever had an email address, screenname, or Twitter handle using a name other than their own has utilized a pseudonymous identifier.  Accordingly, use of the term "anonymous" in the government's proposed exhibits is not only factually inaccurate, but highly prejudicial and misleading.  Any such references in exhibits or at trial should be precluded.

II. **CHARTS REFERRING TO AND/OR DEPICTING WALLET ADDRESSES AS "WALLETS" SHOULD BE EXCLUDED**

The government's proposed exhibits also incorrectly label Mr. Chastain's Metamask wallet *addresses* as numerous "wallets."  Specifically, proposed exhibits GX-926, GX-927, and GX-929 all use the term "Wallets."  *See* Berk Decl. Ex. 16, 1, 17.  Further, proposed exhibits GX-901, GX-902, and GX-911 - GX-927 (Berk Decl. Ex. 18-19, 2-16, 1) contain images of a physical wallet placed above what are, in truth, various wallet *addresses*.

3

For similar reasons to those discussed in Section B, these references should be precluded due to the fact that they are unduly prejudicial and, more importantly, factually wrong. *See Citron*, 783 F.2d at 316. The government is aware (or should be, given the information at its disposal) that Mr. Chastain in fact used just *two* wallets, a "cold" storage wallet (*i.e.,* a wallet device, known as a "Ledger," that is not connected to the internet) and one "hot wallet" (from the Metamask platform) that is connected to the internet. While a person can create more than one *address* that is associated with the same Metamask hot wallet, doing so is commonplace among cryptocurrency users and not indicative of fraud or malicious intent. The government's labeling of account addresses within the same wallet as various unrelated "wallets" is an incorrect statement of fact that would lead a jury to falsely believe Mr. Chastain took certain actions that simply never occurred. The Court should preclude these references.

### III. CHARTS REFERENCING "INSIDER TRADING" OR USING OTHER ARGUMENTATIVE TERMINOLOGY SHOULD BE EXCLUDED

The government's proposed exhibit GX-910 is titled, "Days With Alleged Insider Trading." *See* Berk Decl. Ex. 20. As the Court is aware, throughout the briefing in this case the defendant has firmly objected to the government's undisciplined and prejudicial application of the term "insider trading" to the alleged conduct in this matter. While the defense has moved in a separate motion *in limine* to exclude use of the term "insider trading" entirely at trial (and believes that motion should be granted), the Court should also preclude use of the term in any of the government's proposed exhibits for additional reasons. Even ignoring the fact that "insider trading" is a securities or commodities-specific term that has no place in the context of a wire fraud prosecution arising out of transactions in digital artwork, the term's presence in an exhibit is argumentative as it allows "the government to assume that which it was required to prove beyond a reasonable doubt as operative facts of the alleged offense." *United States. v. Taylor*, 210 F.3d

311, 316 (5th Cir. 2000). Indeed, in *United States v. Blaszczak*, 56 F.4th 230, 243 (2d Cir. 2022) the court recognized that "insider trading" is "an act already understood to be wrongful." Thus, it is the government's burden to prove that some so-called wrongful "insider trading" occurred here, and it ought not be able to make that conclusory assertion in the text of exhibits. Such exhibits would hardly present a "fair[] represent[ation] [of] competent evidence." *Conlin,* 551 F.2d at 538.

### IV. CHARTS REFERENCING ETHEREUM CONVERSIONS TO U.S. DOLLARS (OR GAIN AMOUNTS IN U.S. DOLLARS) SHOULD BE EXCLUDED

A majority of the government's Charts—namely, GX-900, GX-903 – 925, and GX-930 – GX-932 (Berk Decl. Ex. 21, 20-28, 2-15, 29-31, 32)—reference NFT purchase prices, sale prices, or profit amounts in terms of U.S. dollars. The government should not be permitted to reference these figures in exhibits because **none** of the Ethereum Mr. Chastain obtained as a result of his NFT trades was actually converted to U.S. dollars. The subject of a defendant's purported gain amount is often discussed in the context of the U.S. Sentencing Guidelines, in particular U.S.S.G. § 2B1.4. The "Background" commentary to § 2B1.4 defines gain as "the total increase in value *realized* through trading in securities by the defendant and persons acting in concert with the defendant or to whom the defendant provided inside information." (Emphasis added); *see also United States v. Gupta*, 904 F. Supp. 2d 349, 352 (S.D.N.Y. 2012). Here, Mr. Chastain **never** converted his Ethereum to U.S. dollars and thus never *realized* any gain.

This is problematic, as unlike in the securities arena where a stock is typically traded directly for cash, here, the NFTs at issue were traded using an intermediary, non-cash asset— Ethereum tokens. Further, while the government has improperly attempted to convert Mr. Chastain's Ethereum proceeds into a dollar figure, the government has offered no rhyme or reason (indeed, there does not appear to be one) as to why it has chosen to calculate Mr. Chastain's gain in the manner it has. Indeed, it is unclear precisely what sources the government used to calculate

5

its price conversions, and equally unclear whether its calculations factor in variables such as OpenSea's transaction fee or the varying royalty fees each NFT artist chooses to charge. Notably, the price of Ethereum can very across trading platforms.

Sensibly, the Second Circuit has held that "summary charts should not be admitted unless a proper foundation is established connecting the numbers on the chart with the underlying evidence." *United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986). The government has plainly fallen short of that standard. Indeed, the government has provided no "connection" between the Ethereum prices at issue and the government's conversion to U.S. dollars. This is particularly important here, because it is a matter of public record that Ethereum values change constantly and unpredictably, a fact supported by the government's immense price range offering as to Ethereum's U.S. dollar conversion value in GX-900: $1,800 - $3,000. *See* Berk Decl. Ex. 21. Accordingly, permitting the government to assign a dollar amount to the trades at issue is plainly unjust where, as here, there is simply no foundation underlying their conversion figures and no justifiable premise for such a conversion.

### V. CHARTS REFERENCING THE DEFENDANT'S COMPENSATION SHOULD BE EXCLUDED

The Court should preclude the government's reference to Mr. Chastain's compensation while at OpenSea, specifically as referenced in GX-932. Berk Decl. Ex. 31. Accordingly, the defense respectfully refers the Court to the Defendant's Motion *in Limine* to Exclude Evidence and Argument Regarding Mr. Chastain's Compensation, filed herewith.

### VI. WITNESS TESTIMONY

Finally, the government has informed the defendant that it plans to call at trial FBI Special Agent Amelia Whitehead, who will be testifying as a summary witness principally about the proposed exhibits GX-900-GX-932. In its February 23, 2023 letter, the government provided the

defense with its expert witness disclosure but did not so identify Special Agent Whitehead. To the extent the government plans to have Special Agent Whitehead provide expert testimony, the government was obligated to disclose that information pursuant to Fed. R. Crim. P. 16. Thus, to the degree Special Agent Whitehead's testimony strays into expert testimony, it should be precluded.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court grant his motion *in limine* precluding the admission of the aforementioned proposed exhibits into evidence.

Date: New York, New York
      April 13, 2023

Respectfully submitted,

GREENBERG TAURIG, LLP

By: /s/ David I. Miller
David I. Miller
Daniel P. Filor
Charles J. Berk
Nicholas T. Barnes
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Nathaniel Chastain*