UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL CHASTAIN,<br><br>Defendant. | )<br>)<br>)<br>)<br>) No. 22-cr-305 (JMF)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF NATHANIEL CHASTAIN'S
MOTION *IN LIMINE* TO PRECLUDE QUESTIONING,
TESTIMONY, EXHIBITS, OR JURY ADDRESSES USING
"INSIDER TRADING," "FRONT RUNNING," OR SIMILAR TERMS**

Defendant Nathaniel Chastain respectfully submits this memorandum of law in support of his motion *in limine* to preclude, questioning, testimony, exhibits, or any jury addresses using the terms "insider trading," or "front running."[1] Those terms are irrelevant to this case, have no probative value, and any use of these terms would be unfairly prejudicial to Mr. Chastain.

## BACKGROUND

As noted in our motion to strike "insider trading" as surplusage (ECF No. 31), the government has repeatedly used "insider trading" to describe Mr. Chastain's alleged conduct in this case. While the government has opined that "insider trading" is simply a convenient descriptor for the conduct at issue, use of this term reflects the imprecise application of securities or commodities-based vernacular to an entirely distinct legal concept. There cannot exist "insider trading" or "front running" of assets that are neither securities nor commodities, and therefore terms such as these—which relate to crimes in the financial markets—are irrelevant to the instant

---

[1] Mr. Chastain also seeks to preclude references to derivative terms, such as "insider dealing" or "tailgating."

prosecution. Further, their inapt use at trial would be unduly inflammatory and prejudicial to the defendant, and confusing to a jury.

Accordingly, the defense renews its objection to the government's use of "insider trading" and objects to any potential use of the term "front running"—or similar terms—in the form of this motion *in limine* to preclude reference at trial under Fed. R. Evid. 401, 402, and 403.

## LEGAL STANDARD

Evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Further, under Rule 403 of the Federal Rules of Evidence, courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

Courts regularly preclude litigants from using "pejorative terms when [the] categorizations [a]re inflammatory and unnecessary to prove a claim." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, No. 04 Cv. 10014, 2009 U.S. Dist. LEXIS 89183, at *21 (S.D.N.Y. Sept. 28, 2009) (precluding party "from making inflammatory remarks," such as using the term "tax haven"); *see also MF Global Holdings, Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. Feb. 3, 2017) (precluding use of "any language that is unrelated to the issues being tried and unnecessary to prove the claims at issue in this case," including "vulture funds" and "treasure hunters"); *Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 192-93 (S.D.N.Y. 2008) (precluding references to the terms "securities fraud," "insider trading," "inside information," and "market manipulation" where "the only apparent reason for [such] trial strategy would be to show the jury that defendants are bad people") (internal quotation marks omitted); *cf. United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979) (striking words in an indictment that were "unnecessarily loaded").

When weighing the probative value of evidence against its prejudicial value, courts may consider "'evidentiary alternatives'" in the form of "alternative means to present similar evidence." *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006) (quoting *Old Chief v. United States*, 519 U.S. 172, 184 (1997)).

**ARGUMENT**

I. **THE GOVERNMENT SHOULD BE PRECLUDED FROM USING THE TERMS "INSIDER TRADING," "FRONT RUNNING," OR SIMILAR TERMS**

The government should be precluded from using the term "insider trading" or referring to "front running" trading practices (or similar terms) because those terms are irrelevant to this prosecution and any probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.

"Insider trading" has historically been understood, unambiguously, in reference to securities or commodities violations. As discussed in earlier briefing in this case, a misappropriation theory of insider trading brought under the wire fraud statute is derived from the misappropriation theory under the securities laws; in particular, § 10(b) of the Securities and Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. *See* Motion to Dismiss Opening Br. at 8. And pertinent case law has described insider trading as when an individual "misappropriates confidential information *for securities trading purposes*, in breach of a duty owed to the source of the information." *United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (stating that a misappropriation theory of insider trading is grounded in "a fiduciary-turned-trader's deception of those who entrusted him with access to confidential information").

In other words, "insider trading" applies where trades are "in connection with" securities or commodities. *Id*. Indeed, *Carpenter,* the case which the government attempts to use as the foundation for the wire fraud theory before this Court, involved securities trades. *See generally*

3

*Carpenter v. United States*, 484 U.S. 19 (1987).  Further, the U.S. Sentencing Guidelines Manual discusses "insider trading" in the securities context, as section 2B1.4 therein specifically notes that the statute and rule associated with "insider trading" are securities related: 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5.  U.S. SENTENCING GUIDELINES MANUAL § 2B1.4 (2021).  Thus, the term "insider trading" should only be used when the facts involve securities or commodities trading.

Likewise, the term "front running" is equally tied to the securities and commodities markets.  The term has been described as a securities or commodities-specific act both by this District and in academic literature on the subject.  *See In re Bernard L. Madoff Inv. Sec. LLC*, Nos. 08-99000 (SMB), 08-01789 (SMB), 09-01161 (SMB), 2015 Bankr. LEXIS 2674, at 816-17 n.5 (Bankr. S.D.N.Y. Aug. 11, 2015) ("Front running is the practice **by a broker** of trading for his firm's proprietary account, or for his own personal account, in advance of a block trade (usually 10,000 shares or more) in circumstances in which the block trade, by its very size, will have the effect of altering the price **of the security**.") (quoting BROMBERG & LOWENFELS ON SECURITIES FRAUD § 6:104 (2d ed. 2015) (emphasis added); *SEC v. Pasternak*, 561 F. Supp. 2d 459, 507 (D.N.J. 2008) (describing front running as a "theory of securities fraud.")

These terms are not to be used flippantly; they are legally consequential and are intended to describe a highly specific variety of criminal conduct that has not been alleged.  Rather, Mr. Chastain is charged with committing wire fraud as it relates to certain alleged trades of NFTs, which are, as the government has recognized, pieces of digital art.  *See* Indictment ¶ 5; *United States v. Carey*, 152 F. Supp. 2d 415, 430 (S.D.N.Y. 2001) (finding that "[t]here is no need for inflammatory phrases" where a description of an alleged scheme was "irrelevant and prejudicial, and therefore should be stricken or modified.").  Thus, "insider trading" and "front running" do

not capture the alleged conduct, are entirely irrelevant, and without probative value. Their presence serves no legitimate prosecutorial purpose.

But even if these phrases offered some probative value—and they do not—their use at trial would be inflammatory and unduly prejudicial. *See Aristocrat*, 2009 U.S. Dist. LEXIS 89183, at *20; *MF Global*, 232 F. Supp. 3d at 570; *see also Highland*, 551 F. Supp. 2d at 194 ("Given the notoriety of insider trading, mere use of the term 'inside information' may lead a juror to believe that the [defendants] engaged in improper or illegal conduct. Thus, any probative value of the term is outweighed by its misleading nature."). The terms "insider trading" and "front running" carry with them intensely negative connotations, as evidenced by the fact that such terminology is routinely used as headline material in major news publications.[2] The government has plainly taken advantage of this, as its use of "insider trading" in the Indictment has reaped substantial media attention[3] despite the government's admission that its theory of this case is divorced from the financial markets. *See* June 15, 2022 Pre-Trial Conference Tr. at 3:25 – 4:1.

---

[2] *See, e.g.,* U.S. News and World Report, *Securities Trader Charged in New York With Front Running Employer's Trades*, Dec. 14, 2022, https://money.usnews.com/investing/news/articles/2022-12-14/securities-trader-charged-in-new-york-with-front-running-employers-trades; Financial Times, *Chinese tech executives pay fines after SEC insider trading charges*, September 22, 2022, https://www.ft.com/content/95dee8d8-8219-460d-ad7e-f1a36b05ff1b; Business Insider, *What we know about the insider trading lawsuit filed against Bed Bath & Beyond just before the death of its CFO*, September 8, 2022, https://www.businessinsider.com/bed-bath-and-beyond-cfo-gustavo-arnal-insider-trading-lawsuit-2022-9; USA Today, *Cohen, SAC Capital reach $135M insider-trading settlement*, December 1, 2016, https://www.usatoday.com/story/money/2016/12/01/cohen-sac-capital-reach-135m-insider-trading-settlement/94726306/; CNBC, *The Insider Trades That Brought Down Raj Rajaratnam,* March 7, 2012, https://www.cnbc.com/2012/03/07/The-Insider-Trades-That-Brought-Down-Raj-Rajaratnam.html;

[3] *See, e.g.*, CNBC, Former OpenSea employee charged in first-ever NFT insider trading case, June 1, 2022, https://www.cnbc.com/2022/06/01/former-opensea-employee-charged-in-first-ever-nft-insider-trading-case.html; NBC News, Former OpenSea employee arrested, charged with NFT insider trading, June 1, 2022, https://www.nbcnews.com/tech/internet/opensea-nft-nate-chastain-arrest-charged-insider-trading-rcna31489

Though this Court declined to find that "insider trading" constituted surplusage in the indictment—a difficult standard to reach—the question of the term's suitability at trial presents a different issue in light of the potential for jury confusion. As the Court has noted, "when *most people* think of the term 'insider trading,' they think of securities fraud." June 15, 2022 Pre-Trial Conference Tr. at 3:19 – 3:20 (emphasis added). It is likely, then, that the jury would make a similar association. This presents a clear danger; that the government's incorrect labeling of the conduct at issue will cause the jury to erroneously conflate Mr. Chastain's alleged conduct to that of a high-powered Wall Street executive or trader in a highly regulated industry. Indeed, that industry stands in stark contrast to the cutting-edge NFT and cryptocurrency markets where little regulation yet exists and there is widespread sentiment in society and government about the levels of regulation needed.[4] Accordingly, the term has no use at trial especially where, as here, there are more accurate, yet less prejudicial descriptors available. *SEC v. Am. Growth Funding II, LLC*, No. 16-cv-828 (KMW), 2019 U.S. Dist. LEXIS 67421, at *8 (S.D.N.Y. Apr. 19, 2019) (precluding use of the term "Ponzi scheme" at trial where it would "confuse the jury" and "make[] it more likely than not that the jury would conflate this case with high-profile cases involving Ponzi schemes.")

For example, each of the trades at issue involves items allegedly featured on OpenSea's homepage and thus could be termed "featured trades" or alternatively, could be referred to by the names of the NFTs allegedly purchased and sold (*e.g.,* the "The Brawl 2 trade"). *See* Indictment ¶ 10(a). Any of these accurate terms would sufficiently identify the transactions at issue in the

---

[4] *See* Kirsten Gillibrand, U.S. Senator for New York, *Lummis, Gillibrand Introduce Landmark Legislation To Create Regulatory Framework For Digital Assets*, June 7, 2022, https://www.gillibrand.senate.gov/news/press/release/-lummis-gillibrand-introduce-landmark-legislation-to-create-regulatory-framework-for-digital-assets/.

Indictment without prejudicially framing the transactions to the jury as akin to improper securities trades. *See Awadallah*, 436 F.3d at 132 (noting that courts may consider "evidentiary alternatives" when balancing the probative value of evidence against its prejudicial effect).

In sum, "insider trading" and "front running" terminology—or similar phrases—are irrelevant to the conduct charged and their use at trial would suggest to a jury that Mr. Chastain is on trial for a criminal offense that has not actually been alleged. Further, their use would cause substantial undue prejudice to Mr. Chastain by framing him as a type of errant Wall Street trader. Accordingly, all references to "insider trading" or "front running" in questioning or testimony should be precluded.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court grant his motion *in limine* to preclude questioning, testimony, exhibits, or jury addresses using the terms "insider trading," "front running," or similar terms.

Dated: New York, New York
      April 13, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ David I. Miller
David I. Miller
Daniel P. Filor
Charles J. Berk
Nicholas T. Barnes
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Nathaniel Chastain*