**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) No. 22-cr-305 (JMF) |
| NATHANIEL CHASTAIN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**THE GOVERNMENT'S MOTIONS *IN LIMINE***

David I. Miller
Daniel P. Filor
Nicholas T. Barnes
Charles J. Berk
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200

*Attorneys for Nathaniel Chastain*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS.............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ................................................................................................................3

I.  EVIDENCE CONCERNING OPENSEA'S POLICY
    CHANGES, PROMULGATED ON AND AFTER
    SEPTEMBER 15, 2021, ARE RELEVANT AND ADMISSIBLE.......................3

    A.  Background ....................................................................................3

    B.  OpenSea's Policy Changes, Promulgated
        On and After September 15, 2021, Are
        Relevant to Key Issues in This Case............................................6

    C.  Rule 407, Governing Subsequent
        Remedial Measures, Is Inapplicable Here, and the
        Probative Value of the New Policies Substantially
        Outweighs Any Limited Prejudicial Effect.................................9

II.  THE DEFENSE SHOULD BE PERMITTED TO QUESTION
     WITNESSES ABOUT WHETHER THE CONDUCT
     AT ISSUE HERE WAS "INSIDER TRADING" .................................11

     A.  Background ........................................................................11

     B.  The Government Has Opened the Door to
         Questioning Witnesses About Whether the
         Conduct at Issue Here Was "Insider Trading"...........................11

III.  THE DEFENSE SHOULD BE PERMITTED TO
      QUESTION OPENSEA WITNESSES ABOUT
      THE CLARITY OF OPENSEA'S RULES .......................................15

      A.  Background ........................................................................15

      B.  Questions Relating to the Clarity of the
          CIAA Agreement are Permissible ............................................15

IV.  THE DEFENSE DOES NOT INTEND TO QUESTION
     WITNESSES ABOUT PRIVILEGED COMMUNICATIONS ...........................18

V.  THE COURT SHOULD PERMIT EVIDENCE
    AND ARGUMENT DEMONSTRATING THAT
    OPENSEA DID NOT SUFFER HARM.................................................19

VI.   THE DEFENSE SHOULD BE PERMITTED
      TO ARGUE THAT THIS PROSECUTION
      IS NOVEL AND UNPRECEDENTED................................................................20

CONCLUSION.........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carpenter v. United States*,
484 U.S. 19 (1987).............................................................................................3, 4, 15

*Cleveland v. United States*,
531 U.S. 12 (2000)................................................................................................2, 3

*Dixon v. Int'l Harvester Co.*,
754 F.2d 573 (5th Cir. 1985) ...................................................................................9

*Foley v. City of Lowell*,
948 F.2d 10 (1st Cir. 1991).......................................................................................8

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008).....................................................................12

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789 (LGS), 2022 WL 4087842 (S.D.N.Y. Sept. 6, 2022)...................9

*Kelly v. United States*,
140 S. Ct. 1565 (2020)..............................................................................................2

*Kinematic Techs., Inc. v. Brenton*,
No. 13-CV-01153, 2015 WL 6829042 (N.D.N.Y. 2015) .......................................17

*Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*,
Nos. 08 Civ. 11315 (WHP), 09 Civ. 2081 (WHP),
2011 WL 855876 (S.D.N.Y. Feb. 28, 2011)..............................................................9

*Millennium Partners, L.P. v. Colmar Storage, LLC*,
494 F.3d 1293 (11th Cir. 2007) ................................................................................9

*Pau v. Yosemite Park & Curry Co.*,
928 F.2d 880 (9th Cir. 1991) ....................................................................................9

*R.M. Perlman, Inc. v. New York Coat, Suit, Dresses,
Rainwear & Allied Workers' Union Local 89-22-1*,
33 F.3d 145 (2d Cir. 1994)........................................................................................9

*S.E.C. v. Geon Indus., Inc.*,
531 F.2d 39 (2d Cir. 1976)........................................................................................9

*Sell v. Ingersoll-Rand Co.*,
136 F. App'x. 545 (3d Cir. 2005) .............................................................................9

*TLT-Babcock, Inc. v. Emerson Elec. Co.*,
33 F.3d 397 (4th Cir. 1994).......................................................................................9

*United States v. Abu-Jihaad*,
630 F.3d 102 (2d Cir. 2010)......................................................................................6

*United States v. Blaszczak*,
    56 F.4th 230 (2d Cir. 2022) ........................................................................3

*United States v. Borrero*,
    No. 13 Cr. 58 (KBF), 2013 WL 6020773 (S.D.N.Y. Nov. 1, 2013)..................20, 21

*United States v. Cardillo*,
    316 F.2d 606 (2d Cir. 1963)......................................................................18

*United States v. Certified Envtl. Servs., Inc.*,
    753 F.3d 72 (2d Cir. 2014)..........................................................................6

*United States v. Chapman*,
    209 F. App'x 253 (4th Cir. 2006) ..............................................................17

*United States v. Forbes*,
    No. 02 Cr. 264, 2005 WL 8146315 (D. Conn. Oct. 13, 2015) ..............................13

*United States v. Mahaffy*,
    693 F.3d 113 (2d Cir. 2012)................................................................ *passim*

*United States v. Mostafa*,
    16 F.Supp. 3d 236 (S.D.N.Y. 2014)..........................................................7, 8

*United States v. Ramirez*,
    894 F.2d 565 (2d Cir. 1990)........................................................................8

*United States v. Rosado*,
    728 F.2d 89 (2d Cir. 1984)....................................................................20, 21

*United States v. Shkreli*,
    No. 15-CR-637, 2017 WL 3623626 (E.D.N.Y. June 24, 2017) ............................19

*United States v. White*,
    692 F.3d 235 (2d Cir. 2012)..............................................................6, 7, 21

**Statutes**

18 U.S.C. § 1343 ........................................................................................3

**Other Authorities**

Fed. R. Evid. 401 ....................................................................................6, 8

Fed. R. Evid. 407 ...................................................................................9, 10

Fed. R. Evid. 701 .................................................................................13, 16

Fed. R. Evid. 702 .....................................................................................17

Fed. R. Evid. 803(3)...................................................................................15

Defendant Nathaniel Chastain (the "defendant" or "Mr. Chastain") respectfully submits this Memorandum of Law in Opposition to the Government's Motions *in Limine*.

## PRELIMINARY STATEMENT

The government's Motions *in Limine*[1] unfairly seek to divorce the trial from the reality of the facts underlying the time period during which Mr. Chastain was employed at OpenSea.  Indeed, the Government would have the jury hear the derogatory and prejudicial term "insider trading" throughout the course of the trial (although that crime is not charged in this case), while at the same time have the defense precluded from questioning government witnesses about their belief that Mr. Chastain's conduct was in fact *not* insider trading.  Insider trading occurs in the highly-regulated securities industry where the rules of the road are known and clearly written, unlike the NFT and cryptocurrency space—which do not involve financial products—where there is very little regulation today.

Despite this reality, the government seeks to preclude the jury from hearing that the issues in this case are novel.  And worse, the government is intent on preventing the jury from learning that the rules of the road *inside* of OpenSea were also unclear.  Not only were there no OpenSea policies, trainings, or compliance programs to inform employees of any restriction on trading featured NFTs  (until September 15, 2021), the government would have the jury believe that a generic confidentiality agreement, signed by newly-hired employees, covered the conduct.  But the government would not let the jury learn that OpenSea owners and employees believed the generic document was unclear, vague, incomplete, and inapplicable.  The rules of the road finally became clear on Mr. Chastain's last day at OpenSea, when on September 15, 2021, the company implemented the following polices:

---

[1] Hereinafter cited, individually and collectively, as "Motion."

- OpenSea team members may not buy or sell from collections or creators while we are featuring or promoting them (e.g. on our home page); and
- OpenSea team members are prohibited from using confidential information to purchase or sell any NFTs, whether available on the OpenSea platform or not.

The government even seeks to shield the jury from learning about these new policies,[2] about which the Court has already advised: "almost certainly those changes would shed light on the content and meaning of the policies that were in place at the time of his conduct which would be relevant, I would think, to whether the information constituted property." October 27, 2022 Pre-Trial Conference Tr. at 9:11-14.

Finally, the government moves to preclude evidence demonstrating that OpenSea did not suffer harm as a result of the alleged conduct. In light of the specific facts of this case, however, where Mr. Chastain knew any alleged NFT trades would not harm OpenSea because OpenSea would make the same 2.5% commission on all NFT transactions, evidence that OpenSea indeed was not harmed is relevant to willfulness and intent. Moreover, where the government is attempting to elicit evidence suggesting theoretical harms to OpenSea (*i.e.*, a so-called erosion of

---

[2] The government's overzealous positions extend to its recently filed Requests to Charge (ECF No. 71), where, for example, instead of including all the *Mahaffy* factors as the defense did, it excludes the first two—"written company policies" and "employee training"—even though the Second Circuit identified them as "pertinent factors" about which "district courts would do well to provide additional guidance to the jury." *United States v. Mahaffy*, 693 F.3d 113, 138 n.14 (2d Cir. 2012). While the government proposes the Court's instructions from *United States v. Avenatti* for non-controversial charges like Stipulations (*see* ECF No. 71, Req. Nos. 17-28), with respect to the critical substantive wire fraud and money laundering charges (*see id.*, Req. Nos. 4-14), it proposes divergent instructions cobbled together to eliminate the willfulness requirement (Req. Nos. 5 & 7) and to satisfy the scheme to defraud element merely "if you find that the defendant conducted himself in a manner that departed from traditional notions of fundamental honesty and fair place [sic] in the general business life of society." (Req. No. 6). This is clearly contrary to the Supreme Court's direction that the property fraud statutes not be used by the "Federal Government … to enforce (its view of) integrity," but operate to protect traditional property rights only. *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020); *see also Cleveland v. United States*, 531 U.S. 12, 24 (2000).

trust) as a result of the alleged conduct, the defense must be entitled to rebut those hypothetical assertions with actual proof.

The government's Motions *in Limine* should be denied in full.

## ARGUMENT

I.   **EVIDENCE CONCERNING OPENSEA'S POLICY CHANGES, PROMULGATED ON AND AFTER SEPTEMBER 15, 2021 ARE RELEVANT AND ADMISSIBLE**

### A. Background

The government has charged Mr. Chastain under a *Carpenter* theory of wire fraud,[3] in violation of 18 U.S.C. § 1343, for "misappropriat[ing] OpenSea's confidential business information."  Indictment ¶ 13.  As relevant here, for information regarding soon-to-be-featured NFTs to qualify as "property" under the wire fraud statute, the government must prove, *inter alia*, that the relevant information was the confidential business information of OpenSea (*i.e.*, that the information was considered *and* treated as confidential by OpenSea), *see United States v. Mahaffy*, 693 F.3d 113, 135 n.14 (2d Cir. 2012); and that the information had inherent value to OpenSea, *see United States v. Blaszczak*, 56 F.4th 230, 244 (2d Cir. 2022) (confidential information not "inherently valuable" to victim agency where "premature[] disclos[ure] … [had] no direct impact on government's fisc"); *see also Cleveland v. United States*, 531 U.S. 12, 15 (2000) ("[T]he thing obtained must be property in the hands of the victim."); *Carpenter v. United States*, 484 U.S. 19, 26 (1987) ("[N]ews matter … is stock in trade, to be gathered at the cost of enterprise … to be distributed and sold to those who will pay money for it.") (internal quotation marks and citation

---

[3] The government stated during a June 15, 2022 pre-trial conference that "[t]he government's theory … [is] premised on the Supreme Court's decision in [*Carpenter v. United States*, 484 U.S. 19 (1987)]."  June 15, 2022 Pre-Trial Conference Tr. at 4:2-5.

omitted); Def. Memo of Law in Opp. to Gov. Mot. to Exclude the Testimony of Dr. Matthew Edman and Professor Douglas Skinner (ECF No. 63).

Where prior filings in this case have focused on the government's burden to prove the inherent value of information concerning soon-to-be-featured NFTs, the government's instant Motion implicates the proof required to demonstrate the "confidentiality" of "confidential business information."

As set forth by the Second Circuit in *United States v. Mahaffy*, when the government proceeds under a *Carpenter* theory of wire fraud, it must prove that the employer took affirmative steps to treat the information at issue as confidential:

> *Carpenter* requires proof that the information was *both considered and treated* by an employer in a way that maintained the employer's exclusive right to the information. Should this issue arise in future proceedings, district courts would do well to provide additional guidance to the jury regarding how to evaluate whether employers treat information as confidential. The pertinent factors will, of course, vary from case to case, but may include written company policies, employee training, measures the employer has taken to guard the information's secrecy, the extent to which the information is known outside the employer's place of business, and the ways in which other employees may access and use the information. If employers 'consider' information to be confidential but do not really take affirmative steps to treat it as such and maintain exclusivity, *Carpenter* is not satisfied.

*Mahaffy*, 693 F.3d at 135 n.14 (emphasis added).  Applied here, *Mahaffy* instructs that the jury— in evaluating whether the government has satisfied its burden of proof—must consider, among other things: (i) OpenSea's beliefs about whether the relevant information constitutes its "confidential business information"; and (ii) OpenSea's actions in attempting to maintain the confidentiality of that information.

In its first Motion, the government moves to preclude evidence of "OpenSea's new policies concerning information use and confidentiality."  Motion at 6.  In so moving, the government has

constructed a temporal—and arbitrary—dividing line to dictate the admissibility of evidence in this case.  According to the government, OpenSea's policy changes on or after September 15, 2021—the date on which Mr. Chastain was allegedly "terminated," (in fact, he offered his resignation) from his position at OpenSea—are not relevant to certain issues in this case.  *See id*. at 2-8.

The instant dispute revolves around two policy changes.[4]  First, on September 15, 2021, OpenSea CEO Devin Finzer informed the general public, in part:

> "We have also implemented the following policies: [1] OpenSea team members may not buy or sell from collections or creators while we are featuring or promoting them (e.g. on our home page); [and] [2] OpenSea team members are prohibited from using confidential information to purchase or sell and NFTs, whether available on the OpenSea platform or not."[5]

Second, on November 5, 2021, OpenSea implemented a new "Information Use Policy," which stated in part:

> (1) "Examples of Confidential Information include but are not limited to: OpenSea's plans to feature an NFT, collection or creator on the OpenSea home page or on its Social Media or Other Promotional Platforms"; (2) "The Home Page Team may not purchase or sell NFTs from collections or creators that are featured or promoted on the OpenSea home page from the period when such collection or creator is under consideration to be featured or promoted on the OpenSea home page until such collection is removed from the OpenSea home page."

None of these policies are included in OpenSea's "Confidential Information and Invention Assignment Agreement" ("CIIA Agreement"), effective prior to Mr. Chastain's resignation.

---

[4] The government's Motion includes a third policy change in September 2022.  The defense does not intend to elicit information about the September 2022 policy change during trial.

[5] Devin Finzer, *Our commitment to the OpenSea community*, OPENSEA BLOG (Sept. 15, 2021), https://opensea.io/blog/announcements/employee-information-use-at-opensea/.

In support of its Motion to preclude evidence pertaining to the above-noted policies, the government turns a blind eye to pertinent Second Circuit precedent, arguing that the new policies are inadmissible for three reasons. First, according to the government, the policies are not relevant to any issue in this case. Motion at 6-7. Second, they amount to improper "subsequent remedial measures." *Id*. at 7. And third, any "limited probative value" of the policies "would be significantly outweighed by the risks of juror confusion and unfair prejudice." *Id*. at 7-8. The government's arguments are meritless. We address them in turn.

### B. OpenSea's Policy Changes, Promulgated On and After September 15, 2021, Are Relevant to Key Issues in This Case

Pursuant to FED. R. EVID. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) ("To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less prove it beyond a reasonable doubt."); *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) ("[T]he definition of relevance under [Rule] 401 is very broad."); *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (noting that Rule 401 is a "very low standard").

Despite the low bar prescribed by FED. R. EVID. 401, the government insists that the new policies are irrelevant because they: (i) do not speak to "[Mr.] Chastain's *mens rea*"; and (ii) "shed no light on the content of the policies in place during the relevant period, and therefore cannot be used to claim that OpenSea did not *treat* the misappropriated information as confidential." Motion at 6 (emphasis added). Here, however, the government selectively draws on *Mahaffy* to advance arguments that obscure the relevant legal landscape. Indeed, in arguing that the new policies "cannot be used to claim that OpenSea did not treat the [relevant] information as confidential," *id.*, the government conspicuously omits the fact that it is required to prove that the information at

issue "was both *considered* and treated" as confidential, *Mahaffy*, 693 F.3d at 135 n.14 (emphasis added).  Thus, as noted above, when evaluating whether the government has sustained its burden of proof with respect to the instant wire fraud charge, the jury will be tasked with deciding *not only* whether OpenSea *treated* the relevant information as confidential, *but also* whether *OpenSea considered* the relevant information that was allegedly misappropriated to be confidential.

When placed in context of *both* requirements, the relevance of the new policies—implemented in September 2021, while Mr. Chastain still worked at OpenSea, and November 2021, two short months after Mr. Chastain resigned—is apparent.   Indeed, OpenSea's implementation of the new NFT confidentiality policies (which *specifically state* for the first time that "plans to feature an NFT … on the OpenSea home page" qualify as "confidential information") tends to show that it did not consider information concerning soon-to-be-featured NFTs to be confidential or covered by the CIIA Agreement (which *does not state* that plans to feature an NFT on OpenSea's homepage qualify as confidential information).  Or in other words, the new policies tend to show that *OpenSea* did not *consider*—or treat—the relevant information to be confidential during the period of time encompassing Mr. Chastain's employment.  *See United States v. Mostafa,* 16 F.Supp. 3d 236, 248-49 (S.D.N.Y. 2014) ("To be relevant, evidence need not constitute conclusive proof of a fact in issue…"); *White*, 692 F.3d at 247 (noting that evidence may be relevant even when the theory of relevance requires a chain of complex reasoning).

Notably, the Court appears to have recognized the relevance of the new policies during the October 27, 2022 pre-trial conference:

> The Court: [A]lmost certainly those changes would shed light on the content and meaning of the policies that were in place at the time of his conduct which would be relevant, I would think, to whether the information constituted property.

October 27, 2022 Pre-Trial Conference Tr. at 9:11-14.

Guided by *Mahaffy*, the new policies directly relate to an element of the instant wire fraud charge.  Moreover, they are critical to the defense theory of the case.  *See* Def. Requests to Charge (ECF No. 83) at 27.  It also bears mentioning, however, that the inferences to be drawn from the implementation of the new policies are not speculative.  Indeed, although the government is attempting to block this information from being introduced at trial in a separate Motion, the fact remains that a former OpenSea senior employee specifically stated that *OpenSea did not have clear policies in place covering the alleged conduct that forms the basis for the instant Indictment*. The implementation of the new policies, therefore, corroborates this account.

Finally, the fact that the two policies were implemented on and after the date Mr. Chastain's resignation is of no moment, as courts in this Circuit and elsewhere, in various contexts, have been critical of attempts to exclude evidence as irrelevant simply because that evidence post-dates the alleged conduct at issue.  *See, e.g., United States v. Ramirez,* 894 F.2d 565, 569 (2d Cir. 1990) (discussing similar act evidence; noting that "[r]elevancy cannot be reduced to mere chronology"); *Mostafa,* 16 F.Supp. 3d at 268 (discussing admissibility of undated photographic and documentary evidence; noting "[t]he fact that evidence predates or postdates the charged conduct does not alone predetermine its relevance or admissibility" (internal citations omitted).); *see also Foley v. City of Lowell,* 948 F.2d 10, 14 (1st Cir. 1991) (in Section 1983 case, "actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident.").

As demonstrated, the new policy evidence clearly meets and surpasses the low threshold required to establish relevancy under Rule 401.  The evidence should be admitted accordingly.

**C. Rule 407, Governing Subsequent Remedial Measures, Is Inapplicable Here, and the Probative Value of the New Policies Substantially Outweighs Any Limited Prejudicial Effect**

In support of its efforts to prevent the jury from hearing evidence that is relevant to, and probative of, a key issue in dispute, the government maintains that the new policies are akin to "subsequent remedial measures" and therefore inadmissible pursuant to FED. R. EVID. 407.  In advancing this argument, the government hangs its hat on a handful of civil matters in which a party sought to admit evidence of a subsequent action, undertaken by its adversary, to prove that its adversary was culpable or negligent.[6]  These cases do not support the government's position. This is not a civil lawsuit between Mr. Chastain and OpenSea, and consequently, Rule 407— intended to prevent a party from introducing subsequent remedial measures against its adversary for the purpose of proving, among other things, negligence—is inapplicable.  *See* FED. R. EVID. 407 Advisory Committee Notes.  Separately, of course, the government's preclusive efforts also fail because courts in this Circuit, as well other Circuits, have held that the Rule 407 does not apply to subsequent measures taken by third parties (in this case, OpenSea).[7]

---

[6] *See, e.g., R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-22-1*, 33 F.3d 145, 156 (2d Cir. 1994) (discussing whether contractual clause was intended to be administered in unlawful manner; subsequent letter containing suggested revisions to clause deemed subsequent remedial measure); *S.E.C. v. Geon Indus., Inc.*, 531 F.2d 39, 51-52 (2d Cir. 1976) (discussing, among other things, whether defendant company should be enjoined "for negligently failing to prevent [employee] from selling on inside information"); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2022 WL 4087842, at *4-5 (S.D.N.Y. Sept. 6, 2022) (excluding evidence of subsequent measures to prove defendant's culpable conduct).

[7] *See, e.g., Sell v. Ingersoll-Rand Co.*, 136 F. App'x. 545, 546-47 (3d Cir. 2005) (holding that Rule 407 does not apply to third parties); *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994) (same); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 583 (5th Cir. 1985) (same); *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) (same); *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1302 (11th Cir. 2007) (same); *Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, Nos. 08 Civ. 11315 (WHP), 09 Civ. 2081 (WHP), 2011 WL 855876, at *7 (S.D.N.Y. Feb. 28, 2011) (same).

Notably, even if Rule 407 were applicable to the facts of this case—and clearly it is not—the defense does not seek to admit the new policies to demonstrate OpenSea's negligence or liability. Instead, as permitted by the Rule, the policies would be offered "for another purpose," FED. R. EVID. 407; namely, to demonstrate that OpenSea did not consider the information about upcoming featured NFTs—information that Mr. Chastain allegedly misappropriated—to be confidential business information during the course of Mr. Chastain's employment. For all of these reasons, the government's subsequent remedial measures argument should be dismissed.

Finally, the government suggests, by way of a laundry list of hypotheticals, that the admission of the new policies would somehow cause prejudice or juror confusion. The government's "musings" over the alleged impropriety of the evidence, however, are unpersuasive. As discussed above, OpenSea's policies (or lack thereof) are directly at issue in this case. Moreover, the presentation of these policies will provide the jurors with additional perspective on the ways in which OpenSea considered (or did not consider) certain types of information to be confidential. Accordingly, in light of their undeniably probative value (which substantially outweighs any limited prejudicial effect), the new policies should be deemed admissible by this Court, and the government's efforts to preclude these policies from trial should be seen for what they truly are—an unabashed attempt to ensure that only one view of the evidence (*i.e.*, the government's view) is heard by the jury.

## II.   THE DEFENSE SHOULD BE PERMITTED TO QUESTION OPENSEA WITNESSES ABOUT WHETHER THE CONDUCT AT ISSUE HERE WAS "INSIDER TRADING"

### A.  Background

Over strenuous objection by the defense, the government has framed, and continues to frame, the alleged conduct at issue in this case as "insider trading." *See, e.g.,* Indictment ¶ 1.  In a September 21, 2021 interview, however, OpenSea's CEO Devin Finzer stated:

> I do think there was a mis-framing as insider trading.  We don't view NFTs as financial assets, so that does not apply.  That's a very specific term for a very specific thing.  For us it was an opportunity to really set the standards and policies around what employees are able to use as confidential information at OpenSea.  This was a relatively small thing that was done by an employee… That employee then resigned due to this.[8]

### B.  The Government Has Opened the Door to Questioning Witnesses About Whether the Conduct at Issue Here Was "Insider Trading"

From day one of this wire fraud prosecution, the government has touted the alleged conduct at issue here as "insider trading."[9]  Since that time, despite the fact that Mr. Chastain has not been charged with trading that involves a financial instrument (much less securities or commodities fraud), the government has made clear that it will gratuitously and prejudicially refer to the alleged conduct as "insider trading" throughout the course of trial.[10]  Nonetheless, the government now

---

[8]  This, of course, directly contradicts the government's assertion that Mr. Chastain was "terminated" from OpenSea.  *See* Motion at 2.

[9]  Department of Justice, *Former Employee Of NFT Marketplace Charged In First Ever Digital Asset Insider Trading Scheme* (June  1,  2022),  https://www.justice.gov/usao-sdny/pr/former-employee-nft-marketplace-charged-first-ever-digital-asset-insider-trading-scheme.

[10]  *See, e.g.*, Gov. Opp. to Mot. to Dismiss Indictment at Section I(B)(2) (ECF No. 23) ("Describing [Mr.] Chastain's Crime as 'Insider Trading' Is Appropriate"); Gov. Opp. to Def. Mot. to Strike "Insider Trading" Language from Indictment (ECF No. 35); Gov. Mot. to Exclude the Testimony of Dr. Matthew Edman and Professor Douglas Skinner at 4 (ECF No. 61) (referring to the alleged conduct as "insider trading"); Gov. Requests to Charge at 2 (ECF No. 71) ("Count One charges the defendant with committing wire fraud through insider trading…"); Gov. Proposed

moves to prevent the defense from questioning Mr. Finzer—the CEO and co-founder of OpenSea (*i.e.*, the purported victim of the alleged property-based offense)—about the statements he made in the above-referenced interview.  As argued by the government, any such questioning would result in "improper and irrelevant lay witness opinion testimony," of no probative value, that would confuse the jury.  Motion at 10.

As discussed in the defense's Motion *in Limine* to exclude "insider trading," "front running," or similar terms, however, the only party to this litigation that seems intent on confusing the jury is the government, as any reference to "insider trading" is unnecessary and will cause the jury to question the use of the term in the context of this wire fraud prosecution, or worse, base its verdict on the negative connotations that are commonly associated with the term and its use.  *See Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 193 (S.D.N.Y. 2008) ("Given the notoriety of insider trading, mere use of the term 'inside information' may lead a juror to believe that the [defendants] engaged in improper or illegal conduct.  Thus, any probative value of the term is outweighed by its misleading nature.").

In any event, the government's arguments in favor of preclusion, much like prior arguments set forth over the course of this litigation, are unfounded and contradictory. [11]  As discussed herein, the government should not be permitted to use the term "insider trading" as a sword (to advance unnecessary and inflammatory remarks in furtherance of the suggestion that Mr. Chastain is a bad person) and a shield (to prevent the defense from offering evidence to the contrary).

---

Examination of Prospective Jurors at 2 (ECF No. 72) ("The Indictment charges [Mr. Chastain] with committing wire fraud through insider trading…").

[11] *See, e.g.*, Def. Memo of Law in Opp. to Gov. Mot. to Exclude the Testimony of Dr. Matthew Edman and Professor Douglas Skinner at Section II(D) (ECF No. 63) (discussing, among other things, the ways in which the government would have the Court *ignore* the concept of "insider trading" to preclude testimony on "fundamental information and *consider* the concept of "insider trading" to preclude testimony on "informed trading").

The government asserts that any questions posed to Finzer on the topic of "insider trading" would result in improper lay witness testimony that is an opinion of law, inadmissible under FED. R. EVID. 701.[12]  Motion at 10.  The government, however, cannot now invoke Rule 701 to prevent testimony on "an opinion of law" when it has repeatedly stated that the term "insider trading" is a general "moniker" to describe, as a matter of fact, the conduct at issue—as opposed to a legal term grounded in trading that involves financial instruments.  *See* Gov. Memo of Law in Opp. to Def. Mot. to Strike at 2-3 (ECF No. 35) (noting that "a charging instrument may be used to provide background to the charged criminal conduct, to describe the circumstances, means, and methods of an offense"; further noting that "[t]he moniker 'insider trading' aptly captures the conduct").  Accordingly, if the government insists on referencing "insider trading" as a generic descriptor of the alleged conduct, then witness testimony disputing that characterization is not only relevant, but clearly admissible.

Notwithstanding the government's efforts to ignore the legal implication of "insider trading," which warrants the factual response described above, its arguments suffer from several additional flaws.  First, the government insists that, "to allow such testimony would be to permit any fact witness to opine on whether the defendant had engaged in 'insider trading'…a result certainly not permitted by Rule 701."  Motion at 11.  Here, however, the government reveals its hand: (i) the government, and only the government, should be allowed construct a narrative around

---

[12] The government's citation to *United States v. Forbes*, No. 02 Cr. 264, 2005 WL 8146315 (D. Conn. Oct. 13, 2015), is inapposite.  In *Forbes*, the government prosecuted the defendant for several offenses, including multiple counts of mail and wire fraud and multiple counts of "insider trading," presumably securities fraud.  *Id*. at 1.  The procedural history of the case, however, is not abundantly clear, as the court indicated in a footnote that the government moved to withdraw the mail and wire fraud counts, as well as the "insider trading" counts, after being informed of the court's decision on separate issues.  *Id*. at *4 n.1.  In any event, the facts underlying the *Forbes* decision are also clearly distinguishable from the facts of this case.

the concept of "insider trading"; (ii) the defense should be prohibited from rebutting this characterization; and (iii) the Court should acquiesce to the government's position as arbiter of the law. *See* Gov. Requests to Charge (ECF No. 71) (including the term "insider trading" without offering any further discussion or instruction as to how or why it is being used in this case).

Second, the government argues that "Finzer's opinion that the defendant's conduct is not 'insider trading' is not relevant to the facts at issue in the case." Motion at 11. As discussed above, however, the government itself created this issue when it tagged the alleged conduct as "insider trading" and severed the link between that term and the law. Further, despite the government's objections, Mr. Finzer is the CEO and co-founder of the purported victim of the alleged offense, and thus, his testimony is clearly relevant whether the victim believes that it was victimized by "insider trading."

Third, the government insists that "[t]estimony about whether the defendant was doing 'insider' trading would … confuse the jury." *Id.* So instead, the government is content take that mantle on itself, and confuse the jury on its own terms? This is nonsensical. Indeed, where the government seeks to use "insider trading" at trial, it cannot then turn around and claim that the relevant testimony should be prohibited.

Fourth, the government argues that "[a] jury may not appreciate that the Court's legal instructions differ from the way Finzer defines 'insider trading.'" *Id.* What legal instructions? The Court should not offer legal instructions on the elements of insider trading *because that crime has not been charged here*. And the government, even though it is content to refer to the alleged conduct as "insider trading" in its proposed Requests to Charge, has not offered any explanation or instruction on the elements of that crime. *See* Gov. Requests to Charge (ECF No. 71).

Finally, without any further argument or explanation, the government insists that the defense should be precluded from offering Finzer's recorded "hearsay interview statement" into evidence.  Motion at 10.  The statement, however, is inherently trustworthy and demonstrates Finzer's (and by extension, OpenSea's) state of mind around the time of the alleged conduct.  *See, e.g.,* FED. R. EVID. 803(3).  It may also be appropriate impeachment material, depending on the testimony at trial.  The government's arguments should be rejected.

## III.   THE DEFENSE SHOULD BE PERMITTED TO QUESTION EMPLOYEES ABOUT THE CLARITY OF OPENSEA'S RULES

### A.  Background

As the government now acknowledges, it initiated the instant wire fraud prosecution based on the alleged violation of a company policy, even though senior leaders of that company: (i) did not believe the policy was clear; and (ii) did not believe the alleged conduct was covered by that policy.

### B.  Questions Relating to the Clarity of the CIAA Agreement are Permissible

The government begins its third Motion by referencing, in part, the allegations that are set forth in the Indictment relating to the wire fraud charge.  *See* Motion at 12 ("The Indictment alleges that the defendant fraudulently misappropriated OpenSea's 'confidential business information,' and therefore its property, by using non-public information about what NFT would be featured on the company's website for his own profit.").  Next, the government cites to *Mahaffy*, 693 F.3d at 135 n.14, for the proposition that "*Carpenter* requires proof that the information was both considered and treated by an employer in a way that maintained the employer's exclusive right to the information."

The government then continues, noting that, "[i]n assessing whether an employer treated information as confidential, a jury may consider, among other things, 'written company policies,

employee training, measures the employer has taken to guard the information's secrecy, the extent to which the information is known outside the employer's place of business, and the ways in which other employees may access and use the information.'" Motion at 12 (quoting *Mahaffy*, 693 F.3d at 135 n.14). And yet, despite the government's apparent recognition of its burden of proof—in a case that, according to the government, appropriately charges the defendant with "insider trading"—the government explicitly states that there is no dispute "that during the period of the defendant's employment, *there were no written policies concerning insider trading or purchasing featured NFTs*." Motion at 13 (emphasis added).

This, of course, begs the question: What are we doing here? With no policies in place concerning the alleged conduct, and multiple OpenSea senior leaders explicitly stating that the generic CIAA Agreement, in place during the relevant time period, was not clear, or did not cover the alleged conduct, the defense cannot help but conclude that the government is prosecuting this case on a flawed basis. In furtherance of this goal, the government seeks to preclude the defense from questioning OpenSea employees about whether or not they perceived the generic CIAA Agreement—an Agreement with which they too were personally familiar because they also signed it—to be unclear. The government's arguments in support of preclusion, however, miss the mark.

First, the government contends that an employee's opinion about the clarity of confidentiality obligations or OpenSea's rules is inadmissible under Rule 701. *See* Motion at 14. That rule, however, permits opinion testimony by lay witnesses when it is: (i) "rationally based on the witness's perception"; (ii) "helpful…to determining a fact in issue"; and (iii) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. All of those boxes are checked here. Indeed, any such testimony about the clarity of the rules would be based on the employee's own perception, as the employee was subject to the same

agreement; the testimony would be critical to determining a fact in issue, including whether OpenSea sufficiently "considered and treated" the relevant information as confidential, *see Mahaffy*, 693 F.3d at 135 n.14; and the testimony would not be based on scientific, technical, or specialized knowledge.  *See Kinematic Techs., Inc. v. Brenton, LLC*, No. 13-CV-01153, 2015 WL 6829042 (N.D.N.Y. 2015) (denying defendant's motion to exclude testimony of non-party witnesses regarding contract status of parties); *see also United States v. Chapman*, 209 F. App'x 253, 267 (4th Cir. 2006) (holding that third-party employee's testimony "about his personal understanding of the obligations imposed by a contract to which his company was a party [is] a typical and proper subject for lay witness testimony").  In this respect, the government's citation to FED. R. EVID. 702 is inapplicable, as no OpenSea employee will be qualified to testify as an expert in this case.

Second, if one were to take the government's argument—that lay witnesses are not permitted to discuss the contents and application of a contract (and that is not what the defense seeks to do)—at face value, then the government would not be permitted have its own witnesses opine on "whether the information [Mr.] Chastain utilized in conducting his frontrunning was confidential," pursuant to the terms of that contract.  Motion at 13.

Finally, it appears the government is primarily concerned about text messages and 3500 interviews from OpenSea founders and employees, including Devin Finzer, Alex Attallah, and Jessica Phan, where the lack of clarity or applicability of the rules was addressed.  To the extent any government witnesses now wish to provide explanations that differ from those referenced in the above-noted documents, they are entitled to do so, subject to cross-examination.  In any event, however, a number of other OpenSea employees and corroborating documents confirm the reality of the situation—that there were no clear rules of the road (or no rules at all) addressing whether

the selection of NFT featured artists was required to be kept confidential prior to September 15, 2021.  The government's Motion should be denied.

## IV.    THE DEFENSE DOES NOT INTEND TO QUESTION OPENSEA WITNESSES ABOUT PRIVILEGED COMMUNICATIONS

In its fourth Motion, the government asks the Court to preclude the defense from questioning OpenSea witnesses about privileged conversations.  At this juncture, the defense has no intention to do so.  But should the government's witnesses open the door by testifying as to issues that are contrary to what those same witnesses said during those allegedly privileged conversations, the defense will re-visit this issue with the Court.  Indeed, as the government has already noted, "if [a] witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part."  Motion at 15 (citing *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963)).

We note, however, that the government's list of allegedly privileged communications includes an in-person conversation between Mr. Chastain and Dan Viau on September 15, 2021. *See* Motion at 14.  At that time, Mr. Viau was a software engineer, and acting in that capacity, even if he had a law license.  Moreover, during the conversation at issue, Mr. Viau was not providing legal advice, but was discussing this matter as a friend.  Accordingly, depending upon the nature of Mr. Viau's direct testimony, the defense reserves the right to inquire about this conversation.

**V.    THE COURT SHOULD PERMIT EVIDENCE
        AND ARGUMENT DEMONSTRATING
        THAT OPENSEA DID NOT SUFFER HARM**

In its fifth Motion, the government moves to preclude "evidence and argument that OpenSea did not ultimately suffer harm." Motion at 17. Its primary objection is two-fold: (i) that the wire fraud statute does not require proof of actual harm to the victim; and (ii) it is impermissible to advance a "lack of harm" argument to show that the defendant did not have the requisite intent. The government is correct in stating that the wire fraud statute does not require proof of actual harm to the victim. *See* Def. Requests to Charge at 14 (ECF No. 83). The validity of its argument, however, ends there.

As will be shown throughout the course of this trial, OpenSea earned a 2.5% commission on every NFT transaction, regardless of when or how that transaction took place. As an OpenSea senior manager, Mr. Chastain was aware of that commission. Accordingly, in the context of specific facts underlying this case, the fact that OpenSea did not suffer harm is directly relevant to willfulness and intent.[13] *Cf. United States v. Connolly*, No. 16 Cr 370 (CM), 2018 WL 5023785, at *3 (S.D.N.Y. 2018) (lack of harm can be relevant to intent when Defendant knows no harm will result).

Further, the government clearly recognizes that harm-related evidence (*advanced by the defense*) is problematic and plainly undercuts its ability to obtain a conviction. Throughout the course of this prosecution, the government has repeatedly stated in writing that Mr. Chastain's

---

[13] The government's citation to *United States v. Shkreli*, No. 15-CR-637, 2017 WL 3623626 (E.D.N.Y. June 24, 2017), is inapposite. In *Shkreli*, which involved the right to control theory of wire fraud, the court prohibited the defendant from arguing "that because some investors *may* have profited from their investment relationship with [him], he lacked the intent to defraud." *Id.* at 12-13 (emphasis added). As discussed above, however, the issue here is that Mr. Chastain knew that OpenSea would receive a 2.5% commission regardless, and thus not be harmed. Thus, the facts in this case are clearly distinguishable from the facts underlying the *Shkreli* decision.

alleged actions caused, or could have caused, an erosion of trust (*i.e.*, harm) in OpenSea's marketplace. And the 3500 materials provided by the government clearly demonstrate that it will continue to advance this erosion of trust argument throughout trial. By proceeding in this manner, the government has opened the door to evidence tending to show that OpenSea did not, or could not, suffer harm, including an erosion of trust, as a result of the alleged conduct at issue here. In this respect, as a counterbalance to argument and testimony that the government will set forth during its case-in-chief, it can hardly be said the additional, responsive argument and testimony will be confusing or misleading.[14]

Like we have seen before, we see again: the government is determined to advance its own restrictive narrative of facts, and at the same time, stonewall the defense from providing the jury with a more complete picture that demonstrates the reality of the circumstances underlying this case. Here, if the government is permitted to advance the notion that OpenSea suffered, or could have suffered, harm—including an erosion of trust—as a result of the alleged conduct in this case, it would be patently unfair to prohibit the defense from advancing relevant and probative evidence and argument to the contrary. The government's Motion should be denied.

## VI.   THE DEFENSE SHOULD BE PERMITTED TO ARGUE THAT THIS PROSECUTION IS NOVEL AND UNPRECEDENTED

The government's sixth Motion seeks to preclude the defense from arguing that this wire fraud and money laundering prosecution is a "novel" or "unprecedented" prosecution when *it is in fact* a novel and unprecedented prosecution, as touted by the government. Notably, the government's position rests almost exclusively on its citation to two cases, *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984), and *United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013

---

[14] To the extent the Court may disagree, it can offer a limiting instruction to the jury on this issue.

WL 6020773, at *1 (S.D.N.Y. Nov. 1, 2013).  A closer inspection of these cases, however, reveals that the arguments the government now seeks to preclude are permissible, so long as they are relevant to the case.

In *Rosado*, for example, while the defendants were being tried on criminal contempt charges, they mounted a "political defense," condemning the United States for its involvement in third world countries, condemning the F.B.I. for persecuting sympathizers of Puerto Rican Independence, and questioning the government's motives in subpoenaing them to testify before the grand jury.  728 F.2d at 93.  Notably, the trial judge permitted the defendants to proceed in such a manner—despite the disconnect between the above-noted arguments and the elements of the charged offense—and the defendants' convictions were upheld on appeal.  *Id.*

In *Borrero*, the court acknowledged that arguments related to charging decisions are admissible in the Second Circuit so long as they are relevant and not otherwise subject to exclusion under Rule 403. 2013 WL 6020773, at *1; *cf. White*, 692 F.3d at 245-46 (declining to adopt a categorical rule that evidence of the Government's charging decisions is never admissible by a criminal defendant; holding that such evidence may be admissible upon inquiry into its relevance and probative value).

Guided by *Rosado* and *Borrero*, the Court should permit the defense to argue that this wire fraud and money laundering prosecution is novel and unprecedented—not that the prosecutors acted improperly in bringing it.  In the context of this case, this type of argument is relevant because it speaks to whether or not Mr. Chastain could have willfully participated in a scheme to defraud when: (i) unlike the highly-regulated securities industry, there is very little regulation governing the digital asset space; (ii) the employment policy forming the basis for this wire fraud prosecution is concededly unclear; (iii) there was no policy in place "concerning insider trading or purchasing

featured NFTs"; and (iv) this type of "scheme to defraud" has never before been prosecuted. Further, as a matter of fairness, the government should not now be permitted to conceal the fact that this is a "first-of-its-kind" prosecution when it has already touted this case to the general public as the "first ever digital asset insider trading scheme."[15]

The Court should deny the government's attempt to prevent argument relating to the novel nature of this prosecution.   In the context of this case, contrary to the government's position, this type of argument is relevant and appropriate for the jury to consider.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court deny the government's Motions *in Limine*.

Dated: New York, New York
         April 17, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ David I. Miller          .
David I. Miller
Daniel P. Filor
Nicholas T. Barnes
Charles J. Berk
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Nathaniel Chastain*

---

[15] *See* Department of Justice, Former Employee Of NFT Marketplace Charged In First Ever Digital Asset Insider Trading Scheme (June 1, 2022), https://www.justice.gov/usao-sdny/pr/former-employee-nft-marketplace-charged-first-ever-digital-asset-insider-trading-scheme.