

David Miller
Tel 212.801.9205
Fax 212.801.6400
david.miller@gtlaw.com

April 30, 2023

**VIA ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Nathaniel Chastain,* No. 22-cr-305 (JMF)

Dear Judge Furman:

    We write in response to the government's motion to preclude the defense from making certain closing arguments that are directly related to the admitted evidence in this case (the "Motion"). The government seeks to preclude the defense from commenting on a wide swath of evidence, including: (i) evidence of OpenSea's 2.5% transaction fee; (ii) evidence of Mr. Chastain's stock options; (iii) the issue of willfulness; (iv) certain tweets that have been received into evidence; and (v) evidence that other individuals have traded in NFTs.

    As an initial matter, the defense objects to the government's highly unusual attempt to prevent Mr. Chastain from presenting a robust defense in this matter. Indeed, by filing its motion to preclude the defense from setting forth several arguments in closing, the government seeks to re-litigate the relevance and admissibility of evidence that has been properly admitted during this trial.

    Further, the government's arguments in favor of preclusion are meritless. In closing argument, the parties are permitted to draw fair inferences from the admitted evidence, and the jury is entitled to accept or reject those inferences based on their perception of the facts. Accordingly, the Court should reject the government's attempt to advance its own reading of the evidence by way of legal or curative instructions. Whatever disagreement the government may have with the defense's summation is properly addressed through its own advocacy in its opening and rebuttal summations.

    <u>Evidence of OpenSea's 2.5% Transaction Fee</u>

    According to the government, any reference to OpenSea's transaction fee to show that the defendant did not intend to harm OpenSea is purportedly "at odds with the law," "will confuse the jury," and "is not relevant to the case." The government is wrong.

First, there is already substantial evidence in the record that OpenSea obtains a 2.5% transaction fee for each NFT sale on the platform—including the featured artist work—and indeed, during the time period at issue, this fee was OpenSea's "primary source of revenue." Trial Tr. 490:15 – 491:5; *see also* Trial Tr. 168:4 – 169:9. Notably, the government appears to forget that they placed the 2.5% transaction fee into evidence in the first instance:

> Mr. Burnett:   If OpenSea wasn't buying or selling NFTs, how did it make money?
>
> Mr. Atallah:   For every successful transaction that's completed on the marketplace, on OpenSea's website, OpenSea would take a 2.5 percent fee from whatever the seller wanted to sell.

Trial Tr. 168:4-8. The defense, therefore, has a right to comment on, and use, this evidence to point out weaknesses in the government's case. *See United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) (the defense is "generally entitled to wide latitude during closing arguments, so long as [it] [does] not misstate the evidence."). Certainly, the defense's closing argument is the appropriate vehicle to do so, and of course, is the last opportunity to present its respective version of the case as a whole, considered in light of all of the facts that are now before the jury. And naturally, the government is free to argue in its opening and rebuttal summations the points it has made regarding the transaction fee. But the government should not be allowed to cut off an appropriate defense theory based on evidence admitted at this trial.

Second, the government posits that any intent-based argument stemming from OpenSea's 2.5% transaction fee is inappropriate because it does not speak to the question of "whether or not the defendant contemplated harm to OpenSea in the form of depriving it of its exclusive right to use its confidential business information about NFTs." (Motion at 1). The government's argument should be rejected. Intent is, without question, a key issue in this case. And as the Court is aware, any issues revolving around a defendant's intent, or lack thereof, are often proven through circumstantial evidence and reasonable inferences drawn therefrom. *See United States v. MacPherson,* 424 F.3d 183, 189 (2d Cir. 2005); *United States v. Salameh,* 152 F.3d 88, 143 (2d Cir. 1998) (recognizing that "most evidence of intent is circumstantial."). Accordingly, where the evidence here tends to demonstrate that Mr. Chastain knew that OpenSea collected a 2.5% commission from all NFT transactions that took place on its platform, the defense is entitled to argue that such knowledge tends to disprove that Mr. Chastain intended to defraud his employer by purportedly engaging in the alleged conduct.

While the government may argue to the jury that the harm at issue to OpenSea was the purported deprivation of OpenSea's exclusive right to use its confidential business information—one of its potential harm arguments—the defense is free to argue from the admissible evidence that an intent to harm has not been shown. One of the ways it is free to do so is to argue that Mr. Chastain had no intent to harm OpenSea, through a property deprivation or otherwise, because Mr. Chastain knew that his actions would not in any way affect OpenSea's business.

Honorable Jesse M. Furman
April 30, 2023
Page 3

Nevertheless, through its Motion, the government now apparently seeks to argue that the only thing that matters is whether Mr. Chastain sought to deprive OpenSea of its exclusive use of confidential business information and his intent otherwise is irrelevant. But in virtually every confidential business information case, the government's assertion would be true: namely, that the employer's exclusivity right would be infringed. Thus, the government would essentially seek to write out the intent-to-defraud element from the statute in any case involving confidential business information because, under their theory, once the employer's exclusivity right has been infringed, intent to harm is presumed regardless of any other evidence demonstrating a lack of intent to harm. That cannot be the law.

Further, the government's position—that the only question at issue is whether the defendant contemplated harm to OpenSea in the form of depriving OpenSea of its exclusive right to use its confidential information—is completely undermined by the fact that it has elicited testimony on the importance of trust for OpenSea and how the incident involving Mr. Chastain harmed OpenSea by eroding that trust. *See, e.g.,* Trial Tr. 472:24 – 473:3; Trial Tr. 263:17 – 264:5. As the government has argued this potential harm throughout the case, the defense is certainly entitled to show a lack of intent to commit such a harm against OpenSea with the evidence discussed above. At bottom, the government has its arguments from the evidence admitted at this trial and so does the defense.

Finally, the government alternatively asks the Court to cut off the defense in the middle of its closing and present some type of curative instruction immediately after any such intent-based argument is raised. The Court should reject the government's request. Any interruption of the defense closing, following the above-referenced intent-based argument, would be tantamount to an instruction that the defense has run afoul of the law, and in turn, suggest that the government's view of the evidence is the only proper view for the jury to consider. To signal to the jury in such a manner would be highly prejudicial to the defense's case. Moreover, additional instructions are unnecessary when: (i) the government will have an opportunity to address defense arguments in rebuttal; and (ii) the jury will be instructed on the law immediately following such rebuttal.

<u>Evidence of Mr. Chastain's Stock Options</u>

The defense does not intend to argue that Mr. Chastain is a current "owner" of OpenSea, and thus, the government's motion on this point is moot. The defense, however, is entitled to discuss Mr. Chastain's stock options during its closing, especially because the government has put Mr. Chastain's compensation at issue by highlighting it in testimony and exhibits. *See* Trial Tr. 182:11 – 187:2; GX-215.

<u>References to "Evil Intent"</u>

The defense will not be referencing "evil intent" in its closing statement based on the Court's decision concerning the definition of "willfulness" in the jury instructions. The defense has preserved its objection to the same.

Certain Tweets in Evidence

The government next attempts to preclude the defense from making any argument with respect to Mr. Chastain's tweets about OpenSea's upcoming products, features, and/or plans, which are reflected in defense exhibits 1, 2, 4, 6, 8, and 9. The Court, however, has already admitted these exhibits into evidence over the government's objection. *See* Trial Tr. 494:1-4 (admitting defense exhibits 1, 2, 4, 6, and 8 over objection); Trial Tr. 568:10-13 (admitting defense exhibit 9 over objection). The government's motion should be rejected as nothing more than an attempt to re-litigate the same objection.

Nonetheless, the government asserts that the defense should be precluded from using the above-referenced exhibits to argue that "because the defendant tweeted about 'new features' that no one ever spoke to him about, he had no idea that information was confidential." The government's argument misses the mark.

Throughout its presentation of evidence, the government has insisted that Mr. Chastain's alleged conduct violated OpenSea's Confidential Information and Invention Assignment Agreement (the "CIAA agreement"). *See* GX-214. More specifically, the government has suggested that information relating to upcoming featured NFTs was protected under the relevant provisions of the CIAA agreement that: (i) addressed the use of confidential information; and (ii) defined "confidential information" as, *inter alia*, "product or service ideas or plans." In Mr. Atallah's direct examination, for example, the following exchange took place:

> Mr. Burnett: [D]o you see that after the first sentence definition, it begins "confidential information includes, without limitation." Do you see that?
>
> Mr. Atallah: Yes.
>
> Mr. Burnett: What's the purpose of "without limitation" here?
>
> Mr. Atallah: It goes back to that point I made earlier about this being an umbrella agreement that covers lots of different kinds of information you might encounter at the company, and that exceptions should be discussed and become part of the employee's obligation exception.
>
> Mr. Burnett: Do you see that there is – it continues on to the next page but a list of types of information that follows that colon?
>
> Mr. Atallah: Yes.

| | |
|---|---|
| Mr. Burnett: | And just to zoom in on a couple actually, Mr. Bianco, if could you – thank you. If you could highlight the top section too. Do you see one of those on the second-to-last line of the top page says "product or service ideas or plans"? |
| Mr. Atallah: | Yes. |
| Mr. Burnett: | Mr. Bianco, if you don't mind highlighting that. Now I'd like to set that aside and go to page 7 of the agreement. |

Trial Tr. 200:14-25 – 201:1-11. Similarly, in Mr. Finzer's re-direct examination, the following exchange occurred:

| | |
|---|---|
| Ms. Nichols: | Can you read the part that I just highlighted in blue there? |
| Mr. Finzer: | "Product or service ideas." |
| Ms. Nichols: | I am going to highlight one more. Can you read that one? |
| Mr. Finzer: | "Marketing plans." |
| Ms. Nichols: | And again, are these all of the types of confidential information that could exist or are these just a list of examples? |
| Mr. Finzer: | Just a list of examples. |
| Ms. Nichols: | Can we clear the highlighting and zoom out, please Mr. Bianco. |

Trial Tr. 523:4-25 – 524:1-4. Now, in light of the government's assertions regarding the ways in which information about upcoming featured NFTs is captured by the CIAA agreement—namely, that it qualified as OpenSea's product or service ideas, or marketing plans—the defense is entitled to offer an apples-to-apples comparison with defense exhibits 1, 2, 4, 6, 8, and 9, which focus on OpenSea's product or service ideas, or marketing plans, to rebut the government's conclusory position that the alleged conduct was prohibited by the agreement.

      In further support of its preclusive effort, the government props up a red herring, citing to *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990), for the proposition that "[a] defendant may not seek to establish his innocence … through proof of the absence of criminal acts on specific

occasions." Here, however, the government fights against a strawman, as the relevant defense exhibits were not offered as proof of the absence of criminal acts. Rather, they were offered to demonstrate that OpenSea did not consider or treat "product or service ideas or plans" as confidential. *See United States v. Mahaffy*, 693 F.3d 113, 135 n.14 (2d Cir. 2012). Indeed, when asked about whether Mr. Chastain was disclosing secret or confidential OpenSea information in defense exhibit 2, Mr. Finzer responded that it was "hard for [him] to say" and that he was "not sure." (Trial Tr. 522: 1-5). Accordingly, and in conjunction with evidence demonstrating that OpenSea did not offer any training or guidance with respect to the information contained within the CIAA agreement, the above-noted exhibits further corroborate that OpenSea did not draw any lines to delineate clearly what is confidential information. Thus, the jury can logically infer that Mr. Chastain could not have known the ways in which OpenSea may have considered and treated such information to be confidential.

The government's remaining assertions in favor of preclusion are merely arguments based on its own interpretation of the evidence. As noted above, the government is free to make these arguments in its opening and rebuttal summations.

<u>Evidence of Other Individuals' Trading in NFTs</u>

Finally, the government moves to preclude any argument that tends to insinuate that Mr. Salmon's NFT trading, or Mr. Atallah's NFT trading, was inappropriate. As an initial matter, the defense does not intend to argue that Mr. Salmon's NFT trading was inappropriate. The defense, however, is entitled to discuss Mr. Salmon's NFT trading, outside the context of any potential impropriety, as the government elicited evidence of such trading during Mr. Salmon's direct examination. *See, e.g.*, Trial Tr. 126:17-25 – 129:1-11; Trial Tr. 133:21-25 – 146:1-5; GX-345; GX-350.

Mr. Atallah's NFT trading, on the other hand, is ripe for commentary. First, the government already objected to—and the Court overruled—the admission of evidence tending to show that Mr. Atallah minted an NFT while it was being featured on OpenSea's homepage. *See* Trial Tr. 322:16 – 323:3. The government's attempt to re-litigate this issue should be denied. Second, the fact that Mr. Atallah minted an NFT that was being featured on OpenSea's homepage, in violation of OpenSea's policies, tends to discredit his testimony suggesting that: (i) OpenSea's rules were generally understood to prohibit certain conduct; and (ii) OpenSea considered certain information—such as the featured artist NFTs—to be confidential and acted accordingly. In this respect, Mr. Atallah's actions also demonstrate OpenSea's state of mind as it relates to the application of its rules to its business. And as the Court has already ruled: "I have permitted testimony regarding the state of mind of Mr. Atallah and Mr. Finzer, because they were the principals of the company. And in that regard, I think what they were thinking and how they considered the information and understood the agreement and so forth is relevant." Trial Tr. 690:24-25 – 691:1-4. As noted above, and in light of the Court's ruling, the defense intends to argue that Mr. Atallah's trading speaks to OpenSea's state of mind. Finally, and relatedly, this line of inquiry was proper impeachment testimony and can be used to discredit Mr. Atallah's trial

testimony on a host of related issues. The government, of course, is free to offer its own commentary on what this evidence may or may not show.

*   *   *

For the reasons set forth above, the government should not be able to preclude the defense from making proper arguments relating to the evidence admitted at this trial. The government's motion is nothing more than an attempt to re-litigate objections that the Court already decided. Of course, the government can argue in its opening and rebuttal summations however they want on these issues, but they should not be able to restrict the defense from making critical and appropriate arguments about the evidence admitted at trial.

Notably, the defense has arguments for why certain government evidence, like the Non-Disclosure Agreement at GX-609 and the Terms of Service at GX-223 are irrelevant—the former applied to interviewees, *see* Trial Tr. 193:5-16; 296:20-297:1, and trial testimony about the latter related to wash trading and other deceptive and manipulative conduct that have nothing to do with this case, *see* Trial Tr. 529:9-16; 530:13-19—but the defense is not taking the unusual and unwarranted step of seeking to preclude the government from arguing about evidence that is already in the trial record. The bottom line is that the defense should be able to make arguments about the trial evidence and the government can seek to rebut them. The government's motion should be denied.

Thank you for the Court's consideration.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: */s/ David I. Miller*
David I. Miller
Daniel P. Filor
Charles J. Berk
Nicholas T. Barnes
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Nathaniel Chastain*