N4O3CHAS1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        22 CR 305 (JMF)

 5   NATHANIEL CHASTAIN,

 6                                        Trial
                 Defendant.
 7   ------------------------------x

 8                                        New York, N.Y.
 9                                        April 24, 2023
                                          9:30 a.m.
10

11   Before:

12                   HON. JESSE M. FURMAN,

13                                        District Judge

14                        APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     NICOLAS ROOS
17   THOMAS S. BURNETT
     ALLISON C. NICHOLS
18        Assistant United States Attorneys

19   GREENBERG TRAURIG, LLP
          Attorneys for Defendant
20   BY:  DAVID I. MILLER
          DANIEL P. FILOR
21        CHARLES BERK
          NICHOLAS BARNES
22

23

24

25
```

1          (In open court; case called)

2          MR. ROOS:  Good morning.  Nicholas Roos, Thomas

3     Burnett, Allison Nichols, and Grant Bianco for the United

4     States Attorney's Office.

5          THE COURT:  Good morning.

6          MR. MILLER:  Good morning, your Honor.  David Miller,

7     Daniel Filor, Charles Berk, Nicholas Barnes from Greenberg

8     Traurig on behalf of Nathaniel Chastain, who is sitting at

9     counsel's table.

10          THE COURT:  Good morning.  The case will be on trial

11     beginning today.  For now, folks are seated wherever they want

12     to sit, that's fine, but when we get a jury here, I am going to

13     ask everybody seated in the back to move as far to the back as

14     possible, to ensure that the jurors can sit in the first few

15     rows.

16          We have a handful of things to cover, and whenever we

17     get a jury, we will proceed with jury selection.

18          So, first, I got some filings over the weekend.  The

19     defendant had filed an additional motion in limine regarding

20     essentially the propriety of questions about whether -- opinion

21     testimony, if you will, regarding whether and to what extent

22     the information at issue was viewed as confidential.  The

23     government filed its response I guess yesterday.  That's docket

24     no. 98.

25          Long story short, I'm inclined to agree with the

N4O3CHAS1

government, but bottom line, I think that this issue can be
addressed at trial through specific objections to particular
questions.  That is to say, I think the government recognizes
the things that are probably off limits, but I certainly think
that some of the evidence is relevant and admissible, given
whether OpenSea treated the information as confidential is
certainly something the government is entitled to prove and the
defense is entitled to counter.  We'll take this up based on
specific objections at trial.

MR. FILOR:  Can I be heard briefly on that issue?

THE COURT:  Sure.

MR. FILOR:  As your Honor is aware, there are two
issues raised the motion.  One is with respect to contract
interpretation, the Court's already ruled that defense
witnesses or other employees who signed that same contract
shouldn't be able to speak about contract interpretation or
clarity.  We believe that ruling should apply to both sides,
including potentially the first witness who is going to speak
or the first or second witness that the government has
identified, Ms. Idowu, who is a junior member of the company.
She certainly should not be interpreting a contract if the
senior leaders of the company, for instance, Jessica Phan, who
was on the defense witness list, is not permitted to.

Your Honor, the second issue is with respect to
describing the conduct.  And we already understand from the

N4O3CHAS1

judge's ruling that Mr. Finzer shouldn't talk about whether he thought it was insider trading.  He did not.  Lots of people did not think it was illegal.  There is one person from the 3500 who did think it was illegal, and again, that's this first witness or second witness.

THE COURT:  I think that issue is a non-issue.  The government acknowledges it doesn't intend to elicit from any witness whether in their opinion it was legal or illegal.  That would not be proper testimony.

MR. FILOR:  Related to that, Ms. Idowu said she was concerned when she learned about this.  She was concerned because she thought it was illegal.  So, the government's papers suggest that they are going to ask her, Were you concerned.

That's not appropriate, your Honor, for the same reasons that asking the defense witnesses whether the conduct was appropriate, ethical, wrongful, is not appropriate.  There is no relevance to her testimony, Ms. Idowu's testimony, that she was concerned.  That's not a relevant issue in the case, your Honor.  She is not speaking on behalf of OpenSea, and she's not even an OpenSea employee.  She was a low-level employee for a short time that overlapped with the defendant for a month.

THE COURT:  So, that may be true.  As I understand it, and I don't know if the government's argument pertains to that

witness, it may be that how a witness viewed the conduct is
necessary to explain actions that they took, in which case I
think it might be admissible for that purpose.  But in any
event, I think we can address this in trial through objections.

MR. BURNETT:  I can speak very briefly on what we will
be asking her.  Ms. Idowu was a person who is in charge of
running the social media for the company.  So, the night when
the Twitter allegations came out about Mr. Chastain's conduct,
she saw it, and sent those messages to, like, an escalation
channel to management.  The government plans to elicit the
story about her escalating it to management, but not get into
whether or not she thought it was illegal or not.  I don't
think we are not going to get deep into why she was concerned
about anything.  But we will ask her why -- we will prompt her
to say that she escalated this to management, which might
elicit her to say she was concerned about the tweet, but not
get into details about why.

MR. FILOR:  Your Honor, the only related note on that
topic is she said in her 3500 she didn't think it was moral,
and she thought there might be a contract interpretation.  She
should not be getting into any of those issues, your Honor.

THE COURT:  Doesn't sound like she will.

MR. BURNETT:  She's not.

THE COURT:  Again, I'll take as it comes, but I think
you should have a general understanding of the parameters and

1    lines here based on my prior rulings.

2         The second issue pertains to the curative instruction.

3    Both sides put in the their submissions last night.  I've

4    reviewed those, and first as to the victim question, I'm

5    inclined to agree with the government which is to say I'll wait

6    and see.  If I think, based on either openings or evidence at

7    trial, it's appropriate, then I may well give a curative or

8    explanatory instruction on that front.  We can discuss at the

9    charge conference whether anything of that sort is appropriate

10   in the final instructions.  But right now, I'm not sure it will

11   be necessary.  And I think the government's argument that I

12   should wait and see whether terms and the like are used makes a

13   lot of sense.

14        As for the curative instruction on "insider trading,"

15   there is a question in the voir dire questionnaire that you'll

16   be getting in short order that I think amounts to a form of

17   curative instruction, but in a more neutral manner.  I think

18   the government's concerns here are fair, which is to say if

19   they use the term in their opening, and I jump in and say, just

20   to be clear, the defendant is not charged with insider trading,

21   that it could suggest an impropriety on the government's part

22   in using the term, and I have already ruled there is no

23   impropriety because it is, as I've said, not inapt.

24        So I think a more neutral way of handling this is

25   appropriate.  There is a question, again, you'll see the

N4O3CHAS1

1    questionnaire in short order, but it says:  As I mentioned, at

2    the end of the trial, I will give you thorough instructions on

3    the applicable law, including what the government must prove

4    beyond a reasonable doubt for you to find the defendant guilty

5    of the crimes with which he is charged, namely wire fraud and

6    money laundering.  Do you have any doubt that you will be able

7    to follow my instructions as to the law and disregard any

8    opinions you may have about such terms as "fraud,"

9    "confidential business information," "money laundering" or

10   "insider trading" that may be used during the trial.

11          I think, number one, that puts it in the context of

12   various terms that may be used and heard during trial, and in

13   that sense doesn't call undue attention to any one in

14   particular, insider trading one in particular.  Number two, I

15   think my inclination is that suffices.  That's a form of

16   curative instruction, and paired with potentially having an

17   instruction in the final charge probably does away with the

18   need for one during the trial that would only call undue

19   attention to it, and also potentially suggest impropriety where

20   there is none.  That's my inclination.  But do you wish to be

21   heard?

22          MR. MILLER:  Yes, Judge.  First, on the victim

23   curative instruction.  We actually think that this is going to

24   come up pretty quickly, based on one of their two witnesses

25   they identified last night, a man by the name of Mr. Salmon,

N4O3CHAS1

1    who was a person in the marketplace, and I suspect there is

2    going to be a lot of testimony about the feature arts process,

3    and buying and selling NFTs, and perhaps even this witness's

4    view as to what happened, namely, the facts of this case.

5    Again, we think there is a substantial likelihood that the jury

6    is going to get confused by this issue.

7        We are not suggesting that "level playing field," as

8    the government was sort of suggesting in their letter last

9    night is the only thing that can trigger this.  We put that in

10   there based on what we thought might be in their opening.  If

11   it's not, it's not that.  Doesn't mean there is not a reason

12   for that instruction.  Particularly given one of their first

13   witnesses is essentially somebody in the marketplace.

14       This is a very different case than the normal

15   misappropriation insider trading case, if you will, and I'm

16   obviously not about to get into all of our arguments before.

17       What I am going to say is I don't think this has come

18   up in this context before, where you have alleged insider

19   trading -- I'll get to that in a second -- in a situation where

20   there is no financial product involved, and there is no real

21   argument as to any kind of fraud on the public or fraud on the

22   market.

23       So, ultimately, we think that the Court's suggestion

24   on Thursday about a curative instruction that the victim or the

25   only alleged victim is OpenSea is apt and appropriate.  We

N4O3CHAS1

1    think this will come up very quickly, your Honor, and we think

2    your Honor should give that instruction at some point perhaps

3    before or even after Mr. Salmon's testimony.  That's with

4    respect to the victim curative instruction, your Honor.

5         THE COURT:  So, let's pause there.  I'll take it under

6    advisement.  I hear you, and if I think, based on Mr. Salmon's

7    testimony that there is any potential confusion, I will not

8    hesitate to give a neutral instruction that focuses the jury on

9    what the issue is, and I'll make my decision then.

10        MR. MILLER:  Understood, your Honor.

11        As for insider trading, given the novelty of this

12   situation, and we expect the government to open on insider

13   trading and certainly we are going to mention this because this

14   will come up, we are not saying that your Honor should give a

15   curative instruction during the government's opening or even

16   after the government's opening.  Your Honor can give the

17   curative instruction after both openings, which would be an

18   appropriate time, given the nature of this case, the novelty of

19   this case, and that insider trading has, as far as we

20   understand it, never been charged this way before.

21        THE COURT:  All right.  I'll take that under

22   advisement as well.  I should say if something happens at trial

23   that I think could cause confusion on any issue, I will not

24   hesitate to give what I think is an appropriate curative

25   instruction.  So if based on the openings or any other evidence

N4O3CHAS1

1    at trial I think that the question of insider trading warrants

2    a curative instruction, I will certainly give it.  It will be a

3    more neutral one.

4            Right now I am inclined to think the combination of

5    questions that I am going to pose during voir dire and

6    potential instruction and final instructions, where obviously

7    the jury will be instructed quite clearly on what the crimes

8    are and what the elements of those crimes are, that those

9    suffice.  But I will keep that in mind as well.

10           MR. MILLER:  Thank you, Judge.

11           THE COURT:  All right.  Next, just to make a record on

12   something after the final pretrial conference, I noticed that

13   in the government's request to charge there was a question --

14   sorry, not request to charge.  Proposed voir dire there was a

15   question about venture capital and jurors' views on that.  And

16   I had my clerk inquire of counsel as to what the reason was for

17   that.  The answer we were given, just to make a record on that,

18   is that there may be testimony that the confidentiality

19   agreement signed by Mr. Chastain came from a template, one of

20   OpenSea's investors a venture capital firm recommended, another

21   government's expected witness formerly worked for a venture

22   capital firm.

23           I did not include anything in connection with venture

24   capital in the voir dire.  Number one, I think that's a fairly

25   tenuous connection.  Number two, without explaining to the jury

N4O3CHAS1

what the relevance of the venture capital is, and I'm not

inclined to think that's appropriate, gives undue attention to

one particular piece of fact here, I don't think it make sense

to ask as an abstract matter their views on venture capital,

because they don't have any idea what relevance it has.  I am

not including it.

It did prompt me to look at the government's witness

list, and just as a disclosure, I see and I don't know if this

is the relevant person, but there is a Kathryn Haun on the

government's witness list.  Just to disclose, Ms. Haun and I

were colleagues in the Attorney General's Office in 2007 to

2009.  I have not had any contact with her since.  No reason

that should affect my ability to judge this matter, but just

wanted to make a record on that front as well.

I did get one additional name for voir dire, Megan

Sheffield.  It's not on the printed questionnaire because that

went to press before that name was given to me, but I will just

add that orally to the jury pool.

MR. FILOR:  Thank you, your Honor.

THE COURT:  You were supposed to exchange any

demonstratives last night and alert me if there were any

disputes.

MR. ROOS:  So, your Honor, I think there is -- I think

we have no objection to the defense ones.  I think there is one

dispute on one of the government's slides related to its use of

N4O3CHAS1

1    a like a picture of dollar signs as opposed to like a

2    cryptocurrency icon.  I can give your Honor a copy and I'll let

3    the defense articulate their objection.

4         THE COURT:  Please give me a copy.  And Mr. Miller?

5         MR. MILLER:  Your Honor, it is more than just a dollar

6    bill sign, because we understand that can signify money and

7    obviously we could talk about that.  But actually it looked

8    like a dollar bill that was going from Mr. Chastain to purchase

9    the NFTs.  And we think that's confusing, it is just completely

10   inaccurate since this involves crypto.  It doesn't involve a

11   dollar.  And this is not a trivial point, your Honor.

12        THE COURT:  All right.

13        MR. ROOS:  May I approach?

14        THE COURT:  Yes.  Do you want to explain?  Seems to me

15   it is just a metaphor for payment.

16        MR. MILLER:  Your Honor, again, there is going to be

17   testimony with respect to what the applicable cryptocurrency

18   Ether or Eth was worth at particular points, and frankly how

19   much money was involved in this case which we dispute.  We

20   think there is good grounds to dispute.  And if so we are

21   concerned --

22        THE COURT:  Let me interrupt you.  Do you dispute that

23   Ether is translatable into dollar currency, into U.S. currency.

24        MR. MILLER:  I don't dispute it can be sold and

25   obtained, bought for fiat currency.  It wasn't in this case.

N4O3CHAS1

1          THE COURT:  I understand, but at any given time it is

2     worth some amount of U.S. currency.

3          MR. MILLER:  Yes.  Although, respectfully, that value

4     can fluctuate across platforms etc.  But yes.

5          THE COURT:  I think this is fine, and I don't think at

6     the end of the trial that the jury will have any confusion, let

7     alone confusion caused by this.

8          Do you want this back, Mr. Roos?

9          MR. ROOS:  Only if your Honor doesn't want it.

10          THE COURT:  I can throw it in the garbage, so I will

11     keep it here.  I take it no other disputes on that score.

12          I think I have exhibits, 3500 material and 26.2

13     material from both sides.  Mr. Roos, you look there is an issue

14     on that front.

15          MR. ROOS:  No issue.  I was going to let your Honor

16     finish your thoughts.  I was going to say we sent over a

17     Microsoft Word version of our exhibits.  I didn't see exact

18     guidance on what you were looking for, so we put together

19     something, but if your Honor has a preference of a different

20     format or additional information, please let us know.

21          THE COURT:  That's fine.  Just a reminder, this is not

22     reflected in my rules because I haven't updated them, but I do

23     want a running list each day, that is to say, you guys should

24     consider and make sure you agree what has or hasn't come into

25     evidence as the case may be, and submit that to me either the

night before or each morning.  Just to make sure everybody's on
the same page as to what is in evidence.

I think there is a high school class that has come to
observe, so while they get seated.  I'll pause for a moment.
Anything else the government has to raise?

MS. NICHOLS:  Just briefly, your Honor.  I wanted to
alert the Court that since our conference on Thursday, the
government has interviewed Mr. Salmon again.  And among other
things has learned that the correct pronunciation of his name
has become Americanized to be like the fish.

Mr. Salmon no longer recalls that the follow up
conversation that he had with a member of OpenSea, after his
NFT was featured on the home page, was in fact Mr. Chastain.
He think it might have been Mr. Chastain or it might have been
another representative of OpenSea.  So in light of the fact I
had made a proffer of proof to the Court about the expected
relevance of his testimony, I wanted to alert the Court to that
change in between the government's interviews of him.

We do still think that his testimony is relevant and
probative for the other reasons that I had proffered.  He is an
artist.  He can talk about the process for making digital art
and NFTs and listing them on OpenSea's website, which is all
directly relevant to the facts at issue here.  He can talk
about the import to him as an artist of getting featured on
OpenSea's website, and he's expected to speak about how the

1   impact of being featured increased the price of his art.  He's

2   also expected to say that he did not have any conversation with

3   any member of OpenSea before his piece was selected to be

4   featured, which is relevant to the issue of that information

5   being maintained as confidential information by OpenSea.

6         THE COURT:  Okay.  Anything from the defense?

7         MR. FILOR:  Your Honor, briefly.  So we received two

8   sets of 3500 material since last Thursday's conference.  I'm

9   not totally clear whether the government intends to ask

10  Mr. Salmon about conversations that he thought could have been

11  with Mr. Chastain.  We now know they certainly were not.  We

12  fortunately were able to get the Clubhouse records on an

13  emergency basis over the weekend that showed that Mr. Chastain

14  was never in Clubhouse after February of 2021.

15        THE COURT:  What is Clubhouse?

16        MR. FILOR:  Clubhouse is where Mr. Salmon claims he

17  may have spoken to Mr. Chastain after his piece was featured,

18  and you recall the government's kind of creative argument that

19  because Mr. Chastain didn't tell him certain things, that

20  should go to motive or concealment or something.  In fact, the

21  conversations never happened, and I can hand up the Clubhouse

22  records.  To the extent the government would try to elicit

23  conversations with Mr. Chastain that never happened, it sounds

24  like it was with Matt.  We think we know who Matt is.  He is on

25  the defense witness list.  He worked as a community manager

N4O3CHAS1

1    doing things like participating in Clubhouse discussions.

2            So I wanted to make it clear the government should not

3    be asking Mr. Salmon if it's possible that he spoke to

4    Mr. Chastain, and Mr. Chastain neglected to tell him things.

5            THE COURT:  Let me stop you because this may be a moot

6    point.  Can I ask the government if you intend to elicit that

7    communication, since it sounds like you are no longer certain

8    it was with the defendant.

9            MS. NICHOLS:  No, your Honor.

10           MR. FILOR:  Thank you, your Honor.

11           The only other thing I would raise is we don't think

12   it's relevant and it shouldn't be brought up any kind of mental

13   conditions, autism or the like, that the witness has.  It is

14   not relevant to this case.  It shouldn't be part of the

15   testimony, your Honor.

16           THE COURT:  Okay.

17           MS. NICHOLS:  We don't anticipate asking any questions

18   about the defendant's -- or sorry, the witness's health.  I

19   haven't advised him not to raise that, your Honor, so I guess I

20   can't say that it absolutely would not be something that he

21   would mention.  And the only reason I could imagine is that I

22   know that he has donated work, donated a piece of art to raise

23   money for autism research.  And I don't intend to ask him about

24   that, but I am alerting the Court and the parties that that

25   might be a way where it could come up.

1          THE COURT:  All right.  Lest anyone have concerns, I'm

2     capable of ruling on objections in real time.  So you are

3     welcome to make an objection at trial to any question you think

4     is objectionable, and I will give you a ruling at that time.

5          MR. FILOR:  Of course.  Thank you, your Honor.

6          THE COURT:  Anything else from the defense?

7          MR. MILLER:  Just briefly, your Honor.  Not an

8     objection or anything.  Just so your Honor is aware, during

9     voir dire we intend to have a consultant named Julie Blackman

10    who will be seating in the fourth seat here.

11         THE COURT:  I don't think you gave me her name as one

12    that would be --

13         MR. MILLER:  I think she is on the list, your Honor.

14         THE COURT:  Forgive me.  She is indeed so no issues.

15         All right.  If that covers everything, I think we're

16    good until we get a jury pool, and I'll try to find out when

17    that will be.  But that's a bit of a black box and I don't

18    know.  It could be a matter of minutes, it could be in a little

19    bit of time.  I don't know.

20         Tell you what.  Just because I don't want the students

21    who came to get nothing out of their experience here, I'm happy

22    to talk to them informally and off the record.  If you guys

23    want to vacate counsel table, and then when we are ready to go

24    I'm happy to go from there.  With that, we'll adjourn until we

25    have a jury pool or shortly before we have a jury pool.

N4O3CHA2

```
 1            (Recess)

 2            (Voir dire under separate cover)

 3            THE COURT:  We're not going to start with openings

 4    today, given the time.  It is late, it's been a long day, and I

 5    want to make sure you all can focus and give proper attention

 6    to the lawyers and then to the evidence.  But, I do want to

 7    make the most of our time, so I am going to give you some

 8    preliminary instructions now, and then we'll break for the day

 9    and pick up promptly tomorrow morning with opening statements

10    and begin with the rest of the case.

11            This case is now officially on trial.  As I stated

12    earlier, the trial is expected to last up to two weeks.  It may

13    or may not last that long.

14            I will certainly make you two promises:  One is I'll

15    do my level best and use all of my powers, and I tell you

16    they're considerable powers, to make valuable use of your time

17    and get you back to your regular lives as quickly as I can.

18    Number two is I will try to the best of my ability to keep you

19    advised of where things are, whether we're keeping to schedule

20    and where things stand.  That, too, is more art than science,

21    but I'll do my best.  But bear with me, and trust I'll do

22    whatever I can to make valuable use of your time.

23            Until we get to summations and deliberations, and I

24    will certainly give you as much warning as I can about that, I

25    will remind you we will begin each morning at 9 o'clock and we
```

N4O3CHA2

1   will close each day at 2:30 with one and only one half hour

2   break in the middle of the day.

3          To help ensure we start on time, I am going to ask you

4   be in the jury room, and Ms. Smallman, when we conclude today,

5   will show you where that is and how to get there.  And I want

6   to stress now when you come here tomorrow, you will not enter

7   the courtroom the way you've been coming in and out.  You are

8   going straight into the jury room and don't come into the

9   courtroom.

10          I am going to ask you to be in the jury room by 8:45,

11   no later than 8:45, and ideally even earlier, so we can begin

12   without delay.  I want to stress we cannot begin until all of

13   you are here.  So if you're late, it's not only going to

14   inconvenience all of us, meaning we can't start, but it will

15   also inconvenience all of your fellow jurors.  So please do

16   your best to ensure that every day you're here on time and no

17   later than 8:45 so we can start promptly.

18          And to entice you to be on time, I have arranged for

19   some breakfast and coffee each morning in the jury room.  So

20   hopefully, knock on wood, if that goes according to plan,

21   you'll find some things to greet you.

22          But please be there early.  If you are traveling from

23   far away, and I know some of you are, please plan accordingly.

24   Next couple days in particular as you are getting used to what

25   the commute involves, just make sure you leave plenty of time

1    in case there are any hiccups along the way.

2              Bottom line is please be in the jury room no later

3    than 8:45, and ideally earlier, so we can start promptly.  And

4    again, we'll end each day until we get to summations at 2:30

5    with one and only one half hour break.

6              Given how short that break is, you are not going to be

7    able to leave the jury room for the break so you should plan

8    accordingly.  usually there is enough snack from the morning to

9    feed you at the break too, but I would urge you, encourage you

10   to bring a snack or a small lunch or something to tide

11   yourselves over until the end of the day.

12             Let me also give you some advice based on experience.

13   It is a good idea to use the bathrooms before you come out for

14   trial.  My hope is we can make it through each session without

15   the need to take bathroom breaks, because my goal here is not

16   to torture you.  I assure you.  And if anyone is having a

17   serious problem, you should certainly raise your hand.  But the

18   problem is if we take a break, with the number of people we

19   have and the number of moving parts we have, what seems like it

20   should be only a two minute break becomes a 15 minute break,

21   and all of a sudden my promise to you to make the most of your

22   time becomes a lot more difficult for me to keep.  So, try and

23   use the bathrooms just before you come out so you can make it

24   the whole time.  But again, if you have any trouble, you can

25   obviously let me know.

N4O3CHA2

1          Let me give you some instructions about your duties as

2     jurors.  As I told you this morning, at the end of the trial, I

3     will give you more detailed instructions, and it is those

4     instructions that will control in your deliberations in this

5     case.  But for now, let me explain how the trial will proceed.

6          The first step, as I alluded to earlier, will be the

7     lawyers' opening statements.  The government will make an

8     opening statement.  And after that, I expect the lawyers for

9     the defendant to make an opening statement as well, but they

10    are not required to do so.  The reason for that is that at all

11    times, as I mentioned this morning, the burden is on the

12    government to prove the defendant's guilt beyond a reasonable

13    doubt.  The defendant in a criminal trial in our country

14    doesn't have to do anything, doesn't have to present a case,

15    doesn't have to do anything.  The burden is at all times on the

16    government.

17         In any event, whoever makes opening statements, those

18    statements are not evidence.  All right.  They serve no purpose

19    other than to give you a preview, an idea in advance of the

20    evidence that the lawyers expect you to hear from the

21    witnesses.  The statements permit the lawyers to tell you a

22    little bit about what the case is about.  But, the only

23    evidence comes from the witnesses and the exhibits that are

24    admitted into evidence.

25         After opening statements, the government will present

1    its evidence, its case in chief.  The government's evidence

2    will consist of the testimony of witnesses, as well as

3    documents and other exhibits.  The government will examine its

4    witnesses, and the defense, the defendant's lawyer may

5    cross-examine them.

6         Following the government's case, the defendant may

7    present a case, if he wishes to do so.  Again, because of the

8    presumption of innocence, the defendant is not required to

9    offer any proof, not required to call any witnesses, and not

10   required to testify.  If the defendant does present a defense

11   case, however, the defense witnesses will testify, and the

12   government would have an opportunity to cross-examine them.

13        After the presentation of evidence is completed, the

14   parties will deliver their closing arguments to summarize and

15   interpret the evidence for you.  Just as the parties' opening

16   statements are not evidence, their closing arguments are not

17   evidence either.

18        Following closing arguments, I will give you my

19   instructions on the law, and you will retire to deliberate on

20   your verdict, which must be unanimous, and must be based solely

21   on the evidence presented at trial, and my instructions about

22   the law.  Your deliberations are secret.  You will never have

23   to explain your verdict to anyone.

24        Under the law, a defendant in a criminal case, as I've

25   mentioned a couple times but will mention more during trial, is

N4O3CHA2

presumed innocent and cannot be found guilty of the crimes

charged unless a jury, after having heard all of the evidence

in the case, unanimously decides that the evidence proves the

defendant guilty beyond a reasonable doubt.

In a criminal case, as I've said, the burden remains

with the prosecution, the government, at all times.  For the

jury to return a verdict of guilty as to the defendant, the

government must prove that the defendant is guilty beyond a

reasonable doubt.  A person charged with a crime has absolutely

no burden to prove that he or she is not guilty, and if the

defendant chooses not to present any proof, that decision

cannot be held against him, and may not enter into your

deliberations at all.

I will, however, instruct you more fully on the burden

of proof after all the evidence has been received.

Let me briefly explain the jobs that you and I are to

perform during the trial.  I will decide the rules of law that

apply to this case.  I will decide that by making legal rulings

during the presentation of the evidence.  And also, as I've

said, in giving you the final instructions after the evidence

and arguments are completed.

In order to do my job, I may have to interrupt the

proceedings from time to time to confer with lawyers about the

rules of law that should apply here.  Sometimes we will talk

here at the sidebar, as you saw us do during jury selection,

1   but some of the conferences may take longer than others.  And

2   so as a convenience to you, I may excuse you from the

3   courtroom.

4          I try to keep those interruptions to the absolute

5   minimum, and ideally none at all, but please be patient, and

6   understand if we are interrupting in that manner, that these

7   conferences are both necessary to ensure the fairness of the

8   trial, and also often serve to make the trial go more quickly.

9          While I decide the law that applies to this case, you,

10  members of the jury, are the triers of fact.  You will weigh

11  the evidence presented and decide whether the government has

12  proved beyond a reasonable doubt the defendant is guilty of

13  each charge in the indictment.

14         You must pay close attention to all of the evidence

15  presented, and you must base your decision only on the evidence

16  in the case and my instructions about the law.  As I've said

17  now a few times, and will say many more times before this case

18  is over, your decisions must be based solely on the evidence

19  that you see and hear during the trial.

20         So, what then is evidence?  Evidence consists only of

21  the testimony of witnesses, documents, and other things

22  admitted as evidence or stipulations agreed to by the parties.

23  Stipulations are a fancy legal lawyer term for agreements

24  between the parties, and I'll give you further instructions on

25  that, if necessary, during the trial.

N4O3CHA2

1          Some of you may have heard the term circumstantial

2     evidence and direct evidence.  Do not be concerned with those

3     terms.  You are to consider all of the evidence given in this

4     trial.

5          Certain things are not evidence and must not be

6     considered by you.  The following is a list of what is not

7     evidence.  First, arguments, statements and questions by the

8     lawyers are not evidence, nor are the statements that I make or

9     the questions that I ask of a witness.

10          Second, objections to questions are not evidence.  The

11     lawyers have an obligation to make an objection if they believe

12     that evidence being offered is improper under the rules that

13     apply in federal court.  You should not be influenced by the

14     objection nor by my rulings on an objection.  If an objection

15     is sustained, you should ignore the question, and any answer

16     that may have been given.  If an objection is overruled, you

17     should treat the answer as you do any other.  If you're

18     instructed that some item of evidence is received for a limited

19     purpose only, you must follow that instruction.

20          Third, testimony that I excluded or told you to

21     disregard is not evidence, and must not be considered.  And

22     fourth, anything you may have seen or heard outside the

23     courtroom is not evidence, and must be disregarded.  You are to

24     decide this case solely on the evidence presented here in the

25     courtroom.

1          There is no formula to evaluate testimony or exhibits.

2     For now, suffice it to say you bring with you into this

3     courtroom all the experience and background of your lives.  Do

4     not leave your common sense outside the courtroom.  The same

5     types of tests that you use in your every day dealings are the

6     tests that you should apply in deciding how much weight, if

7     any, to give to the evidence in this case.

8          The law does not require you to accept all of the

9     evidence admitted at trial.  In determining what evidence you

10    accept, you must make your own evaluation of the testimony from

11    each of the witnesses and the exhibits that are received in

12    evidence.

13         It is essential, however, that you keep an open mind

14    until you have heard all the evidence in the case.  And I

15    assure you, you will hear me remind you about that throughout

16    the trial many, many times.  A case can be presented only step

17    by step, witness by witness, before all the evidence is before

18    you.  As you know from experience, you can hear one person give

19    his or her version of an event and think it sounds very

20    impressive or even compelling, and yet, upon hearing another

21    person's version of the very same event or even the same person

22    cross-examined about that event, things may seem very

23    different.  In other words, there may be another side to any

24    witness's story.

25         You should use your common sense and good judgment to

1   evaluate each witness's testimony based on all of the

2   circumstances.  Again, I cannot emphasize too strongly, you

3   must keep an open mind until the trial is over and your

4   deliberations begin.  You should not reach any conclusions

5   until you have all of the evidence before you.

6          Under your oath as jurors, you are not to be swayed by

7   bias or sympathy.  All of us, no matter how hard we try, tend

8   to look at others and weigh what they have to say through the

9   lens of our own experiences and backgrounds.  We each have a

10  tendency to stereotype others and make assumptions about them.

11  Often you see life and evaluate evidence through a clouded

12  filter that tends to favor those like ourselves.  You must do

13  the best you can to put aside such stereotype for all litigants

14  and witnesses are entitled to a level playing field in which we

15  do the best we can to put aside our stereotypes and prejudices.

16  You are to be guided solely by the evidence in this case, and

17  my instructions about the law.

18          Finally, let me caution you about certain rules and

19  principles governing your conduct as jurors in this case.

20  First, as I mentioned earlier, you must not talk to each other

21  about this case or about anyone who has anything to do with it

22  until the time comes at the end of the case, and you go to the

23  jury room to begin your deliberations.  The reason for this

24  requirement is that you must not reach any conclusion on the

25  charges until all of the evidence is in.  In other words, as

tempting as it may be when you go back to the jury room to talk
about what you just saw and about what's going on in the case,
resist that temptation.  Part of keeping an open mind is not
talking to one another and forming judgments until you have all
of the evidence before you.  And as I've said, keep an open
mind until you start your deliberations at the end of the case.

Second, do not communicate with anyone about this case
or with anyone who has anything to do with it until the trial
has ended and you have been excused as jurors.  "Anyone else"
includes members of your family and friends, including your
employers, includes your co-employees.

Let me tell you, I know some of you have an employment
concern.  If you would like me to contact any employer to just
explain that you have been seated as a juror, and ask for their
accommodation while you serve as a juror, I'm happy to do so.
Just tell Ms. Smallman when you go to the jury room, and I'm
certainly happy to ensure that you don't have any trouble on
that front.

But, bottom line is don't communicate with anyone
about this case.  You can tell your family, friends, employer
that you have now been seated on a federal criminal trial.
Don't say the name of the case, don't say what the case is
about, don't name anyone involved in the case, don't say
anything else about it.  All right.

And when I say no communicating about the case, it

N4O3CHA2

means no communicating on Facebook, Twitter, Google, Snapchat, Instagram, blog, standup comic routines, in person, telephone, anything at all.  Whatever.

You may think that tweeting something about the case or posting something about it on Facebook is either harmless or no one will find out, but I assure you that is not the case. And if you do anything like that, it will be a major inconvenience to everyone involved in the trial, including or especially to you, so don't do it.

Third, do not let anyone talk to you about this case or about anyone who has anything do with it.  If any person should attempt to communicate with you about this case at any time during the trial, either in or out of the courthouse, you must immediately report that to my staff, either Ms. Smallman whom you've seen this morning, or my law clerk Mr. Miller, who is standing over there, and to no one else.  When I say report that communication to no one else, I mean you should not tell anyone, including your fellow jurors.  Just tell Ms. Smallman or Mr. Miller.

To minimize the probability of any such improper communication, it is important, as I said earlier, that you go straight to the jury room when you come in in the morning.  So don't come into the courtroom.  All right.  You are going to go straight into the jury room, and Ms. Smallman will ensure you know where that is.  It is important you go straight there,

N4O3CHA2

1    that you remain in the jury room for the duration of the trial

2    day, and you head directly out of the courthouse at the end of

3    the trial day.  Don't linger on this floor or in the lobby or

4    any other public areas of the courthouse for that matter.  And

5    you should use the bathrooms in the jury suite.  There are a

6    couple of bathrooms that are back there just for you.  Use

7    those and don't use the bathrooms that are elsewhere in the

8    courthouse.

9          You may not, as I mentioned earlier, use the

10   cafeteria.  Don't linger anywhere in the public areas of the

11   courtroom.

12         Fourth, do not do any research or any investigation

13   about the case or about anyone who has anything to do with the

14   case.  Don't go visit any place described during the trial.

15   Don't read or listen to any news reports about the case.  There

16   may or may not be any, but if you happen to come cross or hear

17   anything, immediately turn the channel, change the station,

18   turn the page, make sure you don't read or are not exposed to

19   anything about the case.

20         Don't go on the internet or use whatever digital

21   communications device it is you use to see what you can learn

22   to inform yourselves about this matter or about anyone involved

23   in it.  The time will come where you can do that, but that time

24   is not until you are formally excused as a jury, and that again

25   is to ensure your decision in this case is based solely on the

N4O3CHA2

1    evidence presented at the trial.  In other words, all that

2    you'll need to know in connection with your role in this case

3    will be presented here in open court by the parties.

4            I expect you to advise me immediately through

5    Ms. Smallman or Mr. Miller if you become aware of another

6    juror's violations of these instructions.

7            Finally, before you begin tomorrow, you will be

8    provided with a notebook and a pen.  That's because I do permit

9    jurors to take notes.  Some jurors hear, listen, absorb better

10   just by listening.  Some it's helpful to take notes.  Totally

11   up to you.  Whatever would be most helpful to you to absorb the

12   evidence as it comes in.  Let me stress that notes are just an

13   aid to your own recollection.  The court reporters in this

14   case, as you've seen them here throughout the day, they record

15   every single word that is said in the courtroom.  And any

16   portion of the testimony can be submitted to you or read back

17   during your deliberations.  If you do take notes, be aware that

18   note-taking can distract you from something important that is

19   happening on the witness stand.

20           Whether or not you take notes, you should rely on your

21   own recollections and don't be influenced by the fact that

22   another juror has taken notes.  If you do take notes, you

23   should, when I excuse you for the day, take your notebook into

24   the jury room.  Don't leave it here in the courtroom.  And then

25   leave it in the jury room each day.  My staff will ensure that

N4O3CHA2

1   your notes are secured there.

2          From this point until the time when you retire to

3   deliberate, it is your duty not to discuss this case and not to

4   remain in the presence of anyone who may be discussing this

5   case.  In this regard, I remind you, as I said earlier, the

6   parties involved in this case have been strictly instructed to

7   have no contact whatsoever with you.  So if you happen to see

8   any of them outside of the courtroom, as you come into the

9   courthouse tomorrow, whatever, and they don't acknowledge you,

10  say hello to you, make small talk with you, smile at you,

11  anything, please don't take offense.  They are not being rude.

12  They are simply following my instructions.  All right.

13         That concludes my preliminary instructions.  In a

14  moment I will excuse you, and Ms. Smallman is going to take you

15  into the jury room to show you where that is and how to get

16  there tomorrow morning.  She's also going to get some contact

17  information from you to ensure we can contact you in the event

18  we need to.  She'll give you some contact information from us

19  to ensure that you know how to get in touch with us if need be.

20         Again I remind you, please, please be here by no later

21  than 8:45 tomorrow.  If something unexpected happens and you're

22  running late, please contact us through the means that

23  Ms. Smallman will give you to let us know so we can plan

24  accordingly.  And I remind you we can't start until you're all

25  here.  At a minimum you'll have a means to contact us if you

1    ever need to reach us.

2              Ms. Smallman will also give you I think a juror

3    placard or ID which you can use to get into the courthouse

4    tomorrow.  If you flash that to the court officers, they will

5    expedite you through security and it will speed your entry into

6    the courthouse.  Hopefully it won't be too busy at the time you

7    are arriving, but you can let them know you are a sitting juror

8    in a case and they will facilitate your entry.

9              A few final reminders before I excuse you for the day,

10   and again, you are going to follow Ms. Smallman out to the jury

11   room and she will give you some further instructions and get

12   your contact information there.

13             Number one, keep an open mind.  You've heard a little

14   bit about the case through my questions and commentary today,

15   but you haven't heard any evidence whatsoever.  That will

16   happen beginning tomorrow after the lawyers' opening

17   statements.  But so far you have not heard a lick of evidence.

18   So it is absolutely critical you continue to keep an open mind.

19   Also, don't discuss the case with each other or with anyone

20   else for that matter.  Don't do any research about the case.

21             With that, I wish you a very pleasant evening.  Please

22   be in the jury room no later than 8:45 tomorrow morning, and we

23   will start promptly when we can tomorrow.

24             Thank you very much and have a good evening.

25             (Jury excused)

1          THE COURT:  All right.  So, it was a longer process

2    than I thought, but given where we were at lunchtime, I'm very

3    happy with where we ended up.

4          Anything to discuss from the government?

5          MR. ROOS:  No, your Honor.

6          THE COURT:  From the defense?

7          MR. MILLER:  No, your Honor.  Thank you.

8          THE COURT:  So, please be here certainly a few minutes

9    before 9.  I'll assume that there is nothing we need to discuss

10   before we start promptly at 9 with the jury with opening

11   statements.  If that assumption is incorrect, you should alert

12   my staff so we can take it up as quickly as we can.  But, my

13   hope is we'll have the jury in the box at 9 and ready to go

14   with opening statements.

15         There is a mobile podium over there.  If you want to

16   move the podium to the front of the jury box, you're welcome to

17   do that and set up the microphone.  You can speak to

18   Ms. Smallman about that in the morning.  This podium here

19   cannot be moved.

20         Any questions?

21         MR. MILLER:  Your Honor, not related to that, but just

22   occurred to me.  With respect to the privilege submissions that

23   are supposed to be made under seal by 11:59:59 this evening,

24   can we do so by sending it by e-mail to your Honor?  How would

25   you prefer that we handle that?

N4O3CHA2

1          THE COURT:  So I don't think we discussed anything

2     about them being sealed.  But if you think that they are

3     appropriately filed under seal in the first instance, given the

4     nature of the submissions, I'm happy to take them and consider

5     your application, or consider whether they should be under

6     seal.  I would say if they can be redacted, that's preferrable

7     to being sealed all together.  But first order of business, if

8     you think they should be sealed, you can e-mail them to my

9     chambers.

10          MR. MILLER:  We don't think that the contents of our

11     application is privileged, which is part of the reason why we

12     are making that application.  But obviously in deference to

13     OpenSea and their counsel, we are happy to make redactions or

14     whatever is required.

15          THE COURT:  Is anyone here from OpenSea?  I assume

16     not.  So why don't you discuss with them.  If both sides are in

17     agreement that, given the nature of the briefs, they can be

18     filed publicly, that's certainly the preference.  If not, you

19     should at some point plan to address whether and to what extent

20     they can be public.  If that is primarily OpenSea's application

21     to make, I'll give them an opportunity to be heard.  You should

22     err on the side of caution and submit it under seal in the

23     first instance, if there is any question about whether it is

24     privileged and should be sealed.

25          MR. MILLER:  Understood.

N4O3CHA2

1              THE COURT:  But at present, our court rules don't

2      permit you to file things on ECF under seal in criminal cases.

3      We allow it in civil, but not yet in criminal.  So you should

4      e-mail it when the time comes.

5              MR. MILLER:  Thank you.

6              THE COURT:  Anything else?  Very good.

7              I will see you bright and early tomorrow ready to go 9

8      sharp.  And with that, I wish you all a pleasant evening.

9      Thank you.

10             (Adjourned until April 25, 2023, at 9 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25