N52KCHA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              22 CR 305 (JMF)

NATHANIEL CHASTAIN,

                                                Trial

                Defendant.

------------------------------x

                                    New York, N.Y.
                                    May 2, 2023
                                    10:43 a.m.

Before:

                  HON. JESSE M. FURMAN,

                                    District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
NICOLAS ROOS
THOMAS S. BURNETT
ALLISON C. NICHOLS
     Assistant United States Attorneys

GREENBERG TRAURIG, LLP
     Attorneys for Defendant
BY:  DAVID I. MILLER
     DANIEL P. FILOR
     GREGORY W. KEHOE
     CHARLES BERK
     NICHOLAS BARNES

1                    (Trial resumed; in open court; jury not present)

2                    THE COURT:  You may be seated.

3                    Good morning.  Back with the case on trial.

4                    First, to make a record:  I got a note from the jury,

5       dated today, May 2nd, 9:12 a.m.  It states:  "Please have

6       transcript of Devin Finzer's testimony.  We also need testimony

7       of transcript for Alex Atallah."  Signed by the foreperson, who

8       appears to be Juror No. 1.

9                    I understand that those transcripts have now been

10      prepared and provided to the jury.  I want to know what

11      happened, because, as far as I understand, the second one just

12      went back literally five minutes ago, which took an hour and a

13      half.

14                   So unless there's a good explanation, I want you to

15      understand I'm not happy.  The whole point of telling you to

16      confer in advance and redact the transcripts in advance was so

17      that if we got a note of this sort — which doesn't ask for a

18      subject, it asks for discrete testimony that should be pretty

19      easy to agree on — we could provide it to the jury within a

20      matter of minutes.

21                   So I don't understand why it took an hour and a half,

22      and I'd like an explanation of that, and I want assurances that

23      it's not going to happen again.  If we get another request that

24      can easily be satisfied, I want it satisfied within a matter of

25      minutes.

N52KCHA1

1          So what happened?

2          MR. ROOS:  So I'll take that, your Honor.

3          First of all, totally agree that it's not acceptable

4    for it to be nearly 90 minutes between the time of the note and

5    when they get the transcripts, and we apologize for that.

6          We had the transcripts redacted.  We did not share

7    them with defense counsel to sort of confer on the redactions

8    prior to this morning, and that's our fault, that's my fault.

9    We did have them redacted, we sent them to them; it took some

10   time sort of for a variety of things.  One was just giving the

11   defense an opportunity to check the redactions, which is

12   obviously their right.  The other was sort of a series of

13   compounding technical issues at the U.S. Attorney's Office

14   related to basically network issues that I won't belabor on the

15   record here.

16         To get to your Honor's question of how we can be sure

17   this won't be happen again, we are sending the remainder of the

18   transcripts to the defense so that there is no time wasted sort

19   of double-checking our redactions to the extent they are sort

20   of nonsubstantive requests like, give us the entire transcript

21   of this next witness.

22         As for fixing the computer system at the U.S.

23   Attorney's Office, I think we're hopeful that it will work for

24   the rest of the day; and, if not, we'll figure out some other

25   way to accommodate it.

N52KCHA1

```
1          THE COURT:  Where does the review stand of the
2     redactions?  Has it been provided to against counsel now?
3          MR. ROOS:  So I think we've emailed a few days, maybe
4     not the last day.  Ms. Nichols is at the office right now
5     emailing the last day.
6          THE COURT:  Okay.
7          So I want them done preferably by, let's say, 11:30;
8     and when they're done, you should email them to my chambers so
9     if we get a future request, it can be honored quickly.  We're
10    in a position that we can print it, and then this won't happen
11    again.
12         MR. ROOS:  Okay, understood.
13         THE COURT:  Okay.
14         I understand there was some correction to the
15    transcript that was made or discovered in connection with this
16    process?
17         MR. MILLER:  Yes, your Honor.
18         This was just two minor things that looked like a
19    couple of objections were missed.  We got that.
20         And then there was one substantive issue.  We think,
21    frankly, the court reporter put down a "yes" when there was a
22    "no" regarding Mr. Finzer's testimony, particularly, when I was
23    questioning him about the items in Government Exhibit 214, and
24    whether OpenSea did business in biological materials and
25    laboratory materials.  I'm sure your Honor remembers that line
```

1    of questioning.  And he was saying no, no, no, and then I

2    asked, do you see it also mentions mask works, and he said,

3    yes.  And then I don't have it in front of me, but the next

4    question was something to the effect of, does OpenSea do

5    business in mask works; and the answer, I believe, was no to

6    that question, and, for whatever reason, it's in the transcript

7    as yes.

8              So we've just emailed the court reporter to fix that,

9    and that particular question and answer was redacted in what

10   went back to the jury.  We're sure that it was a no, it was not

11   a yes.

12             THE COURT:  All right.  For the record, I think we're

13   talking about page 387.

14             (Pause)

15             THE COURT:  So the correction has been made.

16             Just so I understand, the corrected version did go to

17   the jury, or we just redacted that?

18             MR. MILLER:  That was redacted, so if there's a

19   corrected version available, we'd like that to go to the jury

20   as well.

21             THE COURT:  Mr. Roos?

22             MR. ROOS:  Sure.

23             THE COURT:  How do you propose to do that?  That we

24   just print that page?

25             MR. MILLER:  That's fine for the defense, your Honor.

N52KCHA1

1           THE COURT:  Mr. Roos?

2           MR. ROOS:  That's fine.

3           THE COURT:  So I am correcting it myself.  I think we

4    probably need to send some sort of explanation in to the jury

5    with this, to explain why they're getting one additional page,

6    unless you think that will be obvious from what they've already

7    received.

8           Any thoughts on that?

9           MR. ROOS:  Could we just say, the copy received had a

10   redaction on page 487, here is the page without the redaction?

11          THE COURT:  Something along those lines would be fine

12   with me.

13          Mr. Miller?

14          MR. MILLER:  That's fine.  Thank you.

15          (Pause)

16          THE COURT:  "To the members of the jury:  "Earlier we

17   provided you with portions of the transcript in response to

18   your note of 9:12 a.m.  Page 487 of the transcript was

19   mistakenly redacted in one place.  Enclosed is a copy of that

20   page without the redaction.  Thank you for your patience."

21          Any objections from the government?

22          MR. ROOS:  No, your Honor.

23          MR. MILLER:  No, your Honor.  Thank you.

24          THE COURT:  All right.  So I'll have my deputy print

25   that, I'll sign it, we will submit that page and the note to

N52KCHA2

1    the jury.

2         All right.  I'll mark the jury's note of this morning

3    Court Exhibit 1.  My practice and plan is to docket all the

4    jury's notes and its verdict form at the conclusion of the

5    case, with the name or names of any jurors redacted, just so

6    you know.

7         Anything else that we need to discuss?

8         From the government?

9         MR. ROOS:  No, your Honor.

10        THE COURT:  Defense?

11        MR. MILLER:  No.  We're looking at the transcripts

12   now, your Honor.  Thank you.

13        THE COURT:  Great.  So when that is done — and I

14   expect it to be done by 11:30, I hope — please email it to

15   chambers so everybody has a copy.

16        Thank you very much.  See you later.

17        (Recess pending verdict)

18        THE COURT:  All right.  We are resuming with the case

19   on trial.

20        As you, I think, have been advised, we received a

21   second note, dated today at 2:19 p.m., signed by the

22   foreperson.

23        It states as follows:  "We are unable at this time to

24   reach a unanimous verdict.  Do you have any guidance for us in

25   terms of next steps?"

N52KCHA2

1          I'll mark it as Court Exhibit 2.  I had my deputy hand

2    to you a modified *Allen* charge, which is what I have used in

3    prior circumstances.  I did not mean to suggest, and do not

4    mean to suggest, that that is the way to handle this.  I just

5    want to be clear about that.  I want to hear your views, but to

6    the extent that we were going in that direction, I thought it

7    might be helpful for you to have the language that I would be

8    inclined to use and at least have that facilitate our

9    conversation.

10         So, government, any thoughts?

11         MR. ROOS:  Yes, your Honor.

12         In the scheme of things, I think it has not been a

13   terribly long amount of time.  That said, we think your

14   proposed modified *Allen* charge could potentially be a good

15   first step and would leave the Court -- I think the circuit has

16   recognized the proprietary of a number of different

17   permutations of stronger language.  So I think, were the Court

18   to deliver this charge right now, it would still leave the

19   Court a number of different options later on if this continues

20   to be an issue.

21         THE COURT:  All right.

22         And I think that is an accurate statement.  I guess

23   the question I have is — and I will hear the defense view — one

24   option would be not to even give this charge just yet and

25   essentially to brush this off in some fashion, along the lines

N52KCHA2

1    of, you know, I certainly understand that you feel you have

2    been at this for a while but it wasn't that long a trial and

3    between, I think, the two hours of deliberations yesterday and

4    I guess there were five or so hours today, that's not that

5    long, and urge them to just keep going and leave it at that.

6    That's another preliminary option.

7            MR. ROOS:  So we're not opposed to something that

8    says, keep working, it hasn't been that long.

9            I think the one sentence in the middle paragraph, that

10   we think could potentially be helpful and a source of

11   inspiration is, there is no reason to believe that if case

12   would be tried by another jury, that they would do a better job

13   than you, just something to sort of encourage the jury to keep

14   working.  But, ultimately, we defer to your Honor's judgment on

15   this.

16           THE COURT:  Okay.

17           Mr. Miller?

18           MR. MILLER:  I certainly disagree with that last part.

19   I think if this charge is going to be given at all, we actually

20   think the first and third paragraphs would be fine, with the

21   addition of one sentence, and I will tell you why I'm going to

22   say that sentence in a moment, your Honor.  But it comes from

23   the authority that's actually cited by your Honor down below,

24   namely, that in sort of the modified *Allen* charges that have

25   been countenanced by the circuits, there's sort of a repeated

N52KCHA2

1  understanding that in the instructions to the jurors that under

2  no circumstances should the jurors yield their conscious

3  judgment.

4  So to the extent that there is any kind of modified

5  charge going to be given now — and I'm not sure that that's

6  necessarily required right now — we would think that the first

7  and third paragraphs would be fine, plus that additional

8  sentence I just read in the first paragraph.

9  But we certainly disagree about plucking out the

10  sentence that Mr. Roos just read from the middle paragraph.  I

11  don't think there's any reason to do that now, without

12  certainly a sentence or an instruction that, under no

13  circumstances, should a juror yield their conscious judgment.

14  THE COURT:  All right.

15  Well, let me be clear — I'm not going to include that

16  line without the opposite, which is that the jurors should

17  reconsider their views, or should not hesitate to reexamine

18  their views, at which point, we're basically talking about the

19  full second paragraph here.

20  So, in that regard, I think maybe the choice is

21  between giving this instruction, which it seems like no one has

22  a particular objection to on its own terms, versus something

23  more cursory, along the lines of, listen, I know you feel like

24  you've been at this for a while, but I can tell you from

25  experience that you've only been deliberating for five or six

1    hours, and that's not a whole lot, keep it at.

2            Do you have a view between those?

3            MR. MILLER:  So, at this point, I think we would be

4    fine with the latter, which is, it's only been five or six

5    hours.  I think we're fine with that.

6            The only thing I'll just say is, if your Honor is

7    inclined to go with the full charge here, understood as to your

8    Honor's point, that if you're going to give one side, you're

9    going to give the other side.  I would note, from quickly

10   looking at these cases, that the instructions by the district

11   courts in those cases had more than once that you should not

12   surrender your conscious judgment.  I only see, obviously, that

13   in one sentence towards the end.  I'm just pointing that out,

14   your Honor.

15           THE COURT:  Okay.  You're not suggesting, I assume,

16   that it's error to only say it once?

17           MR. MILLER:  No.  Obviously, you asked for our

18   preference.  That would be our preference, but, understood if

19   your Honor is only inclined at this point just to tell the

20   jury, listen, you've been at it for a few hours, you've got to

21   keep going.

22           THE COURT:  Mr. Roos, anything further from you?

23           MR. ROOS:  Well, I think we have some thoughts on some

24   of those arguments, but unless your Honor wants to hear them,

25   it seems like the two options are either this or just sort of

1    the, keep going; and I think between them, we can go either way

2    on them.  We don't think you need to say the sentences in here

3    twice, though, given how short it is.

4             THE COURT:  I'm trying to reduce repetition in

5    general.

6             I think I'm inclined to not go this route just yet, on

7    the theory that holding it in reserve, to the extent that it's

8    appropriate to ratchet things up, I think it makes more sense

9    to start with less and ratchet to this before ratcheting to

10   anything beyond this.  And also because I think it's a truthful

11   statement to say to them, while they may feel that they've been

12   at this a while, they really haven't, in my experience, that

13   might be just a helpful preliminary thing; if they continue to

14   be deadlocked, then I think this would probably be the next

15   step.

16             I guess the question is:  Are you guys okay with my

17   winging it along the lines with what we've discussed, or do you

18   want to negotiate the precise words?  I'm happy to do either.

19             MR. ROOS:  I think your Honor's sort of delivered the

20   substance twice.  Both times sounded fine to us, so we're okay

21   with the winging it.

22             THE COURT:  Mr. Miller?

23             MR. MILLER:  I don't think we have a problem with

24   that, Judge.

25             THE COURT:  All right.

N52KCHA2

1          So let's bring them out, and I will deliver that news

2     to them, and we'll see what they have to say later.

3          I would recommend you turn that phone off.

4          (Jury present)

5          THE COURT:  You may be seated.

6          Welcome back.  Good to see all of you.  I hope you had

7     pleasant night last night, and welcome back today.  Thank you

8     for being here on time this morning.

9          We have received your most recent note.  We received

10    your note this morning, requesting testimony, and my apologies

11    for how long it took to get it to you.  We were trying our best

12    but had some technical difficulties.

13         More recently, we got your more recent note, stating

14    that you are unable at this time to reach a unanimous verdict

15    and asking for any guidance in terms of next steps.

16         So I don't know how helpful this guidance will be, but

17    let me say that, in my experience, this wasn't an especially

18    long trial, and just to put it in context, I don't think you've

19    been at it for that long, which is to say, you got the case

20    about 3:00 o'clock yesterday so had about two hours yesterday;

21    and, by my calculation, assuming that you deliberated during

22    lunch — and you may not — you've only been at it about five or

23    six hours, total.

24         So, just to put it in context, in my experience, I

25    would stick with it, which is to say, don't give up on each

N52KCHA3

1    other and yourselves, and you may yet be able to reach a

2    unanimous verdict; and, if not, you can obviously let us know

3    and seek further guidance.  But for now, my guidance to you is

4    to keep at it.

5             So with that, I will send you back to the jury room,

6    and you know where to find us.  Thank you very much.  You are

7    excused.

8             (Recess pending verdict)

9             THE COURT:  You may be seated.

10            Anything from the government?

11            MR. ROOS:  You may have told us — and, if so, my

12    apologies — do you want us here at 5:00 for the dismissal?

13            THE COURT:  Yes.  I'll do the same as I did yesterday.

14    So if I didn't tell you that, I'm telling you that now.

15            Anything from the defense?

16            MR. MILLER:  Nothing.  Thank you, Judge.

17            THE COURT:  All right.  See you either before 5:00, so

18    be here a few minutes before 5:00, or when we get another note.

19    Thank you very much.

20            (Recess pending verdict)

21            THE COURT:  You may be seated.  We'll bring the jury

22    in to excuse them for the day.

23            I should give you all a heads-up that I have a pretty

24    packed day tomorrow, including a final pretrial conference for

25    my next trial, which is scheduled starting Monday.  So I'll

N52KCHA3

1     deal with things as they arise, but I just wanted to give you a

2     heads-up.

3              (Pause)

4              THE COURT:  I will share that I'm advised that they

5     have a note.  So hold your horses; we may have a different

6     plan.  So I will let you know what I know when I know it.

7              All right.  Let me read the note and then my proposal

8     is to bring them out — it is not a verdict, it is a substantive

9     question — to bring them out, excuse them for the day, and let

10    them know that we'll answer their note as quickly as we can in

11    the morning.

12             This note, which is dated today, at 4:55 p.m., reads

13    as follows:  "Re Count One, Element 1, if the defendant viewed

14    the information as confidential but Devin Finzer, the other

15    signatory to the confidentiality agreement, did not, is that

16    enough to consider it confidential?"

17             So let's bring them out.  We will excuse them for the

18    day, and then we will discuss, once they're gone, how to handle

19    this.

20             (Jury present)

21             THE COURT:  You may be seated.

22             Good afternoon.  Welcome back, ladies and gentlemen.

23             I was about to bring you in just to excuse you for the

24    day but was then advised that you had another note.  We have

25    now received your other note.

1           Rather than keep you here while we figure out how to

2     answer your note, I think it makes more sense to send you off

3     for the evening — it is 5:00 o'clock — and we'll discuss a

4     response and hopefully have it for you, if not when you begin

5     your deliberations tomorrow, certainly as close to that as I

6     can provide.  That is to say, we have your note, and I will get

7     back to you as soon as I can, but not today.

8           My same instructions from yesterday continue to apply

9     now, which is to say:  First of all, enjoy your evening, and

10    get home safely.

11          Second of all, please be back in the jury room by

12    8:45.  We will have breakfast, and lunch order forms, as we did

13    today.

14          And remember that you can't discuss the case with

15    anyone, including each other, until all 12 of you are present,

16    at which point, you can renew or begin your deliberations

17    again.

18          So don't discuss the case except when all 12 of you

19    are together, keep an open mind, don't do any research about

20    the case, and with that, get home safely.  Again, tomorrow no

21    need to come in here in the morning.  Once all 12 of you are

22    present — and the court security officer or Ms. Smallman will

23    confirm that for me — you can continue your deliberations, and

24    we'll see you at some point.

25          Now, I will either send a response to your note into

N52KCHA3

1  the jury room in writing or I may bring you out to answer your

2  note.  I will figure that out between now and when I respond,

3  but I will certainly see you at some point tomorrow.

4          With that, get home safely, and have a wonderful

5  evening.  Thank you very much.

6          (Jury not present)

7          THE COURT:  You may be seated.

8          Any immediate thoughts?  I realize everyone just got

9  the note so haven't really had time to think about it.

10          One option is, I give you a few minutes to confer and

11  for me to think, and then we can reconvene in ten minutes or so

12  and discuss how to handle this.  It's a little less pressing,

13  given that the jury is gone for the evening, but out of respect

14  for the court reporter and staff and you, I don't want to keep

15  us here too late.

16          So your thoughts?

17          MR. ROOS:  So I think it's possible that we'll need to

18  do a little legal research, but I certainly think your Honor's

19  suggestion is a good one, of maybe taking a few minutes to just

20  collect our thoughts, then discussing it with the Court, and

21  then if it makes sense for us to do briefing for the Court, we

22  can discuss that.

23          THE COURT:  Okay.

24          Mr. Miller?

25          MR. MILLER:  Your Honor, my immediate reaction is,

1    throughout the case, the government has put on Mr. Atallah and

2    Mr. Finzer to show what they considered to be confidential as

3    to the existence of a scheme to defraud.  And if the question

4    is whether the defendant's view of what's confidential, or

5    Mr. Finzer's view of what's confidential controls, it's our

6    view, given especially what the presentation of evidence was by

7    the government, that Mr. Finzer's opinion as to whether or not

8    this information was confidential should control.  That's what

9    they've argued thought the case.  That's why they put the two

10   witnesses on and asked them all the questions about the

11   confidentiality agreement and their interpretation of it, that

12   this is the first element of Count One.  We think the answer

13   should be, it's Mr. Finzer's view that controls.

14            THE COURT:  All right.  Well, be that as it may, I

15   think it's fair to give the government at least a few minutes

16   to think about it.

17            It's always dangerous to speak off the cuff, but I

18   think my reaction is not entirely aligned with that, which is

19   to say, number one, obviously, the defendant has to have an

20   intent to defraud, which is to say a scheme to obtain property.

21   I think, in that regard, he has to view it as confidential

22   business information.  It doesn't seem like they're necessarily

23   grappling with that or the premise of their question is that he

24   did view it as such.

25            I think, in response to the second part, I'm inclined

to say that it has to be property; and property includes

confidential business information, which is to say that it has

to be considered and treated by the company as confidential

business information.

Yes, throughout this trial, I think the government has

largely taken the view that the company is represented here by

one or both Mr. Finzer and Mr. Atallah.  And, in that regard,

it may ultimately lead the jury to conclude that the company

did not view it, treat it, or consider it as confidential, but

I'm not sure that it necessarily follows if Mr. Finzer didn't

consider it property, that it isn't property, since, among

other things, Mr. Atallah was a principal of the company as

well, and there are objective factors that they can rely on

under on *Mahaffy*, including the existence of agreements and the

like.

So I think it's not so far off from your position,

which is to say, I do think that the company needs to view it

as property, but whether they conclude that the company is

Mr. Finzer or not is ultimately, I think, up to the jury to

decide.

MR. MILLER:  I certainly agree with your Honor, that

under *Mahaffy*, OpenSea has to consider and treat the

information confidential.  It's notable that on that particular

agreement Mr. Finzer is a signatory.  And they asked -- I think

that's right.  I see Mr. Burnett shaking his head, but I think

1     that he's a signatory.

2              So, ultimately, whether or not they considered the

3     information confidential and treated it, certainly, that is one

4     of the key issues in this case.  And Mr. Finzer's belief as to

5     whether the information is confidential, which was elicited, or

6     attempted to be elicited, by the government during this trial,

7     is certainly relevant as to the first element.  And I think

8     that's what the jury is asking about, is the first element.

9              THE COURT:  I guess to put a finer point on it, I

10    don't imagine there's any dispute that Mr. Finzer's view of the

11    issue is relevant.  What I'm saying is, I am not sure it's

12    dispositive.  It's significant, and it may well be that the

13    jury ultimately concludes that if Mr. Finzer, the founder and

14    CEO of the company, didn't view it as confidential, that means

15    that the company didn't view it as confidential, but I'm not

16    sure that it necessarily follows, because I think there are

17    other bases on which they could conclude that the company did.

18             That's all I'm saying.

19             MR. MILLER:  Understood, your Honor.

20             THE COURT:  All right.  In any event, that's just an

21    off-the-cuff immediate reaction.

22             It is 5:08.  Can we reconvene at least for a

23    preliminary discussion, let's say, at -- it's now 5:09.  Can we

24    reconvene at 5:20, and if at that time you say we want to look

25    into it and submit things, that's certainly one option, but I

N52KCHA3

do want to be able to answer this question as close to

9:00 a.m. tomorrow as we can, so in that regard, time is of the

essence.  All right?

          So see you in 11 minutes.  Thank you.

          COUNSEL:  Thank you, your Honor.

          (Recess)

          THE COURT:  Please be seated.

          Sorry to be a few minutes late.  I got caught up in

thinking about how to answer this.

          Why don't I start with at least a thought, which is:

My inclination would be to repeat some elements of the

instructions I gave them, namely, something along the lines of:

As I previously instructed you, the first element the

government must prove beyond a reasonable doubt with respect to

Count One is that there was a scheme or artifice to defraud

OpenSea of its property, specifically its quote-unquote

confidential business information.  And then:  Information is

confidential business information if it was acquired or

created, and basically the language on page 15, line 20, of the

final instructions through the word "property" on the next

page, line 3.

          I'm not inclined to repeat the factors that they may

consider, since the question they're asking is not about the

factors but, essentially, the significance of Mr. Finzer's

thinking.  But I'd be inclined to then end — end the first

1    paragraph, at least — by saying something like, as I explained

2    to you, a scheme to defraud must have some amount of money or

3    property as its object, so if you find that the defendant

4    failed to prove beyond a reasonable doubt that the information

5    at issue in this case was confidential business information, as

6    I have defined it, you must acquit the defendant on Count One.

7    Although maybe that's not the right thing to include.

8           Here's the rub, though:  I think what the question is

9    really driving at is what significance does Mr. Finzer's

10   thinking have on this; and, in that regard, it almost always

11   calls for some instruction regarding agency type principles,

12   that is to say, what role or significance he has vis-a-vis the

13   company, as opposed to Mr. Atallah, really, how they go about

14   deciding what a company considered or thought, right?  What

15   does that mean, since a company acts only through its

16   employees?

17          So what I was toying with, and got caught up with, was

18   trying to figure out some way of essentially saying that the

19   proper focus of this inquiry is on the company, but, of course,

20   a company can act only through its employees and, in that

21   regard, you may consider, and then, you know, fill in what

22   should follow.  But the question is, what should follow?

23          Having said all that, you may have a better idea,

24   other ideas.  I'm all ears.  You may want time to think about

25   it and submit things in writing, but the clock is certainly

N52KCHA3

1  ticking on that.

2          What are your thoughts?  I'll ask the government

3  first.

4          MR. ROOS:  So, your Honor, first of all, we agree that

5  probably some reiteration of your instructions makes sense.

6  And we also agree sort of on what you're focusing on.

7          I would say, there are three points that come to mind:

8          Number one, yes, you should look at whether it's the

9  company, so how the company viewed the information.

10          Second, I think it's clear that how a particular

11  individual viewed information is not dispositive of the

12  question.

13          But, third, of course, that individual or any

14  individuals' views can be within sort of the body of evidence

15  the jury can consider.

16          It's on those last two points that we'd like to do

17  some more research and give you a brief on it.

18          THE COURT:  Okay.

19          Mr. Miller?

20          MR. MILLER:  The jury asked specifically about Element

21  1.  We conferred with the government because we don't think

22  that the defendant's views as to what's confidential is at all

23  relevant for Element 1.

24          THE COURT:  Can I interject?  I agree.

25          MR. MILLER:  Okay.

1          THE COURT:  Looking at the precise language of the

2     note — and I am happy to make a copy of it for both sides if

3     you don't have it — I agree, they're asking about Element 1.

4     Element 1 is not the defendant's intent to defraud, so I think

5     it really is focused on the information, and we should limit

6     the answer to that.

7          MR. MILLER:  So to that extent, the jury's question is

8     clear.  We think that the answer to the jury should be no, and

9     to leave it at that.

10          THE COURT:  Do you have authority that supports that?

11     Because I think the instructions I gave them don't lead to that

12     answer.

13          MR. MILLER:  I'm trying to see on the transcript, the

14     actual question, again because now we've lost it.

15          "Re Count One, Element 1, if the defendant viewed" --

16          THE COURT:  Hold it, Mr. Miller.

17          MR. MILLER:  I'm sorry, I'm just trying --

18          THE COURT:  Either read it to yourself or speak

19     slowly.

20          MR. MILLER:  My apologies.

21          THE COURT:  I'm going to have my law clerk make a copy

22     on our handy copier here so you can have the actual note.

23          MR. MILLER:  I guess the other thing I would say,

24     Judge, if I may, is:  One of the key decisions by the Court on

25     the motions in limine was that the two founders essentially

N52KCHA3

1    could speak for the company as to whether or not under *Mahaffy*

2    OpenSea considered and treated the information at issue as

3    confidential business information.  And, indeed, the defense,

4    as a consequence of that ruling, we were, of course, not

5    permitted to ask questions of any other employees about whether

6    they viewed the information as confidential or in violation of

7    the applicable agreement, Government Exhibit 214.

8            So now, the question from the jury is whether or

9    not --

10           THE COURT:  Mr. Miller, let me interrupt because I

11   think you've said something that sort of undermines the point,

12   which is, yes, I said you could ask Mr. Finzer and Mr. Atallah.

13   The jury's question is asking only about Mr. Finzer.

14           So let's say, in a hypothetical world, they conclude

15   that Mr. Finzer didn't think, either when he signed agreement

16   or otherwise, that this was confidential but Mr. Atallah did.

17   I think they could conceivably find that OpenSea considered the

18   information to be confidential.  Or, to put a different

19   hypothetical before you, let's say Mr. Finzer signed this

20   agreement and the following week he left OpenSea.  It doesn't

21   follow that in the first week, before the information existed,

22   that the company had to consider it confidential; the company

23   could go on to consider it confidential.

24           So that's what I think the fatal flaw in the argument

25   is.  Mr. Finzer's opinion is certainly significant, and it may

N52KCHA3

1   ultimately lead the jury to conclude that it is not property,

2   but I don't think it's dispositive.

3           So I don't think it's legally accurate to say that if

4   Mr. Finzer didn't view it as confidential, the answer is it's

5   not property.

6           MR. MILLER:  Understood, your Honor.

7           My concern, I think, though, is in responding to this

8   question, that there is any sort of instruction to the jury --

9   presumably, they've looked at Mr. Atallah's testimony, they

10  asked for it this morning — we have no idea, of course, what

11  they have done — but I'm concerned about the Court directing

12  them to Mr. Atallah as well.

13          THE COURT:  I don't intend to do that.

14          MR. MILLER:  Okay.

15          THE COURT:  But I don't think it's legally accurate to

16  say, if they find that Mr. Finzer didn't view it as

17  confidential, the answer to their question is no.

18          MR. MILLER:  Understood, your Honor.

19          I think we all probably have to think about this a

20  little bit.

21          THE COURT:  Okay.

22          So how quickly can you get me something in writing?

23  Because I think the appropriate way to deal with this would be

24  for me to then file something in writing such that you can

25  either tell me you agree, don't agree, comment, make

N52KCHA3

1    objections, what have you.

2          MR. ROOS:  You'll be the one giving the instructions,

3    so what would your preference be?

4          THE COURT:  Is 8:00 o'clock overly ambitious?

5          MR. MILLER:  Could we have till 9:00?  We have to get

6    back to our offices.

7          THE COURT:  Let's say 8:30.

8          MR. MILLER:  Okay, we'll take it.  Thank you, Judge.

9          THE COURT:  That was Solomonic of me.

10         So I'll look for whatever you have to file at 8:30.

11   I'm going to aim to file something tonight myself so you have a

12   sense of where I am and perhaps invite commentary on it.  I

13   don't think I can get here much before 9:00 tomorrow,

14   unfortunately, for reasons I don't need to go into.  If we need

15   to reconvene before I answer the jury's question, then they'll

16   just have to take it as it comes and wait for our answer, but,

17   obviously, I would like to get them the answer as soon tomorrow

18   as I can.

19         All right.  Rather than keep talking and making your

20   task more difficult, I will let you go and see you tomorrow.

21         COUNSEL:  Thank you, your Honor.

22         (Adjourned to May 3, 2023, at 9:00 a.m.)

23

24

25