N53KCHA1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        22 CR 305 (JMF)

 5   NATHANIEL CHASTAIN,

 6                                        Trial
                  Defendant.
 7   ------------------------------x

 8                                        New York, N.Y.
 9                                        May 3, 2023
                                          9:00 a.m.
10

11   Before:

12                   HON. JESSE M. FURMAN,

13                                        District Judge

14                        APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     NICOLAS ROOS
17   THOMAS S. BURNETT
     ALLISON C. NICHOLS
18        Assistant United States Attorneys

19   GREENBERG TRAURIG, LLP
          Attorneys for Defendant
20   BY:  DAVID I. MILLER
          DANIEL P. FILOR
21        GREGORY W. KEHOE
          CHARLES BERK
22        NICHOLAS BARNES

23

24

25
```

1           (Trial resumed; in open court; jury not present)

2           THE COURT:  Good morning.  Welcome back.

3           So this note has confounded me a little bit.  I gave

4    you guys three different versions, which have slightly

5    different approaches to things.  Let me explain a little bit of

6    my thinking.

7           First, I think, to the extent that the defense

8    submission focuses on the point in time at which the contract

9    was signed, I think that's just not the proper inquiry here.

10   The inquiry focuses on the nature of the information at the

11   time that Mr. Finzer and Mr. Chastain signed their agreement.

12   That information didn't exist, it wasn't even in contemplation,

13   as far as I can tell, and, in that sense, it bears on the

14   company's understanding of what kinds of information are

15   confidential, but it doesn't answer the question of whether

16   that particular information was confidential.  So, in that

17   regard, I think it's quite clear that it's not limited to the

18   counterparties and signatories to the contract.

19           That's one of the many reasons that I don't plan to

20   answer the question with just a simple "no."

21           Second, I think the government's point about

22   referencing the other *Mahaffy* factors is well taken, but I'm

23   inclined to do it in a more neutral fashion; that is to say, as

24   you saw in a second paragraph, before referencing Mr. Finzer.

25           My concern about the government's proposal was that it

N53KCHA1

1   was akin to sort of marshaling the government's evidence in

2   some respects, and I think it makes sense to be more neutral

3   about that.

4            I think the thorny issue here is whether, and to what

5   extent, the jury can consider Mr. Chastain's views and conduct

6   with respect to the question of whether the information is

7   confidential.  And I think, upon reflection, I'm less sure than

8   I was yesterday when I think I suggested that his views were

9   not relevant to that question.

10           One version I gave you — I think it is version 1 —

11   does instruct the jury that his views are not relevant and

12   adopts a variation of the defense proposal on that score.

13           The second version, I think, is sort of more silent

14   and doesn't really answer the question at all, and may kick the

15   can down the road, in the sense that the jury may come back and

16   say, okay, but what about Mr. Chastain's views on the matter,

17   can we consider those?

18           And the third provides a little bit more guidance on

19   that in the sense that it does say that they can consider how

20   the defendant and other employees at the company treated the

21   information.

22           A couple further reflections:

23           The pretrial litigation regarding the questions that

24   could be asked of Ms. Phan, for example, certainly looms large

25   here.  I looked back at it, and I have a couple of

observations:

One is, it really was about the meaning and clarity of
the contract and of the rules.  It wasn't about the nature of
the information.  I don't think the government sought, and I
don't think I ruled, that questions couldn't be asked of, say,
Mr. Viau, who testified, or Ms. Phan, had she testified, of the
nature of, was the information treated as confidential — did
you consider it confidential, those sorts of questions.  And,
surely, if they were to testify that nobody treated it as
confidential because we all talked about it openly out of the
office, tweeted about it, emailed it to friends, et cetera,
that would obviously be relevant and admissible.

Relatedly, I was thinking about, take a hypothetical
case where Mr. Chastain had a right-hand man, an assistant, who
basically was privy to all of the information that he was, and
imagine that it's that person who engaged in the alleged
conduct here and he was charged with the crimes that
Mr. Chastain is charged with here.  Surely, in that case, the
government could put Mr. Chastain on the stand and have
Mr. Chastain testify to the effect that the information was
considered and treated confidential — like, I considered it and
treated it as confidential, we didn't share it outside the
company, you know, we didn't share it with other employees, the
reason it was confidential was we wanted it to be a surprise,
et cetera, et cetera — and if that's true, in that hypothetical

1    case, it's just not clear to me how this case would be

2    different in terms of the relevance of Mr. Chastain's views on

3    those issues.

4            I guess the last thing I would say is the briefing

5    didn't really focus -- I don't think at the time that I made

6    those rulings I had a particularly vivid understanding of just

7    how small the company was at the relevant time and where

8    Ms. Phan was, or where Mr. Chastain was, for that matter, in

9    the pecking order.  There's an argument to be made, again,

10   taking the hypothetical case that I just described —

11   Mr. Chastain was head of product, arguably one of the top five

12   employees at the company — there's an argument to be made that

13   his views were binding on the company and, in that regard,

14   imputable to the company.

15           So I think part of the trick here is, what does it

16   mean for a company to consider something?  Because companies

17   don't have thoughts; they have thoughts, through people.  And

18   the relevant question here, which I don't think I fully thought

19   through pretrial, is whose thoughts are relevant to that

20   question.  And I think that's a little bit of what the question

21   that the jury has posed is getting at.

22           That's a long windup, with a lot of thoughts, but as

23   you can see, I've been spending a bunch of time thinking about

24   this.  Go at it.

25           Mr. Miller?

1          MR. MILLER:  Thank you, Judge.

2          A number of things with the Court's indulgence.

3          THE COURT:  Just move the microphone closer.

4          MR. MILLER:  Thank you.  I seem to have been messing

5     that up throughout trial.  My apologies.

6          First, understood as to your Honor's ruling on the

7     fact you don't agree that the answer should be no.  We still

8     think the answer should be no.  The question was phrased in a

9     very distinct manner, and it's talking about whether what is

10    considered --

11         THE COURT:  Mr. Miller, you've preserved that.

12         MR. MILLER:  Understood.

13         THE COURT:  You've certainly preserved that position.

14    Go ahead.

15         MR. MILLER:  Thank you, Judge.

16         But there are a number of points to be made.  Just

17    looking at the three versions, we think that, with the

18    exception of listing out the *Mahaffy* factors, which I'll get to

19    in a second, we think version 1 is the most accurate statement

20    of the law.  I'll address specifically some of your Honor's

21    thoughts on this.

22         First, Mr. Chastain's views as to whether the

23    information was confidential, with all due respect, is not

24    germane to element 1.  Mr. Finzer, as chief executive officer,

25    was the authorized representative of the company to act on

behalf of the company.  And, obviously, in our letter last

night, we laid out the law, both from Delaware and from

California, since there was a choice-of-law provision — as well

as New York — that talks about who acts on behalf of the

company, who speaks on behalf of the company; it's the

authorized officers and directors.  It's not some random

employee, it's not necessarily even Mr. Chastain, right?  It's

the CEO, the chief executive officer, as the authorized

representative of the company.

        And, in this circumstance, it is relevant that he

signed the agreement, considering especially that the

government's case relied on having the founders talk about the

agreement and its interpretation of it.

        So, ultimately, the question is whether or not, of

course, the company considered that information confidential.

That's what the jury is asking.  And Mr. Finzer is the

authorized officer, under Delaware and California, and New York

law, is the one who speaks on behalf of OpenSea.

Mr. Chastain's views on whether the information was considered

and treated confidential, with all due respect, is irrelevant

for element 1.  Obviously, his intent and views go to element

2, but that's not what the jury is talking about.

        THE COURT:  I'm not sure, under agency law, that's

accurate.  Surely, in another kind of case or in another

setting, the actions of an employee within the scope of his

employment are imputable to the company and can bind the

company.

The conduct here is alleged to be ultra vires, not the

scope of his employment.  That's different.  But take

Defendant's Exhibits 1, 3, 6, whatever those numbers were.

Certainly the government's argument is that Mr. Chastain was

sharing plans of the company for a business purpose and,

therefore, that was not a violation of the agreement and within

the scope of his employment.  If that's accurate — and I'm not

opining on that — then surely that information is not

confidential because it was not treated as, or considered by,

Mr. Chastain as confidential.  And it may be that Mr. Finzer is

not even aware of that information.  In other words, there's

information that can qualify as confidential that the CEO is

not aware of.  He's not aware of all the information in the

company.

So the way in which information is considered and

treated by employees is certainly relevant to the question of

whether the company treats it and considers it to be

confidential.

MR. MILLER:  Understood, your Honor, although under

corporate and agency law, respectfully, it's whether or not the

employee is delegated that authority to act on behalf of the

company.  And I think, obviously, the evidence presented by the

government and the evidence in this case is about that

N53KCHA1

question, certainly; and the answer is that Mr. Finzer acts as

CEO on behalf of the company in entering into this

confidentiality agreement.  And that's what the jury is asking

about, whether Mr. Finzer -- whether the company, OpenSea,

considered this information confidential.

THE COURT:  I agree with that.  And that's the last

point I'm made, that I'm not sure the parties' briefing or my

analysis focused enough on the nature of the particular people

involved and what the nature of their duties and

responsibilities were.

I think a pretty strong argument could be made, by

virtue of being head of product and having been basically

delegated the responsibility to administer the featured NFT

program, that it was within the purview of Mr. Chastain's

duties and responsibilities to basically handle that

information; and, therefore, how he treated it, and how he

thought about it, is imputable to the company under traditional

principles of agency law.

MR. MILLER:  I understand your Honor's point.

Look, in this case, the only question, as your Honor

is noting, for the jury's note, is whether or not the company

considered the information confidential such that it qualifies

as confidential business information and then, potentially,

property.  That's the only question here.

We are very concerned, your Honor, that if your Honor

N53KCHA1

starts instructing the jury about how the defendant's views on confidential information are relevant, that they're going to conflate elements 1 and 2.  In this case, he wasn't authorized to speak on behalf of the company or to consider the company -- as to whether or not the information was confidential.  Our introduction of those exhibits go to a different question, as to what he understood and his state of mind, namely, element 2 to be at issue, and that's a different question, your Honor.

THE COURT:  So reining this in, your view is that some version of version 1 is appropriate?

MR. MILLER:  Yes.  And the only thing I wanted to say about that — and I have previewed it before on the *Mahaffy* factors — is, the jury's question goes to whether or not the information was considered confidential.  Those factors in footnote 14 from *Mahaffy* go to whether or not the company treated the information as confidential.  And we think that's, frankly, unnecessary to start wading into, considering the jury's question.

Other than that, we think that it's certainly a correct statement of law to talk about that it's the company, not the defendant's, views as confidential information that's relevant here.  And Mr. Finzer, as a duly authorized officer of the company, who entered into GX 214, is the inquiry here, determining whether or not the information is confidential.

THE COURT:  All right.

N53KCHA1

1            So your view is version 1 but without the second

2     paragraph or the second substantive paragraph?

3            MR. MILLER:  Yes, your Honor.

4            THE COURT:  All right.

5            Government?

6            MR. ROOS:  So the government's view is that version 3

7     is appropriate.  Let's start with *Mahaffy*.

8            *Mahaffy* says in the footnote that in deciding whether

9     or not information is confidential business information, among

10    other things, the Court should instruct how the information is

11    treated by the company.

12           Your Honor has a correct recitation of the law, in

13    principle, in paragraph 2.  That paragraph, in fact, instructs

14    that the extent to which the information is known outside the

15    company's place of business, the ways in which other employees

16    may access and use the information, are all things that the

17    jury can consider in assessing whether or not the information

18    is treated as confidential, which, in turn, is informative of

19    whether or not it is confidential business information.

20           So on the questions you raised with Mr. Miller, I'll

21    say two things:

22           One, we agree with the point that, given the

23    defendant's role, his prominence in featuring NFTs, it actually

24    it would be correct to give an instruction that the jury can

25    consider his views about whether or not it was confidential in

assessing whether it's confidential business information.

But even if the Court is not inclined to give that instruction, although we think it would be really appropriate, it certainly is correct to give the instruction, at the end of version 3, that simply states, not the views of the defendant, which is what I think defense counsel was getting at, but how it is treated, and that whether the defendant and other employees treated the information -- that is, of course, a relevant consideration for the jury in assessing whether or not, particularly applying the factors set forth in *Mahaffy*, the information is confidential.

To use a hypothetical, if there was a ton of evidence in the case that the defendant, in advance of featuring NFTs, was going around and saying, this is what I'm going to feature — he was emailing all the artists in advance, he was posting it on his own Twitter account — that certainly would be evidence that would be probative of the question of whether or not OpenSea treated the information as confidential, because while the defendant's conduct in terms of trading may be ultra vires, the way in which he behaved with respect to the information was within the scope of his employment.

So if he was saying to people, hey, I'm going to feature you next week, that would be probative evidence of how the company was treating the information, which, in turn, informs the confidentiality.

1          So we think version 3 gives the jury the correct

2     instruction and actually is more of a middle ground, versus

3     what we think actually could be legally appropriate, which

4     would be just to instruct them, yes, you can consider the

5     defendant's views.  But I'll note, this instruction doesn't

6     even discuss the defendant's views.

7          THE COURT:  Slow down a little.

8          Okay.

9          MR. ROOS:  If your Honor wants, I can address the

10    points Mr. Miller raised about Devin Finzer being the exclusive

11    signer, although obviously we disagree with that point, for the

12    reasons your Honor stated.

13         THE COURT:  If you want to make a record, make a

14    record.

15         MR. ROOS:  Sure.  I think there are a few points

16    there.

17          First of all, as version 3 states, the question is

18    about the company, not a particular individual.  The testimony

19    in the case is that there is two founders.  The jury can

20    evaluate their testimony and the evidence in deciding what the

21    company viewed as confidential information as well as the other

22    evidence.

23          I think, second, your Honor made a very good point,

24    that the agreement in question was ratified prior to the

25    featured information even happening, which sort of raises the

1    question of whether it is really indicative in any way of who

2    is the correct decider of what is confidential information.

3           Third, the cases cited by Mr. Miller go not so much to

4    the agency principle of whose conduct can be imputed to the

5    company but, rather, whose conduct can bind the company, which

6    I think has sort of a narrow distinction to it.  These are

7    principles of contract law about like who within a company can

8    bind it.  The law is broader on who can act on behalf of the

9    company.

10          So even if it was right that only Mr. Finzer is the

11   one who could sign contracts on behalf of the company, which I

12   don't think is the case, it certainly is also true that

13   employees acting within the scope of their duties, particularly

14   if they have managerial functions or they're the head of

15   product, can act on behalf of the company.

16          THE COURT:  Can I ask you to address the import of the

17   pretrial litigation and ruling on essentially the opinions of

18   Ms. Phan and other employees, and that is to say, one could --

19   I'm trying to think of how to phrase this.

20          I guess the question is whether, and to what extent, I

21   precluded inquiry into employees' views of whether the

22   information was confidential, which is different than -- and

23   I'm not sure I did.  Your motion asked me to preclude inquiry

24   into essentially the meaning of the contract and whether the

25   rules and the contract were clear or not clear.  That's a

1    different question, I think, in my view, than how was this

2    information thought about or treated within the company.

3          I think there were questions asked of Mr. Viau, who's

4    the only employee who testified -- well, he testified to these

5    issues, at least.  I think there were questions asked of him

6    about whether this information was shared outside the company,

7    whether it was shared even within the company, and so on and so

8    forth.

9          So that's one way of viewing it.  But I guess the

10   question is whether, and to what extent, I precluded inquiry

11   into employees' views of whether the information was

12   confidential; if so, is that ruling essentially law of the case

13   such that Mr. Chastain falls on the employee side of the line

14   rather than the Finzer or Atallah side of the line?

15         MR. ROOS:  I think the answer is, no.

16         So our brief said this last night — and I think your

17   Honor correctly described it — which is, the government's

18   motion was focused on employees of the company opining about

19   basically their confidentiality agreements and whether or not

20   they viewed them as clear.  As your Honor recalls, the

21   government's motion was focused not just on the relevancy but

22   also making the point about lay opinion testimony about the

23   legal meaning of these contracts or the sort of how strong of a

24   contract they are.

25         That's very different than the question of how

employees viewed and treated the information.  So, as your

Honor just stated, Mr. Viau was on the stand and was asked,

both on direct and on cross-examination, questions about the

ways in which the information was treated.  So, for instance,

he was asked, was this information shared amongst people in the

company, did you discuss it with other people, was there ever a

time you recall the information leaking out of the company, do

you recall times where the information was shared publicly

prior to it being posted on the website, testimony about when

was the first time you would learn about the information that

is being described as confidential business information?

So all of that was permissible testimony throughout

the trial.  What was limited was a much narrower question,

which is people interpreting these agreements.

In any event, even if that was an issue, I think your

Honor's instruction in version 3 solves it because your Honor

is not instructing the jury in this proposal to consider the

views of any particular employee but, rather, how the

information was treated by employees, which is different and

was certainly not precluded.  There was ample evidence of that

throughout the trial.

THE COURT:  All right.

Mr. Miller?

MR. MILLER:  What Mr. Roos just said really signifies

why version 3 should not be the version that's responded to.

1        We're not talking about how the information was

2   treated.  The jury's question has to do with the consideration

3   of whether the information is confidential, not the treatment

4   thereof.  Much of Mr. Roos' arguments right now — I wrote down

5   at least three or four times where he talked about how OpenSea

6   treated the information.  That is not the jury's question.  The

7   jury is talking about the consideration of the information as

8   confidential.  That's the first point.

9        The second point is that Mr. Roos talked about how

10  other employees could act on behalf of the company.  I guess I

11  go back to what I was saying earlier.  And, as we set forth in

12  our letter brief, the issue under corporate and agency law is

13  whether somebody is delegating and authorized to act on behalf

14  of the company.  And version 3 talks about employees, but it

15  doesn't say whether or not they're delegated or authorized,

16  and, frankly, there's been no testimony by the government,

17  elicited by the government, at this trial on that point.

18        So now we're heading into waters where the jury is

19  going to get confused as to who's authorized, who's delegated.

20  The government put forward an entire case that was premised

21  upon Mr. Finzer and Mr. Atallah testifying about their views as

22  to whether or not GX 214 and the confidentiality provision in

23  that exhibit covered this conduct.  We respectfully believe

24  that we were precluded from calling other employees to testify

25  as to their views, unlike Mr. Finzer and Mr. Atallah's views,

1    on whether or not the confidentiality provision in GX 214

2    applied to this conduct, namely, whether or not the information

3    was confidential under this first element.  We did not call

4    people for that reason.

5          Your Honor's motion in limine order specifically says

6    that we're free to question OpenSea employees, including Phan,

7    about the existence or nonexistence of relevant policies and

8    trainings, and that we're free to make arguments at trial based

9    on the language of such policy and trainings.  But we were not

10   permitted to inquire of other employees whether they viewed the

11   confidentiality provisions as applying to this particular

12   information.

13         So that's an important point, your Honor.  It's why we

14   raised it in our letter brief last night.

15         THE COURT:  But I don't think I ever said that you

16   can't ask questions about, was this information treated as

17   confidential, putting aside the meaning of that term within the

18   GX 214.  In other words, was it discussed openly?  Was it

19   shared with people outside the company?  How was it treated?

20   Was it closely held?

21         Those are all fact questions that are well within

22   bounds, and I don't think any of my rulings, any of the

23   government's motions, suggested otherwise.

24         MR. MILLER:  Well, with all due respect, Judge, again,

25   I think we're conflating the two parts here, on consideration

N53KCHA1

1    versus treatment of confidential information.  And the jury is

2    asking about consideration — was it considered confidential —

3    and we keep sort of going back into the treatment and the

4    *Mahaffy* factors.  That's not what they're asking about in this

5    note, and we fear that we're going to bleed over into a whole

6    area that the jury is not even asking about and that would be

7    unduly prejudicial to the defense, your Honor.

8         So that's a key point here.  Look, the principles of

9    corporate and agency law are clear on this, on who is

10   authorized and delegated.  And just sort of referencing other

11   employees is not appropriate, it's not right under the law;

12   and, indeed, there's been no evidence presented by the

13   government, who bears the burden, obviously, as to who was

14   authorized and delegated, other than calling the cofounders per

15   your Honor's order.

16        So we need to focus, respectfully, Judge, on whether

17   the information was considered confidential.  That is their

18   question.  And I fear that we're bleeding over into an area

19   they're not asking about, and we're going to wind up unduly

20   prejudicing the defense.  This is a key question that's being

21   asked by the jury that goes to reasonable doubt, your Honor.

22        THE COURT:  Mr. Roos?

23        MR. ROOS:  I just think a few points:

24        Treatment is circumstantial evidence, circumstantial

25   or direct evidence, of how the information was considered.  So

N53KCHA1

*Mahaffy* certainly spells out the consideration and treatment, but the ways in which information was treated can certainly be probative of how it is considered, sort of the classic, you know, actions and words are probative evidence of a fact in a case.

The second point here is: If the concern is the ambiguity about the word "officer/employee," I think the simple fix is just to provide more details about who we're talking about. We could say the defendant and the other cofounder.

MR. MILLER: Respectfully, Judge, that's not appropriate.

THE COURT: I'm not going to do that.

I think I want to think about this for a minute or two, but let me ask one final question before I do my thinking.

On this discussion, I'm sort of inclined to think the government has the better of the argument, at least as to the relevance of the defendant's conduct, and, in that regard, that version 3 is not an inaccurate statement of the law.

I'm also inclined to think that Mr. Miller is putting too much weight on the distinction between "considered" and "treated." That is to say, I'm not sure that the *Mahaffy* factors are -- yes, footnote 14 says, in considering how to evaluate whether employers treat information is confidential, and then cites various pertinent factors, but it's in the context of a footnote that's bracketed by "considered and

N53KCHA1

1    treated" and "considered," and I just don't know that there's

2    as sharp a distinction between those things, not to mention, as

3    Mr. Roos says, how it's treated is certainly probative of how

4    it's considered within the company.

5              Having said all of that, I'm tempted, given this

6    discussion, because I think there are some thorny issues that

7    we haven't fully thought through, to go with some version of

8    version 2, which kind of doesn't speak directly to the issue at

9    all, on the theory that if the jury is not satisfied with that,

10   and wants to ask more directly about what relevance, if any,

11   does the defendant's treatment or views have, that they will;

12   and in the meantime you guys can give thought to how we would

13   answer that question if it were posed.

14             So before I close this up and figure out what we're

15   going to do, any thoughts on that?

16             MR. ROOS:  I guess our concern with version 2 is that

17   by not having the defendant in there, when the question asks if

18   X for the defendant but Y for Finzer, whether the omission will

19   be interpreted by the jury as sort of a negative implication by

20   not including the defendant, particularly when employees --

21   including the phrase in the second paragraph "other employees"

22   are discussed throughout the proposal, I think, given the fact

23   that version 3 correctly states the law, it's going to provide

24   the most clarity and not risk sort of an unintended implication

25   to the jury.

1          MR. MILLER:  Your Honor, we think that of the three,

2     version 1 is the correct statement of the law.  We object to

3     the use of versions 2 and 3, just for the record here.  We

4     think this is going to inject real problems into the jury's

5     deliberation.

6          If your Honor is intent -- we definitely should not go

7     with version 3.  That is an incorrect statement of the law, for

8     all the reasons I already stated, but for version 2, if your

9     Honor is going to go with version 2, we hope you go with

10    version 1, but if you go with version 2, we don't think it's

11    appropriate to add the information Mr. Roos just specified, for

12    all the reasons I've already said.  But if you're going to go

13    with version 2, we don't think, in the first sentence, it

14    should say "not on any single officer or employee," because

15    that's not correct.  A single employee or officer can be duly

16    authorized and delegated the authority to do it, as happened

17    here with Mr. Finzer signing GX 214.

18         So that's a real concern we have in that clause being

19    in that sentence, but I'm not going to belabor the point.  Your

20    Honor knows my arguments.

21         THE COURT:  All right.

22         I'm going to take a couple-minute break just to think

23    this through, potentially look at a couple things, and I will

24    be back to you to let you know what my ruling is.

25         So bear with me, stay here, and I will be back

1    shortly.  Thank you.

2              COUNSEL:  Thank you.

3              (Recess)

4              THE COURT:  Now, I don't feel great about this whole

5    thing.  I think there are a number of very thorny issues here

6    that I wish I had more time to grapple with and we had sort of

7    focused on before trial and briefed, the heart of the matter

8    being, for instance, whether if there was evidence that

9    Mr. Chastain, within the scope of his employment, considered

10   this information to be confidential, does that speak to whether

11   it is confidential business information for purposes of the

12   first element?  I think it probably does, which is why I don't

13   think that version 1 is an accurate statement of the law.

14             Long story short, obviously recognizing that

15   objections are preserved, I'm going with a version of version 3

16   but with a couple changes that I've made in response to the

17   arguments that were made this morning.  They're all to the

18   fourth paragraph, and let me identify them.

19             First, I've stricken the words "not on any single

20   officer or employee," just on the theory that it is unnecessary

21   and it suffices to say the focus is on the company.

22             I have stricken reference to the defendant from the

23   other information or evidence that the jury can consider.  So

24   it now reads just "including how employees at OpenSea treated

25   the information," and then I added the words "within the scope

N53KCHA1

1    of their employment," since I think Mr. Miller's point on that

2    is somewhat well taken — if somebody had some private thought

3    that had nothing to do with their job, that obviously wouldn't

4    be relevant or admissible to the question.

5            So my plan is to bring the jury out, read them this

6    answer, and it is what it is.

7            Anything else either side wishes to say before I do

8    that?

9            MR. MILLER:  Your Honor, obviously, my objections to

10   this are preserved.  We think this is a really important issue.

11           THE COURT:  Understood.

12           Mr. Roos?

13           MR. ROOS:  Nothing else.

14           THE COURT:  Okay.  So we'll bring the jury out.  I

15   will read them this.  As you can see, I gave them copies.

16           For what it's worth, I will docket the versions 1, 2,

17   and 3 drafts that I gave you so that they're part of the record

18   and it's clear, in the event that it's necessary, what we were

19   discussing.  And we'll go from there.

20           As I think you know, I have a final pretrial

21   conference in my next trial.  That's scheduled to start in ten

22   minutes, so once we excuse the jury, I'll ask you to clear out

23   and make room for those parties to come in.

24           (Jury present)

25           THE COURT:  You may be seated.

1          Good morning, ladies and gentlemen.  Thank you for

2     getting here on time, and sorry to keep you waiting.  We have

3     an answer to your most recent question posed in the note that

4     we received yesterday at the end of the day, which reads:  "Re

5     Count One, element 1, if the defendant viewed the information

6     as confidential but Devin Finzer, the other signatory to the

7     confidentiality agreement, did not, is that enough to consider

8     it confidential?"

9          I have given you a written copy of my answer.  I'm

10     going to read it, as I did the final instructions, so listen to

11     what say, but you also may take your copy into the jury room if

12     that is helpful.

13          Your question concerns the first element of Count One.

14          As I previously instructed you, the first element of

15     Count One requires the government to prove beyond a reasonable

16     doubt that there was a scheme or artifice to defraud OpenSea of

17     its property — specifically, its "confidential business

18     information."  Information is "confidential business

19     information" if it was acquired or created by a business for a

20     business purpose, and the business both considered and treated

21     that information in a way that maintained the company's

22     exclusive right to that information.  That is, the company must

23     both consider the information to be confidential and take

24     affirmative steps to treat the information as confidential and

25     maintain exclusivity; if the company "considers" information to

1    be confidential but does not take affirmative steps to treat it

2    as such and maintain exclusivity, it does not qualify as

3    property.

4           As I previously explained, some of the factors you may

5    consider in determining whether OpenSea treated the information

6    at issue as confidential include, but are not limited to:

7    Written company policies and agreements, employee training,

8    measures the employer has taken to guard the information's

9    secrecy, the extent to which the information is known outside

10   the employer's place of business, the ways in which other

11   employees may access and use the information, and whether the

12   information had economic value to the employer.

13          As these instructions suggest, the focus of the

14   inquiry with respect to whether the information at issue was

15   "confidential business information" is on the company, namely,

16   OpenSea.  Of course, a company can act only through its

17   officers, employees, and corporate materials, such as policies

18   and agreements.  Thus, in evaluating how OpenSea considered and

19   treated the information at issue, you may consider the conduct

20   and testimony of Mr. Finzer, as an officer of the company, as

21   well as any other evidence that relates to the issue, including

22   how employees at OpenSea treated the information within the

23   scope of their employment and any other evidence relevant to

24   the factors referenced above.  What weight, if any, you give

25   any such evidence is, of course, for you to decide.

N53KCHA2

1          With that, I will excuse you to continue your

2      deliberations.  And you know where to find us.  Thank you very

3      much, and you're excused at this time.

4              (Jury not present)

5              THE COURT:  You may be seated.

6              I'll step down from the bench so that we can get ready

7      for the next matter, unless there's anything we need to

8      discuss.

9              Government?

10             MR. ROOS:  No, your Honor.

11             THE COURT:  Mr. Miller?

12             MR. MILLER:  No, your Honor.

13             THE COURT:  All right.  See you when I see you.  Thank

14     you.

15             (Recess pending verdict)

16             THE COURT:  Welcome back.  No rest for the weary

17     today.

18             I received two notes since we last convened.  Let me

19     read them into the record.

20             The first, which is dated today, at 10:04 a.m., signed

21     by the foreperson, reads as follows:  "May we have the

22     testimony of Ryan Foutty, please?"

23             I have marked this as Court Exhibit 4, and, with the

24     parties' agreement, submitted to the jury copies of

25     Mr. Foutty's testimony with the agreed-upon previous

1    redactions.  So that was easily accomplished.

2              The more recent note, dated today, at 10:40 a.m.,

3    signed by the foreperson, reads as follows:  "In the court of

4    law, can you provide a definition of trade secret?  Thank you."

5              I'll mark this as Court Exhibit 5.

6              And what are your thoughts?

7              MR. MILLER:  So, Judge, our view actually is sort of

8    fairly simple, that the evidence is what it is.  There's no

9    real set definition of trade secret.  This is a highly

10   litigated, contested issue.  I'm sure many of the lawyers,

11   including myself, have argued what the definition of a trade

12   secret is.

13             The government had every opportunity to present

14   evidence about this.  They did not.  They pointed, for example,

15   in GX 214, to product or services or plans, and they got

16   testimony with respect to Mr. Atallah about that.  But the

17   issue is what OpenSea's view of the information is, and there's

18   no standard definition of trade secrets that one can point to.

19   Once again, it's a hotly litigated issue in commercial

20   disputes.

21             So our view is that the jury should be instructed that

22   the evidence is what it is.  The government presented their

23   case.  Obviously, they had a chance to put in whatever they

24   wanted about trade secrets, and they did not.  To start trying

25   to articulate a definition now, which I guarantee will be a

N53KCHA2

1    contested one, is not appropriate, in our view, given that the

2    evidence is what it is and there's no evidence about trade

3    secrets.

4                THE COURT:  Okay.

5                Mr. Roos?

6                MR. ROOS:  So we're not asking for the Court to define

7    the term "trade secret."  It appears no where in the Court's

8    instructions, it doesn't appear in the agreement -- or I don't

9    think necessarily the Court needs to define terms in an

10   agreement, particularly since it's not a breach of contract

11   case.

12               What we would propose is:

13               First, the Court direct the jury to the Court's

14   definition of confidential business information, and consider

15   noting that those instructions do not use the word "trade

16   secret."

17               Second, inform the jury that information may qualify

18   as confidential whether or not it constitutes a trade secret,

19   which is a sentence from *Mahaffy* at page 136.

20               And, third, tell the jury that, as it considers

21   whether the information was confidential, applying the Court's

22   instructions, it may consider, but it's not limited to, the

23   terms of OpenSea's confidentiality agreement and should

24   consider that agreement along with the testimony and the other

25   evidence as it bears on the meaning of confidential information

or whether it's confidential information.

THE COURT:  I'm not going to do the third thing because that's well beyond the scope of their question, which is just a straightforward question about what the definition of trade secret is.  And while it is used in GX 214, it would be speculation to assume that that's the basis for the jury's question, and we just don't know.

I guess I am inclined to say something along the lines of, you know, the phrase "trade secret" appears nowhere in my instructions, I instruct you that information may qualify as confidential business information even if it does not constitute a trade secret, and perhaps leave it at that.

MR. MILLER:  Judge, we disagree with that.  Your Honor is essentially pointing them to a provision, saying what something is not.  I think your Honor could easily respond, rather than sort of directing the jury in a certain way or direction, to say, you have my instructions, you have the evidence in this case, the evidence is what it is, the parties put on their evidence, you know, take a look at the evidence, and leave it at that.

I don't think it's appropriate, respectfully, to start pointing them, as Mr. Roos suggested, to say, you know, information can be confidential even if it's not a trade secret.  That wasn't their question, and that's directing them in a certain direction with their deliberations.  And we

N53KCHA2

1    strenuously object to that.

2              THE COURT:  All right.  Let me ponder for one moment.

3              (Pause)

4              MR. FILOR:  Your Honor, if I may?

5              THE COURT:  Yes.

6              MR. FILOR:  Just as an example of how confusing this

7    issue is with respect to trade secrets:

8              First, there is a conflict of law issue, but assuming

9    it is California law, under GX 214, there's authority under

10   California law that if even one customer is aware of the

11   information, without being under a secrecy agreement or NDA, it

12   is not trade secret.  And, here, we know that at least the

13   first artist and another artist in the record was aware of this

14   information, therefore, it cannot be trade secret.  And the

15   authority on that would include *Whyte v. Schlage*, 101 Cal. App.

16   4th, at 1443, 1455, which is a 2002 case.

17             Additional authority would suggest the same, your

18   Honor.  So we don't believe it is trade secret, but, again,

19   it's just pointing out how confusing the question is for the

20   jury.

21             THE COURT:  So I think everybody's in agreement, I

22   shouldn't actually define the term "trade secret," but I think

23   the only relevant question is whether to say something to the

24   effect about the relationship between trade secret and

25   confidential business information.

1           Let me throw out the following as a possibility, which

2     essentially tells them I'm not answering their question:  You

3     have asked about the definition of trade secret.  In connection

4     with your deliberations, you must decide whether the

5     information at issue is quote-unquote confidential business

6     information, as I have defined that phrase for you.  The

7     meaning of trade secret and the meaning of confidential

8     business information are different, and you should concern

9     yourself only with the latter.

10          Any objection?

11          MR. ROOS:  So two things, your Honor:

12          One is, I don't know that necessarily trade secret is

13    different from confidential.  I think, as the agreement

14    evidences, there's a scenario where a trade secret can be

15    confidential or confidential can mean trade secret.

16    Confidential obviously encompasses a broader set of

17    information.  And so, in that way, there's a difference, but I

18    guess we're concerned that the word "different" may make them

19    think trade secret is not equal.

20          And the other is the part of the instruction says you

21    should not concern yourself with trade secret might sort of

22    imply to the jury that they should disregard that term in the

23    agreement.  I'm not sure if that is, frankly, good or bad for

24    the government, but I think probably the reason why the *Mahaffy*

25    formulation, which is just sort of whether or not it's trade

N53KCHA2

1    secret, doesn't matter for whether it's confidential, is

2    helpful is because it takes a neutral tone in terms of the two

3    terms.  It just makes clear there's not an equivalency or

4    nonequivalency between them.

5              THE COURT:  Mr. Miller?

6              MR. MILLER:  Yes, your Honor.

7              Again, I'll go back to my initial point.  I don't know

8    that we should be wading into this issue, that your Honor's

9    instructions and the evidence are what they are.

10             If your Honor is inclined to start discussing

11   confidential business information definition versus trade

12   secrets, your Honor's instruction made more sense, but, again,

13   I'm concerned about us sort of wading into this issue,

14   considering that right now there's no evidence in the record

15   about it, and the definition is not easy.

16             THE COURT:  Well, Mr. Miller the definition of a trade

17   secret is actually a legal question, and even the meaning of

18   the term in the contract is a legal term.  In contract cases,

19   it's a matter for the Court to construe the contract, so if

20   there's ambiguity, that's one thing, but it is a technical

21   legal term and, yes, it may be a function of what law governs,

22   but I think everybody would agree that in a contract case, it

23   would be up to me to construe what the meaning of trade secret

24   is in that agreement.

25             So that's a legal question.  I don't think the absence

N53KCHA2

1    of any evidence at trial as to what a trade secret means -- I'm

2    not even sure that it would be proper, given that that's a

3    legal question.

4           What the jury is asking me to do is tell them what

5    that term means.  It may be that they want assistance in

6    deciding whether it qualifies as a trade secret and thus falls

7    within the scope of the confidentiality provision, I don't

8    know.

9           MR. MILLER:  I hear your Honor.  Certainly your Honor

10   is correct about it being a legal issue.

11          I did sort of note at the beginning — and I sort of

12   rest on this — that it's a hotly litigated question

13   jurisdiction by jurisdiction, and it's not like there's some

14   sort of easy answer to this.

15          So putting that aside, though, I think if your Honor

16   is inclined to provide guidance, I think it probably makes

17   sense, based on what your Honor's proposed instruction was, to

18   say that it's different than confidential business information,

19   may be appropriate but, again, this is sort of off the cuff.  I

20   think it's a difficult question, which is why I was sort of

21   inclined to say, the evidence is what it is, my instructions

22   were what they were.

23          THE COURT:  All right.

24          Mr. Roos, your proposal is what exactly at this point?

25          MR. ROOS:  At the beginning of your Honor's proposed

N53KCHA2

instructions, with the final part being those -- "information

may qualify as confidential, whether or not it constitutes a

trade secret."

THE COURT:  So, in other words, what I have, and then

just with an additional sentence, so "including the meaning of

trade secret and the meaning of confidential business

information are different, and you should concern yourself only

with the latter," and then you would add a sentence to that?

MR. ROOS:  I think not the part "you should only

concern yourself with the latter," since it is a term in the

contract.  Just the meanings are different, and then

information may qualify as confidential whether or not it

constitutes a trade secret.

THE COURT:  And, Mr. Miller, just to circle back to

you, your precise objection to that proposal?

MR. MILLER:  I'm not sure that's correct as a matter

of law.

And putting that aside, we're, again, essentially now

directing the jury to say, well, it could be confidential if

it's a trade secret, it might not.  Again, I think we're wading

into this when we shouldn't be.

The answer, we respectfully submit, should be:  The

evidence is what was presented, the government made its case,

they had every opportunity to do this, they did not.  And at

this point the evidence is what it is, and the instructions are

1   what they are.  To start saying, well, it could be CBI,

2   confidential business information, if it's a trade secret

3   versus not, is now essentially injecting into their

4   deliberations a definition that we haven't even litigated at

5   this point.

6          MR. ROOS:  On this, just to be clear, *Mahaffy* says

7   information may qualify as confidential under *Carpenter* even if

8   it does not constitute trade secret.

9          So I think to the Court's question, is it legally

10  correct, yes, that is the circuit's holding.

11         On the question of confusion for the jury:  I think to

12  just throw up our hands and say it is what it is, they have the

13  instructions, they have the law, is not going to be responsive

14  to the question.  I think the Court's formulation with the

15  addition proposed by the government would, while not defining

16  the term for them, particularly in light of the defense

17  objection to that, would at least help them through the

18  deliberative process and is a correct statement of the law.

19         MR. FILOR:  Your Honor, very briefly?

20         THE COURT:  Yes.

21         MR. FILOR:  We don't object with your Honor's

22  proposal, but we do object to the government's proposal.

23         The question from the jury is about trade secret.  The

24  government is now trying to point them in a different

25  direction.  Instead of responding to the question about trade

N53KCHA2

1  secret, they're pointing to other things beyond that.  When we

2  did that with respect to the last jury question, the

3  government, again, instead of focusing on the question, which

4  was about Mr. Finzer, the government wanted to pack lots of

5  things into the response, and then we started getting questions

6  about other employees' testimony.

7          So the government is pointing the jury, in response to

8  their particular questions, into other areas.  It's not fair,

9  your Honor.

10          (Pause)

11          THE COURT:  All right.  I'm inclined to instruct the

12  jury as follows, including the language from *Mahaffy*, because I

13  think it is an accurate statement of the law and speaks to the

14  question:

15          You have asked about the definition of trade secret in

16  connection with your deliberations.  You must decide whether

17  the information at issue is quote-unquote confidential business

18  information, as I have defined that phrase for you.  The

19  meaning of trade secret and the meaning of confidential

20  business information are different.  Information may qualify as

21  confidential business information even if it does not

22  constitute a trade secret.  In evaluating Count One, you should

23  apply the definition of confidential business information as I

24  have given it to you.

25          MR. ROOS:  That's fine.

N53KCHA2

THE COURT:  It doesn't really answer their question,
but since neither side is proffering a definition of the term
that would be directly responsive, I think that's the best we
can do.

MR. MILLER:  And just for the record, the defense
objects to the sentence, "Information may qualify as
confidential business information even if it does not
constitute a trade secret."  We actually, as I had mentioned
before, don't even think we should be going down this road
generally, but if your Honor was intent on doing that, we had
agreed to the other language; we don't agree with that
sentence.

THE COURT:  All right.

And just to clarify what the nature of the objection
is, I take it you agree that is an accurate statement of the
law since it's literally a direct quote from *Mahaffy* minus the
reference to *Carpenter*?

MR. MILLER:  Yes, I'm not quibbling with the *Mahaffy*
quote.  My concern is, as I articulated before, that we're
directing the jury in a certain direction that we need not be
at this point.

THE COURT:  Okay.  Understood.

I think it's sufficiently responsive to the jury's
question because it eliminates the definition of the term and
the definition of the term as it relates to the principal term

N53KCHA2

1   that the jury needs to consider here.

2           Two options:  One is, I could submit that in writing

3   to the jury by letter and let them continue their

4   deliberations.  The second is, I can bring them out and

5   instruct them orally.

6           Does anyone have a view or objection to either of

7   those?

8           MR. ROOS:  I think we're fine with your Honor just

9   giving them a letter.  Keep it moving.

10          MR. MILLER:  The defense is fine with whatever your

11  Honor would like to do on this.

12          THE COURT:  All right.  So then let's just send them

13  in an answer.

14          I'll add to it:  "To the members of the jury:  In your

15  note from today at 10:40 a.m., you have asked about the

16  definition," and go from there.

17          (Pause)

18          THE COURT:  All right.  I've signed that.  I'll have

19  my deputy show it to each side to ensure that you're okay with

20  it, subject to obviously the objections you've already

21  preserved, and then we'll send it in.

22          (Pause)

23          THE COURT:  From the government?

24          MR. ROOS:  That's fine.

25          THE COURT:  Mr. Miller?

1          MR. MILLER:  Subject to our objections before, it's

2     fine.

3          THE COURT:  All right, very good.

4          We'll send that in.  I will see you when we get

5     another note.

6          Thank you.

7          (Recess pending verdict)

8          THE COURT:  Welcome back.

9          As you, I think, know, we've received another note.

10    Unfortunately, I had a sentencing that started literally

11    moments after I got it, so it has caused more delay than I

12    would like, but here it is — dated today, received at

13    2:12 p.m., signed by the foreperson.  It states as follows:

14    "Regarding Count Two, the fourth element, do the 'transactions'

15    refer specifically to those that involved interstate commerce

16    or," underlined, "do they also include other transactions that

17    did not," underlined, all caps, "occur across state lines?"

18         I will confess that I have barely had a moment to

19    think about it, as I was sentencing somebody, so I will turn to

20    you first.

21         MR. MILLER:  So, your Honor, I think this might be an

22    easier one.

23         THE COURT:  Ah, I love those words.

24         MR. MILLER:  It looks to us like what the Court should

25    do is, in defining transaction -- frankly, it already has done

N53KCHA3

1    that on page 19, lines 16 and 17.  It's under a different

2    element, but it's what the term "financial transaction" means,

3    which comes from 18 U.S.C. 1956(c)(4).

4         So this language is from 56(c)(4).  We suggest that

5    your Honor refer the jurors back to this language.  And I think

6    that answers the question, frankly.

7         They sort of mix concepts in there, but I think,

8    ultimately, that's the answer to this.

9         THE COURT:  Sorry, 19?

10         MR. MILLER:  Sorry, 18 U.S.C. 1956 --

11         THE COURT:  The page of the instruction.

12         MR. MILLER:  I'm sorry.  At page 19, lines 16 and 17,

13    your Honor defines — financial transaction includes any

14    transaction that involves the movements of funds by wire or

15    other means and in any way or degree affects interstate

16    commerce.

17         And they're asking, do the transactions refer

18    specifically to those that involved interstate commerce?

19         We think the answer to that is the transactions are

20    those that involve the movements of funds by wire or other

21    means and in any way or degree affects interstate commerce.

22         That comes from 18 U.S.C. 1956(c)(4).  It's the

23    definition of financial transaction.

24         So we would submit, since that is obviously what

25    transaction means -- and I think they're referring and looking

1    to, with their question, page 21, the second sentence, which

2    talks about the defendant conducting financial transactions

3    with knowledge, that the transactions were designed in whole or

4    in part to conceal, and so they're wondering whether those

5    transactions have to affect in some way interstate commerce.

6         The answer, we think, is yes, but your Honor's

7    definition here matches up with the definition in Title 18.  So

8    we would suggest reminding the jurors of that.

9         THE COURT:  Government?

10         MR. ROOS:  I'm going to introduce two complications.

11         The first, which I'll confess I don't have an answer

12    to, is that 1956 has separate definitions of transaction and

13    financial transaction.  As your Honor sees, the first element

14    uses the phrase "financial transaction," which references

15    transaction but introduces the interstate or foreign commerce

16    element.

17         I think there is a question, which unfortunately I do

18    not yet have the answer to, of whether the fourth element,

19    which is the purpose clause in the statute and only uses the

20    word "transaction," necessarily incorporates the interstate

21    commerce element, such that there is a requirement that that be

22    the transaction or transactions that affected interstate or

23    foreign commerce.

24         The second complication I wanted to identify is that

25    the jury's note seems to phrase the question not in the

N53KCHA3

1    language that defense counsel used, of affecting interstate

2    commerce in any way, but, rather, the issue of state lines,

3    which I think is at least something in crafting the answer

4    we'll have to perhaps not answer in the way of yes or no on

5    state lines, since obviously that's not the law.

6          THE COURT:  So having posed those problems, how do you

7    think I should handle the note?

8          MR. ROOS:  So I think in terms of answering -- I want

9    to take the second problem.

10         In terms of answering the question, however your Honor

11   answers the question, I think it might be appropriate to sort

12   of rephrase it — as opposed to just saying yes or no — rephrase

13   it using the language of your Honor's instructions about the

14   effect on interstate commerce, as opposed to adopting sort of

15   the like state lines formulation.  I think that is a drafting

16   exercise that probably should be fairly straightforward.

17         The financial transaction versus transaction question

18   is something that potentially is knowable, and perhaps with a

19   little more time, we could dig into it more.

20         THE COURT:  You've had an hour.

21         MR. ROOS:  I know, that's true.

22         MR. MILLER:  If I might, your Honor, I don't think

23   it's that complicated.  I think your Honor's sentence on page

24   21, the second sentence, which is derived from 1956, under

25   "Concealment," talks about how there has to be proof that the

N53KCHA3

defendant conducted financial transactions with knowledge that

the transactions — that comes primarily from 1956, looking at

it right now.

So, "the transactions" obviously refers to the

financial transactions that we're discussing, and "financial

transactions" are defined in the statute as those that in any

way or degree affect interstate commerce.  I do not think we

have to engage with the across state line concept.

I think your Honor just needs to remind them of the

definition of financial transactions which comes from the

statute.  And I don't think there's a distinction, given the

context here, which comes from 1956, between somehow a

financial transaction that has to affect interstate commerce

and a transaction somehow that doesn't.  That wouldn't make any

sense, particularly in the context of the concealment money

laundering statute.

THE COURT:  And what import do you think the fact that

the statute separately defines "transaction" and "financial

transaction" has?

MR. MILLER:  We've wrestled with this before.

Certainly in the context of our motion to dismiss we were

wrestling with this.

Candidly, there's not a lot of law on this.  We've

looked into this a little bit before.  We do think that, here,

there isn't really a distinction when it comes to the

1  concealment element, and that really what we're talking about

2  are transactions that in some way, or whatever the language is

3  here, in any way or degree affects interstate commerce.

4          That's what we believe is appropriate, but I concede

5  that there's not a lot of law on this.

6          THE COURT:  Mr. Roos?

7          MR. ROOS:  I'll add a point in each direction.

8          So, first, in the direction of it being the same

9  transaction, of course, the statute does say the word "the"

10 before "transaction."  So just to be candid with Court, I'm

11 arguing against myself, but it does say "financial transaction"

12 and then the purpose of the transaction, which I think you

13 could -- there is an interpretation to read the word "the" to

14 mean the same transaction.

15         On the other hand, in the clause immediately following

16 that, there is a discussion at the end of the paragraph about a

17 financial transaction shall be considered to be one involving

18 the proceeds of specified unlawful activity if it is part of a

19 set of parallel or dependent transactions, any one of which

20 involves the proceeds of specified unlawful activity and all of

21 which are part of a single plan or arrangement.

22         I think that language has been applied or interpreted

23 by some courts in deciding the question of whether the money

24 laundering charge raises a continuing offense such that you

25 could have a financial transaction and other transactions, part

N53KCHA3

```
 1    of the offense, without requiring a unity between the

 2    transactions in terms of the interstate nexus element and the

 3    purpose element.

 4            I'll tell the Court, we've seen two cases from the

 5    Eastern District calling it a continuing offense and a case

 6    from the Eastern District of Pennsylvania and the Eastern

 7    District of Tennessee in which they called it like a

 8    single-unit offense.  So I don't think there's a circuit case

 9    on this that is dispositive of the question, although it's

10    something we're still looking at.

11            THE COURT:  My law clerk found a case that I'm now

12    trying to look at from the Sixth Circuit, United States v.

13    Ables, 167 F.3d 1021.  Since I haven't yet looked at it myself,

14    I can't speak to whether it answers this question, but I don't

15    know if either of you guys has come across that case or has any

16    views on it.

17            I'm going to guess, from the deafening silence, that

18    the answer is no.

19            Are you able to pull it up?

20            MR. ROOS:  We're reading it right now.

21            THE COURT:  Great.  So we can all look at it together.

22            Mr. Miller, can you get it, or do you want me to print

23    it out for you?

24            MR. MILLER:  Sorry, Judge, if you don't mind printing

25    it out, that would be appreciated.
```

N53KCHA3

1          THE COURT:  Why don't we print it for both sides since

2     it includes highlighting; and, that way, you can both see

3     what's highlighted.

4          Ms. Smallman, do you mind doing the honors, since I'm

5     not sure I'm connected to the printer?

6          (Pause)

7          THE COURT:  I think the key line, in reading it

8     quickly, I identified it as near the end of the highlighted

9     section, where it states — and this is 167 F.3d at 1030 — is

10    "the government only needed to prove that each of *Ables'*

11    prohibited transactions had a de minimis effect on interstate

12    commerce."

13         So it reaffirms or reinforces the de minimis effect

14    standard but seems to suggest that each transaction did have to

15    have that effect.

16         So maybe that does shed light on this.  But your

17    thoughts?

18         MR. MILLER:  Certainly, I think this case supports

19    your Honor's interpretation, as well as the fact, again,

20    looking at sort of the use of "the" as the qualifier before

21    "transactions" in 1956, seems to indicate that each transaction

22    does have to have, in some way, an effect upon interstate

23    commerce.

24         THE COURT:  Mr. Roos?

25         MR. ROOS:  I guess the reason I'm struggling with this

N53KCHA3

1     case as really providing the answer is, it seems to be

2     interpreting the beginning of the statute and the intersection

3     between proceeds of specified unlawful activity and the

4     interstate nexus element.  I don't read it to be dealing with

5     like the purpose requirement, which is where "transaction" is

6     used.

7            THE COURT:  Really, I think this focuses primarily on

8     whether the *Lopez* substantial effects test applies.

9            MR. ROOS:  Right.

10           THE COURT:  So in that sense, it's not squarely on

11    point.  I guess I'm not entirely clear on what the government's

12    view is of how I should answer the note.

13           MR. ROOS:  We obviously don't want to your Honor to go

14    out on a limb here, so can you give us one second?

15           (Pause)

16           MR. BURNETT:  So I think this may be pretty similar to

17    what the defense is asking for, but I think the way we would

18    handle it is to direct the jury that, basically, like to set

19    clear that element 1 is where they should be thinking about the

20    jurisdictional element, so basically instructing the jury that,

21    as I instructed you in element 1, for Count Two, you must

22    determine whether the government has proved beyond a reasonable

23    doubt that the defendant conducted a financial transaction that

24    involved the movement of funds by wire or other means, and in

25    any way or degree affected interstate commerce.  In considering

1    the fourth element, as you asked about, you should focus on

2    whether the government proved beyond a reasonable doubt that

3    the financial transaction you identified with respect to

4    element 1, or part of that financial transaction, had the

5    purpose of concealing — and the rest of the instruction from

6    element 4 on concealment.

7                THE COURT:  Mr. Miller?

8                MR. MILLER:  Still processing, your Honor.

9                I think conceptually, I don't have a problem with

10   pointing to the definition of financial transaction in the

11   context of the government's burden to prove one under the first

12   element, but then to the extent, I think that obviously — maybe

13   this is what Mr. Burnett is suggesting — to then remind them

14   that the definition of financial transaction, as you've

15   instructed, applies with respect to the fourth element, I think

16   that's generally what we were recommending anyway, so long as

17   they're reminded that obviously the government has to prove

18   beyond a reasonable doubt, et cetera, et cetera, within the

19   fourth element.

20               THE COURT:  All right.  Let me take a stab at this.

21               (Pause)

22               THE COURT:  Now that Ms. Smallman has given me the

23   power to print, I have no limits to my abilities.

24               Here's a stab.  We're working on the fly here, so this

25   may or may not work as a starting point, but why don't you read

N53KCHA3

1    that and then we can discuss.

2              (Pause)

3              THE COURT:  Thoughts?  Government?

4              MR. BURNETT:  We'd propose one that I think goes to

5    the financial transaction/transaction distinction that we were

6    talking about.

7              So line 7, after the words "first element," we'd add,

8    comma, "or some portion of that transaction," comma.  And so

9    you understand, I think I'll start with the text and then go to

10   the case law point for this.

11             So, textually, what this is getting at, is that --

12             THE COURT:  In whole or in part?

13             MR. BURNETT:  What's that?

14             THE COURT:  In whole or in part?

15             MR. BURNETT:  In whole or in part, my understanding

16   goes to whether the purpose was wholly to conceal or not to

17   conceal, whereas this addition goes to the concept that a

18   financial transaction can have multiple steps to it.  That's

19   why I think it's a distinct change.  And that, I think,

20   textually, goes to the idea that a financial transaction can

21   have multiple steps, as we discussed in that penalty paragraph,

22   and which is embodied in the difference between the difference

23   of transaction and financial transaction.

24             The case that we saw that goes to this point is *U.S.*

25   *v. Carcione*, which is an Eleventh Circuit case.  It's 272 F.3d

N53KCHA3

1297.  Basically, our read of the case is that what was

involved there was:  You have a diamond theft that happens in

one state.  The diamond thief then takes the diamond across

state lines to Illinois and within Illinois does a sale of the

diamond.  And the Court found that even though it was an

intrastate sale — so the one part of the financial transaction

didn't involve going across state lines — you look at the full

transaction, and that full transaction involved or affected

interstate commerce.  We think this clause kind of gets to that

concept.

            THE COURT:  All right.

            Is that the only suggested edit?

            MR. BURNETT:  Yes.

            THE COURT:  Okay.

            Mr. Miller?

            MR. MILLER:  I'm not sure I agree with that.

            Ultimately, if you look at the statute — your Honor's

instruction was tracking it, the "in whole or in part"

language — I'm not sure we need to have to qualify this yet

again.

            And I understand what Mr. Burnett is saying, but I

admittedly haven't read this Eleventh Circuit case he just

cited, but I don't think that's necessary.  I think you can

track the statute, your Honor can track the statute, and we

should do that.

1          THE COURT:  Am I correct in inferring that you

2     therefore have no objection to my proposal, without the

3     addition?

4          MR. MILLER:  I think that's fine, your Honor, yes.

5          THE COURT:  All right.  Let me take a quick look at

6     the case that the government cited.

7          MR. BURNETT:  There is one other one that we also just

8     found about two seconds ago.  It's *U.S. v. Moloney*, it's the

9     Second Circuit, and it's 287 F.3d 236, and we're looking at

10    page 241.

11         THE COURT:  It appears to have been abrogated by

12    *United States v. Yousef*.  But do we know on what point?

13         MR. ROOS:  We saw it, too, and we think it's a

14    different point, although we're chasing the red flags.  *Yousef*

15    also seems to be abrogated, so...

16         (Pause)

17         THE COURT:  Help me out here.  This seems to speak to

18    whether money laundering can be charged as a continuing offense

19    where it involves multiple sort of related transactions and was

20    part of a unified scheme.

21         How does that speak to the issue that we're grappling

22    with and that the jury asked about?

23         MR. BURNETT:  So I think this goes to the point that

24    the financial transaction they find in element 1 can affect

25    interstate commerce and satisfy the jurisdictional element.

N53KCHA3

1   But the portion, a subset, of that transaction that they find

2   has the purpose to conceal need not by itself have an effect on

3   interstate commerce if it's part of a broader financial

4   transaction that does.

5          THE COURT:  But the fourth element is not asking about

6   whether it's concealing the financial transaction; it's

7   concealing the proceeds of the unlawful activity.

8          MR. BURNETT:  Right.  And I think our view is -- so if

9   financial transaction reflects a continuing offense, then the

10  financial transaction that you find to satisfy the first

11  element could involve a number of different transactions, and

12  then when you're looking at the purpose part for element 4, the

13  jury might say, okay, well, let's say there are three kind of

14  subparts to this financial transaction that we identified in

15  element 1, one of those subparts had the purpose to conceal the

16  nature, location, origin, whatever, but that subpart was

17  entirely intrastate.  Yes, it was part of this broader

18  financial transaction that affected interstate commerce but

19  that subpart we're looking at was an intrastate one.

20         So that, I think, goes to the jury's question, which

21  is, well, what if we think there's like a transaction that is

22  intrastate as the second part of the question?

23         THE COURT:  To the extent that that's the law, I agree

24  that may speak to the jury's question.  I'm just not sure that

25  *Moloney* speaks to that issue, so I'm missing the leap between

1    continuous offense and the proposition that if one piece of it

2    is intrastate and that piece is the concealed part, that that

3    can somehow satisfy the government's burden.

4              That seems like a different proposition to me, and it

5    may be an accurate statement of the law, but I don't think it's

6    supported by this case.

7              MR. BURNETT:  I think the fact that there is the

8    continuing offense piece is part of what we were talking about

9    earlier about the distinction between financial transaction and

10   transaction in the statute, and the continuing offense piece

11   means the financial transaction can have a number of

12   transactions, to satisfy the first element and you just need to

13   focus on one of those subparts for the fourth element.

14             THE COURT:  All right.  I think we're getting a little

15   far afield here, and I'm wary of sticking my neck out too far

16   on complicated issues involving a complicated statute, without

17   a case that seems to clearly say that.

18             So I'm going to, I think, stick with my draft

19   language, which reads as follows:  "The *first* element the

20   government must prove beyond a reasonable doubt with respect to

21   Count Two is that the defendant conducted a quote-unquote

22   financial transaction, which includes any transaction that

23   involves the movement of funds by wire or other means and in

24   any way or degree affects interstate commerce.  If you find

25   that the defendant conducted a financial transaction within the

1    meaning of that definition, then, to satisfy the *fourth* element

2    of Count Two, the government must prove beyond a reasonable

3    doubt that the defendant conducted the financial transaction

4    you found for purposes of the first element with knowledge that

5    the financial transaction was designed, in whole or in part, to

6    conceal or disguise the nature, location, source, ownership, or

7    control of the proceeds of the specified unlawful activity."

8              Having read it out loud, I have one change, which is,

9    I'd be inclined to change the word "the" at the end of line 7,

10   so it reads "with knowledge that that financial transaction,"

11   to make clear we're talking about the same transaction.

12             Any objection to that?

13             MR. MILLER:  No, thank you, Judge.

14             MR. BURNETT:  No, your Honor.

15             THE COURT:  All right.

16             So that's what we will do.  Any objection to my

17   sending this in by way of a letter in the same manner as last

18   time?

19             MR. BURNETT:  Not from the government.

20             MR. MILLER:  At this point, Judge, we would appreciate

21   the process of the jury coming in and hearing it from your

22   Honor.

23             THE COURT:  What's the theory?

24             MR. MILLER:  It's the normal process, Judge.  We would

25   prefer to stick with it.

N53KCHA3

1   THE COURT:  Well, I don't think there's a normal
2   process, and earlier you deferred to my judgment.  It's 3:53.
3   I think, rather than interrupt their deliberations,
4   particularly since we've kept them waiting for an hour and 40
5   minutes, I'm going to do it by letter, since I will bring them
6   out in an hour if I don't hear from them sooner anyway.
7   Understood?  Unless you can cite a case that stands
8   for the proposition that it's error do it this way, I'll send
9   it in by way of letter.
10   Judging from your silence, you don't have such a case.
11   Give me a moment.
12   (Pause)
13   THE COURT:  I'm adding a preface:  "In response to
14   your note of 2:12 p.m. today, I instruct you as follows."  And
15   then it's the rest that we've already discussed.
16   (Pause)
17   THE COURT:  Ms. Smallman will show it to you, and,
18   assuming no objections, we'll send it in.  And I will see you
19   in an hour, or earlier.
20   (Pause)
21   MR. BURNETT:  No objection from us.
22   MR. MILLER:  No objection here.
23   THE COURT:  Great.  We will send that in.
24   I'm labeling the note Court Exhibit 12 because I
25   either already have docketed, or it's on the way to the docket,

1   an order with the earlier notes and responses and other such

2   things.  So I think we're up to 12.

3          All right.  Again, I'll see you a few minutes before

4   5:00 if we don't hear from the jury sooner.  And with that, we

5   are adjourned.  Thank you.

6          (Recess pending verdict)

7          THE COURT:  You may be seated.

8          As I gather you may know, we got a note, this one

9   dated today, 4:10 p.m., signed by the foreperson, stating:  "We

10  have reached a verdict."

11         So, unless the parties have something to raise, we'll

12  bring the jury out and we'll get a verdict.

13         (Jury present)

14         THE COURT:  You may be seated.

15         We have received your most recent note, from

16  4:10 p.m., stating that you have reached a verdict.

17         I'll ask the foreperson — I think that's you,

18  Juror No. 1 — is that correct?  Have you reached a verdict?

19         THE FOREPERSON:  Yes, we have, your Honor.

20         THE COURT:  Would you please hand the verdict form to

21  Ms. Smallman so it can be passed to me.

22         THE FOREPERSON:  Of course.

23         THE DEPUTY CLERK:  Thank you.

24         (Pause)

25         THE COURT:  I'm going to read your verdict aloud, and

1    then I'm going to ask each of you if that is your verdict, one

2    after the other.

3              As to Count One, which charges the defendant with wire

4    fraud, the jury finds the defendant guilty.

5              As to Count Two, which charges the defendant with

6    money laundering, the jury finds the defendant guilty.

7              The verdict form appears to have been signed by all 12

8    of you, dated today, at 4:09 p.m.

9              Juror No. 1, is that your verdict?

10             JUROR:  Yes, your Honor.

11             THE COURT:  Juror No. 2, is that your verdict?

12             JUROR:  Yes.

13             THE COURT:  Juror No. 3, is that your verdict?

14             JUROR:  Yes, your Honor.

15             THE COURT:  Juror No. 4, is that your verdict?

16             JUROR:  Yes, your Honor.

17             THE COURT:  Juror No. 5, is that your verdict?

18             JUROR:  Yes.

19             THE COURT:  Juror No. 6, is that your verdict?

20             JUROR:  Yes, your Honor.

21             THE COURT:  Juror No. 7, is that your verdict?

22             JUROR:  Yes, your Honor.

23             THE COURT:  Juror No. 8, is that your verdict?

24             JUROR:  Yes, your Honor.

25             THE COURT:  Juror No. 9, is that your verdict?

N53KCHA4

1              JUROR:  Yes, your Honor.

2              THE COURT:  Juror No. 10, is that your verdict?

3              JUROR:  Yes, your Honor.

4              THE COURT:  Juror No. 11, is that your verdict?

5              JUROR:  Yes, your Honor.

6              THE COURT:  And, Juror No. 12, is that your verdict?

7              JUROR:  Yes, your Honor.

8              THE COURT:  The jury is unanimous.

9              Counsel, is there any reason that I cannot now dismiss

10   the jury?

11             MR. ROOS:  No, your Honor.

12             MR. MILLER:  No, your Honor.

13             THE COURT:  All right.

14             Ladies and gentlemen, in a moment, I'm going to

15   dismiss you, excuse you, which means that, among other things,

16   the restrictions that you've been operating under — namely, you

17   can't talk to anyone about the case and you can't research the

18   case — will no longer apply.  So you may do those things.

19             Let me say one thing on that score:  It's up to you

20   whether you wish to speak with anyone.  This is a case that —

21   now that I can, I will tell you — has gotten some press.  So

22   it's possible that members of the press will ask you to speak

23   to you.  It's entirely up to you whether you choose to speak to

24   them or not.  My own personal recommendation is that you not;

25   in part, because our jury system has long been based on the

notion that what happens in the jury room stays in the jury

room, and, in that regard, I think there's an important reason

to respect the privacy of your deliberations.

But it's entirely up to you.  What I will ask is that

if you do speak with the press or anyone about this case and

your involvement in it, that you respect the privacy of your

fellow jurors' deliberations and views.  In that regard, what

happens in the jury room should stay in the jury room, but you

can speak about your own views of the case but don't speak

about your colleagues' views or the deliberations.  But, at the

end of the day, it is up to you what you wish to do on that

score.

Let me start by saying — my staff has heard me say

this many times — there was a very famous judge in this

courthouse that many of us seek to emulate in many respects, a

man by the name of Edward Weinfeld, sort of a legendary figure

in the law.  There's one thing that he did that I disagree

vehemently with and don't follow him on, which is that he did

not thank jurors.  It was his view that jury service is one of

the few obligations that citizens in this country have, and

it's an obligation of citizenship and, therefore, you don't

need to be thanked.  It's not my view.  My view is that you

guys took time out of your busy lives, devoted to us, you've

been deliberating for several days, with a couple rare

exceptions and not your fault, you have been here on time each

N53KCHA4

1    day, and we have all seen how much attention and care you've

2    given to the parties throughout the case.  I think you deserve

3    our thanks.  Our system of justice depends on people like you

4    taking time out of their busy lives to help resolve disputes

5    and adjudicate charges like those in this case, and it's a

6    pretty remarkable thing, I think, but it really depends on

7    people like you taking that time.

8            So on behalf of the parties, I'm sure they would join

9    me in thanking you, and on behalf of the court, let me say

10   thank you for your service.

11           If you are willing to wait — I know you've been

12   deliberating for a while at this point and probably want to get

13   out of here, I totally respect and would understand that — if

14   you're willing to wait for a few minutes — there are a couple

15   matters that I will need to discuss with the parties — I'd love

16   an opportunity to come into the jury room and thank you more

17   personally and also answer any questions you may have about the

18   jury process or the court system, hear any suggestions you

19   might have about the jury process and your experiences.  But

20   it's also 4:41, I know you may want to get out of here, and I

21   would totally understand that so would not take it personally.

22   If you want to leave, you're welcome to leave; if you are

23   willing to stay for a few minutes, I would love to say hi and

24   introduce myself more personally.

25           With that, you are now formally excused from jury

N53KCHA4

```
1  │ service, and, again, my thanks.  And with my statement that if
2  │ you're willing to stick around, I'll come speak to you in a few
3  │ minutes, you are free to go at this time.
4  │          Thank you very much.
5  │          (Jury excused)
6  │          THE COURT:  You may be seated.
7  │          All right.  I will set a sentencing date for
8  │ August 22nd at 2:30 p.m.  In accordance with my individual
9  │ rules and practices, defense submissions are due two weeks
10 │ prior to sentencing, the government's submissions are due one
11 │ week prior to sentencing.
12 │          I'll direct the government to provide its statement of
13 │ the offense to probation within seven days and defense counsel
14 │ must arrange for the defendant to be interviewed within the
15 │ next two weeks.
16 │          The deadlines under the rules for any posttrial
17 │ motions, if there is any request to extend those, you should
18 │ confer with one another and make a request, but until I say
19 │ otherwise, the deadlines are whatever the rules provide for.
20 │          Mr. Roos, any objection to the defendant's bail status
21 │ remaining as is through sentencing?
22 │          MR. ROOS:  No objection.
23 │          THE COURT:  All right.
24 │          So, Mr. Chastain, let me advise you that the terms and
25 │ conditions upon which you've been released to date will
```

N53KCHA4

1   continue to apply through the date of sentencing.  It is

2   critical that you comply with them.

3          Number one, if you don't, it could affect your release

4   status between now and sentencing.

5          And, number two, it will certainly have a bearing on

6   the sentence that you receive in connection with your

7   convictions today.

8          Number three, you must be here on the date and time

9   that I set for sentencing, August 22nd, at 2:30.  You should

10  stay in touch with your lawyers because those things can

11  change.  If it changes, they'll let you know, but the bottom

12  line is you must be here.  If you're not here, then you may be

13  subject to punishment above and beyond the punishment that you

14  receive in connection with your convictions today.

15         Do you understand all of that?

16         THE DEFENDANT:  Understood, your Honor.

17         THE COURT:  All right.

18         Anything else from the government?

19         MR. ROOS:  No, your Honor.  Thank you.

20         THE COURT:  Anything else from the defense?

21         MR. MILLER:  No, your Honor.  We'll confer with the

22  government on posttrial motions.

23         Other than would we be permitted to interview the

24  jurors, your Honor, assuming they want to talk to us?

25         THE COURT:  You are permitted to try.  I'm going to go

N53KCHA4

1    see if any of them are still here.  It's late in the day; I

2    imagine they're eager to get back to their lives.  I will tell

3    them that you may be interested in talking with them.

4              Candidly, I will probably tell them that they don't

5    need to talk to you and so they will make up their own minds,

6    but you can certainly request in a nice way.  I will also tell

7    them if they feel harassed or otherwise pressured, that they

8    can always reach out to me, so I trust that you won't make them

9    feel that way.

10             All right.  Thank you, again, for a well-tried case.

11             With that, we are adjourned.  Thank you very much.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25